1. videotape was missing excerpts which depicts several black males discussing guns

2. ( II RT 9. ) appellant's trial counsel reiterated appellant's claims (II RT

3. p. 9). Trial counsels objection to the videotape, as well as appellant's challenge

4. to the tapes authencity, was sufficient to preserve the issue for appeal. because

5. the court made its ruling that the tape would come in, any further objections

6. by appellant or trial counsel would have been futile.

7. VIOLATION.

8. Evidence Code Section 356 provides : " whenever a part of an act, declaration

9. conversation, or writing is given in evidence, the adverse party is entitled to

10. inquire into the rest of the act, declaration, conversation or writing. The

11. purpose of this provision is to keep evidence in context and to ensure that

12. the trier of fact is not misled by hearing only a partial account of certain

13. evidence. this is referred to as the rule of completeness.

14. As evidence Code Section 356 explained, the adverse party is entitled to inquire

15. into the rest of the act, declaration, conversation or writing. In the instant

16. case the appellant was denied this opportunity to inquire into the rest of the

17. evidence re videotape, because the trial court or any other appropriate official

18. failed to establish the videotapes authencity. Thus, not addressing the appellant

19. and counsel's contention that the videotape was missing parts also (II RT P.

20. 8-10).

21. The appellant argues that the trial court should have first established the chain

22. of - custody to address whether or not the videotape was authentic.

23. The chain - of - custody' rule is but a variation of the principle that real

24. evidence must be authenticated prior to its admission into evidence. U.S. V.

25. HOWARD - ARIAS ( 4th cir. 1982) 679 F2d 363, 366.

26. 'The purpose of this threshold requirement is to establish that the item to be

27. introduced... Is what it purports to be" Mueller and Kirkpatrick, Evidence under

28. the rules, P. 957 (2d ed 1993.)

1. Consequently, chain-of-custody issues are present whenever physical evidence

2. capable of submission to the jury is introduced at trial." People v. Baldine (2001)

3. 94 C4th 773, 779, 114 CR 2d 570.

4. The chain- of- custody is establish when the party offering a particular item

5. in evidence shows that it is reasonably certain the evidence has not been altered

6. see People v. Lucas 3 C4th 495, 459, 11 CR2d 353.

7. The trial court's exercise of discretion in admitting the evidence over improper

8. chain-of-custody objection is reviewed for abuse of discretion. People v. Catlin

9. (2001) 26 C4th 81, 134, 109 CR2d 31.

10. Here, the appellant argued that the tape was not the original and was missing

11. parts. The trial court assumed someone would testify to its authencity (II RT

12. 9-10). However, there was not any testimony of the tapes authencity, thus the

13. the court abused its discretion and violated Evidence Code Section 356 and
14. appellant's 5th and 14th amendments rights of the constitution and fair trial.

15. BECAUSE THE COURT DID NOT ESTABLISH THE TAPES AUTHENCITY, AND DECIDED THE TAPE

16. WOULD COME IN AS FAR AS THE "RAP" ANY FURTHER OBJECTION WOULD HAVE BEEN FUTILE.

17. The proceedings sequed off into other matters and the videotape situation was

18. not visited again until well into appellant's trial. continuing on ( RT 1569).

19. In which the following colloquy took place:

20. MR.BOWMAN;  I also ask to play the redacted version of the videotape just to

21. show what these guys do when hang out to show the extent of there friendship

22. that they hang around smoking cigarettes and drinking at the TROY street address.

23. THE COURT: That is not in dispute. He admits everything that was on the tape

24. and, you know, so what would the entire tape be showing other than something

25. that confirms what he has already testified to?

26. MR. BOWMAN; Well, I didn't want to show the 49-minute tape. I wanted  to show

27. the redacted version , just of them  hanging out and just to give the jury an

28. actual view of what these guys do when they hang out together. they are buddies.

1. They videotaped them at the club and smoking and hanging out in the IROC surface

2. residence . And if he is claiming that he didn't live there, I think it paints

3. a better picture for the jurors to actually see the activity than to be told about

4. it, so.

5. THE COURT: You are not going to be allowed to do that. It is cumulative.

6. MR. BOWMAN: I understand the court's caution about how far I want to go with Mr.

7. WASHINGTON. I understand that as well, so.

8. THE COURT: I don't want to be trying this case in another two years.

9. After the above colloquy, the prosecutor brought forth another oral motion to

10. play the tape. ( appellant again implements the original transcripts P. 1569-

11. 77.)

12.

13.

14.

15.

16.

17.

18.

19.

20.

21.

22.

23.

24.

25.

26.

27.

28.

1569

1             (Recess Taken.)

2       (Whereupon the following proceedings were had outside the

3 presence of the jury:)

4       THE COURT:  All right.  We're outside the presence of the

5 jury.  The defendant is present with counsel.  District attorney

6 is present.

7           Mr. Bowman.

8       MR. BOWMAN:  Yes, your Honor.  I wanted to bring up an

9 issue outside the presence of the jury before we begin again.

10 I -- can I make a motion at this point to offer into evidence and

11 play for the jury the approximately seven-minute redacted version

12 of the video?  I'm not asking to play the entire 49-minute video,

13 but just portions that show for example Mr. Washington rolling

14 the joint; Mr. McDonald's reaction to it and so forth given the

15 fact that there seems to be conflicting testimony here with

16 Mr. McDonald and actually with what Regina testified to as well,

17 Ms. Burton.  So at this point I'd offer -- I'd like a motion to

18 play the redacted portion of the video.

19       MS. LACHER:  Evidence.

20       THE COURT:  Ms. Lacher.

21       MS. LACHER:  Well, given Mr. Bowman's comments, if he's

22 correct, obviously the Court's ruling was if somebody denies

23 anything that's on the tape it comes in.

24        My concern is I'm not sure when it is that

25 Mr. McDonald or anybody has now said it contradicts anything

26 that's on that tape.

27       THE COURT:  Well, the -- the reason -- there's nothing

28 that's prej- -- when I first ruled as far as the tape goes I

Case 3:08-cv-00652-L-PCL   Document 1-2   Filed 04/09/2008   Page 5 of 125
Case 2:08-cv-02150-CJC-MLG   Document 1-2   Filed 04/01/2008   Page 15 of 100
1570

1 didn't find anything to be particularly prejudicial except for

2 the idea that maybe they were drinking and carrying on, that that

3 somehow might be misinterpreted; but there's been testimony about

4 that, so exactly showing the exact nature of what was going on

5 there I don't think is going to be prejudicial at all.

6          And as far as seven, this is a seven-minute excerpt

7 from the tape, so it's not going to be unduly time consuming.

8 There's not a 352 issue that I think is here.

9          I think it's relevant because there has been

10 some -- some testimony in -- in some detail as to what was going

11 on in the events on the videotape, and I think that -- just to

12 make it clear we're going to play the tape.

13     MS. LACHER:  My only concern is we had a discussion about

14 the 356 issue, now we're playing a portion of the tape not in

15 context.  I'm not necessarily saying that I --

16     THE REPORTER:  I can't hear because I keep hearing stuff

17 out of the witness stand.

18     MS. LACHER:  I haven't thought that through all the way,

19 like to come back and rewind what's on that long tape; but we're

20 taking it out of context again and that was my concern originally

21 that -- I understand the Court, I don't think it's that

22 prejudicial, and I thought that the only relevance that the Court

23 had said originally was if anybody denied or made contradictory

24 statements to what was on that tape, and there was none.

25     THE COURT:  Well, I don't know that that's the case.

26 That's the question.  I think there is some testimony that is --

27 is -- if I -- it may not be exactly contradictory, but I think it

28 has placed the exact context into issue, and we're going to play

Case 3:08-cv-00652-L-PCL    Document 1-2    Filed 04/09/2008    Page 6 of 125
Case 2:08-cv-02150-CJC-MLG    Document 1-2    Filed 04/01/2008    Page 16 of 100
1571

1 the seven-minute excerpt.

2          You want to play the 49-minute version, you're

3 welcome to do it.  It doesn't come in under 356.  It comes in

4 because you want to do it; you want to play it because I -- there

5 are different -- on the 49-minute version there are different

6 sessions that are clearly -- clearly at different times, and the

7 356 only would include those things that were done

8 contemporaneously with the statement that is elicited in

9 connection with the tape.

10          MR. BOWMAN:  Right.  And, your Honor, just to be clear,

11 the enter 49-minute tape includes portions of Mr. McDonald and

12 Mr. Washington throwing out gang signs and things like that, and

13 those have been redacted from this particular -- what we have

14 redacted in this seven-minute, 40-second portion.  So, you

15 know --

16          THE COURT:  Okay.

17          MR. BOWMAN:  -- I don't know if the defense is -- I don't

18 know if the defense is requesting for the entire tape to be

19 played.  I don't think I heard that, yet.

20          MS. LACHER:  No, I'm not.  I'm just concerned because even

21 the seven-minute redacted takes stuff out of context, and what I

22 heard Mr. Bowman say was one of the reasons he thinks that he

23 needs to play this tape is because we want to put the rap song in

24 context.  We don't even know that the rap song occurred at the

25 same time as what else was in the apartment.

26          THE COURT: (No.  I think it's not just the rap song

27 because the rap song has not been taken out of context.\  It's

28 what surrounds; the sound, what else is on the tape that has been

Tracy J. Gallagher, CSR #11524, RPR

1572

1 testified about that isn't exactly the way at least Mr. Bowman is

2 remembering the tape, and I -- you know --

3          MS. LACHER:  I understand.

4          THE COURT:  -- it's relevant.  It's admissible.  As I

5 mentioned under 352, I don't find it to be unduly prejudicial at

6 all.  I find it to be probative and it's not -- it's no longer

7 cumulative.  That was the reason we were saving sometime before

8 if there wasn't going to be any dispute as to what exactly was

9 going on, but there is a dispute.

10          MR. BOWMAN:  Your Honor, I'd only ask the Court instruct

11 the jury that we're only going to see a portion of it, that it's

12 redacted.  They're not going to see the entire portion, at least

13 right now, and not to speculate as to why they're only seeing a

14 portion of the tape.

15               In other words, sometimes when we have statements

16 from defendants who were mirandized when they talk about parole

17 violations we redact it; and I know we've given similar

18 instructions in other courts where we tell the jury not to draw

19 any conclusions from the fact they're only seeing a portion of

20 it.

21          THE COURT:  Well, I mean, I can tell them this is the only

22 portion of the tape that we feel is relevant at this stage of the

23 proceedings and that's why they're seeing it.

24          MR. BOWMAN:  Okay.

25          MS. LACHER:  I don't have objection to that.

26          THE COURT:  Okay.

27          MR. BOWMAN:  That's fine.

28          THE COURT:  Let's bring in the jury.

Tracy J. Gallagher, CSR #11524, RPR

1573

1    (Whereupon the following proceedings were had in the

2 presence of the Jury:)

3    THE COURT:  Our jurors and our alternates are present.

4 The Defendant is present with counsel.  The District Attorney is

5 present.

6    Mr. Bowman, we are in your cross-examination.

7    MR. BOWMAN:  Yes, your Honor.

8

9    CROSS-EXAMINATION (Resumed)

10 BY MR. BOWMAN:

11    Q    And, well, first of all let me ask, Mr. McDonald,

12 you've testified about the context of the tape.  What I'd like to

13 do now is play a portion of the tape and have you watch it

14 carefully because I'd like to ask you some questions about it;

15 okay.

16    A    Yes, sir.

17    Q    Can you see the T.V. screen all right from where

18 you're seated?

19    THE COURT:  Before we play; it's just a seven-and-a-half

20 minute portion of the tape.  It's just those portions we think

21 are relevant for this point in the trial.  It's not the whole

22 49-minute job.

23    Do we have a stipulation from counsel that the

24 reporter does not have to attempt to report the contents of the

25 tape?

26    MS. LACHER:  Yes, your Honor.

27    MR. BOWMAN:  So stipulated.

28    THE COURT:  We need it.  Get that tape.

Tracy J. Gallagher, CSR #11524, RPR

1574

1    MR. BOWMAN:  Yes.  I ask it be marked People's next in

2  order.  And it's now been marked as People's 38.

3              With the Court's permission, can I then play the

4  tape at this point?

5    THE COURT:  Yes, 38 is received.

6    MR. BOWMAN:  Thank you, your Honor.

7              (Whereupon People's Exhibit No. 38, a videotape,

8  was played for the jury.)

9    Q    BY MR. BOWMAN:  Mr. McDonald, can you see that

10  video from where you are sitting?

11    A    Yes, sir.

12    Q    I want to direct your attention to the beginning of

13  that video; do you recall what day that video was shot?

14    A    No, sir.

15    Q    Could it have been on November 3rd?

16    A    No, I don't know, sir.  I don't recall.

17    Q    Well, now, did you notice, Mr. McDonald, that in

18  the beginning of that video you're wearing a black oversized

19  denim jacket?

20    A    A black oversized denim jacket?

21    Q    Yes.

22    A    Yes, sir.

23    Q    Okay.  Is that your jacket?

24    A    Yes, sir.

25    Q    Okay.  And would you wear that quite often around

26  that time?

27    A    No, sir.

28    Q    You wouldn't?

Tracy J. Gallagher, CSR #11524, RPR

| | | |
|---|---|---|
| 1 | A | The jacket? |
| 2 | Q | Yes. |
| 3 | A | Do I wear that quite often? |
| 4 | Q | Did you around the beginning of November where that |
| 5 | | black -- |
| 6 | A | I don't recall how many times I wore that jacket, |
| 7 | | sir. |
| 8 | Q | Okay.  But it wouldn't be unusual for you to wear |
| 9 | | it; correct? |
| 10 | A | Would it be -- no. |
| 11 | Q | In fact, you were wearing it inside the house; |
| 12 | | correct? |
| 13 | A | Yes. |
| 14 | Q | Now, you saw the portion where Mr. Washington was |
| 15 | | rolling a joint; correct? |
| 16 | A | Yes, sir. |
| 17 | Q | Were you upset about that at the time? |
| 18 | A | No, sir. |
| 19 | Q | And you didn't appear to be upset; did you? |
| 20 | A | No, sir. |
| 21 | Q | Do you recall what time that was of the day? |
| 22 | A | No.  Around afternoon or something like that. |
| 23 | Q | Okay.  And do you recall which day it was? |
| 24 | A | No, sir. |
| 25 | Q | And did you see near the end of that tape a -- a |
| 26 | | scene which showed a girl in the scene with the striped shirt on? |
| 27 | A | Yes, sir. |
| 28 | Q | Do you know who that is? |

1576

```
 1        A        That's Apple.

 2        Q        Okay.  And Apple is the girl in the picture
 3  depicted in People's 25, "C" and "D"; correct?

 4        A        Yes, sir.

 5        Q        And she's wearing that same shirt in the video that
 6  she's wearing in these photographs on People's 25; is that
 7  correct?

 8        A        Yes, sir.

 9        Q        And so are you aware that those pictures in
10  People's 25 were taken on November 6th?

11        A        November 6th, I'm not aware of that.

12        Q        How many times was Apple over at the Troy Street
13  residence while you were there videotaping people?

14        A        Apple was over there at least twice, and she had
15  been with the same clothes on.  She never changed her clothes.

16        Q        She always wore that same shirt?

17        A        On those days -- on that day, I've seen her with
18  that before.

19        Q        What day -- now, she was there obviously on
20  November 6th.  When did she arrive at the Troy Street residence,
21  if you know?

22        A        I think she arrived somewhere around November 5th
23  or 4th.

24        Q        Now, on that video there were portions where you
25  were doing the filming and you would do something where it looked
26  like you would take a picture; correct?

27        A        Yes, sir, that's correct.

28        Q        Can you tell us how that function worked on that
```

Case 3:08-cv-00652-L-PCL    Document 1-2    Filed 04/09/2008    Page 12 of 125
Case 2:08-cv-02150-CJC-MLG    Document 1-2    Filed 04/01/2008    Page 22 of 100
1577

1  camera?

2         A        How does this work?

3         Q        Yeah.

4         A        You just -- basically like a regular camera.  It's

5  like a little button, and when you get ready to take the picture

6  you just snap the picture.

7         Q        Okay.  So you were pretty familiar with how to use

8  that camera; correct?

9         A        Yes, sir.

10        Q        Did you read the instruction manual?

11        A        No, sir.

12        Q        Well, the instruction manual was found in the glove

13  box of your car; correct?

14        A        Yes, sir.

15        Q        Did you -- did you put it there?

16        A        No, sir.

17        Q        Did you know it was there?

18        A        No, sir.

19        Q        Did you ever read the instruction manual at all?

20        A        No, sir.

21        Q        There also was a scene there where you were taking

22  pictures of Regina and was she in her pajamas at the time?

23        A        That was a tank top and some -- like some cotton

24  wool type pants.

25        Q        Okay.  Is that what she slept in?

26        A        I don't think so.  I don't know what she slept in.

27        Q        And you have never discussed your testimony with

28  Regina; is that correct?

Tracy J. Gallagher, CSR #11524, RPR

1. As noted above, the prosecutor wanted to show the videotape of appellant's

2. co-defendant TONY WASHINGTON, rolling a marijuana joint and appellant's reaction

3. to this. The prosecutor claimed appellant's testimony was conflicting concerning

4. this matter. The trial court now ruled it would allow the videotape to be shown.

5. The court based its ruling on the grounds that there were no longer any Evidence

6. Code Section 352 prejudice in showing the tape which was the "drinking and carrying

7. on." because that had now been testified to.(VII RT 1569-70)

8. The court was alluding to appellant's trial counsels failure to object to the

9. prejudicial questions asked of appellant's co-defendant TONY WASHINGTON and

10.(V RT 782, 783, 784, VI RT 823, 892, 893 and VII RT 1555, 1557, 1560)

11. Appellants counsel reiterated her earlier objection. Counsel specifically stating

12. her concern that the tape would be taken out of context and that counsel

13. understood the courts earlier ruling to be "if anyone denied or made contradictory

14. statements as to what was on the tape, then the court would allow the tape to

15. be played. And appellant's trial counsel further expressed that she did not

16. believe there were any denials or contradictory statements. (VII RT 1570.)

17. The court agreed that there may not have been any contradictory statements,

18. but the 'context' was now an issue and there remained no 352 issues (VII RT 1570)

19. Appellant's trial counsel expressed her concern about the videotape being taken

20. out of context and misinterpreted. And further noted that she thought one of

21. the reasons the prosecutor wanted to play the tape was to put the "RAP" into

22. context. Contending that no one even knew if the "rap" occurred at the same time

23. as everything else in the apartment. (VII RT 1571)

24. The court in disagreeing with appellant's counsel, claimed that it was not the

25. "rap" that was taken out of context, but the other things that were depicted

26. on the tape. And thus, it would allow the tape to be shown (VII RT  1571-72).

27.

28. C. THE COURTS DECISION TO ALLOW THE VIDEOTAPE TO BE SHOWN TO THE JURY DESPITE

Case 2:08-cv-02150-GJG-MLG    Document 1-2    Filed 04/01/2008    Page 24 of 100

1. COUNSELS SECOND ONGOING OBJECTION, WAS ERROR AND ABUSE OF DISCRETION.

2. Appellant asserts that trial counsels objection to the tape based on 356, and

3. appellant's assertion that the tape was not a true copy of original,

4. preserved the issue for appellate review.

5. Appellant contends that the trial courts ruling to allow the tape was error for

6. for the following:

7. 1) The prosecutors claim that he wanted to put into context appellant's alleged

8. contradictory statements concerning appellant's co-defendant rolling marijuana

9. and appellant's reaction, was irrelevant, prejudicial and improperly admitted

10. into appellant's trial proceedings. This activity added nothing to case and was

11. inflammatory. The court should not have allowed this prejudicial

12. character evidence, and should not have used the alcohol and marijuana testimony

13. an excuse by the prosecutor to put this inadmissible evidence into context.

14. 2) The alleged dispute also was misleading and again irrelevant. The only

15. relevant evidence concerning the videotape was the words of appellant's "rap".

16. There was more than enough evidence to show that appellant had been in the TROY

17. st residence, and finally.

18. 3) The prejudicial impact of the tape which depicted appellant and co-defendant

19. drinking and smoking marijuana was higher than the probative value of the "rap".

20. in light of the fact that appellant had already provided testimony admitting

21. to saying the words "glock 40 and tre-80", thus, to allow the videotape to be

22. shown, was cumulative.

23. THE GOVERNMENT PROSECUTOR EXPLOITED THE VIDEOTAPE EVIDENCE IN HIS CLOSING

24. MAKING THE FOLLOWING COMMENT's:

25. COMMENT 1: "THESE TWO ACTED TOGETHER. THESE TWO, AS YOU SAW ON THE VIDEO,HANG

26. OUT TOGETHER. THEY SMOKE TOGETHER. THEY DRINK TOGETHER. THEY HANG OUT TOGETHER

27. AND THEY COMMIT RESIDENTIAL BURGLARIES TOGETHER. THAT IS WHAT THEY DO." (RT V

28. 9 P. 1703, 11-14).

1. COMMENT 2:

2. "He had the video camera that was seen taken from the HAVERN residence, we have

3. seen the videotape that he was taking of himself, rapping, TONY WASHINGTON smoking

4. and drinking and doing all this kind of stuff. (RT V 9 P.1713, 14-18)

5. COMMENT 3: " what else is important? well we know in the video that was found

6. at the HAVERN property that he was wearing a Black Denim jacket, just like it

7. was described by the witnesses in the chula vista crime. see that, black jacket

8. again. Right next to Mr. MCDONALD, the same jacket presumably that he was wearing

9. when he did the burglary (RT V 9 p.1781)


10. People v. Maestas (1993) 20 cal. App. 4th 1482, 1494-1495 [25 Cal. Rptr. 2d

11. 644] at p. 1495 [t]he prosecution has no right to present cumulative evidence

12. which creates a substantial danger of undue prejudice to the defendant. (citation)

13. The courts have for a number of years repeatedly warned that " statements of

14. facts not in evidence by the prosecutor in his argument to the jury constitute

15. misconduct." (People v. Kirkes (1952) 39 Cal. 2d 719, 724, 249 P. 2d 1. see also

16. People v .Taylor (1961) 197 cal. App. 2d  372, 381-384, 17 cal.  Rptr. 233.

17. The courts " have long held that a prosecutor may not place the prestige of the

18. government behind a witness by making personal assurances about the witnesses

19. credibility nor indicate that facts not before the jury support the testimony.

20. (see e.g. UNITED STATES V. MARTIN 815 F. 2d  818, 821-22,

21. (1st cir. 1987) cert. denied, 484 U.S. 825, 108 S. Ct. 89,98 L. Ed. 2d 51 (1987);

22. UNITED STATES V. ROSA, 705 F. 2d 1375, 1379-80 (1st Cir. 1983.)

23. EVIDENCE CODE SECTION 1110 (a) evidence of prior conduct generally inadmissible

24. to prove conduct on a specific occasion.

25. The appellant asserts the court error, allowed the prosecutor to use the videotape

26. to distort evidence to the jury as shown during the prosecutors closing arguments.

27. Specifically, there was no evidence via witnesses or otherwise that the black

28. jacket seen in the "RAP" videotape was the same jacket allegedly seen by witnesses.

1. nor was there testimony to that effect. The prosecutor appealed to the prejudice

2. of the jury when he argued that appellant and co-defendant drank and smoked

3. marijuana together and thus, committed  the burglaries together. The appellant

4. counsel objection and argument that the tape would be taken out of context was

5. correct. The prosecutor used tactics to prejudice the appellant and committed

6. misconduct of the magnitude to deny appellant his constitutional right to a fair

7. trial guaranteed under the United States Constitution. And violated appellant's

8. 5th and 14th amendment rights. The videotape was also used by the prosecutor to

9. claim that the jacket appellant was seen wearing in the video was the same used

10. in the HAVERN burglary, as the prosecutor continuously commented concerning

11. appellants presence on the videotape stolen from the HAVERN residence, and coupled

12. this with the smoking and drinking to support his argument that appellant

13. burglarized their residence.

14. The duty of the prosecutor is to see justice is done, not simply to secure

15. convictions. (Berger v. UNITED STATES (1934) 295 U.S. 78,88; In re FERGUSON (1971)

16. 5 Cal. 3d 525, 531-532.) Hence, the familiar maxim: a prosecutor is more than

17. an advocate " and his duty extends no further than an impartial, fair and just

18. trial of [the] defendant" (POWELL V. SUPERIOR COURT (1957) 48 cal. 2d 704, 709,

19. internal citation omitted.)

20. Here the  defense sought to exclude the videotape in fairness to appellant. The
21. the trial courts solution was not equitable in that it should have excluded the

22. tape because it had not been authenticated. or in the alternative, the court

23. should have limited any inquiry only to the relevant part, which was the "rap"

24. and barred any other request from the prosecutor concerning the irrelevant and

25. prejudicial evidence re 352.

26. C. IN THE ALTERNATIVE APPELLANTS TRIAL COUNSEL RENDERED I.A.C. BY NOT OBJECTING

27. TO THE EVIDENCE ON A PROPER BASIS.

28. Appellant maintains that trial counsels objection preserved the issue for appeal.

1. The appellant submits that the Court ought to allow the 2 to Page 27 of 100

2. was an abuse of discretion/2 in that the prosecutor had already shown that

3. appellant and co-defendant TONY WASHINGTON, were "buddies" and hung out together

4. at the TROY st residence. Appellant, nor appellant's witnesses denied this fact.

5. Also, the " context" concerning appellant's reaction to WASHINGTON rolling

6. marijuana, was irrelevant and inadmissible character evidence. As well as

7. incompetent and prejudicial. And should not have been allowed into appellant's

8. trial proceedings. The prosecutors sole intention was to secure a conviction by

9. showing appellant smoking and drinking alcohol, which was highly inflammatory.

10. The knowledge of appellant indulging in such activity damaged appellant's right

11. fair and impartial trial in violation of Evidence Code Section 352 and U.S.C.

12. 14th amendment; west Ann : Const. Art. 1, section 13.

13. The evidence was cumulative. see People v. Maestas (1993) supra, 20 cal. App.

14. 4th 1482- 1495 [25 cal. Rptr. 2d 644] at p. 1495 [t]he prosecution has no right

15. to present cumulative evidence which creates a substantial danger of undue

16. prejudice to the defendant. (citation) see also, People v. Woodard (1979) 23

17. Cal. 3d 329, 341 [reversal ordered where the prosecutor "exploited" erroneously

18. admitted evidence during his closing argument].)

19. D. RELEVANCY AND INFLAMMATORY EVIDENCE

20. As argued supra, "[R]elevancy  is the first rule of admissibilty of evidence..."

21. TRAXLER V. THOMPSON (1970) 4 cal. App. 3d 278, 286.) section 351 provides that

22. all relevant evidence is admissible (cal. const. Art. 1, section 28 (d), the

23. truth-in-evidence provision of proposition 8.) The appellant includes his earlier

24. argument concerning "Relevancy and inflammatory evidence" contained in his

25. argument #4 re Gang evidence, as though fully set forth herein and in addition

26.-------------------------------------------------------------------
    /2. Section 352 issues are reviewed for abuse of discretion. (People v. Cain
27. (1995) 10 cal. 4th 1, 33; People v. Cudjo (1993) 6 cal. 4th 585, 609, the trial

28. courts discretion will not be disturbed unless probative value clearly outweighs
    by prejudicial effect.( People v. scheid (1997) 16 cal.  4th 1, 8.)

1. However, as the appellate counsel did not object to the prosecutor's eliciting

2. of testimony concerning alcohol and marijuana, which was part of the trial courts

3. decision to allow the videotape to be shown. There was no remaining prejudice.

4. Appellant's trial counsel should have made a constitutional objection, as well

5. as an objection that the alcohol and marijuana use was inadmissible character

6. evidence.

7. Failure to object to errors which result in a waiver of review of such errors

8. may constitute Ineffective Assistance of Counsel (People v. Scott (1994) 9 Cal.

9. 4th 331, 356. fn. 18; People v. Cooper (1991) 53 Cal. 3d 771, 831; People v. Malone

10. (1988) 47 Cal. 3d 1, 33.)

11. Appellant's counsels failure to do so amounted to Ineffective Assistance of

12. see People v. Jackson (1986) 187 Cal. App. 3d 499, trial counsel failed to move

13. for an order precluding the prosecutor from impeaching defendant with his prior

14. felony convictions. On appeal, the attorney general asserted that counsel's

15. omission did not constitute Ineffective Assistance of Counsel because the

16. impeachment issue had been settled informally by the court at the outset of trial

17. and a formal motion would have been futile. Finding that "[c]ompetent counsel...

18. would have at least taken steps to preserve the point for appeal pending

19. clarification of the law by appellate court's," the court found Ineffective

20. assistance of counsel and remanded the case to determine whether the court would

21. in fact have allowed impeachment (Id at 506).

22.

23.

24. ————————————————————————————————————————
/1. People v. Fosselman (1983) 33 cal. 3d 572, 582-583, 189 cal. Rptr. 855, 659

25. p. 2d 1144 (defense counsel failed to object to prosecutorial misconduct,

26. misconduct, including inflammatory characterization of defendant, statements

27. of personal belief based on facts not in evidence, and use of inadmissible

28. character evidence.

1. to any argument herein. Appellant applies the that Relevance and inflammatory standard

2. to the challenged videotape in regards to the marijuana, alcohol and "black jacket"

3. evidence as well as the tapes use to allegedly put into context appellant's

4. reaction to co-defendants rolling of marijuana. And appellant includes the Evidence

5. Code Section 352 analysis contained in argument #4, as though fully set forth

6. herein and in addition to any other arguments points and authorities herein.

7. Unless the trial courts determination exceeds the bounds of reason, the admission

8. of the tape over objection will not be disturbed on appeal.

9. Since appellant had already testified to the fact that he had indeed said the words he was

10. accused of saying on the "rap videotape" (VII RT 1542-45), and did not deny saying

11. those words. In addition to testimony by Appellant, co-defendant TONY WASHINGTON

12. and witness REGINA BURTON, that appellant was at the TROY ST. residence and on

13. numerous ocassions and lastly, although the marijuana and alcohol testimony was

14. entered erroneously, the appellant did admit that he had used alcohol and was

15. in the presence of marijuana. Thus, the trial courts allowance of the prosecutor

16. to show the videotape of this activity served only to embarrass the appellant

17. and to portray appellant as a person who would do what the prosecutor accused

18. appellant of doing. And destroyed appellant's chance at a fair trial. The tape

19. was cumulative. Thus, the appellant asserts the courts ruling exceeded the bounds

20. of reason.  It is well accepted that under section 352, the trial court enjoys

21. the broad discretion in assessing whether the probative value of particular

22. evidence is outweighed by concerns of undue prejudice, confusion or consumption

23. of time (People v. Rodriguez (1994) 8 cal. 4th 1060,1124.) A trial court's

24. exercise of its discretion under section 352 "must not be disturbed on appeal

25. except on a showing that the court exercised its discretion in an arbitrary,

26. capricious or patently absurb manner that resulted in a manifest miscarriage of

27. justice.(Ibid ; see also People v. Poplar (1999) 70 CAL. App. 4th 1129; People

28. v. Fitch (1997) 55 Cal. App. 4th 172,183.) Evidence can be excluded under section

1. 352, if the probability that its admission will create a substantial danger of

2. undue prejudice substantially outweighed its probative value.

3. E. THE ADMISSION OF THE EVIDENCE IMPACTED APPELLANT'S RIGHT TO A FAIR TRIAL.

4. When counsel objected she did not object on a Constitutional basis. However,

5. Appellant argues that the court conducted a Evidence Code section 352 analysis

6. to the videotapes admissibility (RTV2 p.13) DURING TRIAL COUNSELS OBJECTION.

7. also see (RTV7 p.1570) thus, should the respondant argue that counsel failed to

8. make a Constitutional objection to the evidence and thus waives appellate review

9. to challenge the error on a constitutional basis, the appellant contends that

10. he has not waived his right to raise the issue on appeal because, although a

11. due process objection was not raised , appellant's trial counsel made it

12. abundantly clear that she objected to the admission of the videotape because

13. it would be taken out of context and that there was not a need to show the tape

14. because there was no violation of the courts earlier ruling. And further the

15. court conducted an 352 analysis and determined the videotape would come in. Any

16. further objection would have been futile. there was no realistic possibility

17. that a due process argument would have been more persuasive. (People v. Hill

18. (1998) 17 CAL. 4th 800, 820, 72 cal. Rptr. 2d 656, 952 P.2d 673; People v. Simon

19. (1927) 80 Cal. App. 675, 252 P.758.)

20. When the court decide that it would allow the videotape as far as the alleged

21. "rap" and its later ruling to allow the entire videotape to be shown to jury

22. because "there was no longer any prejudicial" issues using the 352 analysis,

23. the due process objection would virtually have duplicated the section 352 analysis

24. It has been noted "[a] careful weighing of prejudice against probative value

25. [evidence code section 352] is essential to protect a defendant's due process

26. right to a fundamentally fair trial." People v. Jennings (2000) 81 cal. App.

27. 4th 1301, 1314, 97 cal. Rptr. 2d 727; People v. Hoover (2000) 77 cal. App. 4th

28. 1020, 1029, 92 Cal. Rptr. 2d 208; People v. Brown (2000) 77 Cal. App. 4th 1324,

1. 1334, 92 Cal. Rptr. 2d 433.) The California Supreme court recognized section 352

2. as providing a realistic safeguard from due process violations. (People v. Falsetta

3. (1999) 21 Cal. 4th 903, 919-920, 89 Cal. Rptr. 2d 847, 986, P. 2d 182; People

4. v. Fitch (1997) 55 cal. App. 4th 172, 183, 63 cal. Rptr. 2d 753.)

5. Appellant asserts that the circumstances of his case and the evaluation required

6. by section 352 and by due process is virtually coextensive .(see e.g. People v.

7. Marchand (2002) 98 Cal. App. 4th 1056, 1060, 120 cal. Rptr. 2d 687.)

8. Appellant also asserts appellate review is appropriate because an appellate court

9. may consider on appeal a claim raising a pure question of law on undisputed facts."

10. (People v. Yeoman (2003) 31 cal. 4th 93, 118, 2 cal. Rptr. 3d 186, 72 p. 3d 1166;

11. citing people v. Hines (1997) 15 cal. 4th 997, 1061, 64 cal. Rptr. 2d 594, 938

12. p. 2d 388; Hale v. Morgan (1978) 22 cal. 388, 394, 149 Cal. Rptr. 375, 584 p.

13. 2d 512, Ward v. Taggard (1959) 51 Cal. 2d 736, 742, 336 P. 2d 534.)

14. Lastly, this court can elect to exercise its discretion to consider the due

15. process issue. (People v. Williams (1998) 17 Cal. 4th 148, 161-162, fn. 6, 69

16. Cal. Rptr. 2d 917, 948 p. 2d 429)

17. Moreover, the UNITED STATES SUPREME COURT has consistently held that domestic

18. rules of evidence may not be invoked to preclude a criminal defendant from

19. establishing that he has been denied a fair trial. (see Rock v. Arkansa (1987)

20. 483 U.S. 44, 55-56, supra; DAVIS V. ALASKA (1974) 415 U.S. 308, 315-321 [94 S.

21. ct. 1105, 39 L. Ed. 2d 347] supra; CHAMBERS V. MISSISSIPPI ; (1973) 410 U.S.

22. 284, 294-303 [93 S. Ct. 1038, 35 L.Ed. [87 S. Ct. 1920, 18 L.Ed 2d 1019].) supra.

23. F. APPLICATION TO THIS CASE; PREJUDICE.

24. Applying these rules, the court's allowing the admission of the tape to put into

25. "context" the appellant's reaction to co-defendant TONY WASHINGTON rolling

26. marijuana and other inadmissible irrelevant matters, was an abuse of discretion

27. The appellant asserts that the prejudice significantly outweighed the probative

28. value . And appellant was denied a fair trial by the prosecutors unfair tactics

Case 2:08-cv-02150-SLG-WHL Document 1 Filed 04/01/2008   Page 32 of 100

1. Although the crisis allowed the prosecutor to play the videotape to put into

2. "context" appellant's alleged contradictory statements concerning appellants

3. reaction to rolling of marijuana, what is clear is that the government prosecutor

4. sought to secure a conviction by displaying appellant as a person that would

5. do the crimes. The prosecutor made this apparent when he made his earlier request

6. to show the jury the videotape "to show what these guys do when the hang out to

7. show the extent of their friendship, that they sit around smoking and drinking

8. drinking at the TROY street address."(RTV 798) at which time the court denied

9. the request stating" THAT IS NOT IN DISPUTE. He admitted everything that was on

10. the tape and, you know, so what would the entire tape be showing other than what

11. something that confirms what he has already testified to ?"(VRT 798-799)

!@. Despite the courts reasoning the prosecutor pressed the court stating PROSECUTOR:

13. "well, I didn't want to show the 49-minute version tape. I wanted to show the

14. redacted version, just of them hanging out and just to give the jury an actual

15. view of what these guys do when they hang out together. They are buddies. They

16. videotaped them drinking and smoking and hanging out at the TROY street residence

17. And if he is claiming he didn't live there, I think it paints a better picture

18. for the jurors to actually see the activity than to be told about it, so.

19. THE COURT: you are not going to be able to do that. It is cumulative.(VRT 799),

20. Thus, the reality is, the prosecutor sought to gain a tactical advantage knowing

21. to show the tape to the jurors would create a bias against appellant . And further

22. the prosecutor sought to use the tape to advance theories unsupported by the

24. evidence and entirely based on his own beliefs. As demonstrated by the "black

24. denim jacket" theory the prosecutor advanced using the tape/3. Accordingly, the

25. courts decision to allow the prosecutor to show the videotape to the jury, and

26. the prosecutors exploitation/4.of the tape highly prejudiced appellant and

27. denied appellant a fair trial. appellant respectfully request that conviction

28. for count's #1 and 2, be reversed.

/3. the courts have long held that the prosecutor may not place the prestige of the
government behind a witness by making personal assurances about the witnesses

credibility nor indicate that facts not before the jury support the testimony. U.S.

V. MARTIN, supra. U.S. V. ROSA, supra.

/4. PEOPLE V. MAESTAS, supra.

Case 2:08-cv-02150-G-JCH-VEG Document 2 Filed 04/01/2008  Page 33 of 100

1. appellant included herein the evidence and errors
2. contained in appellant's argument #1, as though fully set forth  herein and in
3. addition to the above arguments points and authorities. The appellant seeks to
4. show that the erroneous admission of the tape, or in the alternative, the
5. prosecutors exploitation of the videotape to convict, was not only a abuse of
6. discretion, but it was a violation of constitutional magnitude. That denied
7. appellant his due process rights to a fair trial. U.S. Const., 5, and 14th amends.)
8.
9.
10.
11.
12.
13.
14.
15.
16.
17.
18.
19.
20.
21
22.
23.
24. The appellant respectfully request the conviction for count #1, and 2. be reversed
25.
26.
27.
28.

ARGUMENT 6.

JUDICIAL ERROR AND PROSECUTORIAL MISCONDUCT.


Appellant contends that his right to DUE PROCESS and a fair trial was denied

when the government prosecutor ellicited testimony of appellant's

incarceration status during trial...

A PROCEEDINGS BELOW:


During cross examination of defense witness REGINA BURTON the prosecutor

0. question Ms. BURTON as follows:

1. Mr. BOWMAN: HOW MANY TIMES HAVE YOU VISITED THE DEFENDANT IN JAIL SINCE HIS

2. HAS BEEN INCARCERATED SINCE NOVEMBER 6, 2003?

3. Ms. LACHER : YOUR HONOR— CAN WE GO SIDE BAR?

4. THE COURT: NO.

5. THE WITNESS: I DON'T KNOW.

6. Mr.BOWMAN: CAN YOU--- IS IT A COUPLE OF TIMES A WEEK? (VRT p.959)

7. The prosecutor then proceeded to ellicit testimony concerning appellant's

8. incarceration throughout his cross examination of Ms. BURTON (VI P.959,961

9. 962 and 964) After which the prosecutor then proceeded to question

0. appellant about his incarceration, (VII RT P. 1554, 1578–1580.)

1. And lastly, the prosecutor referenced appellant's incarceration during his

2. closing argument's (RT P. 1772.)

3. There was not an objection from appellant's trial counsel.

4.

5.

6.

7.

8.

1  Appellant submits that the prosecutors questions concerning

2  appellants incarceration was prejudicial and inflammatory and

3  should not have been entered into appellants trial proceedings.

4

5  B. The courts refusal to allow appellants trial counsel request

6  to go side bar was abuse of discretion and prejudicial.

7  1. Counsels request:

8  As noted, the prosecutor asked defense witness Regina Burton

9  the following :

10  Mr. Bowman :"How many times have you visited the defendant in

11  jail since he has been incarcerated since november 6 of 2003?"

12

13  Appellants trial counsel immediately sought side bar :

14  Ms. Lacher: Your honor can we go side bar ?

15  The Court : No .

16  It is apparent that counsel was seeking to deter prosecution

17  from Elliciting testimony concerning appellants incarceration,

18  but the courts denial of counsels request precluded counsel

19  from doing so and it is foreseeable that an objection would

20  have been futile.

21  And the prosecutors subsequent questioning of Ms. Burton

22  concerning appellants incarceration and her visits of appellant

23  during his incarceration was a direct result of the courts

24  refusal to allow the requested side bar.this evidence went

25  beyond mere bias, it served to deny appellant his right to all

26  advantages to clear his innocence. The court should have

27  engaged in an edvidence code section 352 analysis weighing

28  probative value against the inflammatory and prejudicial nature

2

1   of appellants incarceration.

2   **2. Violation**
    ---------------

3   The criminal process presumes that the defendant is innocent

4   until proven guilty. ( Coffin V. United States 156 U.S. 432

5   -453 (1895) ( Presumption of innocence " lies at the foundation

6   of the administration of our criminal law.")

7

8

9

10  C. In alternative counsel rendered ineffective assistance of

11  counsel by not objecting to the evidence when the court denied

12  her request for side bar.

13

14  It is appellants position that the trial court abused it's

15  discretion by refusing to allow a requested side bar from

16  appellants trial counsel and the issue should be preserved .

17  And objection after the courts refusal to allow side bar would

18  have been futile. However, in the alternative, if this court

19  believe the issue has not been preserved sufficiently for

20  appellant review appellant submits the trial counsel render

21  ineffective assistance of counsel by failing to make a objection

22  after the courts denial of her request to go side bar. Failure

23  to object to errors which resulted in a waiver of review of

24  such errors may also constitute ineffective assistance of

25  counsel. ( People V. Scott, supra; People V. Cooper, Supra

26  People V. Malone, Supra.)

27

28  D. Relevancy and inflammatory evidence.

3

1    appellant includes his prior argument points and authorities

2    concerning " relevancy and inflammatory evidence." Continued

3    in argument # 4 as though fully set forth herin and in addition

4    to the below argument points and authorities.

5

6    The Elliciting of appellants incarceration during trial was

7    prejudicial and irrelevant. The prosecutor did not need to

8    question defense witness Regina Burton concerning appellants

9    incarcerarion and her visits to appellant during his

10    incarceration. Because of other evidence available to establish

11    the fact that Ms. Burton and appellant knew eachother and had

12    a bond together.

13    The knowledge of appellants incarceration infered that there

14    was a need to seperate appellant from the community which under-

125    minded related fairness of trial guaranteed by the 6 th and

16    14 th amendments of the United States constitution.

17    This situation of appellant, is analogous to People v. Lopez

18    ( 2005 ) 129 Cal. App 4th 1508. in which the prosecution used

19    evidence of prior arrest to impeach defense witnesses in an

20    attempt to show that they were hostile to police and therefore

21    fabricating evidence. The court of appeal noted that evidence

22    of mere arrest is inadmissible because it is more prejudicial

23    than probative and " a witnes[s] credibility in the eyes of

24    the jury would be seriously impairerl by the evidence of a prior

25    criminal arrest- because of the "bad character" inevitably

26    suggested thereby." 9 Id at P. 1523, quoting People v. Anderson

27    ( 1978 ) 20 Cal. 3rd 647. 651.)

28    Here the knowledge of appellants witness Regina Burton visits

1  with appellant during his incarceration not only was cumulative,

2  because as stated; it was no secret that appellant and Ms. Burton

3  knew eachother because Ms. Burton was the wife of appellants

4  uncle Clarence Burton ( see testimony                    ).

5  But this evidence was prejudicial in that it destroyed appellants

6  credibility and his presumed innocence ...

7

8  D. The admission of testimony concerning appellants incarceration

9  during trial Impacted appellants constitutional right to a fair

10 trial. Counsel did not object after the courts deniel of her

11 request for side bar. Appellants counsel should have objected

12 on a constitutional basis to the evidence. Should the respondent

13 argue that counsel failed to make a constitutional objection

14 to the evidence and has thus waived any right to challenge the

15 error on constitutional basis appellant would argue that he

16 has not waived the issue on appeal. ( and includes herein

17 appellant previous arguments points and authorities contained

18 in argument # 4 concerning reasons why appellants review is

19 still in order when a defendant is trying to establish that

20 he was denied a fair trial. As through fully set forth herein

21 and in addition to any below argument ) ...

22

23 The issue raises fundamental principals of policy and constitu-

24 tional guarantees for which the refusal of appellant review

25 frusterate rather than serves the interest of justice.

26 People v. Welch ( 1993 ) 5 Cal. 4th 228, 237 - Arabian. J.

27 concurring ) People v. Mills ( 1978 ) 81 Cal. App 3d 171, 176)

28 Secondly to avoid a subsequent Habeas Proceeding raising the

5

1    same point courts have discretion to consider issues on direct

2    appeal in that the collateral proceeding would unduly prolong

3    the appellant process ( People v. Blanco ( 1992 ) 10 Cal. App

4    4 th 1167, 1172, 1173.  People v. allen ( 1974 41 Cal. App 3

5    196, 201, fn, 1. People v. Norwood ( 1972 ) 26 Cal. App 3d 148,

6    153. [ A matter not reviewable upon direct appeal, but...

7    vulnerable to habeas corpus proceeding based upon constitutional

8    grounds may be considered upon direct appeal ...]

9

10    Moreover the United States Supreme court has consistently held

11    that domestic rules of evidence may not be invoked to preclude

12    a criminal defendant from establishing that he has been denied

13    a fair trial. ( see Rock v. Arkansas, Supra; Davis v. Alaska

14    Supra, Chambers v. Mississippi, Supra. and Washington v. Texas,

15    Supre. )

16        Appellant respectfully request reversal for counts 1 and

17        2 ...

18

19

20

21

22

23

24

25

26

27

28

6

ARGUMENT 7

The government prosecutor comitted misconduct when he exploited erroneously entered evidence during his closing argument, improperly impeached appellant with his evidence he had failed to abide by the conditions of his parole, introduced evidence ofappellants trouble with a police officer, illicited inadmissible prior bad acts or conduct of appellants witness, put the prestige of the government behind a witness and argued facts not in evidence in violation of appellants 5th, 6th, 8th and 14th amendment rights under the United States Constitution.


A. Proceedings Below.

Appellant incorporates herein his prior argument, points and authorities contained in appellants prior argument  , re "Judicial error when trial court allowed in a rap tape and the resulting prosecutorial misconduct when the prosecutor "exploited" the erroneously enterd evidence." As well arguments of points and authorities concerning saad prosecutorial misconduct as though fully set forth herein and in addition to , below arguments and points and authorities thereof..

(1) THE PROSECUTOR ILLICITED TESTIMONY FROM DEFENSE WITNESS TONY WASHINGTON,(RTV7 p.15-55, 1557-60 ) concerning: (1) alcohol and marijuana use? (2) Appellants conditions of parole and possible violation thereof. Said testimony was not objected to on any grounds by appellants trial counsel.

(2) during the closing arguments, the prosecutor "exploited" complained of evidence in the form of comments and opinions.

COMMENT 1:

" These two acted together. These two as you saw on the video, hang out together. They smoke together. They drink together they hang out together and they commit residential burglaries together" (RT p.1703, 11-14)

COMMENT 2:

"He had the video camera that was taken from the Havern residence, which we have seen the videotape that he was taking of himself, rapping Tony washington smoking and drinking and doing all this kind of stuff." (RT p.1713, 14-18)

VIOLATION

Use of prior bad acts : ( use of evidence of uncharged misconduct or" other bad acts")

Evidence Code section 1101 (a) prohibits the admission of " a man's cha-

racter," whether by opinion or reputation evidence or evidence of specific instances

of conduct to prove his or her conduct on a specified occasion...

1101 (b) permits the admission of evidence that " a person committed a crime, civil

wrong, or other act when relevant to prove some fact.... Other than some his or her

disposition to commit such an act."

Evidence of other crimes or bad acts  is admissible to prove such facts as, "motive

oppurtunity, intent, preparation, plan, knowledge, identity, absence of mistake or ac-

 cident," OR LACK OF A GOOD FAITH BELIEF  that the victim consented to a sexual act

Evidence code 1101 (b).

Evidence of other crimes is admissible   under 1101 (b) only to prove a material fact

such as motive, intent, identity, or common design or plan if that is in dispute. (Pe-

ople v. Thompson (1980) 27 c3d 703, 313, 165 CR 289.   But see people v. williams

(1988) 44 c3d 883, 907 n7, 245 CR 336 (not guilty plea places every element of offense

in dispute).

The admission of other crimes evidence cannot be justified by the mere assertion of

an admissible purpose – the particular evidence must be relevant to the ultimate fact

in dispute. Peoplev. Poon (1981) 125 CA3d 55, 71, 178 CR 375, dissaproved on other

grounds in People v. Lopez (1998) 19 C4th 282, 292, 79 CR2d 195.

Eventhough other crimes evidence is relevant under 1101  (b) Evid. Code section 352

may require its exclusion. People v. Balcom (1994) 7 C4th 414, 425, 27 CR2d 666.

When reviewing the admission of facts and circumstances of other offenses, a court

must consider (1) The materiality of the fact to be proved or disproved, (2) the pro-

bative value of the other crimes evidence to prove or disproved facts, and (3) the ex-

istence of any rule or policy requiring exclusion even if the evidence is relevant.

A court should determine whether the jury will consider the evidence for an improper

purpose. see People v. Ewoldt (1994) 7 C4th 380, 403, 27 CR2d 646. and People v. Bal-

com, supra.

Because this evidence is inherently prejudicial,  uncharged offenses are admissible

only if they have substantial probative value. People v. Ewoldt, supra.

When a defendant claims he or she did not commit an act chareged as an unchareged bad

act or disputed  the manner in which the act was committed, the trial court must hold

a hearing on that, Evidence code section 403.

the jury must be instructed to weigh the same preliminary facts again before consid-

ering the similar act. People v. Simon (1986) 184 CA3d 125, 228 CR 855.

As noted above, the use of a prior bad act or crime is by 1101 (a) to prove  conduct

on a specified occassion...

1101 (b) permits the use        when relevant to prove some fact other than his or her

disposition to commit such an act. i.e., motive, intent, identity, or common design

or plan if that fact is in dispute.

Thus, the appellant maintains that the prosecutors questioning of co- defendant TONY

WASHINGTON, and appellant concerning alcohol  and marijuana, and the subsequent use

of such  evidence during his closing arguments was improper and should have been barr-

ed from entering into appellants trial proceedings. The complained of evidence  did

not meet the requirements mandated in Evid. Code section 1101 (b), and was entered in-

to appellants trial proceeding to Portray appellants disposition to commit such acts that app-

ellant stood trial for. The appellant maintains  not only was this a violation of Ev-

idence Code section 1101 (a) and (b) , but also  that the challenged evidence waS  irr-

elevant and that its use likely relieved the jury of its duty to focus on relevant ev-

idence  to reach the verdict  and the possibilty that the jury used this evidence to

believe that the appellant had the propensity to commit such acts, made the verdicts

reached unreliable and therby violated  appellants 5th, 8th and 14th amendments rig-

hts of the United States Constitution.. See People v. Valentine (1988) 207 CA3d 697,

254 CR822 (intravenous drug use not admissible in marijuana prosecution, and also

see also (People v. Avitia (2005) 127 CA4th 185, 193, 24 CR3d 887(evidence of gang gr-

affiti in  defendants bedroom irrelevant and prejudicial when there was no other evi-

dence of Gang activity) and see also, (the highly prejudicial implications arising fr-

om the improper questions asked of the appellant on cross-examination impaired his credibili

ility  and presented him as a person of criminal tendecies(People v. Wagner (1975) 13

Cal. 3d 612, 119, cal. Rptr 457, 532 p.2d 105).

Appellant asserts the trial court should not have allowed the prosecutor to introduce

this evidence. Appellant points out  a specific instance when appellants trial counsel

was questioning appellants parole officer JIM BURGERT, appellants counsel was attemp-

ting to show that the parole officer was a bias witness who based his opinion and reports on what other people had told him. However, before appellants counsel could establishthis through questioning of the parole officer, the trial court interjected as follows:

THE COURT: " Hold on . I am not sure you are going to ask that question."

Ms. LACHER: " I will withdraw that, your honor." (RT p. 757).

Therefor, the trial court should have interjected here and informed the prosecutor that he would not allow him to illicit complained of evidence. In fairness this would have allowed the appellant to receive a fair impartial trial. As defined in P.C. section 352/the court should have weighed the prejudicial and probative value. Clearly the challenged evidence was prejudicial and was not relevant in a burglary charge, and was onlyused to tip the scale in favor of the prosecution. Nevertheless,

B.  In the alternative appellant assert ts that his counsel rendered Ineffective Assistance of Counsel by not objecting to this misconduct on any basis, and specifically on a Due process basis.

If this court believes the issue is waived for failure to make the proper objections, appellant submits that  trial counsel rendered Ineffective Assitance of Counsel for failing to make the objections.

Failure to object to error which results in a waiver of review of such erros may also constitute Ineffective Assistance of Counsel. ( People: v. Scott (1994 ) 9 cal 4th 331 356 , fn. 18; people v. cooper ( 1991) 53 Cal.3d 771, 831, people v. Malone (1988) 47 Cal. 3d 1, 33.)

---

/1 section 352 issues are reviewed for abuse of discretion (people v. Cain (1995) 10 Cal. 4th 1, 53′  People v. cudjo (1993) 6 Cal. 4th 585, 609. The trial courts discretion will not be′  disturbed unless probative value cleraly outweighed by prejudicial effect. (People v. Scheid (1997) 16 Cal. 4th 1, 18.)

complained of evidence

Appellant submits that the prosecutors questioning and use was improper . His delving into such issues was prejudicial and inflammatory and not relevant. Which violated Evidence Code section 352.

C.  RELEVANCY AND INFLAMMATORY EVIDENCE

As argued above,   Relevancy is the first rule of the  admissibility of evidencer...
(Traxler v. Thompson (1970).  14 Cal. App. 3d 278, 286.) Section 351 provides that all relevant evidence is admissible (see also Cal. Constitution Art. 1, section 28 (d), the truth- in- evidence provision of proposition 8.) Section 210 defines relevant evidence as " Evidence ... having any tendecy in reason to prove or disprove  any disputed fact that is of consequence to the determination of the action. In the context of criminal cases, the general test of relevancy is whether the evidence tends logically, natural-ly -, and by reasonable inference to establish any material fact sought to be proved ( peoplev. Kelly (1967) 66 Cal. 2d 232, 239, People v. Jones (1954) 42 Cal. 2d 219, 222) The greater the probative value of the evidence, the greater must be the undue preju-dice in order to justify exclusion. (section 352).

The ʻprejudice' referred to in Evidence Code section 352 applies to evidence which uni-quely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues, in applying section 352, 'Prejudicial' is not synonymous with 'Damaging',(Peoplev. Karis (1988)        Cal. App. 3d 358, 377, inner Quotes omitted.)

D.  THE USE OF THE EVIDENCE violated APPELLANTS  5th, 8th, and 14th Amendments of the U.S.C.
Counsel did not object to the prosecutors illicitng of alcohol and marijuana testimony or the prosecutors use of this evidence during  his closing. Should the government argue that the issue is waived for the lack of an objection from the trial counsel on a Con-stitutional basis, the appellant argues the issue is not waived and includes the arg-ument contained in his argument 7 / re judicial   error when the trial court allo-wed gang testimony as far as his argument  concerning I.A.C. , and the reasons why app-ellant review is not waived, re ROCK V. ARKANSA, supra, DAVIS V. ALASKA, SUPRA, CHAM-BERSV. MISSISSIPPI , supra, and WASHINGTON V . TEXAS, supra.) as though fully set forth herein.

The appellant further asserts that the goernment prosecutor Committeed misconduct when it improperly vouched for the government witnesses and alluded to the number of witnesses for each side to determine which side to believe...

A. Proceedings Below

During the prosecutors closing he made the following arguments:

COMMENT 1: " What else might be true? That the detective lied about the statement that he took from Mr. Washington. Mr. Washington admitted his involvement in those burglaries and said that it was Mr. Mcdonald who was with him, and Hartman must be lying about that, this detective who obviously values his reputation and has been a detective for many years. would he come in and lie about that? (RT P.1762)

COMMENT 2.: " And i talked about the number of people that would have had to have lied and the number of people the three people that you must believe in order if he is truly innocent" (RT p.1762)

COMMENT 3: "Who do you believe? Who do you believe? do you believe all these uninterested parties, such as the Noa's who are just minding there own buisness. Terina Noa is just talking to her mother and she gets dragged down here to testify. She has no interest in this case" ( RT p. 1770)

B. The appellant asserts that this was improper vouching for the governments witnesses, and using there numbers to sway the jury towards con viction.

VIOLATION:

IMPROPER VOUCHING see UNITED STATES V. ROSA MARTIN 815 F. 2d 818, 821-22 (1st cir. 1987), UNITED STATES V. ROSA 705 F. 2d 1375, 1379-80 (1st cir. 1983) see also, UNITED STATES V. WEATHERSPOON (9th cir. 2005) 410 F. 3d 1143-1146.

AND this was a violation of appellants Due Process under the U.S.C..

C. If the court believes the issue is waived for trial counsel's failure to make a Due process objection APPELLANT SUBMITS HE WAS RENDERED Ineffective Assitance of Counsel for her failure to do so. And the appellant includes herein appellants previous argument contained in argument number 4, concerning I.A.C on the issue of Appellate review being appropriate despite a lack of a Due Process objection, as though fully included herein an in

in addition to the above at issue.

The appellant further asserts that the government prosecutor committed misconduct when he presented himself as a Guarantor of truth and injected his personal opinion during his closing arguments and reffered to facts outside the record regarding the truthfulness of government witnesses.

A. Proceedings below.

During the prosecutors closing arguments the prosecutor continuosly

. asserted what the truth was concerning the issues in appellant's trial

0. The following comments are the alleged misconduct;

1. COMMENT ONE; "Do you hang with this guy on the corner of southeast?

2. Tony Washington, he is posted down there, and I go out and hang out

13. with him. That is absolutely unbelievable. The truth is he does not

14. exist. He is trying to cover for the defendant." (RT P. 1777).

15. COMMENT TWO; " But once again , they are getting their story crossed

16. up. One person says one thing . The defendant says another thing.

17. They cant get their story straight because its all a big lie. It's

18. not the truth." (RT p.1778.)

19. COMMENT THREE: "You can't believe him. And he convinced Washington

20. to change his story when they were back in the holding cell. Why

21. would he do that if he is truly innocent? The truth is he is not

22. truly innocent." (RT p. 1782)

23. COMMENT FOUR: " You know what I am asking you to do is disregard

24. the content of his testimony because it is not true. But don't

25. disregard the fact that he lied to you. Don't disregard his testi-

26. mony. He lied to you for a reason. Because if he told the truth

27. he would come in here and have to admit to doing all of these

28. Burglaries doing all these crimes. (RT p. 1782)

. There was no

. B. VIOLATION:

. The above comments    improper because the government prosecutor was

. providing his personal opinions and also asserting what the jury

. should take as the truth.(UNITED STATES V. ROBERTS 618 F. 2d 530 (9th

. Cir. 1980).

. The Courts have long held that a prosecutor may not place the prestige

. of the government behind a witness by making personal assurances about

. the witnesses credibility nor facts not before the jury support the

0. testimony.(UNITED STATES V. MARTIN 815, F. 2d 821-822 (1st Cir.1987)

1. cert denied, 484 U.S.825, 108 S. Ct. 89,98 L.Ed. 2d 51 (1987) UNITED

2. V. ROSA, 705 F.2d 1375, 1379-80 (1st Cir. 1983).

3.

4. As shown above the Government prosecutor's comments were improper as

5. he injected his personal opinion's  as to what was true . It is not

6. the the function of the prosecutor to decide what the truth is, but

7. only to present the facts. The above assertions of what the truth

8. wqs violated appellants sixth amendment rights to confront witn-

9. esses against him , which the spillover effect was to deny appellants

0. 14th amendment rights to a fair trial.

1. Indeed the prosecutors duty is to see justice done, not simply to

2. secure convictions ( BERGER V. UNITED STATES (1934) 295 U.S. 78, 88:

3. In re FERGUSON (1971) 5 Cal. 3d 525 , 531-532.) Hence, the familiar

4. maxim; The prosecutor is more than an advocate" AND HIS DUTY EXTENDS

5. NO FURTHER THAN AN IMPARTIAL, FAIR AND JUST TRIAL OF [the] DEFENDANT

6. ."(POWELL V. SUPERIOR COURT (1957) 48 Cal. 2d 704, 709, internal

7. citation omitted.)

8.The appellants right to a fair trial was denied as a result of the

1. prosecutors tactics And the appellant respectfully request
:. to assign misconduct and grant reversal of challenged counts #1 and 2.

. In the alternative, if this court believes that appellate review has
. been waived for lack of objection from appellants trial counsel,
. Appellant argues that review is still oppropriate, and argues that
. Appellants trial counsel rendered I.A.C. for her failure to make the
. objections. and again includes his argument contained in argument 4,
. as far as they pertian to I.A.C. for appellants trial counsels failure
0. to make the required objections, when an appellant seeks to establish
1. that appellant was denied a fair trial as though fully included here
2. in and in addition to any further argument below.
3. Appellants counsel was supposed to have made the objection  (see
'. People v. Fosselman (1983) supra, counsel failed to object to
'. prosecutorial misconduct, including inflammatory characterization
'. of defendant, statements of personal belief based on facts not in
'. evidence. And use of inadmissible character evidence.) (see also
'. People v. Scott supra, People v Cooper, supra, People v. Malone, supra
. failure to object to error which result in a waiver of such errors
. may constitute I.A.C.) In appellants case, trial counsel failed to
. object on basis  of improper closing arguments of personal opinion
. and improper vouching. the misconduct clearly impacted appellants
. constitutional rights.
. Should the respondant argue that the lack of a due process objection
. waives Appelate review , the appelant maintains he has not waived his
. right to raise the issue on appeal.
7. Appellants issues raises fundamental principals of policy and con-
3. stitutional guarantees , for which the refusal of appellate review

1. frusterates rather than serves the interest of justice.( People v.

2. Welch (1993) 5 Cal. 4th 228, 237, Arabian J. concurring;( people v.

3. Mills (1978) 81 Cal. App. 3d 171, 176.) secondly, to avoid a suseq-

4. uent Habeous proceeding raising the same point, courts have discretion

5. to consider issues on direct appeal in that the collateral proceedings

6. would unduly prolong the appellate process.(People v. Blanco (1992) 10

7. Cal. App. 4th 1167, , 1172- 1173, People v. Allen (1974) 41 Cal. App.

8. 3d 196, 201, fn. 1, People v .Norwood (1972) 26 Cal. App. 3d 148, 153(

9. "A matter normally not reviewable upon direct appeal , but... Vulner-

10. to habeas corpus proceeding based upon constitutional grounds may be

11. considered upon direct review...)

12. Moreover the UNITED STATES SUPREME COURT has consistently held that

13. domestic rules of evidence may not be invoked to preclude a criminal

14. defendant from establishing that he has been denied a fair trial trial.

15. (see ROCK V. ARKANSAS, supra, DAVIS V. ALASKA, supra, CHAMBERS V.

16. MISSISSIPPI, supra, WASHINGTON V. TEXAS , supra.)

17.

18.

19.

20.

21.

22.

23.

24.

25.

26.

27.

8.

Case 2:08-cv-02150-GJC-MLG    Document 1-2    Filed 04/09/2008    Page 40 of 100

1. THE APPELLANT ASSERTS THE GOVERNMENT PROSECUTOR COMMITTED MISCONDUCT WHEN IT

2. PROCEEDED DURING CLOSING ARGUMENTS ON A THEORY OF STOLEN PROPERTY AS RELATED TO

3. THE BAG OF JEWELRY ALLEGEDLY SHOWN TO DAMIAN. FURTHER, THE TRIAL COURT ERRED BY

4. ALLOWING THIS TO OCCUR. IN VIOLATION OF APPELLANT'S SIXTH, EIGHT AMENDS. OF THE

5. UNITED STATES CONSTITUTION TO ADEQUATE NOTICE OF CHARGES AGAINST HIM.

6. The jury returned a verdict of guilty as to count #6 and in doing so did not

7. specify upon which act they agreed upon to convict. The complained of error was

8. prejudicial.

9. VIOLATION.

10. The appellant asserts that this error was as denial of appellant's right to a fair

11. trial in that appellant had a right to know charges against him, and right to

12. have the prosecution prove its case beyond a reasonable doubt, not by speculation.

13. 2) At no time was there evidence presented that the alleged bag of jewelry was

14. belonged to any victim, or that the event of appellant trying to sale jewelry

15. occurred on the same date as the receiving stolen property charge (RT  P.

16. 3) The erroneous entry of the evidence created a risk that appellant would be

17. convicted on pure speculation, which is not admissible; and would result in a

18. conviction arrived at arbitrarily and capriciously; 4) Lastly, the allegation

19. that the bag of jewelry was stolen impacted not only the stolen property charge,

20. but also the burglary charge. Specifically the HAVERN burglary count #1.

21. Concerning that burglary, witness JOLENE HAVERN testified that jewelry stolen

22. from her room was cheap jewelry, but was not "costume jewelry" (RT p.557).

22. During the prosecutors closing, he alluded to said bag of jewelry being that

23. stolen from JOLENE HAVERN, when the prosecutor commented:

24. PROSECUTOR: "And I asked her, I said, Ms. DAMIAN, was it nice jewelry ? was it

25. costume jewelry?"(RT P. 1762).

26. Appellant asserts that a more favorable verdict could have been reached absent

27. the error. It is conceivable that had appellant possessed any jewelry at the

28. time of trying to sale jewelry to Ms. DAMIAN, the jewelry could have been legally

1. obtained, and further, the London fog suitcase belonging to the HAVERNS that was

2. found in the trunk of appellant's vehicle was not damaging considering appellant's

3. testimony that appellant had obtained the suitcase from co-defendant TONY

4. WASHINGTON in preparation to move into the TROY street residence (RT P. 1530-1548.)

5. WASHINGTON testified that he committed the crime with someone else named "CK"

6. (RT p. 728-730) and that he may have left stolen property from the HAVERNS inside

7. appellant's car (RT P.715, 736).

8. The manner in which appellant provided a statement to detective JERRY HARTMAN

9. was not an admission to guilt in relation to the HAVERN burglary. Appellant was

10. asked who's suitcase was in the trunk of appellants car, appellant replied that

11. it was his, his cloths were in it (RT p. 1530-1548). At no time was appellant

12. asked where he had acquired the suitcase , or even that it was stole, in which n

13. appellant would have been compelled to explain possession.

14. The courts have long held that a prosecutor may not place the prestige of the

15. government behind a witness by making personal assurances about the witnesses

16. credibility nor indicate that facts not before the jury support the testimony."

17. UNITED STATES V. MARTIN 815 F. 2d 818, 821-22 (1st cir. 1987); UNITED STATES

18. V. ROSA 705 F.2d 1375, 1379-80 (1st cir. 1983) see also; U.S. V. WEATHERSPOON

19. (9th cir. 2005) 410 F. 3d 1143-1146.

20. There was not any evidence presented that the jewelry shown to DAMIAN was stolen

21. or property from the HAVERN burglary, or the same day as the same day as the

22. stolen property charge.

23. appellant argue that if the prosecution wanted to proceed on a stolen property

24. theory, the court was supposed to determine the legal admissibility of this

25. crime.

26. Determining the legal admissibility of other crimes evidence is solely a question

27. of law. People v. Simon  (1986) 184 CA3d 125, 129, 228 CR 855. When a defendant

28. claims he or she did not commit the uncharged bad act, however, a question of

Case 2:08-cv-02150-CJC-MLG     Document 12     Filed 04/02/2008     Page 42 of 100

1. fact is presented that the jury must resolve before any legal inference can be

2. drawn. When a defendant disputes the manner in which the act was committed, that

3. is a preliminary fact that must be resolved before the trial court can evaluate

4. its relevancy and admissibilty. 184 CA3d at 130.

5. Here, the prosecutor did not inform appellant's trial counsel that it planned

6. to proceed on a theory of stolen property concerning the "bag of jewelry" shown

7. to DAMIAN until after the case rested and only after the trial court informed

8. him of the mishap at which time the damage was done because the prosecutor had

9. already informed the jury that the jewelry shown to DAMIAN was stolen from

10. the burglaries. The late notice was prejudicial  because the appellant was not

11. able to move to exclude this allegation as prejudicial and violation  of Evidence

12. Code Section 352, 8th amendment to the  Constitution, and 14th amendment rights

13. to Due Process.

14. While it is true that appellant's trial counsel did not object to this violation,

15. appellant asserts that the trial court should have conducted a Evidence Code

16. Section 352 analysis, and or barred the prosecution from proceeding on the grounds

17. of stolen property in which the prosecution had not proven during the trial. thus

18. not allowing the prosecutor to circumvent the rules of evidence. Appellant's

19. trial counsel surely made known that  the claim that the bag of jewelry was stolen

20. was not the theory of the prosecutors case. And counsel only agreed to allow

21. the Caljic 17.01, because there was a charge of receiving /possessing stolen

22. property; so the Caljic was not improper on that basis.

23. For the prosecutor to allege that the jewelry shown DAMIAN as being stolen was

24. improper and clearly facts not in evidence; the prosecutor committed further

25. misconduct when he commented during closing:

26. <u>PROSECUTOR</u>: WHAT MOTIVE DOES MORENA DAMIAN HAVE TO COME IN HERE AND LIE ABOUT

27. THAT? ZERO."(RT P. 1762) which was improper vouching/1. for the witness.

28.------------------------------------------------------------------------

/1. UNITED STATES V. SIMS, 719 F.2d 375, 377 (11th cir. 1983), cert. denied 465 U.S.
1034, 104 S. ct. 1304, 79 L.Ed 2d &)# (1984) citations omitted.) see also, UNITED
STATES V. ROBERTS, 618 F.2d 530 (9th cir. 1980).

2. WHEN HE ARGUED IN HIS CLOSING THAT A JACKET SEEN IN A "RAP VIDEOTAPE" SEIZED AS

3. A RESULT OF A WARRANT NOV. 6,2003, WAS SAME JACKET SEEN BY THE WITNESSES AND

4. VICTIMS (RT P. 1781)/3

5. Appellant includes his argument #5 re JUDICIAL ERROR re ALLOWING IN "RAP VIDEOTAPE"

6. points and authorities contained therein to be included herein and in addition to

7. any below arguments, points and authorities.

8. During closing arguments the prosecutor commented that a black jacket seen in

9. the "rap videotape" was same seen by witnesses. However, there was not any

10. testimony during appellants trial to establish the prosecutors assertion. The

11. prosecutor had in essence became his own witness. And the appellant had no means

12. of defense against the "witness".

13. TRIAL COUNSEL AGAIN FAILED TO OBJECT.

14. VIOLATION.

15.  The prosecutors duty is to see justice done not simply to secure convictions

16. (BERGER V. UNITED STATES (1934) 295 U.S. 78, 88; In re Ferguson (1971

17. 5 cal. 3d 525,531-532.) Hence, the familiar maxim: The prosecutor is more than

18. an advocate "and his duty extends no further than an impartial, fair and just

19. trial of [the] defendant."(Powell v. Superior Court (1957) 48 cal. 2d 704, 709,

20. internal citation omitted.)

21.————————————————————————————————————————————————————————————————————
/3.(People v. Cruz (1964) 61 Cal. 2d 861, 868; see also People v. Woodard  (1979)

22. 23 cal. 3d 329, 341 [reversal required where the prosecutor" exploited erroneously

23. admitted evidence during his closing argument].)

24.

25.

26.
27.

28.

1. Appellant asserts that the prosecutors comments during his closing was improper

2. because the prosecutor was attempting to smuggle in by inference claims that

3. were not argued openly and legally. In essence the prosecutor invited the jury

4. to speculate about and possibly base a verdict upon "evidence" never presented

5. As appellant has shown, there was never any competent evidence that the jewelry

6. allegedly shown to DAMIAN was stolen or that the black jacket seen in the "rap

7. videotape was same seen by victims or witnesses. Thus, the prosecutor comments

8. were unsworn improper testimony.

9. Closing arguments present a legitimate opportunity to "argue all reasonable

10. inferences from the evidence in the record."( ABA STANDARDS, The prosecution

11. function (1971) STD. 58 (a) hereafter cited as prosecution function).)

12. The courts have for a number of years warned prosecutors  " that statements of

13. of fact not in evidence by the prosecuting attorney in his argument to the jury

14. constitute misconduct." (People v. Kirkes (1952) 39 cal. 2d 719, 724, 249 p.

15. 2d 1, see also people v. Taylor (1961) 197 cal. App. 2d 372, 381-384, 17 Cal.

16. Rptr. 233.)

17. Prosecution function standard 5.9 specifically states:" It is unprofessional

18. conduct for the prosecutor intentionally to refer to or argue on the basis of

19. facts outside the record."/4

20. ----------------------------------------------------------------------
    /4. This prohibition against using closing arguments to introduce  new evidence

21. is echoed in several other standards for trial conduct. (see, e.g.,Nat District

22. Attys. Assn., National  prosecution Standards (1977), commentary to std. 17-17

23. (hereafter cited as National prosecution standards) ["The courts are, in general

24. adament concerning any suggestion from the prosecution that there is other

25. convincing evidence of the defendant's guilt which is not before the jury."]

26. Nat. Advisory Com. on crim. Justice standards and goals, courts (1973) std 4.15

27. ["...Summations of closing statements by counsel should be limited to the issues

28. raised by evidence submitted during trial..."]; ABA Code of Prof. Responsibility,

1. In the appellant's case, the prosecutor implied that there was credit evidence

2. about the jacket seen in the "rap video tape", and the "baggie of jewelry", shown

3. to DAMIAN, known to the prosecutor but unavailable to the jury. The prosecutor

4. became his own witness by offering unworn testimony not subject to cross-

5. examination..

6. The courts have recognized that such testimony, "although worthless as a matter

7. of law, can be "dynamite to the jury because of the special regard the jury has

8. for the prosecutor, therby effectively circumventing the rules of evidence." (

9. Vess, walking a tightrope: A survey of limitations on the prosecutors closing

10. argument (1973) 64 J. CRIM. L., and Criminology 22, 28, see Crump, The function

11. and limits of prosecution jury argument (1974) 28 SW. L. J. 505, 517-518.)

12. The appellant asserts that the prosecutors closing arguments of the complained

13. of misconduct re COMMENTS, and the Judicial error in allowing the prosecutor

14. to argue the jewelry shown DAMIAN, *stolen* was a denial of appellants sixth, and eight

15. Amendment rights to know charges against him and to receive a reliable verdict;

16. and to confront witnesses against him.

17. It has been suggested that prosecutorial argument "which goes beyond the evidence

18. admitted may be violative of the sixth amendment which provides that every accused

19. has the right to be confronted with witnesses against him " (National prosecution

20. Standards supra. Commentary to std. 17.17)

22. Before the government prosecutor argued the jewelry as stolen and the black jacket

23. in "rap videotape" was same seen by witnesses in PETTY THEFT CRIME and BURGLARIES;

24. ----------------------------------------------------------------------
/4/(continued) ethical considerations, EC 7-25 (hereafter cited as ABA Code) [A

25. lawyer should not by subterfuge put before a jury matters which it cannot properly

26. consider."]; ABA Code, disciplinary rules, DR -1-106 (c) ["[A] lawyer shall not

27. (1) state or allude to any matter that he has no reasonable basis to believe

28. is relevant to the case or that will not be supported by admissible evidence]
rule 7-105, rules of prof. conduct of the state bar of cal. ["[A] member of the
state bar shall: (1) ...not seek to mislead the judge, judicial officer or jury
by an artifice or false statement of fact or law."

Case 2:08-cv-00652-L   Document 1-2   Filed 04/01/2008   Page 36 of 100

1. The appeal court on appeal to find least sufficient evidence in the record to

2. support the finding or inference. The trial court failed to do this.

3. The court must initially decide the question of the legal sufficiency of the

4. to support an instruction. Its failure to make such a preliminary finding is error"

5. (People v. Hannon (1977) 19 C3d 588, 597, 138 CR 885.

6. The jewelry shown to DAMIAN cited as stolen property, and the instuction stating

7. so, was error. As noted, it was another alternative theory for stolen property,(RT

8. p.1763-1765).; therefore it was error for the trial court to allow this evidence

9. and instruction in on pure speculation, and without a finding of legal sufficiency.

10. The trial court clearly noted that the jewelry could not be said to be the stolen

11. property or even the same date as the receiving charge. (RT P. 1763-1765).

12. Therefore the trial court should not have allowed an instruction to be used to

15. reflect that allegation. And further, the trial court should not have allowed

16. the "rap videotape" re black jacket theory same seen by witnesses and victims in.

17. If a jury is instructed on alternative theories of guilt one which is factually

18. inadequate, the judgement will be affirmed unless review of the entire record

19. affirmatively, demonstrated a reasonable probability that the jury in fact found

20. the defendant guilty solely on the inadequate theory. However, if the jury is

21. instructed on alternative theories, one of which is legally inadequate the
22. judgement must be reversed if the court cannot determine on which theory the

23. defendant was convicted. People v. Marks (2003) 31 C4th 197, 233, 2 CR3d 252;

24. People v. Guiton (1993) 4 C4th 1116,1126.

25. . BAD FAITH.

26. Numerous decisions by the courts suggest that bad faith must be shown to establish

27. the existence of misconduct..."(People v. Romo (1975) 47 cal. App. 3d 976, 987,121

28. Cal. Rptr. 684, 691; see also, People v. Rhinehart (1973) 9 Cal. 3d 139, 154,

1. 107 Cal. Rptr. 34, v-6271 50-29,642, People v. Asta (1967) 253 cal. App.

2. 87,59 cal. Rptr. 206.)

3. For the purpose of deciding whether to reverse a decision or grant a mistrial,

4. this emphasis on intentionality is misplaced.

5. "[I]njury to appellant is nonetheless an injury because it was committed

6. inadvertently rather than intentionally."(Note, the Nature and consequences of

7. forensic misconduct in the prosecution of a criminal case (1954) 54 column. L.

8. REV 946, 975; see also UNITED STATES V. NETTI (3d cir. 1941) 121 F.2d 927,930.)

9. Therefore to imply misconduct must be intentional does not apply....

10. IN THE ALTERNATIVE, IF THE RESPONDENT ARGUES THAT HIS ISSUE IS WAIVED FOR FAILURE

11. TO MAKE AN OBJECTION OR DUE PROCESS OBJECTION, THE APPELLANT ASSERTS HE WAS

13. RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO DO SO.

14. Trial counsel was required to make the proper objections to the comments and

15. acts of misconduct, and subsequently move to reopen the taking of evidence so

16. as to present a defense against it.(People v. Murtishaw (1981) 29 cal. 3d 733,

17. 751, fn. 11 [175 CAL. Rptr. 738, 731 P. 2d 446].)

18. Appellant includes his prior argument of Ineffective Assistance of Counsel re

19. "rap videotape and Gang testimony, Arguments #4 and 5, as far as they address

20. I.A.C. for lack of an objection from trial counsel in order to preserve appellate

21. review, as though fully set forth herein and in addition to the following argument

22. points, and authorities.

23. The appellant had a right to a fair and reliable verdict under the UNITED STATES

24. CONSTITUTIONAL provisions sixth, eight and fourteenth amendments.

25. As a result of appellant's trial counsel's failure to meet the basic duty to

26. object, appellant was denied a fair trial as well as effective assistance of

27. counsel... The sixth amendment in part provides, "In all criminal prosecutions

28. the accused shall have the right ... to have the assistance of counsel for his

2. is a fundamental right Gideon v. Wainwright, Case 3:08-cv-00652-L-PCL Document 1-2 Filed 04/01/2008 Page 58 of 100 is a fundamental right binding on the states through the Fourteenth Amendment.

3. Gideon v. Wainwright, 375 U.S. 335, 83 S. ct. 792, 9 L. Ed. 2d 799 (1963).

4. The constitutional mandates more than a pro forma appearance and mere physical

5. presence of counsel in the court room (Powell V. Alabama (1932) 287 U.S. 45, 57-58

6. 53 S. Ct. 55, 77 L.Ed 158; People v. Locklar (1978) 84 cal. App. p3d 224, 229,148

7. cal. Rptr. 322; see e.g., People v. Ledesma (1987) 43 Cal. 3d 171, 176 23 Cal.

8. Rptr. 402, 729 p.2d 839.

9. It also guarantees that such assistance be effective (People v. Pope (1979) 23

10. Cal. 3d 412, 421, 152 cal. Rptr. 732, 590 P. 2d 859.

11. When a claim of Ineffective assistance of counsel is based on acts or omissions

12. not amounting to withdrawal of a defense, a defendant may prove ineffective

13. assistance of counsel if he or she establishes that his or her counsel failed

14. to perform with reasonable competence and that he or she was prejudiced as a

15. a result of the attorney's inadequate performance to the degree that is reasonably

16. probable that a determination more favorable to the defendant would have resulted

17. absent counsels failings. (People v. Fossleman (1983) 333 cal. 3d 572, 583-584,

18. 189 Cal. Rptr. 855, 659 P. 2d 444; see also In re MARQUEZ (1992) 1 cal. 4th 584,

19. 602-603, 3 cal. Rptr. 2d 727, 822 P.2d 435. see also People v. Garrison (1988)

20. 47 Cal. 3d 746, 786, 254 Cal. Rptr. 257, 765 P.2d 419.

21. To show "prejudice" for a sixth Amendment claim, the defendant must also show

22. that as a result of counsels deficient performance the proceeding was rendered

23. fundamentally unfair or unreliable, (Lockhart v. Fretwell (1983) 506 U.S. 364,

24. 113 S Ct. 838, 122 L.Ed 2d 180, 191.)

25. Appellant's trial counsel failed to object to the errors and allowed the

26. prosecutor to argue unsworn  testimony not subject to cross examination, re

27. "Baggie of jewelry" shown to DAMIAN as stolen, and re "black jacket seen in rap

28. videotape" as same jacket seen by witnesses and at burglaries.

1. thus allowed the jury to speculate and possibly base a verdict upon the use

2. of this evidence. Which appellant has shown was a violation of several

3. constitutional provisions. As argued supra, trial counsel should have at least

4. taken steps to secure appellate review. People v. Jackson (1986) 187 Cal. App. 3d

5. 499, supra. And also "Failure to object to such errors which result in waiver

6. of review of such errors may also constitute Ineffective assistance of counsel.

7. People v. Scott (1994) 9 Cal. 4th 331, 356 fn. 18; People v. Cooper (1991) 53

8. Cal.3d 771, 831; People v.  Malone (1988) 47 Cal. 3d 1, 33.)

9. The failure of counsel to object to the prosecutors use of this "speculation"

10. and erroneous evidence that was not properly before the jury, was Ineffective

11. Assistance of Counsel. People v . Fosselman, supra.

12.  Appellant includes herein his argument contained in argument #4,5)concerning

13. appellate review still appropriate despite an objection from trial counsel, and

14. points and authorities thereof, as though fully set forth herein and in addition

15. to appellant's current arguments points and  authorities.

16. There was not an evidence code section  352 analysis, Instead appellant asserts

17. appellate review is still appropriate for the following:

18. "A reviewing court may consider on appeal a claim raising  a pure question of

19. law on undisputed facts."(People v. Yeoman (2003) 31 Cal. 4th 93, 118, 2 Cal.

20. Rptr. 3d 186, 72 P. 3d 1166; citing People v. Hines (1997) 15 CAL. 4TH 997,1061.,

21. 64 Cal. Rptr. 2d 594, 938 p. 2d 388; Hale v. Morgan (1978) 22 cal. 3d 388, 394,

22. 149 Cal. Rptr. 375, 584 P.2d 512; Ward v. Taggart (1959) 51 Cal. 2d 736, 742,

23. 336 P. 2d 534.)

24. Therefore, if this court agrees that there was error in allowing this evidence

25. into appellant's trial proceedings, and that appellant's counsel was Ineffective

26. for her failure to object, then this court can review whether appellant's Due

27. Process and appellants other constitutional claims  were violated and thus denied

28. appellant a fair trial. Or in the alternative, this court can elect to exercise

Case 3:08-cv-00652-L-PCL    Document 1-2    Filed 04/01/2008    Page 60 of 100

1. was its obligation to consider appellant's due process issues" (People v. Williams

2. (1998) 17 Cal. 4th 148, 161-162 Fn. 6, 69 Cal. Rptr. 2d 917, 948 p. 2d 429.) Also,

3. the United States Supreme Court has held that domestic rules of evidence may not

4. be invoked to preclude  a criminal defendant from establishing that he has been

5. denied a fair trial.[see Rock v. Arkansas 483 U.S. 44, 55-56 supra.] and Davis

6. v. Alaska 415 U.S. 308, 315-321 [94 S. Ct. 1105, 39 L. Ed. 2d 347. supra.]

7.

8.

9.

10.

11.

12.

13.

14.

15.

16.

17.

18.

19.

20.

21.

22.

23.

24.

25.

26.

27.

28.

1.

2. THE GOVERNMENT PROSECUTOR COMMITTED MISCONDUCT WHEN IT CALLED AN OFFICER TO TESTIFY

3. THAT APPELLANT AND CO- DEFENDANT TONY WASHINGTON ENCOUNTER WITH THE OFFICER. IN

4. VIOLATION OF EVIDENCE CODE SECTION 352, EVIDENCE CODE SECTION 1101 (a) AND 1101

5. 1101 (b).

6. A. PROCEEDINGS BELOW.

7. The government prosecutor called witness OFFICER JOHN CARROL who provided the

8. following testimony :

9. CARROL was a San Diego police officer patrol, mid city division  (RTV3 p. 377)

10. On October 16, 2003, officer Carrol  made contact with appellant and Co-defendant

11. TONY WASHINGTON (RTV3 p.377-8) Appellant told officer Carrol he was on parole

12. (RTV3 p. 379) officer Carrol knew appellant was supposed to be truthful to officer

13. Carrol because appellant was on parole.(RTV3 p.379). When officer Carrol contacted

14. appellant, appellant was in the company of TONY WASHINGTON (RTV3 p. 380).

15. Appellant informed officer Carrol he lived at 4120 Polk street (RTV3 p. 381)

16. Officer Carrol contacted Appellant and TONY WASHINGTON at 5100 college at the

17. 7/11. (RTV3 p. 381).

18. DURING CROSS EXAMINATION BY APPELLANT'S TRIAL COUNSEL PAMELA LACHER OFFICER CARROL

19. provided the following testimony :

20. Appellant had braided hair. (RTV3 p. 382), Co-defendant WASHINGTON was arrested

21. (RTV3 p. 383) WASHINGTON had on a white shirt, black pants.(RTV3 p. 384)

22. REDIRECT EXAMINATION :

23. Officer Carrol corrected earlier statement, and clarified that it was appellant

24. that had on the white shirt black pants and that Co-defendant WASHINGTON had

25. a black jacket and grey pants. (RTV3 p. 384). Co-defendant WASHINGTON took a

26. cell  phone from a female and would not tell her where he put it. (RTV3 p.384)

27. There was a  hot pursuit so officer Carrol left the scene and his partner DAN

28. CARROPRESO took over the incident while officer CARROL joined in the pursuit

1. (RTV3 p. 385-6). The government prosecutor then suggested officer

2. CARROL was not familiar with all the details of the arrest. At which time officer

3. CARROL agreed .(RTV3 p. 387.) The prosecutor then suggested that officer CARROL

4. was not familiar with all the details of the arrest because for the most part

5. his partner  was involved . Officer CARROL agreed.(RTV3 p. 387).

6. B. APPELLANT'S TRIAL COUNSEL PAMELA LACHER DID NOT OBJECT.

7. VIOLATION:

8. APPELLANT INCLUDES HIS PREVIOUS ARGUMENT POINTS AND AUTHORITIES CONCERNING EVIDENCE

9. SECTION 1101 (a) and 1101 (b), CONTAINED IN ARGUMENT # ,AS THOUGH FULLY SET FORTH
HEREIN AND IN ADDITION TO THE FOLLOWING ARGUMENT'S, POINT AND AUTHORITIES..
10. As noted in EVIDENCE CODE SECTION 1101 (a) "evidence of a persons character"

11. whether by opinion or reputation evidence, or evidence of specific instances

12. of conduct to prove his or her conduct on a specified occassion... is prohibited

13. Evidence Code section 1101 (b) allows for admission of other crimes or bad acts

14. to prove " motive, opportunity, intent, preparation, plan, knowledge, identity,

15. absence of mistake or accident."

16. The court must consider 1) materiality of the fact to be proved or disputed,

17. 2) The probative value of the other crimes evidence to prove or disprove facts;

18. and 3) the existence of any rule or policy requiring exclusion even if the

19. evidence is relevant.

20. And the court should determine whether the jury will consider the evidence for

21. an improper purpose. (PEOPLE V. EWOLDT, supra.)  "Evidence of mere arrest is

22. inadmissible because it is more prejudicial than probative." and " a witness[s]

23. credibilty in the eyes of the jury would be seriously impaired by the evidence

24. of prior criminal arrest , because of the bad character inevitably suggested

25. therby.                          (PEOPLE V. ANDERSON (1978) 20 cal. 3d 647, 651)

26.THE TESTIMONY PROVIDED BY OFFICER CARROL WAS IRRELEVANT AND HIGHLY PREJUDICIAL.

27. 1) the prejudicial impact was substantial because of the problem of proof.

28. Appellant's co-defendant TONY  WASHINGTON allegedly stole a women's celluar phone

1. and was therby arrested; the government prosecutor's suggestion that there was

2. more to the story, alluding to the possibility that something was "missing", from

3. the incident when the prosecutor suggested that officer CARROL " was not familiar

4. with all the details" of the incident and the resulting arrest..(IIIRT P.387)

5. 2) The contact of appellant and co-defendant TONY WASHINGTON, by officer CARROL

6. was not caused by appellant nor was appellant involved in the crime committed.

7. Therefore, the prosecutors suggestion that there was "more" to the incident that

8. officer CARROL somehow didn't know about because of his brief departure, allowed

9. room for the jury to speculate and assume that appellant was also involved in

10. that crime. And thus appellant's character was highly damaged.

11. THE INTRODUCTION OF EVIDENCE re OFFICER CARROL'S TESTIMONY WAS A DIRECT VIOLATION

12. OF EVIDENCE CODE SECTION 1101 (a) AND (b):

13. 1) It did not prove motive, intent, plan, opportunity, knowledge, identity,

14. absence of mistake or accident.  2)

15. Officer CARROL testimony was only entered to show conduct on a specific occassion

16. to infer appellant's bad character and disposition to commit charged acts or

17. crimes.

18. CROTTS V. SMITH (9th Cir. 1996) 73 F. 3d 861 (evidence was prejudicial to

19. defendant because case turned on credibility of witnesses, and evidence of

20. defendant's boast made it more likely that jury would believe other witnesses

21. rather than defendant and would believe that defendant was kind of person who

22. would assault police oficer): see Evidence code section 1101 (a) (evidence of

23. prior conduct generally inadmissible to prove conduct on a specific occasion)

24. As explained , appellant was not proven to have been a participant in the

25. commission of that crime. The testimony thereof  was inadmissible because it

26. was more prejudicial than probative , and implied that the appellant was involved

27. in that crime. And therefore possibly involved in the commission of the other

28. crimes that appellant stood trial for. The evidence of the incident with officer

Case 2:08-cv-02150-GJC-MLG    Document 1-2    Filed 04/01/2008    Page 54 of 100

1. CARROL damaged appellant's charged crime. This, the trial court erred

2. when it did not conduct a EVIDENCE CODE SECTION 352 hearing and excluded the

3. officers testimony as more prejudicial than probative. And the prosecutor committed miscondu

4. when he manipulated erroneously admitted evidence/1. by inferring that the incident

5. was "missing details". implying that appellant was possibly involved.

6. C. IN THE ALTERNATIVE, THE APPELLANT SUBMITS THAT IF THIS COURT BELIEVES THE ISSUE

7. IS WAIVED FOR LACK OF AN OBJECTION FROM APPELLANT'S TRIAL COUNSEL , APPELLANT

8. ASSERTS THAT HIS TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL FOR

9. FAILURE TO OBJECT...

10. Failure to object to error  which results in waiver of review of such errors

11. may constitute Ineffective Assistance of Counsel. (People v. Scott (1994) 9.

12. Cal. 4th 331, 356,fn. 18; People v. Cooper (1991) 53  cal. 3d 771, 831; People

13. v. Malone (1988) 47 cal. 3d 1, 33.)

14. People v. Stratton (1988) 205 Cal. APP. 3d, 87, 94-95, 254 Cal. Rptr. 157 (When

15. circumstances of defendants arrest are irrelevant to the case, it may constitute

16. Inadequate Assistance of Counsel requiring reversal if defendant's counsel fails

17. to object to introduction of those circumstances, especially if identity is in

18. issue.) Here, it is apparent that the government prosecutor was attempting  to

19. suggest appellant's identity as the second suspect with co-defendant TONY

20. WASHINGTON , using the contact with officer CARROL, in which appellant and

21. WASHINGTON were together. This prejudicial, and irrelevant evidence was used

22. to bolster the prosecutor's theory that appellant and co-defendant WASHINGTON

23. committed all of the charged crimes together, and was prejudicial because the

24. jury may have used this misleading evidence when deciding appellant's guilt or

25. innocence.

26. ----------------------------------------------------------------
/1. People v. Maestas (1993), supra.,People v. Woodard (1979), supra., People

27. Fosselman (1983), supra.,

28.

NaN

Case 2:08-cv-02150-GLC-MLG   Document 2   Filed 04/04/2008   Page 65 of 96

1. Appellant also asserts that if the Respondent should argue it was waived

2. for the lack of an objection or due process objection, appellant asserts appellate

3. review is still appropriate and is not waived, and includes his argument, points

4. and authorities contained in his argument #4, as though fully set forth herein

5. and in addition to the above arguments, points and authorities, as far as they

6. address "appellate review still appropriate despite the lack of an objection or

7. due process objection by trial counsel.

8. Appellant's Due process  was impacted and the character of appellant was damaged

9. as well as any remaining credibility appellant may have had before this erroneous

10. evidence was entered against appellant. The fact remains, appellant was entitled

11. to a fair trial and this right was constantly compromised by prosecutor's tactics.

12. There was not any proof of appellant's involvement in that crime and thus, no

13. credible reason to call officer  CARROL in to testify about that incident. For

14. the government prosecutor to insinuate that appellant was "somehow" involved

15. in that crime was prejudicial and inflammatory. In violation of appellant's

16. U.S.C 5, and 14th amendments. And due process. Accordingly, appellant respectfully

17. request that his conviction for count's 1 and 2, be reversed.

Argument   # 8

1

2 Appellants trial counsel rendered ineffective assistance of

3 counsel when she allowed appellants California Youth Authority

4 PAROLE Officer to testify to statements made by appellant to

5 the Parole Officer during an investigation of appellant. And

6 also rendered ineffective assistance of counsel when she did

7 not protect appellants due process by requesting that the Parole

8 Officers identify be with held and an admonishment be given

9 to the Parole Officer from the trial court that he not talk

10 about any past criminal acts, violations, or conduct not relevant

11 to appellants case.

12

13 A.  Proceedings Below

14 During an in-limine hearing the following colloquy took place

15 between the prosecutor, court and appellants counsel:

16 Mr. Bowan: But I plan on offering that statement as well as

17 the statement to the Parole Officer which we discussed briefly

18 on November 5 th, 2003. The day before the arrest- He had told

19 his Parole Officer- james Burgert ( B-U-R-G-E-R-T.) That he

20 lived at that troy street address. In fact —came in and talked

21 to his Parole Officer with Regina Burton, who was with him at

22 time. Given the fact that it's going to come out that he has

23 these prior convictions and, I believe, it is part of the defense

24 case as well that he was on parole and was living in a half

25 way house for parolees it's our motion also just to allow his

26 parole status to come into evidence Via the parole officer given

27 the fact that a statement given to a parole officer would be held

  a different context than a statement Given to somebody on the street.

28 ing : We understand his obligation to be truthful to

1    the parole officer and so forth who is supervising him

2    should also come in. I think I skipped ahead one motion, but

3    it is all inner related.

4    The Court : I don't have the other one then,

5    Mr. Bowman : When we Discussed it in chambers Ms. Lacher

6    indicated there was no objection because that is part of their

7    defense as well.

8    The Court : Right , they have parole officer list.

9    Mr. Bowman: Correct.

10    The Court ; Ms. Lacher- anything ?

11    Ms. Lacher : No your honor. I don't have any objection since

12    Mr. Bowman is correct we do have both Mr. McDonalds parole

13    officer on our lists. And I don't think that the defense could

14    go forward without utilizing their testimony so, it's got to

15    come out anyway.

16

17    Appellants parole officer provided testimony that was prejudicail

18    and inflammatory as well as inadmissible. The following testimony

19    was provided by appellant Parole officer in which aPPallant bases his argument of ineffective

20    assistance of counsel.

21    Mr. Burgert :: He had been my parole on a few other occasions

22    prior to that date.

23    Ms. Lacher : How many times had he been your parole ?

24    Mr. Burgert : Welll he had been on parole at least two times.

25    And he had also had some minor incidents that ----- where he

26    was in custody. You have to define whether he was active on

27    parole. Try to be more specific.

28    The Court : The question really is when did you supervise him.

EXIBIT "A"

COURT OF APPEAL - STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

FILED

Stephen M. Kelly, Clerk

MAR 1 3 2006

Court of Appeal Fourth District

THE PEOPLE,
     Plaintiff and Respondent,

v.

JOSEPH HILTON McDONALD,
     Defendant and Appellant.

**D046881**
San Diego County No. SCE234930

THE COURT:

     Appellant's request to relieve and substitute counsel is DENIED. The request to file a supplemental or pro se brief is also DENIED. (See *Martinez v. Court of Appeal of California, Fourth Appellate District* (2000) 528 U.S. 152, 164 [appellant has no right to represent himself on appeal].)

                                    _____
                                      Presiding Justice

cc: All Parties

COURT OF APPEAL - STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

F I L E D
Stephen M. Kelly, Clerk
JUN 3 2006
Court of Appeal Fourth District

THE PEOPLE,
    Plaintiff and Respondent,
v.
JOSEPH HILTON McDONALD,
    Defendant and Appellant.

**D046881**
San Diego County No. SCE234930

THE COURT:

    Appellant's "Renewed Motion to Relieve Counsel Stralla of Duty" filed on June 6, 2006, is DENIED.

_____
Presiding Justice

cc:  All Parties

S143012

# IN THE SUPREME COURT OF CALIFORNIA

## En Banc

In re JOSEPH HILTON MCDONALD on Habeas Corpus

Petition for writ of habeas corpus is DENIED.

SUPREME COURT
**FILED**

NOV 2 9 2006

Frederick K. Ohlrich Clerk

DEPUTY

GEORGE

Chief Justice

EXIBIT "B"

In Propria Persona

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF EL CAJON

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, ) | CASE No.: |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | MOTION FOR TRANSCRIPTS AND/OR |
| ) | COURT RECORDS OF PROCEEDINGS |
| Defendant. ) | FOR HABEAS CORPUS PETITION |

Defendant, _____, hereby moves this court
for an order directing the Clerk to transcribe and transmit the
record in the above entitled cause.

This motion is supported by the requirement of habeas corpus
petitions raising arguments to be supported by sufficient facts
reflected in the court record. (See Woods v. Superior Court
(2nd Dist., 1990) 219 C.A.3d 708[ "An indigent criminal
defendant who claims the right to a free transcript does not bear
the burden of proving inadequate alternatives. "];
Cf. Gardner v. California (1969) 393 U.S. 367.)

Defendant requests the Court provide the following matters
recorded in the above entitled cause:

1. Court Reporter transcripts taken 3-12-04, at 9:30
in Department 011, by CARLUCCI, ROBERT 5552. Transcript concern Marsder
motion...

2. COURT Reporter's Transcript taken September 21, 0
By Dana Peabody, #6332. Specifically the transcripts of hearing conducted at 2:30 pm

3.

4.

5.

Defendant has raised issues in a petition for writ of habeas
corpus alleging:

a. Abuse of Discretion Re LACHER.

b. Conviction

c.

(1972)

the California Supreme Court held:

> "[I]f affidavits presents a prima facia showing of
> indigency, motion for complete transcripts at public
> expence must be granted unless court has good reason
> to doubt truthfulness of allegations."

Defendant was appointed a public defendant to represent
him at trial due to his indigency, and his financial status
has not changed since that date.  Defendant is still without
funds to afford an attorney nor the cost for preparation, or
production of court transcrips.  (See Smith v. Bennett  (1961)
365  U.S.  708 ["To interpose any financial consideration between
indigent prisoners of state and his exercise of state rights to
see for his liberty is to deny that prisoner equal protection
of laws."].)

I declare under penalty of perjury that the foregoing is
true and correct to the best of my knowledge and belief.
Executed this 13 day of MARCH        , 2007 at Lancaster,
California.


Defendant/Movant

/s/ _____
JOSEPH MCDONALD
In Pro Per

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

F I L E D

Clerk of the Superior Court

FEB 2 0 2007

By: Y. BRENNAN. Deputy

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF SAN DIEGO, EAST COUNTY DIVISION

IN THE MATTER OF THE APPLICATION OF:

JOSEPH HILTON MCDONALD,

Defendant.

)
)
)
)
)
)
)
)
)

SCE 234930

ORDER DENYING
REQUEST FOR
TRANSCRIPTS

THIS COURT, HAVING READ AND CONSIDERED THE REQUEST OF JOSEPH MCDONALD AND THE FILE IN THE ABOVE-CAPTIONED MATTER, FINDS AS FOLLOWS:

Defendant seeks transcripts regarding the above-referenced case, but has not provided any factual basis for that request. The Defendant is not entitled to free transcripts for the purpose of searching the record to find possible grounds on which to assert a claim for collateral relief. He must show a "reasonably compelling need for the specific documentary evidence." (*Chavez v. Sigler* (8th Cir. 1971) 438 F.2d 890. See also *Bentley v. United States* (6th Cir. 1970) 431 F.2d 250; *Walker v. United States* (5th Cir. 1970) 424 F.2d 278; *Muller v. Municipal Court* (1968) 259 Cal.App.2d 177.)

Factual specificity and particularity are required when seeking a reporter's transcript or any other material from the file at the taxpayers' expense. Defendant is not entitled to such material merely to comb the record for error. *United States v. MacCollom* (1976) 426 U.S. 317; *Miller v. Hamm* (1970) 9 Cal.App.3d 860.

1

1    Accordingly, before the court is required to order transcripts at public expense, the

2    indigent defendant must file a motion demonstrating a colorable need for the transcripts to

3    support the substantive allegations of the particular petition.  The court in *Miller v. Hamm*

4    (1970) 9 Cal.App.3d 860, 871, held that "the federal Courts of Appeal appear to uniformly

5    hold that where a petitioner has failed to avail himself of an appeal and further fails to specify

6    in what respect a reporter's transcript is in fact necessary to rectify an invasion of a

7    fundamental right, his entitlement to a free reporter's transcript, has not been made out.  One

8    is not entitled to a free reporter's transcript, they hold, merely to 'comb the record in hope of

9    discovering some flaw' to raise on collateral review.  (*McGarry v. Fogliani* (9th Cir. 1966) 370

10   F.2d 42, 44; accord: *United States v. Shoaf*, supra, 341 F.2d 832; *Harless v. United States*

11   (5th Cir. 1964) 329 F.2d 397, 398-399; *Culbert v. United States* (8th Cir. 1964) 325 F.2d 920,

12   921-922.)"

13       In this case, Defendant requests a copy of the transcript from the September 21, 2004

14   hearing, as he intends to file a petition for review.  However, Defendant has not provided any

15   factual basis for the request for the transcript and why it is necessary to file a petition for

16   review.  Without a showing a specific need for the transcripts, a Defendant is not entitled to

17   receive them at the public's expense.  The Defendant is not entitled to a free copy of the

18   transcripts in order to "comb the record for error."

19       With all of this being said, right of access of the Defendant is not being denied.

20   However, right of access is not the same as a right to have the County of San Diego pay to

21   make copies of transcripts and/or documents from the file.  Defendant has the right, as does

22   any member of the public, to review this file and to request that copies be made of whatever

23   documents are contained therein.  The requesting party bears the cost of making copies or

24   producing transcripts and there is no legal authority requiring the taxpayer to subsidize this

25   expense when a substantial need for the documents has not been shown.

26       In addition, Defendant through his appellate counsel received copies of the court

27   transcripts in connection with his appeal.  The hearing requested by the Defendant has been

28   transcribed.   The Defendant can contact his appellate counsel to request that specific

2

1 | transcript. The Defendant is not entitled to receive more than one free copy of the transcripts

2 | at taxpayer's expense.

3 |      Based on the foregoing, the Defendant's request for a free copy of the transcript for

4 | the September 21, 2004, hearing is hereby DENIED.

5 | **IT IS SO ORDERED.**

6 |

7 | DATED:   _2/14/07_

                                            LOUIS R. HANOIAN
                             JUDGE OF THE SUPERIOR COURT

3

EXIBIT "C"

COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

PEOPLE OF THE STATE OF )
CALIFORNIA, )
)
    PLAINTIFF AND RESPONDENT, )
) SC NO. SCE234930
        VS. )
)
)
JOSEPH HILTON MC DONALD, ) COURT OF APPEAL
) NO. DO 46881
    DEFENDANT AND APPELLANT. ) VOL. 1
)

COPY

REPORTER'S TRANSCRIPT ON APPEAL

FROM SAN DIEGO COUNTY

HONORABLE HERBERT J. EXARHOS, JUDGE

MAY 4, 2004

MARSDEN MOTION PROCEEDINGS

PAGES 01 THROUGH 29/49

APPEARANCES:

FOR THE PLAINTIFF           BILL LOCKYER
AND RESPONDENT:           ATTORNEY GENERAL
                       STATE OF CALIFORNIA
                       110 WEST "A" STREET
                       SAN DIEGO, CALIFORNIA 92101

FOR THE DEFENDANT          IN PROPRIA PERSONA
AND APPELLANT:            JOSEPH HILTON MC DONALD

                       TAMMY L. NIELSEN
                       CSR #9143
                       OFFICIAL REPORTER
                       EL CAJON, CALIFORNIA 92020

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN DIEGO

DEPARTMENT 11   BEFORE THE HON. HERBERT J. EXARHOS, JUDGE

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA,<br><br>                PLAINTIFF,<br><br>        VS.<br><br>JOSEPH HILTON MC DONALD,<br><br>                DEFENDANT. | )<br>)<br>)<br>)<br>)<br>)   NO. SCE234930<br>)<br>)<br>)<br>)<br>)<br>) |

MAY 4, 2004

MARSDEN MOTION PROCEEDINGS

PAGES 1 THROUGH 29/49

APPEARANCES:

        FOR THE PLAINTIFF:         BONNIE DUMANIS
                                   DISTRICT ATTORNEY
                                   BY:  G. BENNETT/J. ROMO
                                   DEPUTY DISTRICT ATTORNEY
                                   250 EAST MAIN STREET
                                   EL CAJON, CALIFORNIA 92020


        FOR THE DEFENDANT:         OFFICE OF THE PUBLIC DEFENDER
                                   BY:  MICHAEL RUIZ
                                   DEPUTY PUBLIC DEFENDER
                                   250 EAST MAIN STREET
                                   EL CAJON, CALIFORNIA 92020


                                   TAMMY L. NIELSEN
                                   CSR #9143
                                   OFFICIAL REPORTER
                                   EL CAJON, CALIFORNIA 92020

1    EL CAJON, CALIFORNIA, TUESDAY, MAY 4, 2004, A.M., D-9

2

3

4        (THE FOLLOWING PROCEEDINGS WERE HAD IN A CLOSED

5        COURTROOM.  ALL SPECTATORS AND THE DISTRICT

6        ATTORNEY HAVE BEEN EXCUSED.  PRESENT IS THE

7        DEFENDANT, HIS ATTORNEY OF RECORD, MR. MICHAEL

8        RUIZ, COURT PERSONNEL AND STAFF:)

9

10

11       THE COURT:  PEOPLE VERSUS JOSEPH MC DONALD.

12       MR. RUIZ:  GOOD MORNING, MICHAEL RUIZ, OFFICE OF

13   THE PUBLIC DEFENDER, ON BEHALF OF JOSEPH MC DONALD.

14   WE'RE PRESENT BEFORE THE COURT.  MR. MC DONALD WOULD

15   LIKE TO CONDUCT A MARSDEN HEARING.

16       THE COURT:  MR. RUIZ, YOU HAVE INDICATED TO THE COURT

17   THAT YOUR CLIENT IS DESIROUS OF DISCHARGING THE PUBLIC

18   DEFENDER AS HIS ATTORNEY OF RECORD; IS THAT CORRECT,

19   MR. MC DONALD?

20       THE DEFENDANT:  YES, SIR, YOUR HONOR.

21       THE COURT:  AND, ACCORDINGLY, THIS IS A CLOSED HEARING.

22   THE DISTRICT ATTORNEY AND ALL SPECTATORS HAVE BEEN EXCLUDED

23   PRESENT ONLY ARE COURT PERSONNEL AND STAFF AND, OF COURSE,

24   YOUR ATTORNEY.

25           SINCE IT IS A CLOSED HEARING, WHAT YOU SAY TO ME

26   WILL BE HELD IN CONFIDENCE, AND IT IS ORDERED THAT THE --

27   AT THE CONCLUSION OF THESE PROCEEDINGS, THE COURT REPORTER

28   IS NOT TO TRANSCRIBE HER NOTES AND THOSE NOTES ARE TO BE

1   SEALED AND THEY ARE ONLY TO BE UNSEALED AND TRANSCRIBED IF

2   THIS COURT OR A COURT OF COMPETENT JURISDICTION SHOULD MAKE

3   SUCH AN ORDER.

4          ACCORDINGLY, AS I HAVE INDICATED, YOU MAY SPEAK

5   FREELY TO ME, MR. MC DONALD, AND WHAT YOU NEED TO ESTABLISH

6   IS WHAT YOUR ATTORNEY HAS NOT DONE THAT YOU THINK HE SHOULD

7   HAVE DONE OR, CONVERSELY, WHAT HE HAS DONE THAT YOU DON'T

8   THINK HE SHOULD HAVE DONE.

9          WHY DO YOU THINK THE PUBLIC DEFENDER SHOULD BE

10  DISCHARGED AS YOUR ATTORNEY OF RECORD?

11     THE DEFENDANT:  FIRST OF ALL, YOUR HONOR, THERE IS

12  AN IMPORTANT WITNESS THAT I FEEL SHOULD HAVE BEEN

13  SUBPOENAED.

14     THE COURT:  ARE YOU TALKING ABOUT MR. WASHINGTON?

15     THE DEFENDANT:  I'M TALKING ABOUT MR. CLARENCE

16  BURTON.

17     THE COURT:  B-U-R-T-O-N?

18     THE DEFENDANT:  YES, SIR.

19     THE COURT:  OKAY.  WHERE IS HE?

20     THE DEFENDANT:  I DON'T KNOW WHERE HE IS AT, BUT HE

21  IS -- I FEEL HE IS A CRUCIAL WITNESS TOWARDS THIS CASE.

22     THE COURT:  OKAY.

23     THE DEFENDANT:  BECAUSE THAT IS HOW THE PROSECUTION

24  FIRST ESTABLISHED THEIR CASE IS BASED ON HIS STATEMENT.

25  I FELT HE SHOULD HAVE BEEN LOCATED.  HE CAN PROBABLY GIVE

26  INFORMATION THAT WOULD EXONERATE ME FROM THE PARTICULAR

27  CHARGE THAT HE GAVE THE STATEMENT ON.

28     THE COURT:  I TAKE IT BY THAT, THAT MR. RUIZ HAS BEEN

2    THE DEFENDANT:  YES, YOUR HONOR, YES, HE IS.  HE IS.

3    HE HAS ASKED ME TO SIGN A PAPER STATING THAT AGAINST HIS

4    WISHES AND AGAINST THE WISHES OF HIS SUPERIORS AND/OR

5    COWORKERS -- BASICALLY, THAT I SHOULD TAKE THIS DEAL, AND

6    I SHOULDN'T TAKE IT TO TRIAL, YOUR HONOR.  MY INNOCENCE

7    SHOULD BE FIRST AND FOREMOST IN THIS INSTANCE, AND I WILL --

8    I AM TRYING TO ADHERE TO MY RIGHT TO A FAIR TRIAL AND THE

9    RIGHT TO A COMPETENT DEFENSE, AND I DON'T FEEL THAT HAS

10    BEEN MET.

11    THE COURT:  HE IS NOT FORCING YOU TO PLEAD GUILTY,

12    IS HE?

13    THE DEFENDANT:  THE WAY THAT THEY ARE PRESSURING ME,

14    YOUR HONOR, I MEAN, THERE IS NO WAY, YOU KNOW, I CAN GO

15    TO TRIAL CLEARHEADED, YOUR HONOR, AND BE ABLE TO

16    PARTICIPATE WITH THEM PRESSURING FOR ME TO PLEAD GUILTY

17    TO SOMETHING I AM INNOCENT FOR.

18    THE COURT:  DID YOU HEAR YOURSELF, WHAT YOU SAID?

19    YOU ARE TELLING ME HE IS LEANING ON YOU SO HARD IT IS

20    GOING TO TAKE AWAY YOUR FREE WILL; IS THAT WHAT YOU ARE

21    SAYING?

22    THE DEFENDANT:  THAT IS NOT WHAT I AM SAYING.

23    THE COURT:  YOU SAID THEY ARE PRESSURING YOU.

24    THE DEFENDANT:  YES, YOUR HONOR, THAT IS WHAT I SAID.

25    I CAN'T GO TO TRIAL WITH A CLEAR HEAD AND CLEAR -- YOU

26    KNOW WHAT I AM SAYING?  A CLEAR CONSCIENCE, DUE TO THE

27    FACT THAT THEY ARE PRESSURING ME TO TAKE A DEAL DESPITE

28    MY INNOCENCE.

Case 2:08-cv-02150-JC-VBK    Document 1-2    Filed 04/01/2008    Page 84 of 100

THE COURT:  WOULDN'T IT BE MORE ACCURATE TO SAY THEY

2   WERE, PERHAPS, ENCOURAGING YOU TO TAKE A DEAL?

3       THE DEFENDANT:  I CALL IT PRESSURING.

4       THE COURT:  MAYBE IT IS BASED ON THEIR EVALUATION OF

5   THE EVIDENCE AGAINST YOU.  DO YOU THINK IT IS BECAUSE HE

6   WANTS TO BE PLAYING GOLF?

7       THE DEFENDANT:  NO, SIR.  I DON'T THINK THAT IS THE

8   CASE AT ALL.

9       THE COURT:  WHY DO YOU THINK HE IS DOING IT?

10      THE DEFENDANT:  I DON'T KNOW WHY HE IS DOING THAT.

11  THAT IS WHAT I'M TRYING TO FIGURE OUT.  I DON'T HAVE NO

12  COMPETENT DEFENSE HERE, YOUR HONOR.  I FEEL A LOT CAN BE

13  DONE TO PUT TOGETHER A COMPETENT DEFENSE, YOUR HONOR.

14      THE COURT:  OKAY.  IS THERE ANYTHING ELSE THAT YOU WOULD

15  LIKE TO SAY BEFORE I TALK TO MR. RUIZ?

16      THE DEFENDANT:  AND I WOULD LIKE TO SAY THAT -- NO.

17  NO.

18      THE COURT:  MR. RUIZ, THERE ARE SEVERAL ISSUES THAT

19  NEED TO BE ADDRESSED.  THE INVESTIGATION REGARDING THE

20  CRIME SITES, THE LINEUP, AND THE ELUSIVE WITNESS,

21  MR. BURTON.

22      MR. RUIZ:  YES, YOUR HONOR.

23          STARTING WITH THE CRIME SITES, I PUT OUT

24  INVESTIGATION REQUESTS.  BOTH MYSELF AND MY INVESTIGATOR

25  PERSONALLY HAVE GONE TO THE SITE OF THESE ALLEGED

26  BURGLARIES AND RESIDENTIAL BURGLARIES.  I HAVE PHYSICALLY

27  GONE TO EACH OF THOSE HOMES.  I HAVE, WITH MY INVESTIGATOR,

28  TAKEN MEASUREMENTS AND TAKEN THEM IN DIFFERENT POSITIONS

2          SO AS FAR AS THE ALLEGATION THAT I HAVE NOT TAKEN

3     THE TIME TO GO TO THE CRIME SCENES, THAT IS UNFOUNDED.  I

4     HAVE PERSONALLY GONE, NOT ONLY THE INVESTIGATOR.

5          AS FAR AS THE PHOTO LINEUP GOES, AT THE TIME OF

6     THE PRELIMINARY EXAMINATION, MR. GULLEY MADE A MOTION FOR

7     A LIVE LINEUP, THAT WAS DENIED.  BECAUSE OF THE

8     DISCREPANCIES IN THE PHOTO LINEUP, I HAVE RETAINED AN

9     EXPERT WITNESS, DR. MAC SPEIDEN, TO COME TO TRIAL.

10    DR. MAC SPEIDEN WILL TESTIFY AS TO THE INACCURACIES AS

11    TO THE PHOTO LINEUP.

12        THE COURT:  IS THERE AN EYEWITNESS?

13        THE COURT:  NO.  A LOT IS CIRCUMSTANTIAL.

14        THE COURT:  THERE IS SOME DIRECT EVIDENCE?

15    MR. RUIZ:  THERE IS SOME DIRECT EVIDENCE.  ONE WITNESS

16    DIRECTLY SAW MR. MC DONALD AND IDENTIFIED HIM BOTH IN THE

17    LINEUP AND AT THE PRELIMINARY HEARING.

18         SO I'VE TAKEN THOSE POSITIONS IN TRYING TO ASSIST

19    HIM.  AND MY POSITION WITH HIM IS THAT I DON'T FEEL THAT

20    GOING TO TRIAL IS IN HIS BEST INTEREST.

21         AS FAR AS CLARENCE BURTON GOES, CLARENCE BURTON

22    IS A PERSON THAT I HAVE TRIED TO FIND, MY INVESTIGATORS

23    HAVE TRIED TO FIND HIM.  I EXPLAINED TO MR. MC DONALD THAT

24    UNLESS THE PROSECUTION IS GOING TO USE HIS TESTIMONY IN

25    TRIAL, THERE IS NO CONFRONTATION ISSUE AND WITHOUT A

26    CONFRONTATION ISSUE, THEY DON'T HAVE TO BRING THEM HIM

27    TO US.

28         AND THERE IS, I WOULD SAY, A BREAKDOWN IN

2    SHOULD GO, THE STRATEGIES IN THE CASE, AND THE DEFENSE

3    THAT MR. MC DONALD WANTS TO PUT ON.

4         MR. MC DONALD, AMONG OTHER THINGS, WOULD LIKE TO

5    TESTIFY.  THAT IS AGAINST MY ADVICE DUE TO THE IMPEACHMENT

6    THAT IS GOING TO OCCUR WHEN HE DOES SO.

7         THERE IS JUST -- WE DO HAVE A BREAKDOWN IN

8    COMMUNICATION.  THERE IS NOT A HOSTILE ENVIRONMENT BETWEEN

9    US, BUT I WOULD ADMIT THAT WE DON'T SEE THINGS EYE TO EYE,

10   SO TO SPEAK.

11        THE COURT:  OKAY.  NOW, HE FACES SOME SIGNIFICANT

12   TIME --

13        MR. RUIZ:  VERY SIGNIFICANT.

14        THE COURT:  -- ON THIS INFORMATION BECAUSE OF THE

15   NUMBER OF COUNTS AND THE STRIKE AND HIS PRISON PRIORS.

16        MR. RUIZ:  CORRECT.

17        THE COURT:  SO YOU ARE, OBVIOUSLY, OBLIGATED TO

18   CONVEY TO HIM THE OFFERS THAT HAVE BEEN MADE.

19        MR. RUIZ:  CORRECT.

20        THE COURT:  AND AS YOU SEE FIT, TO ENCOURAGE OR

21   DISCOURAGE HIM.

22        HAVE YOU -- I FORGET HIS TERM.  HAVE YOU

23   PRESSURED HIM?

24        MR. RUIZ:  WHAT I DID THIS MORNING, I PROVIDED

25   MR. MC DONALD WITH A LETTER OUTLINING, BASICALLY, THE

26   STATE OF THE CASE, OUTLINING THE CHARGES, THE QUOTE,

27   UNQUOTE, NICKEL PRIOR, THE PROBLEM WITH SOME OF THE

28   FACTS THAT WE KNOW TO BE FACTS BASED UPON THE PRELIMINARY

Case 2:08-cv-EXAMINATION G   IN FACT I HAVE CONSULTED WITH NUMEROUS00

2   ATTORNEYS, MISS COYNE, FROM MY OFFICE, AS WELL, ADVISING HIM

3   THAT AFTER CONSULTING WITH THESE OTHER ATTORNEYS AS WELL, WE

4   BELIEVE IT IS IN HIS BEST INTEREST TO ACCEPT THE PEOPLE'S

5   OFFER.

6       THE COURT:  YOU HAVE TO COMMUNICATE THAT TO HIM.

7       MR. RUIZ:  I DO.  AND I HAVE PROVIDED A LETTER TO

8   HIM.

9       THE COURT:  BASED ON YOUR EVALUATION OF THE WITNESSES

10  AND THE FACT THAT YOU MAY PREVAIL ON SOME OF THE COUNTS

11  BUT, PERHAPS, NOT ALL COUNTS.

12      MR. RUIZ:  I EXPLAINED I NEED TO PREVAIL ON ALL FOUR

13  BURGLARIES IN ORDER TO BEAT THE OFFER.

14      THE COURT:  NOW WHERE DOES MR. WASHINGTON FIT INTO

15  THIS.

16      MR. RUIZ:  MR. WASHINGTON IS A CO-DEFENDANT IN THIS

17  CASE.  MR. WASHINGTON PLED GUILTY TO TWO COUNTS OF

18  RESIDENTIAL BURGLARY.  MR. WASHINGTON HAS ALREADY BEEN

19  SENTENCED.  HE IS AT THE DEPARTMENT OF CORRECTIONS.  HE

20  HAS BEEN IN COMMUNICATIONS WITH MY CLIENT.  THERE IS SOME

21  UNDERSTANDING THAT MR. WASHINGTON HAS EXONERATING EVIDENCE

22  TO OFFER AT TRIAL.

23      THE COURT:  ON ALL COUNTS OR SOME OF THE COUNTS?

24      MR. RUIZ:  THAT IS NOT CLEAR.

25      THE COURT:  YOU ARE PURSUING THAT?

26      MR. RUIZ:  THAT IS WHY I WANT TO INTERVIEW

27  MR. WASHINGTON.

28      THE COURT:  AND YOU ARE SATISFIED THAT YOU HAVE

2      MR. RUIZ:  AS FAR AS MY ABILITY, ABSENT FILING THAT

3   MOTION THAT HE WANTS ME TO FILE FOR THE PROSECUTION TO

4   PRODUCE HIM.

5      THE COURT:  THERE IS NO SUCH MOTION.  IT DOESN'T EXIST.

6   IT CAN'T BE DONE.

7      MR. RUIZ:  RIGHT.

8      THE COURT:  ALL RIGHT.  MR. RUIZ, WHAT DO YOU FEEL YOU

9   HAVE NOT DONE YET TO GET READY FOR TRIAL, OTHER THAN A

10   CONFERENCE WITH MR. WASHINGTON?

11      MR. RUIZ:  I WOULD LIKE TO FIND MR. BURTON, WHICH I

12   CAN'T DO.  I AM GOING TO FILE PRETRIAL MOTIONS TO SEVER

13   THE CASE.

14      THE COURT:  SEVER THE COUNTS?

15      MR. RUIZ:  YES.  IN LIMINE TYPE THINGS.  AND I NEED TO

16   SPEAK WITH MR. WASHINGTON.

17         THE ONLY OTHER LITTLE IMPORTANT THING I NEED IS

18   TO GET A COPY OF MR. MC DONALD'S EYEGLASS PRESCRIPTION.  IT

19   PLAYS INTO THE TRIAL IN SOME WAY.

20      THE COURT:  ANYTHING ELSE, MR. RUIZ?

21      MR. RUIZ:  OTHER THAN THAT, NOTHING ELSE, YOUR HONOR.

22      THE COURT:  MR. MC DONALD, WHAT ELSE?

23      THE DEFENDANT:  YOUR HONOR, I DISAGREE WHEN MR. RUIZ

24   HAS TALKED TO ME ABOUT MY CASE.  HE HAS QUOTED THINGS

25   THAT WERE UNTRUE, QUOTED THINGS FROM CERTAIN ASPECTS OF

26   MY CASE THAT WERE UNTRUE.

27      THE COURT:  LIKE WHAT?

28      THE DEFENDANT:  THAT ONE OF THE WITNESSES SAID HE

2  WITNESS DIDN'T SAY NOTHING ABOUT IDENTIFYING TWO MALES.

3  HE SAID HE IDENTIFIED ONE MALE AND COULDN'T GET ANY TYPE

4  OF IDENTIFICATION OF THE OTHER PERSON.

5      THE COURT:  NOW WAIT A MINUTE.  YOU ARE SAYING

6  MR. RUIZ IS MAKING THINGS UP TO TELL YOU WHAT YOU

7  WANT TO HEAR?

8      THE DEFENDANT:  I AM NOT SAYING MAKING THESE THINGS

9  UP, HE IS NOT WELL-INFORMED ON MY CASE.  HE IS SAYING --

10  HE TOLD ME ONE WITNESS SAID THAT HE IDENTIFIED TWO MALES.

11  IN FACT, THAT IS NOT TRUE.  THE WITNESS SAID THAT HE

12  IDENTIFIED ONE MALE AND COULDN'T GET ANY TYPE OF

13  IDENTIFICATION OF THE OTHER SUSPECT.

14      THE COURT:  OKAY.  ANY OTHER BASIS?

15      THE DEFENDANT:  OKAY.  AND AS FAR AS THE CONFIDENTIAL

16  INFORMANT --

17      THE COURT:  ARE WE BACK TO BURTON?

18      THE DEFENDANT:  YES.  BACK TO MR. CLARENCE BURTON.  I

19  JUST FEEL THAT MR. CLARENCE BURTON SHOULD HAVE BEEN FOUND

20  BY NOW.  IT IS LIKE REALLY LATE IN MY TRIAL PROCEDURES,

21  LIKE, REALLY LATE, AND HE SHOULD HAVE BEEN LOCATED A LONG

22  TIME AGO.

23      YOU KNOW, IF SOMEBODY WAS REALLY DILIGENTLY

24  PURSUING MY CASE, THEN MR. BURTON WOULD HAVE BEEN

25  CONTACTED A LONG TIME AGO.

26      THE COURT:  WHO IS MR. BURTON?

27      THE DEFENDANT:  WHO IS MR. BURTON?

28      THE COURT:  YEAH.

2      THE DEFENDANT:  MY -- THE LADY THAT WAS HEAD OF THE

3   HOUSEHOLD ON TROY STREET, THAT IS HER HUSBAND, AND HE

4   TOLD ME THAT SHE RELAYED THE MESSAGE TO MR. RUIZ'

5   INVESTIGATOR TELLING HIM MR. CLARENCE BURTON WOULD BE

6   PRESENT AT A FAMILY HEARING FOR CUSTODY OF THEIR CHILDREN

7   AND THAT IS WHERE YOU CAN FIND HIM, AND THAT HIS

8   INVESTIGATOR CAN FIND HIM.  SO I DON'T FEEL THEY HAVE

9   BEEN DILIGENTLY SEARCHING.

10      THE COURT:  WAS HE THERE?

11      THE DEFENDANT:  WAS HE WHERE?

12      THE COURT:  WAS HE AT THE FAMILY GET-TOGETHER?

13      THE DEFENDANT:  YES.  HE WENT TO THE FAMILY

14   GET-TOGETHER.

15      THE COURT:  AND NOBODY KNOWS WHERE HE IS?

16      THE DEFENDANT:  NOBODY WAS THERE TO LISTEN TO MISS

17   REGINA BURTON'S CLEAR STATEMENT THAT, YES, HE WILL BE

18   AT FAMILY COURT TODAY.

19      THE COURT:  IS HE TRYING TO AVOID YOU?  IS MR. CLARENCE

20   BURTON TRYING TO AVOID YOU AT THIS MOMENT?

21      THE DEFENDANT:  THAT IS WHY I WOULD LIKE TO ADHERE

22   TO MY RIGHT TO QUESTION THIS WITNESS, YOU KNOW, TO

23   CROSS-EXAMINE THIS WITNESS, TO FIGURE OUT WHAT IS GOING

24   ON.  I FEEL HE MIGHT BE ABLE TO EXONERATE ME IN THIS CASE

25   DUE TO HIS STATEMENT THAT HE GAVE TO THE POLICE.  MAYBE

26   HE KNOWS SOMETHING I DON'T KNOW.

27      THE COURT:  HOW IS HE GOING EXONERATE YOU?

28      THE DEFENDANT:  I DON'T KNOW.  THAT IS WHAT I'M TRYING

O.15

1    TO FIGURE OUT, BECAUSE HE HAS EVERY REASON TO WANT ME OUT OF

2    HIS LIFE.

3        THE COURT:  IS HE LIKE AN ALIBI WITNESS THAT COULD PUT

4    YOU SOMEPLACE ELSE?

5        THE DEFENDANT:  I WOULDN'T SAY THAT.

6        THE COURT:  WHAT IS SO VALUABLE ABOUT MR. BURTON?

7        THE DEFENDANT:  WHAT IS SO VALUABLE ABOUT MR. BURTON?

8    HE GAVE A STATEMENT.  I WANT TO KNOW WHY HE GAVE THAT

9    STATEMENT.

10       THE COURT:  YEAH.  WAIT.  WAIT.  WAIT.  A STATEMENT

11   MEANS NOTHING.

12           CAN THEY USE HIS STATEMENT, MR. RUIZ?

13       MR. RUIZ:  NO.

14       THE COURT:  THEY CAN'T USE THIS STATEMENT.  THEY DON'T

15   HAVE MR. BURTON.

16       THE DEFENDANT:  THAT IS NOT WHAT I AM CONCERNED WITH.

17   I AM CONCERNED WHY HE GAVE THAT STATEMENT.  I'M CONCERNED

18   WHY HE GAVE THIS STATEMENT, AND I WANT TO QUESTION HIM TO

19   FIND OUT WHAT IS GOING ON.

20       THE COURT:  YOU HAVEN'T TOLD ME YET THAT HE IS AN

21   INDISPENSABLE WITNESS.

22       THE DEFENDANT:  HE CALLED AND SAID I WAS ROBBING HOUSES

23   AND BRAGGING ABOUT IT, AND THAT I LIVED AT A CERTAIN

24   ADDRESS, WHICH I DON'T LIVE AT.

25       THE COURT:  MR. BURTON DOESN'T LIKE YOU, DOES HE.

26       THE DEFENDANT:  HE DOESN'T.

27       THE COURT:  ARE THEY GOING TO BE ABLE TO USE ANY OF

28   THOSE STATEMENTS IN TRIAL?

2    THE COURT:  THEY USED IT TO TRIGGER THE INVESTIGATION?

3    THE DEFENDANT:  YES.

4    THE COURT:  THAT IS ONE THING.  NOW THEY HAVE TO

5    CONVICT YOU.  CAN THEY USE THAT AS EVIDENCE AGAINST

6    YOU?

7    THE DEFENDANT:  YOUR HONOR, AT THIS POINT, I JUST

8    WANT TO FIGURE OUT WHAT IS GOING ON WITH MR. CLARENCE

9    BURTON AND FIND OUT WHY HE GAVE THAT STATEMENT.

10    THE COURT:  ALL RIGHT.  WELL, ANYTHING ELSE,

11    MR. MC DONALD?

12    THE DEFENDANT:  IF YOU DO NOT WANT TO -- WANT TO

13    GRANT MY MOTION FOR THE MARSDEN HEARING TO DISMISS MY

14    COUNSEL, I WOULD LIKE TO GO PRO PER.

15    THE COURT:  OKAY.

16    THEY ARE NOT RELATED.  THERE IS ONE ISSUE AS TO

17    WHETHER OR NOT THEY WILL CONTINUE TO REPRESENT YOU.  THAT

18    WOULD BE ANOTHER ISSUE, WHETHER YOU ARE GOING TO REPRESENT

19    YOURSELF.  THAT IS A DECISION YOU ARE GOING TO HAVE TO

20    MAKE.  I DON'T KNOW HOW YOU ARE GOING TO FIND MR. BURTON

21    BY YOURSELF.  OF COURSE, YOU WILL HAVE AN INVESTIGATOR.

22    BUT YOU HAVE THAT RIGHT, MR. MC DONALD.  I AM NOT GOING

23    TO TALK YOU IN OR OUT OF IT.

24    AS FAR AS RELIEVING MR. RUIZ, THE ANSWER IS NO,

25    BECAUSE HE HAS NOT SHOWN ANYTHING OTHER THAN HIS DILIGENT

26    PREPARATION IN THIS CASE AND THAT HE HAS PUT OUT EVERY

27    EFFORT.  AND I THINK YOU ARE BLOWING A LOT OF SMOKE.

28    THE LINEUPS, HE IS DEALING WITH.  I MEAN, HE

0.17

1  CAN MAKE THEM DISAPPEAR.  YOU ARE ASKING FOR MAGIC.

2  HE HAS INVESTIGATED THE CRIME SCENE.  HE CAN'T FIND

3  MR. BURTON.  IT DOESN'T SOUND LIKE ANYBODY CAN FIND

4  BURTON.  AND IT ALSO DOESN'T SOUND LIKE MR. BURTON

5  NEEDS TO BE FOUND.  IT WOULD BE NICE TO ANSWER SOME OF

6  YOUR QUESTIONS AND YOUR CURIOSITY.

7         MR. RUIZ IS ONE OF THE MOST COMPETENT ATTORNEYS

8  IN THE PUBLIC DEFENDER'S OFFICE.  HE IS PREPARED AND IS

9  ASKING FOR MORE TIME AND HAS TAKEN STEPS TO GET HOLD OF

10  MR. WASHINGTON AND IS GETTING READY.  YOU MAY NOT LIKE

11  THE INFORMATION THE HE IS BRINGING TO YOU.  YOU MAY NOT

12  LIKE IT BECAUSE YOU MAY BE INNOCENT OF ALL THESE COUNTS.

13  THAT MAY WELL BE, BUT HE IS NOT DEALING WITH PROCLAMATIONS

14  OF INNOCENCE, HE IS DEALING WITH THE PEOPLE'S HARD EVIDENCE

15  AGAINST YOU.  HE IS DOING IT EFFECTIVELY AND EFFICIENTLY.

16  THE ONLY DIFFICULTY IN COMMUNICATION IS SELF-INFLICTED,

17  BUT MY ADVICE TO YOU WOULD BE TO TALK TO HIM AND HELP

18  HIM.

19         BUT I AM GOING TO DENY YOUR MOTION TO DISCHARGE

20  HIM.

21         AND SO NOW, IF YOU WANT TO REPRESENT YOURSELF,

22  CERTAINLY, YOU HAVE THAT RIGHT, AND I WON'T GET INTO

23  THE WISDOM OF IT.

24         SO, THESE PROCEEDINGS ARE CONCLUDED.

25         THE MOTION IS DENIED.

26         AND THE ADMONITION THAT THE COURT REPORTER SEAL

27  HER NOTES AND THAT THOSE NOTES ARE NOT TO BE TRANSCRIBED

28  UNLESS THIS COURT OR A COURT OF COMPETENT JURISDICITON

2

3

4

5          (THE FOLLOWING PROCEEDINGS WERE HAD IN OPEN COURT NOW

6          IN THE PRESENCE OF THE DISTRICT ATTORNEY AND ALL

7          SPECTATORS:)

8

9

10          THE COURT:  THESE PROCEEDINGS ARE NOW ONCE AGAIN OPEN.

11   SO, MR. MC DONALD, IN TERMS OF MAKING APPLICATION FOR

12   SELF-REPRESENTATION, YOU NEED TO FILL OUT A FORM.  THAT

13   FORM IS BEFORE YOU.  IS IT ALREADY FILLED OUT?

14          MR. MC DONALD:  YES.

15          THE COURT:  OKAY.  SO -- WE NEED TO GET MR. BENNETT,

16   SINCE THIS IS NO LONGER A CLOSED HEARING.

17          ALL RIGHT.  THE DISTRICT ATTORNEY IS NOW AGAIN

18   BEFORE THE COURT.

19          MR. MC DONALD, I NOW HAVE BEFORE ME A FORM

20   ENTITLED "ACKNOWLEDGEMENT CONCERNING RIGHT OF

21   SELF-REPRESENTATION" WITH WHAT APPEARS THEREON TO BE

22   YOUR INITIALS AND YOUR SIGNATURE.

23          ARE THESE YOUR INITIALS AND YOUR SIGNATURE ON

24   THIS FORM THAT HAS YOUR NAME ON IT?

25          THE DEFENDANT:  YES, SIR.

26          THE COURT:  DID YOU READ AND UNDERSTAND THIS FORM?

27          THE DEFENDANT:  YES.

28          THE COURT:  AND I ALSO TAKE IT, AS FAR AS THE OFFENSES

2    THESE WERE FILLED OUT BY YOU AND MR. RUIZ?

3        THE DEFENDANT:  YES, YOUR HONOR.

4        THE COURT:  AND YOU HAVE READ AND UNDERSTOOD THEM,

5    MR. MC DONALD?

6        THE DEFENDANT:  YES, YOUR HONOR.

7        THE COURT:  NOW, MR. MC DONALD, YOU, APPARENTLY,

8    UNDERSTAND THE MAXIMUMS THAT YOU FACE, YOU HAVE INDICATED

9    YOUR EDUCATIONAL BACKGROUND AND YOUR ABILITY TO READ AND

10   WRITE.  IN TERMS OF REPRESENTING YOURSELF, WHICH I AM

11   ABOUT TO APPROVE, YOU WILL BE GIVEN PRO PER STATUS IN

12   THE JAIL.  YOU WILL GET LIMITED ACCESS TO THE JAIL LIBRARY

13   FACILITIES.  IT IS NOT ENTIRELY DETERMINED BY THE SHERIFF.

14   THE COURT OVERSEES IT AND ENSURES YOU HAVE ADEQUATE ACCESS.

15   IT WILL BE ACCESS TO SPECIFIC BOOKS.  IT IS NOT ACCESS TO

16   A WORD PROCESSOR OR COMPUTER OR TELEPHONE SERVICES.  IN

17   FACT, WE'RE IN THE PROCESS OF TIGHTENING THAT WHOLE THING

18   UP SO IT DOESN'T TURN INTO A SOCIAL HOUR.

19            IN ORANGE COUNTY, BASICALLY, THE INMATES SPECIFY

20   WHAT BOOKS THEY WANT, AND THEY ARE PROVIDED TO THEM IN THE

21   CELL.

22            SO YOU WILL HAVE THOSE PRIVILEGES.  A RUNNER

23   WILL BE APPOINTED TO ASSIST YOU.  AN INVESTIGATOR WILL

24   BE APPOINTED TO ASSIST YOU.

25            THE MATTER IS PRESENTLY SET FOR TRIAL NOW.  I

26   WILL GIVE A BRIEF CONTINUANCE.  WE'RE NOT STARTING ALL

27   OVER AGAIN AS IF YOU WERE JUST BEING ARRAIGNED.  THE

28   CASE HAS BEEN AROUND FOR A LONG TIME.  I WILL PROBABLY

2    TO COURT ABOUT EVERY OTHER WEEK TO MONITOR AND SUPERVISE

3    YOUR PREPARATION.  YOU WILL NOT HAVE THREE YEARS TO GO

4    THROUGH LAW SCHOOL AND TO FAMILIARIZE YOURSELF WITH THIS

5    CASE.  YOU ARE GOING BY YOURSELF AND YOU ARE ON YOUR OWN.

6    IS THAT DECISION THAT YOU HAVE MADE?

7        THE DEFENDANT:  YES, YOUR HONOR.

8        THE COURT:  IN TERMS OF SETTING A DATE, WE'LL NEED

9    MR. ROMO PRESENT.

10           SO, FOR THAT, WE WILL HAVE MR. ROMO PRESENT AND

11   SELECT A DATE.  AND BECAUSE OF THE AGE OF THE CASE, THAT

12   DATE WILL APPROACH AND WE'LL DO OUR BEST TO MAKE SURE YOU

13   HAVE EVERY OPPORTUNITY TO PREPARE.

14           AS YOU HAVE DESCRIBED IT, MR. RUIZ, YOU HAVE DONE

15   A SIGNIFICANT AMOUNT OF PREPARATION.  YOUR INVESTIGATOR AND

16   DISCOVERY WILL BE MADE AVAILABLE TO MR. MC DONALD SO THAT

17   WE DON'T HAVE TO REINVENT THE WHEEL.

18       MR. RUIZ:  I DO HAVE NUMEROUS VIDEOTAPES AND PICTURES

19   ON COMPACT DISKS.  I DON'T KNOW IF HE WILL BE ABLE TO ACCESS

20   A WAY OF VIEWING THESE THINGS IN CUSTODY OR NOT.

21       MR. BENNETT:  I'M NOT SURE, BUT BEFORE MR. RUIZ TURNS

22   OVER DISCOVERY TO THE DEFENDANT, THERE MAY BE MATERIAL THAT

23   MAY NEED TO BE REDACTED BEFORE THAT IS DONE.  I WANT TO MAKE

24   SURE MR. ROMO --

25       THE CLERK:  HE IS ON HIS WAY DOWN.

26       THE COURT:  ALL RIGHT.  WITH THAT LIMITATION.

27           SO, MR. ROMO IS ON HIS WAY DOWN, AND WE'LL

28   DISCUSS A TRIAL DATE WHEN HE ARRIVES.

1    MR. BENNETT:  YES, YOUR HONOR.

2

3

4                    (BREAK TAKEN.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1      THE BAILIFF:  RETURNING TO THE MC DONALD MATTER.

2      THE COURT:  MR. ROMO IS NOW BEFORE THE COURT.

3          MR. ROMO, THE DEFENDANT HAS MADE APPLICATION TO

4    REPRESENT HIMSELF.  I HAVEN'T APPROVED IT.  I'M ABOUT TO.

5    AND WHEN I DO, IT IS PRESENTLY SET FOR TRIAL TODAY, AND IT

6    IS GOING TO NECESSITATE A CONTINUANCE OF THAT TRIAL.

7          MR. ROMOR:  WELL, YOUR HONOR, I WOULD LIKE TO MAKE A

8    FEW COMMENTS BEFORE THE COURT MAKES ANY KIND OF CONTINUANCE

9    OR GRANTS ANY KIND OF CONTINUANCE.

10      THE COURT:  I HAVE A PRO PER NOW.  I HAVE TO GIVE HIM

11    TIME TO PREPARE.

12      MR. ROMO:  THIS IS THE SECOND TIME HE HAS GONE PRO PER.

13    HE HAS MADE APPLICATION TO GO PRO PER BEFORE AND HE WAS

14    INFORMED AT THAT TIME THAT THE TRIAL WASN'T GOING TO BE

15    CONTINUED AND THAT WAS TWO OR THREE TRIAL SETTINGS BEFORE

16    AND IT APPEARED THAT HE WAS READY, WILLING AND ABLE TO GO

17    FORWARD AT THAT TIME.

18      THE COURT:  WAS HE GRANTED PRO PER STATUS?

19      MR. ROMO:  HE WAS.  INITIALLY, HE WAS ACTUALLY GRANTED

20    PRO PER STATUS.

21      THE COURT:  ACCORDING TO THE MINUTE ORDER, HE

22    WITHDREW THAT REQUEST.

23      MR. ROMO:  HE DID, SORT OF, AFTER THE FACT, ONCE

24    MR. RUIZ HAD A CHANCE TO TALK TO HIM.  BUT FOR AWHILE

25    THERE, HE WAS BY HIMSELF.

26      THE COURT:  FOR "AWHILE"?

27      MR. ROMO:  A MATTER OF HOURS.

28      MR. RUIZ:  IF I COULD ADDRESS THAT.  THE DISTRICT

1  ATTORNEY GOT ASSIGNED THIS CASE

2      THE COURT:  THAT IS NOT A BASIS FOR ME TO DENY

3  PRO PER STATUS AT THIS TIME.  AND THE PRO PER APPLICATION

4  CAN, TO A CERTAIN EXTENT, MANIPULATE INTO THE SYSTEM

5  A CERTAIN AMOUNT OF CONTINUANCES.  THAT IS THE NATURE

6  OF THE BEAST.

7          WE HAVE SEVERAL -- WE HAVE A COUPLE CONSTITUTIONAL

8  ISSUES HERE.  THE RIGHT TO SELF-REPRESENTATION AND THE

9  DEFENDANT'S RIGHT TO A SPEEDY TRIAL.  THEY, UNFORTUNATELY,

10  HAVE A GREATER WEIGHT THAN THE PEOPLE'S RIGHT TO A SPEEDY

11  TRIAL IN THIS CASE.  HE HAS A RIGHT TO BE PREPARED.

12          LIKE I TOLD HIM BEFORE, THAT PERIOD OF PREPARATION

13  IS NOT GOING TO ENTAIL SENDING HIM TO LAW SCHOOL.  IT IS

14  GOING TO GIVE -- IT IS NOT A SIMPLE CASE.  THERE ARE

15  NUMEROUS CHARGES, THE EXTENSIVE PUNISHMENT THAT HE FACES,

16  THERE IS A QUESTION OF WITNESSES.  SO I HAVE TO GIVE HIM,

17  AND I WANT TO GIVE HIM A CERTAIN AMOUNT OF TIME

18  TO PREPARE.  I DON'T HAVE TO GIVE HIM, PERHAPS, AS MUCH

19  TIME AS HE WOULD LIKE, BUT I AM LOOKING AT SIX TO EIGHT

20  WEEKS.

21          AND I AM GOING TO HOLD HIS FEET TO THE FIRE.

22  I AM GOING TO HAVE HIM HERE REGULARLY.  HE MAY OR MAY

23  NOT BE PREPARED IN THAT TIME, AS PREPARED AS MR. RUIZ

24  WOULD LIKE FOR HIM TO BE PREPARED, BUT HE IS ENTITLED

25  TO SOME TIME.

26      MR. ROMO:  WELL, YOUR HONOR, I THINK THAT THE DEFENDANT

27  HAS BEEN AWARE OF THE DISCOVERY IN THIS CASE FROM THE VERY

28  BEGINNING.

1    THE COURT:  THAT IS WHY I AM NOT GOING TO GIVE HIM

2  A LOT OF TIME.

3    MR. ROMO:  AND WE ALREADY ARE GOING TO HAVE HIS ONE AND

4  ONLY, AS FAR AS THE PEOPLE KNOW, WITNESS IN COURT FOR HIM.

5  WE'VE ALREADY ARRANGED THAT.

6    THE COURT:  WHAT ARE YOU SAYING?

7    MR. ROMO:  WHAT I AM SAYING, THERE IS NO LEGAL REASON

8  FOR HIM TO HAVE BEYOND NEXT TUESDAY, BECAUSE THERE IS

9  NOTHING IN THIS CASE THAT IS NEW THAT HE DOESN'T ALREADY

10  KNOW AND HASN'T KNOWN ABOUT BEFORE.  HE SAT THROUGH THE

11  PRELIMINARY EXAMINATION, HE SAW THE WITNESSES WHO ARE ALL

12  VICTIMS OF RESIDENTIAL BURGLARIES, EVERYTHING HAS BEEN OUT

13  IN THE OPEN.  THERE IS NO SECRET DISCOVERY OUT THERE.

14    THERE IS VIRTUALLY NO REASON WHATSOEVER WHY

15  HE CAN'T GO TO TRIAL IN A WEEK, AND I AM ASKING THE COURT

16  TO GO AHEAD AND KEEP THE TRIAL DATE.  THE DEFENDANT DOES

17  NOT HAVE A RIGHT TO MANIPULATE CONTINUANCES WITH THE SOLE

18  AIM TO DISCOMFORT AND GIVE PROBLEMS TO THE WITNESSES IN THIS

19  CASE.  THERE IS A SERIOUS WITNESS PROBLEM IN THIS CASE IN

20  THAT THEY HAVE, FOR FIVE TIMES NOW, BEEN TOLD "NOPE, NOT

21  TODAY."

22    THE COURT:  WHAT ARE THEY GOING TO DO?  TELL YOU "WE

23  HAVE A FIVE TIME LIMIT, AND WE'RE NOT GOING TO COME TO

24  COURT ANYMORE BECAUSE WE ARE WITNESSES AND DON'T HAVE TO

25  COME TO COURT WHEN WE HAVE TO?"

26    MR. ROMO:  I AM NOT SUGGESTING THAT THE COURT IS

27  BEING UNREASONABLE IN GRANTING SOMEBODY THEIR PRO PER

28  STATUS.

1    THE COURT:  I HAVE TO.

2    MR. ROMO:  I KNOW YOU DO.

3    THE COURT:  IT IS NOT DISCRETIONARY, MR. ROMO.

4    MR. ROMO:  BUT I BELIEVE THERE IS A PRECEDENCE, I WILL

5  TRY TO FIND IT, WHEN ON THE EVE OF TRIAL -- THIS IS, IN

6  FACT, THE TRIAL DATE, WHEN SOMEBODY ELECTS TO GO PRO PER

7  ON THE TRIAL DATE, IT IS NOT WITHOUT PRECEDENCE THAT THE

8  COURT SAYS "YOU CAN, BUT YOU ARE GOING TO GO TO COURT TODAY

9  BECAUSE YOU HAVE KNOWN ALL THIS TIME."

10    THE COURT:  EVEN MR. RUIZ IS NOT READY TO GO TO TRIAL.

11    MR. ROMO:  HE IS READY TO GO.  ALL HE NEEDS TO DO IS

12  TALK TO MR. WASHINGTON.  THAT IS ONE THING HE HASN'T DONE.

13  WE CAN -- MR. WASHINGTON IS GOING TO BE OBTAINED ON THE

14  10TH.  WE'RE PREPARING FOR THAT NOW.  MR. WASHINGTON WILL

15  BE AVAILABLE FOR INTERVIEW BY THE DEFENDANT ON -- NO LATER

16  THAN THE 11TH, AS WELL.

17    THE COURT:  OKAY.

18    MR. ROMO:  SO I DON'T SEE WHAT THERE IS AT ALL ABOUT

19  THIS CHANGE IN CIRCUMSTANCES THAT WOULD CAUSE THE

20  CONTINUANCE TO BE LEGALLY MANDATED.  I KNOW YOU HAVE THE

21  POWER AND DISCRETION TO DO IT.  WHAT I AM SUGGESTING IS

22  THIS IS ANOTHER ATTEMPT BY THE DEFENDANT TO MAKE THE

23  PROSECUTION DIFFICULT.  WE

24    ARE GOING TO BE LOSING WITNESSES WHO WILL BE

25  GOING ON VACATION.  A POLICE OFFICER AND OTHER WITNESSES

26  HAVE PREPAID VACATIONS.  THERE ARE ABOUT 16 CIVILIAN

27  WITNESSES IN THIS CASE, SOMEWHERE IN THAT NEIGHBORHOOD,

28  AND THEN FIVE OR SIX LAW ENFORCEMENT.  WE'RE GETTING INTO

VACATION TIME. I AM GOING TO HAVE TO FIND OUT -- IF WE

SET A TIME NOW, I KNOW THAT WE'RE GOING TO END UP

CONTINUING IT AGAIN, IN WHICH CASE WE LOSE A MAJOR WITNESS

WHO IS LEAVING THE STATE TO GO TO SCHOOL.

THE COURT:  YOU JUST TOOK YOUR ARGUMENT AND SLAMMED IT

ON THE FLOOR.

MR. ROMO:  NO.  WHAT I AM SAYING --

THE COURT:  YOU BASICALLY SAID YOU'RE GOING TO HAVE

TO CONTINUE IT AGAIN BECAUSE OF YOUR WITNESSES OR BECAUSE

OF HIS REPRESENTATION.

MR. ROMO:  IF WE GO ANOTHER SIX WEEKS, WE'RE RUNNING

INTO SERIOUS WITNESS SCHEDULING PROBLEMS.

THE COURT:  OKAY.

MR. ROMO:  IF WE GO NEXT TUESDAY, AS WE HAVE, YOU

KNOW, ANTICIPATED EARLIER THIS MORNING, THERE WILL NOT

BE THOSE PROBLEMS.

THE COURT:  IF HE GOES PRO PER, I CANNOT FORCE HIM

TO TRIAL NEXT TUESDAY.

MR. ROMO:  YOUR HONOR, TODAY WAS THE TRIAL DATE.

YOU COULD FORCE HIM TO TRIAL TODAY.

THE COURT:  WITH MR. RUIZ I COULD, AND MR. RUIZ

CONVINCED THE COURT THAT HE NEEDS TO COMPLETE CERTAIN

REPRESENTATION.

MR. ROMO, I AM GOING TO GIVE HIM A BRIEF PERIOD

OF TIME, A REASONABLE PERIOD OF TIME.  I AM OFFERING TO

YOU AN OPPORTUNITY TO HAVE A SAY IN THAT DATE WHICH,

HOPEFULLY, WILL BE ONE -- YOU DON'T EVEN HAVE TO MAKE

THAT DECISION TODAY.  I WILL BRING HIM BACK NEXT TUESDAY.

1   I WILL BRING HIM BACK NEXT TUESDAY, AND WE CAN SET A

2   TRIAL DATE THEN IN APPROXIMATELY FOUR TO SIX WEEKS.

3   THAT WILL COMPLY WITH YOUR WITNESSES' NEEDS.

4       MR. ROMO:  WELL, I UNDERSTAND THE COURT FEELS

5   COMPELLED TO DO IT.  I DON'T FEEL THE COURT IS COMPELLED

6   TO DO IT.

7       THE COURT:  WE'VE RESOLVED THAT, MR. ROMO, MOVE ON TO

8   ANOTHER TOPIC.

9       MR. ROMO:  THE ONLY THING, CAN I ASK TO COME BACK

10  NEXT WEEK SO I CAN HAVE A CHANCE TO TALK TO WITNESSES TO

11  FIND OUT WHAT IS GOING ON WITH THEIR LIVES?

12      THE COURT:  THERE IS THE MATTER OF DISCOVERY.

13  MR. BENNETT MADE A VALID POINT THAT SOME OF THE DISCOVERY

14  MR. RUIZ HAS, HE MAY NOT BE ABLE TO TURN OVER TO THE

15  DEFENDANT.

16      MR. ROMO:  THAT'S CORRECT.

17      THE COURT:  SO THE DISCOVERY THAT YOU PROVIDED HIM,

18  BEFORE IT IS TURNED OVER TO THE DEFENDANT, MUST BE

19  REVIEWED BY THE DISTRICT ATTORNEY.  IT IS THEIR EVIDENCE.

20  THEY CAN REVIEW IT.  THEY CAN REDACT IT.  IF YOU DISAGREE

21  WITH ANY OF THAT, THEN WE CAN HAVE A FURTHER HEARING.  BUT

22  NO DISCOVERY OBTAINED FROM THE DISTRICT ATTORNEY IS TO BE

23  PROVIDED TO THE DEFENDANT UNTIL IT HAS BEEN REVIEWED BY AND

24  APPROVED BY THE DISTRICT ATTORNEY.

25      MR. ROMO:  WE'VE ALREADY SPOKEN BRIEFLY ABOUT THAT

26  BEFORE YOU TOOK THE BENCH.  ALL OF THE DISCOVERY THAT I

27  PROVIDED SO FAR HAS BEEN REDACTED AS TO ADDRESSES AND

28  PHONE NUMBERS FOR THE VARIOUS CIVILIAN WITNESSES, AND

1    ALL OF THE PHOTOGRAPHS, TAPES, LETTERS, THERE IS NO

2    PROBLEM WITH ALL OF THAT, PLUS THE REDACTED REPORTS CAN

3    BE TURNED OVER.

4             THE ONE THING THAT THE PEOPLE ARE GOING

5    TO OBJECT TO IS THE VARIOUS INDIVIDUAL PHONE NUMBERS

6    AND ADDRESS FOR THE WITNESSES.  I PROPOSE THAT IF THE

7    DEFENDANT WANTS TO HAVE ANY OF THESE INDIVIDUALS

8    INTERVIEWED, THE D.A.'S OFFICE WILL MAKE THOSE PEOPLE

9    AVAILABLE TO WHATEVER INVESTIGATOR IS APPOINTED TO

10   ASSIST, AND THOSE INTERVIEWS WILL BE CONDUCT IN THE

11   D.A.'S OFFICE OR POLICE STATION, SO THAT THOSE

12   ADDRESSES REMAIN CONFIDENTIAL.

13        THE COURT:  OKAY.

14        MR. ROMO:  AND THAT IS WHAT I'M ASKING, THAT THE

15   ADDRESSES AND PHONE NUMBERS NOT BE TURNED OVER.  THAT IS

16   THE ONLY THING.  THOSE WERE SUPPLIED IN A SEPARATE LETTER.

17   THAT WAS NOT DISCOVERY, AS SUCH, IT WAS A LETTER TO THE

18   DEFENSE ATTORNEY PERSONALLY.

19        THE COURT:  DO YOU WISH TO BE HEARD AS TO THE

20   LETTER?

21        MR. RUIZ:  I DID SPEAK WITH MR. ROMO, AS HE MENTIONED.

22   I WILL NOT PROVIDE THE LETTER TO MR. MC DONALD.

23        THE COURT:  THAT INFORMATION IS NOT TO BE PROVIDED TO

24   THE DEFENDANT.

25        DEFENDANT'S MOTION TO REPRESENT HIMSELF IS

26   APPROVED.  HE IS HEREBY GRANTED PRO PER STATUS.  PUBLIC

27   DEFENDER IS RELIEVED.

28        THERE WILL BE A STATUS READINESS HEARING ON

DEPARTMENT, TO SET

1    TUESDAY, MAY 11, 9:30 A.M.

2    A TRIAL DATE.

3              THANK YOU COUNSEL.

4        MR. RUIZ:  AND, YOUR HONOR, I AM GOING TO PROVIDE HIM

5    WITH C.D.'S AND PICTURES AND VIDEOTAPES.  I DON'T KNOW IF

6    THE JAIL IS GOING TO ALLOW HIM TO VIEW THOSE ITEMS.

7        THE COURT:  THAT MAY OR MAY NOT BECOME A PART OF

8    HIS PRO PER STATUS.  THAT IS SOMETHING HE HAS TO WRESTLE

9    WITH.

10        MR. RUIZ:  THANK YOU.

11        THE COURT:  THANK YOU

12

13              (ADJOURNMENT IN THIS MATTER.)

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STATE OF CALIFORNIA )
                     ) ss.
COUNTY OF SAN DIEGO )


    I, TAMMY L. NIELSEN, CSR NO. 9143, AN OFFICIAL REPORTER
OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, IN AND FOR
THE COUNTY OF SAN DIEGO, DO HEREBY CERTIFY THAT AS SUCH
REPORTER, I REPORTED IN SHORTHAND THE TESTIMONY ADDUCED AND
THE PROCEEDINGS HAD AT THE HEARING OF THE ABOVE ENTITLED
CAUSE, AND THAT THE FOREGOING TRANSCRIPT, CONSISTING OF
PAGES NUMBERED 0.1 THROUGH 0.29/49, INCLUSIVE, IS A FULL, TRUE
AND CORRECT RECORD OF THE TESTIMONY AND EVIDENCE ADDUCED AND
PROCEEDINGS HAD AT THE HEARING OF SAID CAUSE.



    DATED THIS 25TH DAY OF AUGUST, 2005, AT SAN DIEGO,
CALIFORNIA.



                                    TAMMY L. NIELSEN
                                    CSR NO. 9143
                                    OFFICIAL REPORTER

COPY

1    COURT OF APPEAL OF THE STATE OF CALIFORNIA

2         FOURTH APPELLATE DISTRICT

3              DIVISION ONE

4

5

6    THE PEOPLE OF THE STATE OF    )    FROM SAN DIEGO COUNTY
     CALIFORNIA,                   )    HON. LOUIS R. HANOIAN
7                                  )         JUDGE
              PLAINTIFF            )    COURT OF APPEAL
8             AND RESPONDENT,      )    NO. DO 46887
                                   )    CASE NO. SCE234930
9    VS.                           )
                                   )
10   JOSEPH HILTON MC DONALD,      )
                                   )
11            DEFENDANT            )    MARSDEN MOTION
              AND APPELLANT.       )

12

13

14

15         REPORTER'S APPEAL TRANSCRIPT

16              NOVEMBER 22, 2004

17                 VOLUME 11

18           PAGES 1901 - 1909/2000

19

20   APPEARANCES:

21    FOR THE PLAINTIFF          BILL LOCKYER
      AND RESPONDENT:            ATTORNEY GENERAL
22                               110 WEST A STREET
                                 SAN DIEGO, CALIFORNIA 92101
23
      FOR THE DEFENDANT          OFFICE OF THE PUBLIC DEFENDER
24    AND APPELLANT:             BY:  STACY GULLEY, ESQ.
                                 250 EAST MAIN STREET, SIXTH FLOOR
25                               EL CAJON, CALIFORNIA 92020

26

27
                                 LYNDA S. GOODHUE, CSR NO. 9281
28                               OFFICIAL REPORTER
                                 SAN DIEGO, CALIFORNIA 92101

EXIBIT "D"

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN DIEGO

EAST COUNTY DIVISION

DEPARTMENT 9                              HON. LOUIS HANOIAN, JUDGE


THE PEOPLE OF THE STATE OF
CALIFORNIA,

                    Plaintiff,

vs.                                         Case No. SCE234930

JOSEPH McDONALD,

                    Defendant.


Reporter's Transcript

September 21, 2004

Volume 1

Pages 1 through 17


Appearances:

          For the Plaintiff:        JAMES ROMO
                                    Deputy District Attorney

          For the Defendant:        Pam Lasher
                                    Attorney at law


                                    Dana Peabody, RMR, CRR
                                    CSR Certificate No. 6332
                                    Official Reporter
                                    El Cajon, California

El Cajon, California, September 21, 2004

THE COURT:  People versus Joseph McDonald, SCE234930.

MR. ROMO:  James Romo for the People.

MS. LASHER:  Good morning, Your Honor, Pam Lasher on his behalf.  He is present in custody and before the Court.

THE COURT:  Okay.  This matter was put on calendar actually I guess at your request, Miss Lasher.  You were calling in to ask that the matter be put on calendar.  All is well I hope?

MS. LASHER:  Well, I'm -- yesterday I got a phone call from his girlfriend indicating that it was his desire and through her he was relating the desire to me -- it was his desire that they no longer needed my services.  And given the upcoming trial date, I thought it best that I calendar the matter so we could resolve the issue today.

THE COURT:  Okay.

MS. LASHER:  After our discussions in chambers, I went back and talked to Mr. McDonald.  We didn't have a discussion about me or my services, just at the Court's request I asked what he was anticipating telling the Court, and it appears he would like an appointed lawyer.  Further than that, we did not get.

THE COURT:  Well, so are you making a motion to

11:33:2
11:33:2
11:33:2
11:33:2
11:33:2
11:33:
11:33:
11:33:
11:33:
11:33:
11:33:
11:33:
11:33:
11:33:
11:33:
11:33:
11:33:
11:34:
11:34:
11:34:
11:34:
11:34:
11:34:
11:34:
11:34:
11:34
11:34
11:34

1  be relieved?

2      MS. LASHER:  It wasn't my request.  I think

3  that's his request.

4      THE COURT:  Well, you are his attorney, and if

5  he wants to have you relieved, then it's still your

6  motion, not his.

7      MS. LASHER:  Well, on his behalf then, I guess I

8  am.

9      THE COURT:  Okay.  The problem with that, of

10  course -- well, Mr. Romo, why don't you chime in

11  here.

12      MR. ROMO:  Well, Your Honor, I think the problem

13  is well-known.  This, according to my count, is

14  about the eighth, possibly the ninth date that the

15  trial has been set.

16      THE COURT:  No, I think it's the tenth.

17      MR. ROMO:  It could be the tenth.  All I know is

18  that the Court has been aware for over a month that

19  there were significant witness problems in this

20  case.  Mr. Nicholas Brecht is going to be deployed

21  to the Middle East on October 5th.  He is a

22  necessary witness, identification witness, in the

23  case, and it was well-known to all that he would be

24  available on Thursday and Friday, the 30th of

25  September and the 1st of October for testimony.

26  He's on military leave until the 29th, and he is

27  being shipped overseas on the 5th.  That was made

28  aware not only to counsel but to the Court, as I

1    said, I believe over a month ago. Certainly by the    11:36:0

2    time Miss Lasher was appointed on the case, that    11:36:1

3    fact was made known to the Court and to the defense.    11:36:1

4         I don't find -- it seems to me that this is    11:36:2

5    not a motion that's made in good faith.    11:36:2

6    Mr. McDonald was given pro per status in May, and he    11:36:3

7    selected July 12th as an appropriate date. What    11:36:3

8    happened was he was given pro per status on the 4th,    11:36:4

9    the Court gave me leave to the 11th -- to come back    11:36:4

10   on the 11th to try to find out when all of the    11:36:4

11   witnesses in the case would be available. Everybody    11:36:5

12   agreed that July 12th would be the appropriate date.    11:36:5

13   That was -- if you go back to the record, on 5-11    11:36:5

14   that was the firm date Mr. McDonald says -- said he    11:37:0

15   could be ready, and the Court said you will be    11:37:0

16   ready, you will go. We were before this Court    11:37:0

17   shortly before that date. It might have been on    11:37:1

18   that date. Mr. McDonald convinced this Court that    11:37:1

19   there was still some things that he had to do that    11:37:1

20   he couldn't do. And over the People's strenuous    11:37:1

21   objection, realizing the witness problems we had, it    11:37:1

22   was continued yet again.    11:37:1

23        This time all parties again agreed on    11:37:

24   September 27th. That was also said that is in    11:37:

25   stone, that is going to be it. We have numerous    11:37:

26   civilian witnesses who have been subpoenaed, been    11:37:

27   prepared for trial, have arranged their schedules no    11:37:

28   fewer, as the Court says, 10 times. The public,    11:37:

1    particularly the civilian witnesses in this case,                11:37:5

2    have a right to have their case heard, particularly               11:37:5

3    when we know for a fact that one of them is going to             11:38:0

4    be gone, lost to us, for at least a year, maybe more             11:38:0

5    the way the deployments are being done in the Middle             11:38:0

6    East.                                                            11:38:0

7         So there has been more than reasonable                      11:38:

8    time, there was unreasonable time for the defense to             11:38:

9    be ready for trial, and now one week knowing -- one              11:38:

10   week before the trial date, knowing that we're going            11:38:

11   to be losing Mr. Brecht for good, knowing that we've            11:38:

12   had significant witness scheduling problems with                11:38:

13   another witness who's out of state going to college,            11:38:

14   bringing her in during the semester is not an easy              11:38:

15   thing.  That's asking her to give up a day of                   11:38:

16   college, which she's going to have to make up, and              11:38:

17   now we're saying we're going to have to -- the                  11:38:

18   defense says they want another continuance?  I don't           11:38:

19   find that this is in good faith.                                11:38:

20        And I think that there's plenty of case law               11:38:

21   and cases where the Court finds that this is not                11:38:

22   good faith to deny the continuance.                            11:39:

23        Now, it may be that he has a right to fire               11:39:

24   Miss Lasher.  He was perfectly happy being pro per.           11:39:

25   He can either be pro per or the Court can reappoint            11:39:

26   Miss Lasher as his appointed attorney, but I don't            11:39:

27   see any reason why we can't go to trial on the 27th.         11:39:

28   We've had almost a year to prepare for this case,            11:39:

1  this is not a very difficult case factually.  As a
2  matter of fact, it's one of the simplest cases that
3  there are, factually.  There are no significant
4  legal issues.  Quite frankly there's no reason in
5  the world why we need to continue this case for any
6  reason.
7       MS. LASHER:  Your Honor, understanding that I'm
8  retained, and even Mr. Romo indicated, I guess,
9  Mr. McDonald would have an automatic right to fire
10 me, I think that perhaps the Court outside the
11 presence of the DA's office could listen to what
12 Mr. McDonald's complaints might be to determine
13 whether or not it's good faith given the issues
14 involved relating to whether this is a good faith
15 request or not.
16      THE COURT:  Well, *Marsden* hearings don't happen
17 in retained counsel cases, and that's almost what
18 you're asking the Court to do is to conduct a
19 *Marsden* hearing on retained counsel.
20      And I haven't heard any basis upon which,
21 you know -- doesn't sound as if we're dealing with a
22 financial issue.  This is not a matter of not being
23 paid or not being an ability to pay.  You know, he
24 may want to control things that you don't want him
25 to control, and that's going to happen any time that
26 there's an attorney present, but what I'm going to
27 do is I have -- I've looked over the procedural
28 history of this case.  This case is coming up on a

1    year, You know, since the alleged offenses had
2    occurred.  The complaint was filed in November of
3    this year with appointed -- and counsel was
4    appointed for Mr. McDonald and Mr. Gulley and then
5    Mr. Ruiz.
6          THE DEFENDANT:  Can I talk yet?
7          THE COURT:  Not yet.
8          THE DEFENDANT:  I want to talk, too.  I want to
9    have a chance.
10         THE COURT:  I'm going to give you a chance to
11   talk because you're going to have to make a decision
12   when I'm done talking.
13         THE DEFENDANT:  All right.
14         THE COURT:  Because I'm making some findings now
15   with regard to the procedural history of the case.
16              And originally a trial date was set for
17   January of this year, January 26th with -- and the
18   Public Defender was on the case, Mr. Ruiz was on the
19   case, and he was prepared for trial.  They continued
20   the trial to the 1st of March of this year.  Then on
21   the 1st of March the trial date was continued until
22   the 22nd of March.  Then on the 12th of March the
23   trial date was continued to the 26th of March.  That
24   was the third time that the trial date had been
25   continued.  On the 12th of April the trial date was
26   continued to the 4th of May, which is the fourth
27   continuance.  On the day of trial, on the 4th of
28   May, the defendant moved to have the Public Defender

1  relieved. That was denied. He was granted pro per   11:42:?

2  status, and the matter was trailed till the 11th of   11:42:?

3  May for the setting of another date. Actually this   11:42::

4  is the first continuance. On the 11th of May with   11:42::

5  Mr. McDonald in control at that time, he having been   11:42:

6  granted pro per status, the matter was continued   11:42:

7  till the 12th of July, which was the sixth time that   11:42:

8  the trial date had been changed or continued.   11:42:

9        On the 27th of May the defendant filed his   11:42:

10  170.6, and Judge Preckel was taken off the case, and   11:43:

11  then the matter was assigned to me on the 28th of   11:43:

12  May for all purposes, and we met at that time, and I   11:43:

13  told you, Mr. McDonald, that the time, that the 12th   11:43:

14  of July, was going to be a firm trial date, there   11:43:

15  wasn't going to be any continuances at that time.   11:43:

16  We had a readiness conference, several readiness   11:43:

17  conferences, we had one on the 10th of June where   11:43:

18  you had some experts lined up to examine some   11:43:

19  fingerprint evidence, and then we had another status   11:43:

20  conference on the 22nd of June. And at that time   11:43:

21  you and I discussed outside the presence of Mr. Romo   11:43

22  some course of investigation that you were taking   11:43

23  that required that we continue the case again, and   11:43

24  over, if you will recall, vehement objections of   11:43

25  Mr. Romo, I continued -- I granted your continuance   11:43

26  request. At that time I said I was going to   11:43

27  continue the case based on that and that we were   11:44

28  going to set it off for two weeks before we selected   11:44

1  a date even.  We didn't select the date on that

2  date, but I did notify Mr. Romo that I was going to

3  be granting you a continuance so you could pursue

4  your course of investigation.  And I would give him

5  time to figure out when he could get all of his

6  witnesses available because he had the witness

7  problems then that he has now, only he didn't have

8  them quite as serious as they are now.

9          So we met on the 12th of July, which was

10  the previously set trial date, set the matter for a

11  trial date of the 27th of September, and you will

12  recall that I said that under no circumstances will

13  this matter be continued again, and you were the

14  trial attorney at the time, and you agreed, and you

15  took part in selecting that date, and said you were

16  going to be ready, that you weren't going to need

17  any more time.  In fact, you know, based upon what I

18  had observed of your knowledge of the case and your

19  mastery of the factual and procedural aspects of

20  this case, that aside from pursuing your other line

21  of investigation, that you were ready to go then in

22  July.

23          Then you come back -- we come back a month

24  later on the 12th of August, and Miss Lasher comes

25  in as retained attorney, and I informed you at the

26  time that I was not going to be granting any

27  continuances of the matter before I accepted

28  Miss Lasher's, you know, coming into the case or

11:44:0
11:44:1
11:44:1
11:44:1
11:44:2
11:44:2
11:44:2
11:44:2
11:44:3
11:44:3
11:44:4
11:44:4
11:44:4
11:40:0
11:44:
11:44:
11:44:
11:45:
11:45:
11:45
11:45
11:45
11:45
11:45
11:45
11:4
11:4
11:4

1   substitution in because you had waived your right to    11:45:

2   counsel as of the 12th of August.  You had been in    11:45:

3   charge of the matter for more than three months at    11:45:

4   that time, three months and a week, and you had    11:45:

5   completed all the investigation that needed to go,    11:45:5

6   and I was of the impression that if we were going to    11:45:5

7   trial on the 12th of August, you'd have been ready    11:45:5

8   to go, and you wanted Miss Lasher to represent you,    11:46:

9   and that's fine.    11:46:

10          But at that point you gave up your right to    11:46:

11  represent yourself and retain counsel, which is, of    11:46:

12  course, your right to be represented by counsel.    11:46:

13  But you'd already waived your right to counsel    11:46:

14  previous to that.  And I allowed her to come in with    11:46:

15  the proviso that there was not going to be a    11:46:

16  continuance of this case, and she said she could be    11:46:

17  ready, and from what I've heard so far today, she    11:46:

18  will be ready to try this case on Monday.    11:46:

19          Now, today for the first time one week    11:46:

20  before the date that is set for trial where Mr. Romo    11:46:

21  has witnesses that are going -- that are coming in    11:46

22  from out of state that have had to have been    11:46

23  subpoenaed that are disrupting their lives to come    11:46

24  in here based upon the continuance that we granted    11:46

25  in July, and another person is going to become    11:46

26  unavailable shortly after this trial begins, which    11:46

27  means there is a very small window when we can get    11:46

28  this person in.  You want to fire your retained    11:47

1  attorney and then ask me to appoint you counsel.                    11:47:(
2  And frankly I'm not inclined to do that.                            11:47:(
3          You know, her withdrawal or having her                      11:47::
4  removed as counsel is within my discretion, and I                   11:47::
5  don't have to necessarily grant that, but if I were                 11:47::
6  to grant her withdrawal from the case and you're                    11:47:
7  asking for a new appointed counsel, I have to give                  11:47:
8  appointed counsel an opportunity to prepare for the                 11:47:
9  trial, and there's no way that any appointed counsel                11:47:
10 is going to walk in and say I'm ready in a week.                     11:47:
11 That just isn't going to happen unless of course I                  11:47:
12 appoint Miss Lasher, which I guess is one of the                    11:47:
13 things I could do, but, you know, I haven't heard                   11:47:
14 anything that there's a reason that she's being                     11:47:
15 relieved because there's a problem financially.                     11:47:
16 Yes, Mr. McDonald?                                                  11:47:
17       THE DEFENDANT:  First of all, I was provided                  11:47:
18 with Mr. Stacy Gulley to start off with back in                     11:48:
19 November.                                                           11:48:
20       THE COURT:  Yeah.                                             11:48:
21       THE DEFENDANT:  I didn't ask to be relieved of                11:48:
22 him.  For some reason, unbeknownst to me, he was                    11:48:
23 relieved, he was taken off the case.  Nobody                        11:48:
24 conferred with me or nothing.  As soon as I came in                 11:48:
25 the courtroom, I had a whole nuther attorney that                   11:48:
26 didn't know nothing about the case.                                 11:48:
27       THE COURT:  You had Mr. Ruiz.                                 11:48:
28       THE DEFENDANT:  I was perfectly satisfied to Mr.              11:48:

Case 3:08-cv-00652-L-PCL    Document 1-2    Filed 04/09/2008    Page 110 of 125
Case 2:08-cv-02150-CJC-MLG    Document 1-3    Filed 04/01/2008    Page 20 of 105

11

1  Gulley. To this day I don't have no explanation of

2  why he was taken off my case. Mr. Ruiz was not

3  prepared to proceed with any type of motions that

4  Mr. Gulley prepared, he didn't have ample enough

5  time or anything, so I've been prejudiced all

6  throughout this case, and as my constitutional

7  rights, I have a right to be, you know, defended

8  competently at all stages of my case.

9      THE COURT: That's true.

10      THE DEFENDANT: I'm the one facing 26 years

11  here. And what I'm trying to do is just get

12  competence in my case. It's not -- this is not no

13  simple case where, you know, it's -- you know, a

14  couple years. This is 26 years of my life, so I'm

15  going to fight for my life, and I want to have a

16  person on the side of me that's going to defend me

17  properly. That's period, you know. And if it

18  prejudice the DA, well, that's his job. I'm saying

19  this is 26 years of my life that I'm facing.

20      THE COURT: Well, I mean we're going back. Mr.

21  Gulley is a member of the Public Defender's office,

22  and the Public Defender assigns attorneys to cases,

23  whatever their rules are.

24      THE DEFENDANT: But that prejudiced me. Nobody

25  conferred with me. I didn't sit here and cry and

26  complain and say well, what happened to my attorney?

27  I went with the flow because that's all I had to do.

28      THE COURT: Okay.

11:48:2
11:48:2
11:48:2
11:48:3
11:48:3
11:48:3
11:48:3
11:48:4
11:48:4
11:48:4
11:48:4
11:48:5
11:48:5
11:48:5
11:48:
11:49:
11:49:
11:49:
11:49:
11:49
11:49
11:49
11:49
11:49
11:49
11:4
11:4
11:4

1    THE DEFENDANT:  Now, I hired an attorney to try

2    to defend me, and we come to trial, and it's not

3    even express with my wishes.  It's like she was not

4    prepared to present my side of the story.  I want to

5    have a person sitting on the side of me that's going

6    to represent me, period.  I'm facing 26 years now.

7    If a lot of people's math, I can't deal with that.

8    I'm the one that's going to have to do the 26 years

9    if I get found guilty.

10    THE COURT:  That's right.

11    THE DEFENDANT:  So all I'm hearing here is

12    somebody's going to Afghanistan or wherever they're

13    going.  I'm going to prison if I get found guilty

14    for 26 years.

15    THE COURT:  Well, I don't know how long you're

16    going to prison or even if you're going to prison.

17    THE DEFENDANT:  That's what I'm saying.  I'm

18    telling you how long I'm facing.

19    THE COURT:  I understand your exposure may be 26

20    years.

21    THE DEFENDANT:  I'm kind of mad and enough said

22    here too.  This is no funny game or something.  This

23    is a person's life that we're talking about right

24    here.

25    THE COURT:  Yeah, and it's one of those things

26    where you hire an attorney in August with the idea

27    that that person who you have --

28    THE DEFENDANT:  Right, and it didn't come -- it

11:49:3
11:49:3
11:49:3
11:49:3
11:49:4
11:49:4
11:49:5
11:49:5
11:49:5
11:49:5
11:49:5
11:49:5
11:50:0
11:50:0
11:50:
11:50:
11:50:
11:50:
11:50:
11:50:
11:50:
11:50:
11:50:
11:50:
11:50:
11:50:
11:50:
11:50

1  didn't pan out that way.  If you hire a person and               11:50:3

2  it doesn't do a job, you're going to do what you got            11:50:3

3  to do, too.  Damn who cares about it.  All I'm                   11:50:3

4  asking is to have a person on the side of me to                  11:50:5

5  represent me competently.                                        11:50:5

6      THE COURT:  You're asking the Courts to delay                11:50:5

7  again after two times.  You were represented by                 11:50:5

8  attorneys in the past, and you fired the attorneys.             11:50:5

9  You decided to represent yourself.  You decided                  11:51:0

10 against that.                                                    11:51:0

11     THE DEFENDANT:  The first attorney did three                 11:51:0

12 continuances.  Came from the first attorneys, Stacy              11:51:0

13 Gulley, one he was having a baby, one some other                 11:51:

14 thing.  One Mr. Romo was busy convicting my                      11:51:

15 codefendant somewhere else, so he granted a                      11:51:

16 continuance for him, too.  These are not all                     11:51:

17 continues on my behalf.  You make it seem like I'm               11:51:

18 the one getting all these continues.  No, the DA has             11:51:

19 been getting his continuances, and Mr. Gulley had                11:51:

20 his continuances to take care of his family                      11:51:

21 business.  I'm not the bad guy.  I'm sitting here                 11:51:

22 trying to defend myself competently.  That's it.                 11:51

23 That's all I'm asking.  Why is everybody trying to               11:51

24 make it seem like I'm the one causing problems?  All             11:51

25 I'm trying to do is get a competent person on the                11:51

26 side of me I feel competent with, go to trial, get               11:51

27 it out the way.  Simple.  Very simple.                           11:51

28     THE COURT:  Well, you say competent and defend               11:51

1   my way.  Those are --

2       THE DEFENDANT:  I'm saying competent because

3   that -- as you know, when I was representing myself,

4   I was telling you that I did not stay at this

5   residence.  When she came in last week, what did she

6   say?  Oh, the defendant was staying at this

7   residence.  She did not confer with me, and that was

8   not my wish.  I'm saying I did not stay with this

9   crooked investigator said I said.  She says well,

10   yeah, you know, he says some things to the

11   investigator.  These are entirely against what I was

12   trying to put together.  I have not had my

13   codefendant subpoenaed down here yet.  I have not

14   came across a couple witnesses I need to proceed.  I

15   have other avenues that I'm hiring an attorney to

16   do, and these have not been met.  I am not ready to

17   proceed.

18       Now, I'm not trying to, you know, give you

19   a hard time or nothing like that.  I'm just trying

20   to go and proceed competently.  That's it.  I want

21   to be on the same playing field as the DA.  They got

22   all their ducks in a row, as he keeps saying, but I

23   don't have mine.  So who's prejudiced here?  And I'm

24   the one that's going to do the 26 years if I am

25   found guilty.  It's very simple.

26       THE COURT:  Mr. Romo.

27       MR. ROMO:  Your Honor, the problem is is that

28   the facts are the facts.  The People's witnesses is

```
 1    going to say that he heard from the defendant's          11:53:1
 2    parole officer that the defendant said that he was       11:53:2
 3    living there.  And the defendant has every               11:53:2
 4    opportunity to cross-examine the parole officer who      11:53:2
 5    has been subpoenaed.  Are you lying or what?  I mean     11:53:3
 6    the fact that he needs investigation as to whether       11:53:3
 7    or not the parole officer said that to the officer       11:53:4
 8    or not, that's something that could have been            11:53:4
 9    done in January.  That was part of the original          11:53:4
10    discovery.  He indicates that he's looking for           11:53:4
11    witnesses.  Everybody's got -- whether it's the          11:53:5
12    defendant here, whether it's Westerfield, I don't        11:53:5
13    care what you're facing.  You've got so much time to     11:53:5
14    find witnesses, and if you don't find them, there's      11:54:0
15    got to be some good reason or some efforts that          11:54:0
16    you're showing that you might ever find them.  If        11:54:0
17    there's something that is keeping the defendant from     11:54:1
18    finding these witnesses, whoever they are, whether       11:54:1
19    they're character witnesses or whether they're           11:54:1
20    witnesses to where he was living at that time,           11:54:2
21    there's nothing to indicate whether or not there's       11:54:2
22    been good faith effort on that part or if there has      11:54:2
23    been -- whether these witnesses are ever going to be     11:54:2
24    found.                                                   11:54:3
25              So in that case are we saying that we will     11:54:3
26    just keep postponing this trial?  10 years from now      11:54:3
27    he's still saying I'm looking for these witnesses,       11:54:3
28    it's still 26 years of my life.  I mean we've had        11:54:4
```

1    more than enough time, and that's what I said    11:54:4

2    about -- it was more than reasonable time for all of    11:54:4

3    this to be done.  And if it isn't done, then -- then    11:54:4

4    it's not -- it's at some point you just have to cut    11:54:5

5    it off.  You can't always be adding time or else in    11:55:0

6    every single case it would be a simple thing.  The    11:55:0

7    defense would just say well, Your Honor, I'm looking    11:55::

8    for Mr. So who I know will exonerate me.  The fact    11:55::

9    of the matter is Mr. So is either nonexistent or    11:55:

10   moved to another state or can't be found, but we'll    11:55:

11   just keep continuing this case out ad infinitum    11:55:

12   until -- well, until all the people's witnesses die    11:55:

13   or I die or something.  But the fact is is that    11:55:

14   we've had more than enough time --    11:55:

15       THE DEFENDANT:  Your Honor --    11:55:

16       MR. ROMO:  -- to find witnesses.  And unless    11:55:

17   there's a showing of due diligence, unless there's    11:55:

18   some indication that these witnesses even exist,    11:55

19   that this isn't just some contrived defense, then I    11:55

20   don't see any good faith in continuing this trial.    11:55

21       MS. LASHER:  Your Honor, perhaps I can enlighten    11:55

22   the Court, but I prefer to do that outside the DA's    11:56

23   office.    11:56

24       THE COURT:  Well, we'll take this up at two    11:56

25   o'clock this afternoon.    11:56

26       MS. LASHER:  I have a 1:30 matter downtown.    11:56

27   Could we do it at 2:30?    11:56

28       THE COURT:  2:30.    11:56

1    MS. LASHER:  Thank you.

2    (The proceedings were concluded.)

11:56:1

STATE OF CALIFORNIA          } SS
COUNTY OF SAN DIEGO

People vs. JOSEPH MCDONALD, Case No. SCE234930

I, Dana Peabody, CSR No. 6332, an official reporter of the Superior Court of the State of California, in and for the County of San Diego, hereby certify that I reported in machine shorthand the proceedings had in the above-entitled cause, and that the foregoing transcript, consisting of pages numbered 1 through 17, inclusive, is a full, true, and correct transcript of the said proceedings held on September 21, 2004.

Dated at Wilton, New York, this 2nd day of May, 2006.

Dana Peabody
CSR No. 6332

1    not what he was there for.

2    Ms. Lacher: Thank you, your honor (II RT, p. 109, 2-12). The

3    question then segued into other matters not relevant to

4    appellant's complaint. The next relevant testimony is (II RT,

5    p. 121, 2-7)

6    Ms. Lacher: Well did you impose any sanctions upon him?

7    Mr. Burgert: Yeah, we restructured him, he is a juvenile ward.

8    We restructered him. We talk to them. We try to encourage

9    them to change their behavior. I mean there is other incidents

10   that there was violation of behavior but you didn't ask me

11   about those. (Continued on (II RT, p. 124, 24-27)

12   Ms. Lacher: Do you remember a discussion between you and

13   Mr. McDonald concerning him having to ask his adult parole

14   officer after asking you to live there?

15   Mr. Burgert: I believe during our conversation on November 4th

16   that I instructed him to contact his C.D.C. parole agent.

17   (Continued during redirect examination of Mr. Burgert by the

18   prosecutor on (II RT, p. 126, 26-28)

19   Mr. Bowman: Sir, you mentioned at one point ... or actually you

20   were questioned by Ms. Lacher regarding a C.D.C. parole agent.

21   Do you recall? (Continued on II RT, p. 127, 1-12)

22   Mr. Burgert: Yes.

23   Mr. Bowman: Are you his C.D.C. parole agent?

24   Mr. Burgert: No, I am California Youth Authority.

25   Mr. Bowman: Okay, so when we talk about C.D.C. parole agent we

26   are talking about a different parole agent?

27

28

1   Mr. Burgert : California Department of Corrections .

2   Ms. Bowman: Okay  so he had a C.D.C parole agent and you correct.

3   Mr. Burgert : Correct.

4   Mr. Bowman : Both of you were supervising him simultaneously?

5   Mr. Burgert Correct .

6

7   the Prosecutor  then questioned  Mr. Burgert about other things

8   unrelated to appellants complaint. The next line of testimony

9   relevant to appellant complaints is ( II Rt P. 132 - 10 -22)

10   Mr. Bowman : and you could have arrested Mr. McDonald right

11   then and there on the 4 th correct ?

12   Mr. Burgert : Yes.

13   Mr. Bowman: And did you do that ?

14   Mr Burgert : No.

15   Mr. Bowman : Why not ?

16   Mr. Burgert : It seemed like there was  ---- because they are

17   youthful offenders - they committed the crime prior to the age

18   of 18 we treat them somewhat differently than if they were an

19   adult age. We have the necessary skills to recognize that they

20   have to maintain consistent and regular communication.

21   And the last relevant testimony is continued on ( II Rt P. 134,

22   27- 8 and P. 135, 1-8 )

23   Ms. Lacher : And you indicated when I was doing my cross-

24   examination that Mr. Mcdonald had many violations in ( continued

25   on P. 135, 1-8 ) your mind correct ?

26   Mr. Burgert : Yes.

27   Ms. Lacher : Can you tell us what those were ?

28

1    Mr. Burgert: He last had violations for they have been

2    anywhere from minimum to serious. They have been infractions

3    they have been misdemeanors they have been felonies- they have

4    been drug related. They have been so serious that he got sent

5    to prison as a adult.

6

7    Appellant told his trial counsel to file for mistrial (III Rt

8    P. 264-273) as a result of the above testimony provided by Mr.

9    Burgert.         the prosecutor made the following statement:

10   Mr. Bowman : I am not certain your honor and my understanding

11   is and this is all second hand that he Mr. Burgert was the C.Y.A.

12   parole agent and I actually instructed him not to mention the

13   fact that he was on parole for a robbery that occurred previously

14   and I was very specific in my questioning that he is a parole

15   agent and did not get into his other conviction that he had

16   which is when he was 14 years old. And I told him not to mention

17   any gang affiliation and all that.the case was closed when -

18   Ms. Lacher : When he turned 25. ( II Rt P. 143 )

19   The appellant addressed the court:

20   The Defendant : I have something brief. I have something just

21   very brief. The D.A. said he had instructed him not to say

22   anything about my past record due to the fact that he did say

23   I was locked up on several prior occasions- drugs - gangs- he

24   mentioned all that. I feel that prejudice me right in front

25   of the jury and that should be grounds right there alone for

26   a mistrial. (IIRT P. 147)

27   The court : If you want to talk to your attorney before that

28   motion is made and it's going ---if it's going to be made it

1    is going to be made by her, but it was in response to her

2    question that he gave that particular answer. So, anyway talk

3    to her. we will talk about this thing tomorrow we will

4    meet back up here at 8:45. actually, no. it will be 9:00 clock.

5    and if there is going to be a motion we will take it up at the

6    break in the morning.

7

8    The actual request for a mistrial was on ( III RT P. 264- 273)

9

10   As noted during the mistrial hearing some of the testimony

11   provided by Mr. Burgert was                    . such as the misdemeanors
     and drug violations ( III Rt P. 269 ). But also the appellant

12   would add that 1) none of what the CYA parole officer testified

13   to was verified; 2) The parole officer did testify about
     appellants conviction when he was a juvenile ( II Rt P. 121

14   II Rt P. 132 ); 3) The appellant was not proven to be in the

15   sober living home becuase of a drug problem. The appellant was

16   housed there because of the fact appellant had no home to parole
     to when appellant was paroled from CYA.

17   As shown on the record there was never any "proof" of the

18   allegations made by the parole officer concerning him violating

19   appellant for misdemeanors and drug issues. And this alleged
     county jail time violation, as well as prison violation.

20   Specifically dealing with " Mr. Burgert " not anyone else. Thus,

21   the assumption of the trial court that there was " drug " issues

22   is pure speculation. and the further opinion ( III RT P. 272,

23   2- 28 ). Which the appellant agrees with, is the fact that yes,
     there was numerous " things " waiting to come out that would

24   " prujudice " and paint the picture of appellants character"

25   that would further slam appellant chance at a fair trial as
     appellant has shown elsewhere in this appeal. However, appellant does

26   not argue that the court should have granted the mistrial, But

27   only that again counsel has rendered appellant ineffective

28   assistance of counsel.

1   B. Appellants counsel rendered Ineffective assistance of counsel

2   when she did not object to the prosecutor request to bring out

3   appellant parole status, and request to identify appellants

4   residence as a drug program; and did not file a suppression

5   motion concerning statements made by appellant to his parole

6   officer and any past convictions, conduct, or incidents concerning

7   appellants juvenile delinquency.

8   VIOLATION :

9   Defense counsel has the basic duty to carefully investigate

10  all available defenses of fact and law. In re Jones ( 1996 )

11  13 Cal. 4 th 552, 54 Cal rptr. 2d 52 917 P. 28 1175.

12  In Re Cordero ( 19 88 ) 46 Cal. 3d 161, 187, 249 Cal Rptr. 342,

13  756 P. 2d 1370.

14  _____

15  Appellant contends that his trial counsel should have

16  investigated available defense of fact and law and brought forth

17  a motion to surpress appellants statements. In Minnesota v.

18  Murphy 465 U.S. 420, 436 ( 1984 ) The supreme court explained

19  if a state attaches [t]he threat of punishment for reliance

20  on the priviledge " against self¬ incrimination by asserting

21  Either " expressly or by implication ...   .          The

22  Probationers answers would be deemed compelled and inadmissible

23  in a criminal prosecution" Id at 435 ( emphasis added ).

24  _____

25  As a general rule the [ Fifth ] Amendment speaks of compulsion

26  .. If [ an individual ] desires the protection of the priviledge

27  he must claim it or he will not be considered to have been

28  Compelled " within the meaning of the amendment ". ( Quoting

1  Untied States v. Monia, 317 U.S. 424, 427 (1943) ( First

2  alteration in the original) ( internal quotation marks omitted.)

3  There are however, exceptions to this rule. The court has held

4  that if an individual subjected to a practice that " defines

5  [ him]... a free choice to admit, to deny, or to refuse to answer;

6  " then any statement he makes is considered involuntary and

7  cannot be used in a criminal proceeding - Garner v. United States

8  424 U.S. 648, 657 ( 1976 ) ( quoting Lisenba v. California,

9  314 U.S. 219, 214 ( 1914 ). In these cases the fifth amendment

10  is considered " self executing ; and an individual does not

11  need to invoke it in order to have his admissions surppressed

12  in an ensuing criminal prosecution. Murphy- 465 U.S. at 435.

13

14  Here, the appellant was under investigation by detective Hartman,

15  in which detective Hartman contacted appellants parole officer

16  Jim Burgert November 4, 2003 ( V Rt P. 512 ) and as a result,

17  Mr. Burgert contacted detective Hartman later on that day and

18  provided statements by appellant to his parole officer

19  Mr. Burgert concerning the troy st. residence ( V Rt P. 514-

20  515 .) In which Mr. Burgert Questioned appellant about ( II

21  Rt P. 106- 108 ) Mr. Burgert was actively participating in the

22  investigation of appellant ( II Rt. P. 130 )

23

24  The fact that stolen property was recovered from the residence

25  on troy street, warranted appellants counsel duty to investigate

26  and possibly file a motion to suppress any and all statements

27  made by appellant to parole officer concerning the residence,

   The statement being compelled because they were in response

28

1   to questions asked of appellant from his parole ( II

2   Rt P. 106- 108 ) which appellant was not free to invoke his

3   fifth amendment right to silence, and based on the fact that

4   the parole officer then provided appellant statements to

5   detective Hatman which detective Hartman sought to use against

67  appellant in a criminal proceeding ( V Rt P. 514- 515')

7

8   **Secondly**, appellants trial counsel should have objected to

9   appellants parole status being made known because of the highly

10  prejudicial impact it would have on appellants character- the

11  fact that appellant was on parole implied that appellant already

12  stood guilty of committing some prior bad act and thus appellants

13  right to stand innocent until proven guilty would seriously

14  be impaired as a result of the knowledge of appellants Parole status. Trial

15  counsel should have requested testimony only that appellant

16  and Mr. Burgert had a professional relationship, which would

17  have protected appellant from the prejudicial impact ; the

18  knowledge of appellants parole status would cause; and also

19  allowed for any testimony relevant to the matter of appellants

20  residence without the irrelevant prejudicial evidence. It was

21  counsels duty to object to evidence that might prejudice

22  appellant and advocate the best interest of her client, the

23  appellant . The complained of testimony re appellants parole

24  status ; juvenile deliquency - housing in a " drug program;

25  misdemeanors, county jail time, C.Y.A. incarceration and other

26  alleged minor to serious incidents testified to by Mr. Burgert,

27  damaged appellants character and right to a fair trial. ( U.S.C.A

28  . 5 th and 14 th amends ) defense counsel should be aware of

1  the picture that the defendant presents to the jury and quickly

2  bring to the courts attention anything that would tend to

3  prejudice the defendant in the jury's eyes. People v. Taylor

45  ( 1982 ) 31 C3d 488, 495, 183 CR 64.

5

6  Also see People v. Wheeler ( 1992 ) 4 cal 4th 1084 1091, 1092.

7  Wheeler cautioned that in particular, when the courts are

8  confronted with evidence of past misconduct other than a felony

9  conviction they " should consider with particular care whether

10  the admission of such evidence might involve undue time,

11  confusion or prejudice which out weighs it's probative value."

12  ( Id at 296 - 297 . Fr. omitted.) " [I]mpeachment evidence other

13  than felony convictions entails problems of proof- unfair

14  surprise and moral turpitude evaluation which felony convictions

15  do not present. ( Id. at 296 )

16

17  As argued, the misdemeanors, drugs and past minor to serious

18  ( III Rt P. 134- 135 ) violations were never proven and were

19  not felonies. Also, appellants counsel lack of request to exclude

20  such testimony, or objection to said testimony, did not allow

21  for trial courts interruption and possible curative instruction

22  or ruling to bar such testimony. Therefore, the challenged

23  statements were directly a result of appellant's trial counsels

24  incompetence, as is noted by the trial court ( III Rt P. 266

25  ). In which the court alluded to the fact that counsel had asked

26  the question that got the response ...

27

28  The statements made by appellant parole officer Jim Burgert