1   were prejudicial because there were not any curative jury

2   instructions concerning the challenged statements which allowed

3   for jury to use the challenged statements as evidence of

4   appellants bad character and thus tending to prove appellant

5   was a person capable and prone to commit such crimes...

6        The lack of such curative instructions to the jury con-

7   cerning the parole officer's statements deprived appellant of

8   his due process rights of the U.S.C. 5th and 14th Amendments

9   and should have been objected to by appellant's trial counsel

10  Pamela Lacher. (See People v. Fosselman (1983) 33 Cal.3d 572,

11  582, 189 Cal.Rptr. 855, 659 P.2nd 1144 (defense counsel failed

12  to object to prosecutorial misconduct, including inflammatory

13  characterization of defendant and statements of personal belief

14  based on facts not in evidence); (see also Crotts v. Smith (9th

15  Cir. 1996) 73 F.3d 861 (evidence was prejudicial to defendants

16  because case turned on credibility of witnesses, and evidence

17  of defendant's boast made it more likely that the jury would

18  believe other witnesses rather than defendant and would believe

19  that defendant was kind of person who would assault police

20  officers).)   See evidence code section 1101(a) (evidence of

21  prior conduct generally inadmissible to prove conduct on

22  specific occasion).

23       An objection by appellant's trial counsel would have at

24  least preserved the issue for appeal. Failure to object to

25  error which resulted in waiver of review may constitute

26  ineffective assistance of counsel. (People v. Scott (1994) 9

27  Cal.4th 331, 356 fn. 18; People v. Cooper (1991) 53 Cal.3d 771,

28  831; People v. Malone (1988) 47 Cal.3d 1, 33.)

Appellant also contends that should the respondant argue that appellant

because trial counsel failed to make a due process objection, Appellant asserts review is

not waived and includes his argument in  4, and 6, as though fully set forth herein and in

addition to above arguments points and authorities, as far as they address appelate review

sppropriate despite an objection from appellant's trial counsel.

. For all of the above reasons points and authorities the appellant respectfully request that

. this court reverse his conviction for challenged count(s)  1and 2.

.

).

10.

11.

12.

13.

14.

15.

16.

17.

18.

19.

20.

21.

22.

23.

24.

25.

1. ARGUMENT #9

2. THE CUMULATIVE EFFECT OF ALL THE CHALLENGED EVIDENCE AND MISCONDUCT DENIED

3. APPELLANT HIS RIGHT TO A FAIR TRIAL GUARANTEED UNDER THE UNITED STATES CONSTITUTION 5th & 14th.

4. Applying the above arguments, points and authorities, it is evident that appellant

5. was denied several constitutional provisions. Appellant concedes that, any one

6. of the government prosecutors acts of misconduct although error, might indeed

7. have been accidental or unintentional, albeit harmless. But when all of them are

8. combined, however, the effect was to deny appellant his right to a fair trial

9. guaranteed to him by the due process clauses of the UNITED STATES and CALIFORNIA

10. CONSTITUTION. (see People v. Rodgers (1979) 90 Cal. App. 3d 368, 372 153 cal.

11. Rptr. 382, and citations contained therein.)

12. The question of appellants guilt depended greatly on the jury's determination

13. of the relative credibilty of witnesses. The evidence in count's 1 and 2, was

14. minimum at most. Appellant testified he was not present during the commission of

15. the crimes and was not a participant. Further, evidence re co-defendant's finger

16. prints were found at the HAVERN residence i.e., count #1. Which was undisputible

17. evidence that connected Mr. WASHINGTON to that crimes commission. Absent the

18. numerous acts of misconduct by the prosecutor, appellant could have prevailed

19. on the challenged counts. In contrast, on count #2, the co-defendant's statement

20. was not corroborated, in that the prosecutor's own witness added reasonable doubt

21. as to appellant's involvement in that crime. The witness JEFF HANNIGAN, provided

22. an accurate account of pertinent facts, such as the license plate of the vehicle

23. HANNIGAN saw leaving the scene, the exact height of appellant's co-defendant

24. TONY WASHINGTON (IIRT P.97-9) as well as the beads he saw in WASHINGTON'S hair,

25. and HANNIGAN testified that the second individual that he had seen was "shorter"

26. than the first individual (IIRT P.92)    (216 and 291)

27. The defendant was known as the taller of the two (RT 181-200), at 6'2, 204 pounds,

28. which would make it physically impossible for appellant to be that second "shorter

1. person that HANNIGAN had seen at the scene of the BURNS certified

2. co-defendant TONY WASHINGTON testified on appellant's behalf and

3. appellant was not present with him at the BORREGO burglary. (VRT. 771-2)

4. The prosecutors tactics throughout appellants trial proceedings, damaged appellant's

5. character and could have done no more than to inflame the jury against appellant

6. and circumvent the rules of evidence, in effect deny appellant a fair trial.

7. The SUPREME COURT has observed :" There is no reason why we should treat this

8. evidence as any less 'crucial' than the prosecutor, and so presumably the jury-

9. treated it" (People v. Cruz (1964) 61 Cal. 2d 861, 868; see also, People v. Woodard

10. (1979) 23 Cal. 3d 329, 341 [Reversal ordered where the prosecutor "exploited"

11. erroneously admitted evidence during his closing argument].)

12. The challenged questions pertaining to alcohol and marijuana,were argumentive.

13. As the court observed in (people v. Duvernay 43 Cal. App. 2d 823; 11 p.2d 659;

14. 1941 Cal. App. LEXIS 750) "The conduct of the deputy district attorney as just

15. narrated called for a more stern rebuke from the court , and it is doubtful,

16. whether any admonition to the jury would have  removed the effect of such conduct.

17. It would be an impeachment of the legal learning of the counsel for the people

18. to intimate that he did not know the aforesaid questions and argument to be

19. improper, wholly unjustifiable, and peculiarly calculated to prejudice the

20. substantial rights of the defendant."

21. "The admission of past misconduct involving moral turpitude to impeach a witness

22. in a criminal trial is subject to the trial court's discretion under Evidence

23. Code Section 352." People v. Feaster (2002) 102 cal. App. 4th 1084, 1091-1092.

24. citing People v. Wheeler (1992) 4 Cal. 4th 284, 296, superseded by statute on

25. an unrelated point, see People v. Duran (2002) 97 Cal. App. 4th 1448, 1459-1460.)

26. Wheeler cautions that, in particular, when the courts are confronted with evidence

27. of past misconduct other than a felony conviction they "should consider with

28. particular care whether the admission of such evidence. Might involve undue time,

1. confusion or prejudice which outweighs its probative value." (Id at 296-297.fn.

2. omitted.) "[I]mpeachment evidence other than felony convictions entails problems

3. of proof, unfair surprise, and moral turpitude evaluation which felony convictions

4. do not present."(Id. at 296; see also, People v. Lepolo (1997) 54 cal. App. 4th

5. 85,89.) Thus the supreme court in wheeler "recognized the danger of burdening

6. trials with collateral issues of witness misconduct."(People v. Cloyd (1997) 54

7. Cal. App. 4th 1402, 1408.)

8. In this case, appellant's fair trial collasped under the burden of this collateral

9. evidence. Appellant's situation is analogous to that addressed in People v. Lopez

10. (2005) 129 Cal. App. 4th 1508, in which the prosecution used evidence of prior

11. arrest to impeach defense witnesses in an attempt to show that they were hostile

12. to police and therefore fabricating  evidence. The court of appeal noted that

13. evidence of mere arrest is inadmissible because it is more  prejudicial than

14. probative; and "a witnesse[s] credibility in the eyes of the jury would be

15. seriously impaired by the evidence of prior criminal arrest, because of the bad

16. character" inevitably suggested therby."(Id at p. 1523, quoting People v. Anderson

17. (1978) 20 Cal. 3d 647, 651.) The court went on to point out that "it is a weak

18. thread of inference from past arrest by the police, to hostility against police

19. in general, to a willingness to distort testimony." (Ibid, qouting Grudt v. city

20. of Los Angeles (1970) 2 cal. 3d. 575,592.)

                                                            not
21. Thus, appellant's contact with officer CARROL should have been admitted into

22. appellant's trial proceedings. The officers testimony was employed simply to

23. show that appellant had a untrustworthy criminal character.

24. The testimony entered against appellant re juvenile incarceration, violations, and

25. appellant's parole status, coupled with the knowledge of appellant's current

26. incarceration during trial, as well as knowledge of appellant's adult parole

27. status, gang testimony, marijuana and alcohol testimony and the prosecutors

28. constant assertions of what the "truth" was during his closing argument, denied

1. appellant's right to a fair trial. The prosecutor referenced APPELLANT'S RAP THAT

2. referenced facts that were not in evidence re VIDEOTAPE OF APPELLANT'S

3. ALLEGEDLY SHOWN THE BLACK DENIM JACKET SEEN BY WITNESSES. And lastly,

4. the closing argument that the jewelry allegedly shown to a store worker was the

5. the jewelry taken from burglaries. All of the acts of misconduct and errors served

6. to take the jurors focus off of the minimum evidence against appellant and to

7. secure a conviction by painting appellant as a person of bad character.

8. The cumulative effect of the complained of evidence and misconduct was equivalent

9. to the arrest's used in LOPEZ. They served to show the jury that appellant was

10. a criminal character. In addition the trial court is charged in applying section

11. 352, to incidents of prior misconduct, to consider the same factors considered

12. in the admission of prior convictions.

13. IN APPELLANT'S CASE THE COMPLAINED OF EVIDENCE AND ACTS OF PROSECUTORIAL

14. MISCONDUCT DENIED APPELLANT'S DUE PROCESS AND A FAIR TRIAL. THE CALIFORNIA COURTS

15. HAVE ALWAYS NOTED THAT "[P]rejudice is a matter of degree. An incident in the

16. light of one record might not necessarily be prejudicial and reversable error,

17. but a similar incident in light of another record might be highly prejudicial

18. (People v. Flores (1936) 15 cal. App. 2d 385, 406.)

19. The supreme court, referring to repeated errors and misconduct on the part of

20. the prosecution, held that [c]onsidered together,...[these errors] created a

21. negative synergistic effect, rendering the degree of overall unfairness to the

22. defendant more than that flowing from the sum of the individual errors...[t]he

23.     defendant was deprived of that which the state was constitutionally required

24. to provide and he was entitled to a fair trial. Defendant is thus entitled to

25. reversal of the judgement and a retrial free of these defects."(People v. Hill

26. (1998) 17 cal. App. 4th 800, 847.)

27. Appellant respectfully request that his conviction for the challenged counts

28. #1 and 2, be reversed...

2. Appellant's Due Process Rights were

3. violated when the trial court failed to give Sua Sponte instruction

4. on corroboration of an accomplice statement.

5. A Proceedings below.

6. Appellant was charged in an information with three counts of first

7. degree Burglary (Pen. Code Section 459) The jury found appellant guilty

8. of all counts (C.T. 0389) The jury's finding, as far as the challenged

9. count's 1 and 2, were erroneous and in violation of appellants fourth-

10. eenth amendment rights because the trial court did not instruct with

11 Caljic    corroboration of an accomplice statement.    B. VIOLATION:

12. Instruction on the need for corroboration of accomplice testimony

13. must be given when there is evidence a witness is a accomplice (see

14. Pen Code Section 1111 . See also, Calcrim 334-335; People v. Felton

15. (2004) 122 CA4th 260, 267, 18 CR3d 626 ( Coperpatrator is accomplice).

16. The defense witness TONY WASHINGTON , provided testimony that appellant

17. was not involved in the crimes (VRT 715, 737, 741 and VRT 807)

18. The government prosecutor impeached Mr. WASHINGTON with statements

19. allegedly made by WASHINGTON during interogation by detective Jerry

20. Hartman .

21. In which WASHINGTON allegedly stated that appellant was his accom-

22. plice in the crimes.    C. PREJUDICE .

23. The failure of the trial court to provide the Sua Sponte instruction

24. wasprejudicial in light of the fact that there was not any substantial

25. evidence that directly tied appellant to the commission of the chall-

26. enged counts 1 and 2. And in particular, the BORREGO burglary count 2.

27. The government witness who saw the perpatrators of that crime provided

28. a description of the perpatrators and also testified , in which Mr.

JEFF HANNIGAN testified that the first individual was shorter than the first

5'9 in height and that the second individual was the first

. (R.T.p. 91-101.) The description provided by Mr. HANNINGAN matched

. defense witness TONY WASHINGTON'S description. Mr. HANNIGAN entire

. description of the first male was as follows; 5'8 or 5'9, approximately

5. 150 plds. dark skin with corn rowswith beads at the end of the corn rows

7. ( RT p. 92).

8. Defense witness and co-defendant, TONY WASHINGTON accurately matched

9. this description and also testified to the exact same description

10. ( VRT 728,-730, VIRT 838-839, 840)

11. It was a well known fact that appellant was the taller of the two,

12. at 6'2, 204 plds.(IIIRT p. 181, 200, 216, 291.) Therefore appellant

13. could not possibly match the description of the first or second male

14. person Mr. HANNIGAN had described.

15. The fact that trial counsel did not object or request the instruction

16. does nót preclude appellate court from review of this issue. The

17. lack of the necessary instruction affected appellant's substantial

18. rights and is therefore reviewable whether or not an objectionwas raised in

19. the lower court. (see e.g., Pen Code Section1259; also People v.

20. Wickersham(1982) 32 Cal. 3d, 307, 331 and fn. 10, dissapproved on other

21. point in People v. Barton (1995) 12 Cal. 4th 186, 201; People v.

22. Hannon (1977) 19 Cal. 3d 588, 597-598; Peoplev. Satchell (1971) 6 Cal.

23. 3d 28, 33, fn. 10; People v. Roehler (1985) 167 Cal. App. 3d 353, 394-

24. 395.)

25. In failing to instruct with the Caljic  the jury was allowed to

26. convict appellant using the impeachment of testimony provided by

27. TONY WASHINGTON. Eventhough appellant may have provided otherwise

28. reasonable explanation as to his whereabouts, lack of knowlege of the

Case 2:08-cv-02150-CJC-MLG   Document 1-3   Filed 04/01/2008   Page 44 of 105

. crime and person allowed to defendant TONY WASHINGTON

. to operate appellant's car without appellants presence. As a result,

. violating appellant's rights to due process, a fair trial, a jury trial

.. and fundamental fairness under the 5th, 6th, 8th and 14th amendments

5. rights of the United States Constitution, article 1, section 15 and 16.

6. AS a matter of law " the DUE PROCESS CLAUSE protects the accused

7. against conviction except upon proof beyond a reasonable doubt of every

8. fact necessary to constitute the crime with which he is charged."( In

9. re Winship (1970)397 U.S. 358, 364, at p. 364 ( 90 CT. at p. 1073)

10  Thus,the failure to instruct Sua Sponte with the instruction,in effect

11.took away appellant's right to have an accomplices statement corrobo-

12.rated. And appelants right to have the prosecutor meet the burden of

13.conviction "beyond a reasonable doubt" .

14.

15. In the case that respondant shall argue the issue is waived appellant

16. includes herein and in addition to  above arguments, appellant's prior

17. arguments contained in argument 4, as far as that argument address I.A.C

18. for failure to make objection,standard or constitutional, and appellate

19. review still appropriate.

20.

21.

22.

23.  Appellant respectfully request that this court reverse challenged

24. conviction of count's 1 and 2....

e trial court violated appellants and federal

ghts when it instructed the jury with Caljic No. 2.15 regarding

ossession of recently stolen property/[1].

The trial court instructed the jury with Caljic 2.15 which tells the

inter alia, that the fact that the defendant is in possession of

recently stolen property is not by itself sufficient to permit an infer-

ence of guilt, and that corroborating evidence need only be slight, and

. need not by itself be sufficient to warrant an inference of guilt."

. (C.T. 0354: R.T. p. 1674-1675)/[2]

2.

3.

4.

5.

6.   /[1]   The fact that trial counsel did not object to the challenged

17. instruction does not preclude appellant from review of this issue.

18. The challenged instruction affected appellants substantial rights

19. and is therefore reviwable regardless of whether an objection was

20. raised in the lower court. (see e.g., pen. code, section 1259: People

21. v. Wickersham (1982) 32 Cal. 3d 307, 331 and fn. 10, dissapproved on

22. another point in People v. Barton (1995) 12 cal. 3d 588, 597-598;

23. People v. Hannon (1977) 19 cal. 3d 28, 33, fn. 10; People v. Roehler

24. (1985) 167 cal. APP. 3d 353, 394-395.)

25.   /[2]   In instructing with Caljic 2. 15 the trial court stated " If you

26. find that a defendant was in consciuos possession of recently stolen

27. property the fact of that possession is not by itself sufficient to

28. permit an inference that the defendant is guilty of the crime of

1. this instruction reduces the prosecutions burden of proof below that of

2. " Beyond a reasonable doubt." Also, the instruction allows conviction

3. even if the defendant has satisfactorily explained his possession of the

4. recently stolen property. As a result, the instruction violated appell-

5. ants rights to due process, a fair trial , a jury trial and fundamental

6. fairness under the Fifth, Sixth, Eight and Fourteenth Amendments to the

7. United States Constitution, Article 1, section 15 and 16.

8. As a matter of law,"... The Due Process Clause protects the accused

9. against conviction except upon proof beyond a reasonable doubt of every

10. fact necessary to constitute the crime with which he is chareged."

11. (In re Winship, (1970) 397 U.S. 358, 364. at P. 364 (90 S.ct. at P.

12. 1073).) In United States V. Gray ( 5th Cir. 1980) 626 F. 2d 494, the

13. trial court instructed that, once a conspiracy was proved,"(T)he

14. Government need only introduce slight evidence of a defendant's

15. participation..." The court of appeals held the "slight evidence"

16. instruction to be "reversable error" because it "... can only be seen

17. as suffocating the 'reasonable doubt'... standard." (Id., at P.500)

18. _____

/1 (Continued )

19. burglary or theft,Before guilt may be inferred, there must be corrobo-

20. rating evidence tending to prove defendant's guilt. However, this

21. corroborating evidence need only be slight, and need by itself be

22. sufficient to warrant an inference of guilt..

23. As corroboration, you may consider the attributes of possession---

24. time, manner that the defendant had an opportunity to commit the

    charged, the defendant's co nduct, his false or or contradi-

        nt's if any, and or other statements he may have made

           he property, a false account of how he acquired

              operty any other evid. which tends to con

                 charged." (R.T. p. 1674-1675)

In UNITED STATES V. HAUS(1976) 525 F. 2d (1976) 525 F. 2d

appeals reversed the defendants conspiracy conviction where the

court gave a "slight evidence", instruction similar to that in Gray,

supra, The court stated; "(T)he (slight evidence) language should not

be used in the charge to the jury... Despite the lack of provable

prejudice to defendant's case because of other instruction's giving the

. reasonable doubt standard, however, the proof necessary for the

. government to carry it's burden by possibly confusing the jury about

. the proper standard or even convincing jury members that a defendant's

.0. participation in the conspiracy need not be proved beyond a reasonable

11. doubt." (I.d. at., pp. 1255-1256, see also, United States V. Durrive

12. (7th Cir. 1990) 902 F. 2d 1221, 1229, fn.6.)

13. Applying the federal law of due process discussed above, the appell-

14. ant asserts the " slight evidence" instruction violated his right to

15. due process, a faIR TRIAL, JURY TRIAL, AND FUNDAMENTAL FAIRNESS UNDER

16. The Fifth, Sixth, Eight and Fourteenth Amendments and the similar

17. provisions of the California Constitution by enabling the jury to

18. convict on a showing less than beyond a reasonable doubt.

19. Although People v. Anderson (1989) 210 Cal. APP.3d 414, approved caljic

20. No. 2.15, it did not consider the issue whether the defendants

21. possession must be unexplained; thus it is inopposite. (Santa Clara

22. Co. Local Trans. Auth. V. Guardino (1995) 11 Cal. 4th 220, 243.) Also,

23. Anderson fails to recognize ( guilty Knowledge) may be constitutiona-

24. lly infirm if it enables the jury to employ an evidentiary shortcut

25. to conviction which does not require the prosecution to prove beyond

26. a reasonable doubt those facts (i.e. unsatisfactorily explained

27. possession) necessary to rationally connect the inferece to the

28. defendant's guilt And Anderson states that " Guilty Knowledge" isthe

1. iference with which Caljic No. 2.15 is concerned,

2. whereas the instruction involves guilt itself as the inference. ANDERSON

3. thus betrays a misunderstanding of the serious constitutional defi-

4. ciences of Caljic No. 2.15.

5. The presumption creayed by Caljic No. 2.15 is unconstitutional since

6. it fails to tell the jury guilt cannot be based  on the presumption

7. (or inference) alone unless it has been proved beyond a reasonable

8. doubt that the defendant's expalanation for possession of the recently

9. stolen property is unsatisfactory.

10. Appellant asserts that this court is bound by the holding of United

11. States  Supreme Court in In re Winship, supra. 397 U.S. at. p. 364

12. 364 (90 S ct. at p. 1073) , that the due process requires proof beyond

13. a reasonable doubt of every fact necessary to constitute the crime

14. with which the defendant is charged. (Peoplev. Bradford (1997) 16 Cal.

15. 4th 826, 844.)

16. Since under the federal constitution, the " slight evidence" instru-

17. ction is unconstitutional, it is also unconstitutional under the

18. California constitution, and thus this court is not bound by the state

19. court opinions to the contrary. (see People v. Mcfarland (1962) 58 cal.

20. 2d 748, 752.) Further, although the decisions of the lower courts are

21. not binding on this court, their decisions " provide persuasive...

22. authority." (People v. Bradford, supra. 15 cal. 4th  at p. 1292.)

23. Clearly, pursuant to the above noted federal decisions, it was error

24. of con stitutional magnitude for the trial court in appellants case

25. to give the "slight evidence " instruction because it greatly reduced

26. the prosecutions "beyond a reasonable doubt" STANDARD OF PROOF.

27. Reversal of the challenged convictions is therefore required per se,

28. without a showing of prejudice. ( Sullivan v. Louisiana (1993) 508 U.S.

275, 280-282, 113 S.Ct. 2078, 2082 (1993)

. If arguendo, prejudice must be shown , appellant can readily do so.

. Appellant gave a reasonable, believable account of  why he possessed

. the Ambico suitcase which belonged to the HAVERNS, in count 1. During

. appellants interview by detective Jerry Hartman(Nov.6,2003.) Detective

7. Jerry Hartman fleetingly asked appellant about a suitcase that was found

8. in appellants vehicle trunk (SEE follow up investigation report ex.  )

9. Appellant informed detective HARTMAN that the suitcase belonged to him

10. that appellants cloths were inside of it.(R.T.p. 1613,1640)

11. During said interview, appellant was not asked "where" or "how" he

12. aquired the suitcase. Nor was appellant informed that the suitcase was

13. stolen. During appellants testimony, (R.T.p.1530, 1548.) appellant

14. explained that he had aquired said suitcase from co- defendant TONY

15. WASHINGTON , who let appellant borrow the suitcase so that appellant

16. could pack up his cloths in preparation to move into the troy st.

17. residence (R.T. p. 1530, 1548) . Appellant had received permission

18. from his parole officer  JIM BURGERT  only (2) days prior (Nov. 4 ,2003

19. before appellants arrest Nov. 6, 2003. (R.T. p. 108,122)  and the

20. detective Jerry Hartman testified that he did not find any of appellant

21. property inside the Troy St. residence (R.T. p. 529,530.) which reason-

22. ably could explain the presence of appellants clothing inside of the

23. suitcase...

24. Although appellant admitted to possessing the suitcase, appellant did

25. not admit to, nor questioned about how or where  he had aquired the

26. suitcase. By employing the presumption created by Caljic No. 2.15

27. the jury could have found appellant guilty even though it did not

28. believe beyond a reasonable doubt that appellants explanation was

1. unsatisfactory. In this way, Appellant was severely prejudiced. Reversal is

2. therefore required. (People v. Clair (1992) 2 Cal. 4th 629, 663.)

3. Appellant includes herein and in addition to the above argument appellant's prior

4. arguments, points and authorities contained in argument #4, concerning appellate

5. review still being appropriate despite an objection from trial counsel and also

6. the I.A.C. arguments points and authorities dealing with a trial counsels possible

7. Ineffectiveness for failure to make the required objection, as though fully set

8. forth herein  and in addition to above arguments.

9. For all of the above reasons points and authorities the appellant respectfully

10. request that his conviction for the challenged counts #1 and 2, be reversed.

11.

12.

13.

14.

15.

16.

17.

18.

19.

20.

21.

22.

23.

24.

25.

26.

27.

28.

1. ARGUMENT   JUDICIOUSLY CONDUCT A MARSDEN HEARING WHEN IT RELIEVED

2. THE TRIAL COURT ERRED WHEN IT DID NOT CONDUCT A MARSDEN HEARING WHEN IT RELIEVED APPELLANTS

3. APPELLANTS RETAINED TRIAL COUNSEL PAMELA LACHER AND RE-APPOINTED HER AS APPELLANTS

4. PUBLIC DEFENDER. AND FURTHER, THE TRIAL COURT ABUSED IT'S DESCRETION  WHEN IT

5. DID NOT RE- APPOINT APPELLANT'S PRIOR PUBLIC DEFENDER STACY GULLEY.

6.

7. A. FACTUAL AND PROCEDURAL BACKGROUND.

8. Appellant was represented by public defender STACY  GULLEY, beginning 11/ /03, until

9. Mr. GULLEY was relieved as appellant's trial counsel on or about 11/ /04 Upon learning

10. of Mr. GULLEY's discharge from representation of appellant, appellant was

11. new counsel, MICHAEL RUIZ.  Appellant ultimately requested a MARSDEN hearing

12. and expressed his desire to relieve Mr. RUIZ because appellant did not feel that

13. Mr. RUIZ was ready to proceed with prior counsels STACY GULLEY's, motion to

14. TRAVERSE the search warrant (Nov.6, 2003)/1. and also the first time appellant

15. had seen or communicated with Mr. RUIZ, and learned of Mr. GULLEY's dismissal.

16. The appellant  initially sought to represent in pro per but was told that he would

17. not be given a continuance to prepare to represent himself at the hearing to

18. TRAVERSE  the search warrant. The motion was heard and ultimately denied. The

19. appellant then sought to relieve counsel number 2, Mr. RUIZ, because of Mr.

20. RUIZ's request that appellant sign document's which appeared to be a contract

21. waiving any further action claimed by appellant was "going to trial against Mr.

22. Mr. RUIZ's and co-workers wishes." (see ex." " of the MARSDEN hearing 1/07/04)
        C

23. Appellant was ultimately granted pro per. Appellant relinquished his pro per
    _____
    /1.Appellant requested the El Cajon court to provide Transcripts of the initial

24. _____
    from appellant to proceed pro per because of the loss of Mr. GULLEY and other

25. reasons. To date appellant has not received the transcripts. ( see motion to

26. reasons. To date appellant has not received the transcripts. ( see motion to

27. court Ex. "B")

28. /2. The appellant wanted a marsden hearing to assert a conflict of interest between
    appellant and counsel because counsel PAMELA LACHER did not disclose any pending
    or prior or criminal or civil charges against her. Appellant had asked Ms. LACHER
    for this information before requesting her services. Appellant acuired document's
    which reflected that Ms. LACHER was being sued by the same county that she was
    attempting to represent appellant. (see Ex "D")

1. B. VIOLATION                                                     Marsden 2005 no. Apr 17

2. PEOPLE V. MARSDEN (1970) 2 C3d 118, 123, 84 CR 156, 159)

3. to retained counsel. Retained counsel may be discharged at any time, with or

4. without cause, even on the eve of trial, as long as the move is not intended to

5. delay. People v. Lara (2001) 86 CA 4th 139, 103 CR 2d 201.

6. In appellant's case, retained counsel was not subject to MARSDEN, and as explained

7. above, appellant had a right to discharge counsel with, or without cause as long (EX"D" P.13)

8. as the move was not intended to delay. As appellant explained at the hearing

9. the  attempt to relieve Ms. LACHER was not for delay, but for the lack of counsel's

10. failure to do the job appellant hired her to do. At no time during the hearing

11. did the trial court express that it felt appellant was trying to delay the

12. proceedings. Although the court and prosecutor noted the several continuance's

13. throughout appellant's litigation. However, the fact remains that the chain of

14. events re continuances, were a direct result of appellant's attorney #1, STACY

15. GULLEY,  being withdrawn from representation of appellant by no fault of appellant

16. and against appellant's wishes. And absent any explanation from the trial court

17. or Mr.GULLEY. (Ex"C" P.O.7-11)

18. and the appellant's situation with counsel #2, Mr. RUIZ, whom sought to have

19. appellant sign a waiver before Mr. RUIZ would agree to go to trial. These fact's

20. show that appellant clearly did not seek to delay proceedings, when it is

21.              reasonable for appellant to want to go pro per when the trial court

22. denies appellant's MARSDEN motion, and appellant's counsel Mr. RUIZ wanting

23. appellant to sign a waiver before trial, as well as Mr. RUIZ's  attempt to

24. persuade appellant to plead guilty despite appellant's claim of innocence.( Ex.D".)

25. In People v. Cruz (1978) 83 Cal. App. 3d 308, 147 Cal. Rptr. 740, the court held

26." where MARSDEN error taints the disposition of a request for substitution, the

27. the defendant's subsequent pro per request does not effectively waive his right

28. to counsel even where the court's admonitions otherwise satisfy FARETTA."

1. The knowing and intelligent waiver of counsel envisioned upon his

2. alternatives. Defendant's decision to proceed in pro per was predicated in pro per was predicated in

3. belief, mistaken or not that he could not expect effective representation from

4. the public defenders office. This belief was effectively reinforced by the court's

5. failure to fully explore defendant's charges. Under the circumstances, defendant

6. cannot be said to have been fully apprised of his right to counsel and therefore

7. did not effectively waive that right [citations, fn. omitted]" ( Id. at p. 318,

8. 83 Cal. Rptr. 308.)

9. The court did not address appellant's charge that counsel MICHAEL RUIZ was asking

10. appellant to sign papers which stated appellant was going against counsel's and

11. co- workers wishes, and appellant should take should take the deal. (P. 7)

12. The courts failure to acknowledge this fact and address it directly, was in fact,

13. an inadequate inquiry into appellant's MARSDEN MOTION, which should have been

14. grounds to grant appellant's request  to relieve counsel. The request by counsel

15. RUIZ, showed that appellant could not count on counsel diligently performing effectively

16. at trial had appellant signed the waiver relieving Mr. RUIZ of responsibility

17. in case of appellant's conviction. (see Ex. "C" of p.0.7)

18. C. THE TRIAL COURTS RELIEF OF RETAINED COUNSEL PAMELA LACHER, AND REAPPOINTMENT

19. AS  A PUBLIC DEFENDER , NECESSITATED THE REQUIREMENT OF A MARSDEN HEARING.

20.

21. The trial court relieved  appellant's trial counsel  PAMELA LACHER as appellant's

22. retained counsel and re - appointed as public defender  (see Ex. "D" ) /3

23. A defendant represented by appointed  counsel or the public defender may request

24. that the court discharge the attorney and substitute new counsel if the

25. defendant's right to counsel would be substantially impaired by continuing with

26. the original attorney P.V. MARSDEN, supra.(1970).

27. ———————————————————————————————————
/3 the hearing of September 21, 2004 V. 1, p. 1-17, was incomplete and is silent

28. after counsel, PAMELA LACHER  requested a hearing outside the presence of the
prosecutor.

21.

Case 2:08-cv-00652-L-PCL   Document 1-3   Filed 04/01/2008   Page 54 of 105

1. The appellant did so stated unofficially. Some of the reasons for appellant's

2. discontent with trial counsel (see Ex. "D")

3. However, the lack of a MARSDEN hearing because Ms. LACHER original position as

4. retained counsel, the appellant was denied the opportunity to address the court

5. thoroughly on all charges to compel the court to relieve Ms. LACHER as appellant's

6. attorney. The appellant asserts, that the instant that the trial court relieved

7. Ms. LACHER as retained counsel and re-appointed as public defender, the court

8. should have allowed Ms. LACHER's requested MARSDEN MOTION (see EX D p. )

9. At that time MARSDEN was controlling and procedural. Typically, the defendant

10. makes an oral motion before the trial judge (see People v. MARSDEN, supra.)

11. Although a formal motion is not required, the defendant must make some clear

12. indication that he or she wants a substitute attorney. People v. Mendoza (2000)

13. 24 C4th 130, 157, 99 CR2d 485.

14. As noted previously, the appellant's trial counsel did make an oral motion

15. to conduct a hearing outside the presence of the district attorney (see RT P.

16. 16, 15-28)

17. However, the trial court erroneously claimed that the MARSDEN hearing could not

18. be conducted on retained counsel, which the court seemingly overlooked the fact

19. that it had just reinstated Ms. LACHER as a public defender, in which the MARSDEN

20. authority was now appropriate and controlling. The trial judge must conduct a

21. hearing on a MARSDEN request and allow the defendant to state specific reasons

22. for the requested dismissal. People v. Cole (2004) 33 C4th 1158, 1190, 17 CR

23. 532; People V. Fierro (1991) 1 C4th 173, 204, 3 CR2d 1426.

24. Failure to inquire adequately into a defendants complaint results in a silent

25. record making intelligent appellate review of defendants charges impossible

26. People v. Cruz, supra, 83 Cal. App. 3d 308, 318 147 Cal. Rptr.740.)

27. The court can conduct a MARSDEN hearing even after proceedings have been suspended

28. under Penal Code section 1368 (People v. Stankewitz (1990) 51 C3d 72, 86, 270

1. CR 817; People v. Solorzano (2005) 126 CA4th 1063, 1069,

2. On appeal, inadequate inquiry into a MARSDEN motion is treated as prejudicial

3. per se error because the very nature of the error precludes meaningful appellate

4. review of it's prejudicial impact People v. Solorzano (2005) 126 CA4th 1063, 24

5. CR3d 735 ( erroneous refusal to hear MARSDEN motion on whether appointed counsel

6. was rendering effective assistance at defendants competency hearing required

7. reversal of conviction entered after defendant was found competent .)

8. Instead of reversal of the judgement , the appellate court can remand the case

9. to the trial court for a MARSDEN hearing, and if the trial court determines that

10. the MARSDEN motion should be granted, there is no basis for a reversal on appeal.

11. People v. Maese (1985) 168 CA3d 803, 214 CR 365; People v. Minor (1980) 104

12. CA3d 194, 200, 163 CR 501.

13. D. THE COURT COMPOUNDED THE MARSDEN ERROR WHEN IT ABUSED ITS DISCRETION BY NOT

14. RE-APPOINTING COUNSEL #1, STACY GULLEY.

15. Appellant contends that despite the MARSDEN error, the trial court could have

16. re- appointed counsel #1, STACY GULLEY. Contrary to the court and prosecutor's

17. contention that to appoint new counsel would take undue time ( EX "D" ), APPELLANT

18. asserts, 1) THE TRIAL COURT COULD HAVE RE- APPOINTED COUNSEL #1, STACY GULLEY

19. WHO WAS APPELLANT's ORIGINAL COUNSEL AND KNEW THE CASE, 2) AND COULD HAVE

20. CONTINUED WITH THE SET TRIAL DATE AND, 3) AVOIDED ANY POSSIBLE PREJUDICE TO

21. APPELLANT IN KEEPING MS. LACHER AS APPELLANT's TRIAL COUNSEL.

22. This prospect was reasonable in light of the fact that the trial court reinstated the appellant expresse

23. counsel #1, STACY GULLEY after appellants trial (RTV 1 p. 10-11) and, appellants willingness to proceed

24. his satisfaction with GULLEYS representation and

25. with Mr. GULLEY ( RTV 1 p. 10-11)

26. Thus, the appellant asserts the trial court clearly could have solved the problem

27. by conducting a MARSDEN hearing or in the alternative, re- appointing GULLEY.

28. The lack of either options violated appellant's right to counsel of choice,

was an abuse of discretion.

1. In violation of the U.S.C.A. 6th and 14th.

2. E. PREJUDICE: THE ABOVE MENTIONED ERRORS WERE NOT HARMLESS.

3. Finally the appellant maintains that the initial decision to remove counsel #1,

4. STACY GULLEY, FROM REPRESENTATION OF APPELLANT AND HIS REPLACEMENT WITH COUNSEL

5. #2, MICHAEL RUIZ  WITHOUT NOTICE TO APPELLANT, AND APPELLANTS SUBSEQUENT DECISION

6. TO GO PRO PER, was due to events out of appellants control and the failure of

7. trial court to conduct the MARSDEN HEARING, was violation and requires reversal.

8. The errors violated appellants Due process and right to effective counsel under

9. the U.S.C. 6th, 14th, amendments. Appellant respectfully request that his conviction

10. be reversed. counts 1 and 2.

11.

12.

13.

14.

15.

16.

17.

18.

19.

20.

21.

22.

23.

24.

25.

26.

27.

28.

IN re JOSEPH HILTON MCDONALD

_____
Petitioner

PEOPLE OF THE STATE OF CALIFORNIA

_____
Respondent(s)

**DECLARATION IN SUPPORT
OF REQUEST
TO PROCEED
IN FORMA PAUPERIS**

I, JOSEPH HILTON MCDONALD _____, declare that I am the petitioner in the above entitled case; that in support of my motion to proceed without being required to prepay fees, costs or give security therefor, I state that because of my poverty I am unable to pay the costs of said proceeding or to give security therefor; that I believe I am entitled to relief.

1. Are you presently employed? ☐ Yes ☒ No

    a. If the answer is yes, state the amount of your salary or wages per month, and give the name and address of your employer. _____

       _____

    b. If the answer is no, state the date of last employment and the amount of the salary and wages per month which you received. N/A _____

2. Have you received, within the past twelve months, any money from any of the following sources?

    a. Business, profession or form of self-employment?    ☐ Yes ☒ No

    b. Rent payments, interest or dividends?    ☐ Yes ☒ No

    c. Pensions, annuities or life insurance payments?    ☐ Yes ☒ No

    d. Gifts or inheritances?    ☐ Yes ☒ No

    e. Any other sources?    ☐ Yes ☒ No

If the answer to any of the above is yes, describe each source of money and state the amount received from each during the past twelve months: _____

_____

3. Do you own any cash, or do you have money in a checking or savings account? *(Include any funds in prison accounts)*

    ☐ Yes ☒ No

    If the answer is yes, state the total value of the items owned: _____

_____

4.  Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property? *(Excluding ordinary household furnishings and clothing)* ☐ Yes ☒ No

If the answer is yes, describe the property and state its approximate value: _____

_____

5.  List the persons who are dependent upon you for support, state your relationship to those persons, and indicate how much you contribute toward their support: ___N/A___

_____

_____

I, declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.

Executed on ___2-26-08___
              Date

_____
*Signature of Petitioner*

## CERTIFICATE

I hereby certify that the Petitioner herein has the sum of $___-149.70___ on account to his credit at the ___LANCASTER STATE PRISON___ institution where he is confined. I further certify that Petitioner likewise has the following securities to his credit according to the records of said institution: ___I FURTHER CERTIFY THAT DURING THE PAST SIX MONTHS THE APPLICANTS AVERAGE MONTHLY BALANCE WAS $0.00. I FURTHER CERTIFY THAT THE AVERAGE MONTHLY DEPOSITS WAS 0.00. A CERTIFIED STATEMENT IS ATTACHED.___

___02-26-2008___
      Date

_____
*Authorized Officer of Institution/Title of Officer*

REPORT ID: TS2030

CALIFORNIA DEPARTMENT OF CORRECTIONS

THE WITHIN INSTRUMENT IS A CORRECT
COPY OF THE TRUST ACCOUNT MAINTAINED
BY THIS OFFICE.
ATTEST:
CALIFORNIA DEPARTMENT OF CORRECTIONS
BY _KathGeorge ACE_
TRUST OFFICE

ACCOUNT NUMBER : T97652
ACCOUNT NAME : MCDONALD, JOSEPH DEVON
PRIVILEGE GROUP: A

<< NO ACCOUNT ACTIVITY FOR THIS PERIOD >>

| DATE PLACED | HOLD CODE | DESCRIPTION | HOLD | AMOUNT |
|---|---|---|---|---|
| 02/11/2008 | H118 |  |  |  |
| 02/17/2008 | H118 |  |  |  |
| 02/17/2008 | H118 |  |  |  |

| BEGINNING BALANCE | TOTAL DEPOSITS | TOTAL WITHDRAWALS | CURRENT BALANCE |  |  |
|---|---|---|---|---|---|
| 0.00 | 0.00 | 0.00 |  |  |  |

EXIBIT "E"

Filed 1/16/07 P. v. McDonald CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D046881 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE234930) |
| JOSEPH HILTON McDONALD, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Louis R. Hanoian, Judge. Affirmed as modified.

Joseph Hilton McDonald was convicted by a jury of three counts of first degree burglary (Pen. Code,[1] §§ 459, 460); attempted first degree burglary (§§ 459, 460, 664), petty theft with a prior (§§ 484, 666), possession of stolen property (§ 496, subd. (a)), and possession of a firearm by a felon (§ 12021, subd. (a)(1)). True findings were also made that McDonald had served a separate prison term (§ 667.5, subds. (a), (b)) and had been

---

[1]    All statutory references are to the Penal Code unless otherwise specified.

convicted of serious/violent felonies within the meaning of the three strikes law (§§ 667, subds (b)-(i), 1170.12, 668). He was sentenced to a total term of 22 years and 4 months.

On appeal, McDonald contends reversal is required because a photographic line-up was impermissibly suggestive; the court erred in admitting impeachment evidence or his counsel was ineffective in failing to object to the evidence; an enhancement should have been stricken rather than stayed; and the abstract of judgment needs to be corrected. We find merit to the last two contentions and therefore order the judgment modified. Otherwise, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### *McDonald's Living Situation*

In late August 2003, McDonald, a California Youth Authority parolee, was given approval to live at a sober living home, One Day At A Time, on 36th Street in San Diego. As a condition of parole, McDonald was required to keep his parole officer informed about where he was living.

On October 16, 2003, McDonald told a San Diego police officer he was living at 4120 Polk Street in the City Heights area of San Diego. At the time he spoke to the officer, he was with Tony Washington, who was arrested for petty theft and being drunk in public.

On October 17, McDonald's parole officer made a random home visit to One Day At A Time. The parole officer saw only two pairs of pants in the closet in McDonald's room, no linens on the bed, and no toiletries and came to the conclusion McDonald was not staying there on a regular basis.

2

Beginning in middle to late October, a clerk who worked in a produce store saw McDonald and Washington entering and leaving Regina Burton's apartment on Troy Street in Spring Valley. Burton's apartment was directly across from the market. The clerk saw McDonald and Washington every day; when he was not busy he would look out the window, and it appeared to him that McDonald and Washington were living in the apartment. Sometimes they came to the store.

On the evening of November 4, 2003, McDonald went to the parole office with Burton, whom he identified as his cousin,[2] and requested and was given permission to move to her Troy Street apartment.

On November 5, the police conducted surveillance on the Troy Street apartment. McDonald and Washington came in and out of the front door several times before getting into a car and leaving. Their observations were inconsistent with Burton's claim that on November 5 she had picked up McDonald from the One Day At A Time residence.

On November 6, the police executed a search warrant on the Troy Street apartment, arrested McDonald, and searched his car. As detailed below, property from the burglaries was found in the apartment and car.

Washington, McDonald, and Burton testified that while McDonald spent a significant amount of time at the Burton apartment in October and November 2003, he never, or only once, spent the night there and he continued to reside at One Day At A

---

[2]     Burton testified her husband, Clarence Burton, was McDonald's second cousin.

3

Time. Washington began living in Burton's apartment on October 23. McDonald was not living at Burton's apartment on November 5 or 6.

### October 9, 2003 -- Burglary of Havern Residence

On October 9, 2003, at about 1:00 p.m., Jolene Havern (Jolene)[3] arrived home at her parents' house on Vista Arroyo and found it had been burglarized. Her mother, Janet Havern (Janet), arrived home a short time later. Jewelry boxes in Jolene's room had been disturbed but nothing had been taken. Her parents' room had been ransacked. Among the items taken from the residence were a JVC camcorder, owner's manual and cables, a tripod, a soft-sided cooler used as a carrying case for the camcorder, jewelry, and a London Fog suitcase.

On November 6, The JVC camcorder, cables and soft-sided cooler were found in the Troy Street residence. The owner's manual for the camcorder was found in the glove compartment of McDonald's car. The videotape in the camcorder included photographs from a wedding taken by Jolene as well as scenes taken at the Troy Street apartment that included McDonald, Washington and Burton. The London Fog suitcase and tripod were found inside McDonald's car trunk.

Jolene had dated Washington a year or two earlier. Over a four month period, he had visited her home several nights a week. After they stopped dating, he continued to call her occasionally.

---

3    At times we use first names, not out of disrespect, but to distinguish parties with the same last name.

*October 15, 2003 - Borrego Burglary*

On October 15, 2003, at about 11:00 a.m., Adrian Borrego's next door neighbor in Spring Valley was working in his backyard. He made eye contact with a young black man with beaded hair he saw walking alongside Borrego's house. Borrego was not at home. The neighbor saw the man meet another man, whom the neighbor could not see well because he was in the shadows. The two men then went to a car and drove away. The neighbor wrote down the license plate number of the car. When Borrego returned home, the neighbor told Borrego about the incident, described the man he had seen and asked Borrego if the man was a friend. Borrego said no. A window screen had been removed from Borrego's residence and a window had fallen inward towards his daughter's bed but nothing was missing from the house.

The license plate number was traced to McDonald's car.

*October 23, 2003 - Meza Burglary*

On October 23, 2003, about 1:00 p.m., McDonald and Washington went to Central Avenue in Spring Valley where Peter and Michele Meza reside. McDonald asked the Mezas' next door neighbor, Terina Noa (Terina), who was sitting on her front porch, for a glass of water. Washington remained on the street. Terina turned and yelled to her husband Elias Noa (Elias) inside the house that there was a man outside who wanted some water. When she turned around, McDonald was standing on the porch within four or five feet. She again yelled for Elias to bring some water. She felt suspicious of McDonald because he was peering into her house as if he was "casing" it. Eventually, Elias gave McDonald some water in a plastic cup and told McDonald to keep the cup and

5

leave. He watched McDonald walk up to Washington and then saw both start walking toward the Meza house. Elias went back inside. Terina, who had gone inside when Elias gave the water to McDonald, returned to the porch 20 to 30 minutes later. She noticed McDonald and Washington coming out of the Meza driveway. Both had bicycles, McDonald was carrying a camera bag and Washington was carrying a black bag. They had not earlier had the bicycles or bags. As soon as they left, Terina went to the Meza house, knocked on the door, and after finding no one was home, called the Mezas' business number to tell them what she had seen.

When the Mezas returned home, they found their bedroom had been ransacked. Among the items taken from the home were a palm pilot, jewelry, a digital video camera and bag, the children's bicycles, and two guns, one of which had been recently issued to Peter Meza who is a deputy sheriff.

Around this time McDonald and a man went to the produce market across from the Troy Street apartment. McDonald pulled jewelry out of his pocket and offered to sell it to the store clerk and a customer, neither of whom was interested in purchasing.

Both Terina and Elias positively identified McDonald in a photo array as the man who had asked for water. They also identified him at trial.

The Mezas' guns, palm pilot, and digital video camera were found in the Troy Street apartment.

### October 23, 2003 - Morgan Attempted Burglary

The Meza residence had a rental unit on the ground floor occupied by Dennis Morgan and his wife. When Morgan arrived home about 3:00 p.m., on October 23, 2003,

he found a window screen near the kitchen door was bent and partially removed, the door to the living room was open, and a window sash was pulled away from the wall. From the damage to the window sash and a plant as well as scuff marks and finger marks on the exterior wall, it was apparent someone had used the window sash and planter to climb up to the balcony and gain entry to the Meza residence. It did not appear anyone had entered the Morgan residence and nothing was found missing.

### November 3, 2003 - Petty Theft at E & L Therapy

On November 3, 2003, Michelle Porras discovered her wallet had been taken out of her purse, which had been placed in a desk drawer in a back office at E & L Therapy where Porras worked. E & L Therapy was located in an office building with other businesses in Chula Vista.

About 30 minutes before Porras discovered the theft, at about 1:00 p.m., she was in the break room with a coworker eating lunch. The break room had a door to the parking lot, which was not the general public entrance to the building or to E & L Therapy. McDonald opened this back door and asked Porras and the coworker where the front entrance was located. Not knowing who he was or what business he was looking for, Porras directed him to the building's front entrance. McDonald left.

Another E & L Therapy employee, Nicholas Brecht, saw McDonald in the back office rummaging through the cabinets under the sink. He thought McDonald might be a plumber. When Brecht walked into the front area of E & L Therapy where most of the people worked, he asked if anybody knew about the man who was working on the sink. Nobody knew anything. Brecht waited for McDonald to come out of the back area.

When McDonald emerged, he asked Brecht, "Do you know where the bathroom is?" McDonald was about a foot away. Brecht pointed to some glass doors and directed McDonald to go out the doors and to his right. After McDonald left, Brecht suggested his coworkers go to the back office to check if anything was missing. Porras discovered her wallet was missing.

Other people in the building also saw McDonald. An administrative assistant for Remedy Staffing, Annayette Esquer, worked on the first floor of the building. Remedy Staffing had a door from its lobby to the restrooms. These restrooms also had an entrance from the building's lobby. Around lunchtime, McDonald came out of the restroom door into Remedy Staffing and asked Esquer if any jobs were available. When she said no, McDonald started to go out Remedy Staffing's main entrance but then asked if he could use the bathroom. She said yes. He was in the bathroom for a short period of time and then left by the business's main entrance.

Elena Martinez was working as a receptionist at Capital Funding on the second floor of the building. Between noon and 1:00 p.m., she saw McDonald on the stairs and then walking down a hallway that was not generally open to the public; the hallway had a "restricted access" sign. McDonald was out of her view for about 30 seconds. He later came up to her desk and asked about the restrooms. She told him they were downstairs. She watched as he walked downstairs. She saw the door to the bathroom shut.

At trial, Porras, Brecht, Esquer and Martinez identified McDonald as the man they had seen on November 3. Porras and Brecht had been earlier shown a photographic lineup. Porras had identified McDonald and Brecht had selected two photos, one of

which was of McDonald. Brecht and Martinez had attended a live line-up where they both selected two persons, one of whom was McDonald.

On November 6, Porras's Nordstrom credit card, gym membership card and Movie Watcher's card were found under the front passenger seat of McDonald's car.

### *Defense*

Washington testified McDonald did not participate in any of the burglaries. Washington had pleaded guilty to the Havern and Meza burglaries and during trial testified about committing the Borrego burglary.

Washington often borrowed McDonald's car; McDonald was unable to drive because he had broken his glasses. Washington committed the crimes with a "homie" named "C.K." who he would meet at a trolley station. Washington did not know where C.K. lived and did not have his phone or pager number. When he was arrested, he told the police detective that McDonald was not involved. He denied there was any conversation between himself and McDonald where McDonald suggested Washington should take the blame for the crimes because Washington was likely to get probation while McDonald was likely to go to prison.

Burton testified McDonald was not living with her, but at One Day At A Time. McDonald let her use his car when her car was not working. She would often pick him up at One Day At A Time and he would always return to the facility in the evening to sleep because it had a curfew.

Burton specifically remembered what occurred on October 23, 2003, the day of the Meza/Morgan crimes, because it was her son's birthday. She picked up McDonald at

9

One Day At A Time, brought him with her to her 11:00 a.m. kick boxing class at San Diego City College, ate lunch with him in Chula Vista, dropped him off at One Day At A Time and then, driving McDonald's car, returned to the Troy Street apartment.

She also specifically recalled November 3, the day of the E & L Therapy petty theft. She went with McDonald to One Day At A Time to pick up his food voucher between noon and 1:00 p.m. He was with her when she went grocery shopping, she dropped McDonald and Washington at her apartment, and then left her apartment about 2:00 p.m.. The records for One Day At A Time, however, indicated that McDonald did not receive a food voucher on November 3; the last voucher he received was on October 20.

In 2003, Burton and McDonald had been just friends. However, they had since fallen in love. She visited him twice a week in jail. She had deposited money in his jail account.

McDonald denied being involved in any of the burglaries. He testified he was not living in Burton's apartment. He let Burton and Washington regularly borrow his car. He never saw the guns in the apartment. He first learned of the video camera in the trunk of his car when he read the police report. He did not know Porras's cards were under the front passenger seat and had not seen them prior to trial. He never tried to sell jewelry to anybody in the market across from the Troy Street apartment. He had no conversation with Washington while in the holding cell because the deputies would not let them talk.

10

*Rebuttal*

When Washington was arrested, he initially denied any involvement in the burglaries. He later admitted he committed the Borrego and Meza burglaries with McDonald and gave details about the burglaries, including that McDonald climbed up to the rear balcony of the Meza residence. He said the burglaries were McDonald's idea and he went along only because he was McDonald's friend and was going to "watch his back." Washington claimed the camcorder was from his aunt's house.

McDonald, when he was interviewed by the police, denied any involvement in the crimes, but after being asked if his fingerprints would be on the guns taken in the Meza burglary, admitted he had handled them at one point.

McDonald and Washington were placed in the holding cells. Each was alone in a cell. McDonald yelled to Washington that they were in a lot of trouble and that Washington would probably get probation but McDonald was looking at prison time because he was on parole. About 15 minutes later, McDonald told a detective that Washington wanted to talk to the detective and would tell him McDonald had nothing to do with the burglaries.

The detective then went to Washington's holding cell and asked if Washington wanted to talk about something. Washington said yes. He said McDonald was not involved with the burglaries; he did them with someone else whom he knew but could not describe. The detective looked at Washington and essentially told him that he knew what was going on, could appreciate that he wanted to take care of McDonald, but that both he and Washington knew that McDonald was the other person who did the

11

burglaries. Washington bowed his head, nodded, and said, "Yeah," acknowledging that what the detective said was correct.

## DISCUSSION

## I

### *Suggestive Identification Procedure*

McDonald contends the photo array used by the police was unduly suggestive because he had the darkest complexion of the African American males used in the array.

Four witnesses were shown the photo array: Terina and Elias Noa on November 4, 2003, Porras on November 12, 2003, and Nicholas Brecht several months after Porras's wallet was taken. Detective Jerry Hartman generated the photo array using a computer program containing thousands of photographs that selects photographs similar to the suspect's description. Among the characteristics the detective was looking for were African American males, about the same age as McDonald, who had some facial hair and braided hair. At the time he generated the array, he did not have information indicating the suspect was a "dark complected" African American; he did not learn that until he talked with Porras. At trial, he stated what was "dark complected" was a matter of opinion, and that different people have different opinions of what is dark, light and medium. Detective Hartman acknowledged McDonald was the darkest male in the lineup but noted the photo array specifically admonishes the witnesses that they are not to

12

look at the complexion because there are many factors that could change the complexion of a person.[4]

To determine whether a pretrial identification procedure is so unreliable that it violates a defendant's right to due process, a court must look at whether the identification procedure was unduly suggestive and unnecessary. (*People v. Carter* (2005) 36 Cal.4th 1114, 1152.) A pretrial identification procedure is unduly suggestive if it " 'suggests in advance of identification by the witness the identity of the person suspected by the police.' " (*People v. Hunt* (1977) 19 Cal.3d 888, 894.) It is not necessary in assembling a photo array to surround the defendant's photo with people who are nearly identical in appearance. (*People v. Brandon* (1995) 32 Cal.App.4th 1033, 1052.) The defendant bears the burden of showing unfairness "as a demonstrable reality, not just speculation." (*People v. DeSantis* (1992) 2 Cal.4th 1198, 1222.)

If the pretrial identification procedure was unduly suggestive, then the courts look at the totality of circumstances to determine whether the procedure was nonetheless reliable. (*People v. Carter, supra,* 36 Cal.4th at p. 1152; *People v. Yeoman* (2003) 31 Cal.4th 93, 125.) In viewing the totality of circumstances, the courts consider " 'such factors as the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.' " (*People v. Ochoa* (1998) 19 Cal.4th 353, 412.)

---

4        The photo array included the statement:  "Also, photographs may not depict the

We have independently reviewed the photo array. The six men in the array are generally similar in appearance. All are African American men of a similar age, with similar hairstyles and facial features. While McDonald's complexion is darker than the other men, it is not radically darker, particularly in the black-and-white photo arrays shown to the witnesses. Moreover, the photo array specifically warned the witnesses the photo array might not accurately reflect the individual's complexions. The fact one of the witnesses, Nicholas Brecht, selected two photos also undercuts McDonald's claim the array was unduly suggestive, that is, that it suggested in advance which individual Brecht should select. We conclude the photo array was not unduly suggestive.

Furthermore, even if we were to find the photo array was unduly suggestive, we would not reverse because the totality of the circumstances shows the procedure was nonetheless reliable. The photo arrays were shown to the majority of the witnesses within two weeks of the offenses; Brecht did not see the photo array until several months later. All the witnesses had a good opportunity to view the suspect at close or relatively close range. Each witness personally interacted with the suspect, responding to the suspect's request for water or for directions. There were no issues as to lighting conditions; the suspect was either viewed outside during the day or inside a business

true complexion of a person."

14

during working hours. The witnesses' descriptions of the suspect generally matched McDonald.[5]

Finally, we note this is not a case that relied solely on eyewitness identification. McDonald was linked to the crimes through the license plate of his car and through the property of the victims found in the Troy Street residence or in his car.

## II

### Impeachment of Burton

McDonald contends the court erred in allowing the prosecutor to examine Burton about letters she had written to McDonald, including in August 2004, detailing her sexual fantasies and love for him. He contends the evidence should have been excluded because they were not timely disclosed. He also contends defense counsel was incompetent by failing to pursue exclusion as a discovery sanction and failing to raise hearsay and relevancy objections.

During direct examination, Burton testified she spent much time with McDonald from August 2003 until he was arrested on November 5, 2003. Beginning on October 29, they were together almost every day, but he did not sleep at her apartment. During cross-examination, she admitted she visited McDonald twice a week in the jail, had put money into McDonald's jail account, had hired a lawyer for him at one point, and was in love with him. She testified she had told McDonald their relationship would not continue if he

---

5    For example, the Noas described the suspect as an African American male, 20 to 25 years old, braided hair, about 6'2", with a muscular build. The probation report,

were released and she testified she would not lie for McDonald. When the prosecutor asked if she currently thought of her relationship with McDonald being "sexual in nature at all," Burton answered, "How can it be sexual when he is incarcerated?" The prosecutor then asked if Burton had written to McDonald about sexual fantasies she had about him. Defense counsel objected because she had received copies of the letters just prior to Burton's direct examination, and expressed concern some of the letters might involve the attorney/client privilege or defense strategies when Burton may have been "working for" McDonald when he was self-represented. The prosecutor responded that the letters had been obtained by the previous prosecutor, involved correspondence after defense counsel "came on the case," and argued Burton's expressed sexual fantasies were relevant to showing "bias, interest or other motive." The court noted McDonald had received the letters, found no attorney/client issues were present or defense strategy issues were involved, and they were relevant to showing Burton's possible bias. The court stated it would not excuse Burton after cross-examination and defense counsel could have that evening to examine the letters and to try to rehabilitate her the following day.

The prosecutor then proceeded to cross-examine Burton on some details of her sexual thoughts and fantasies contained in the letters, and how she had written that she would love him forever. He also asked her if they had ever engaged in oral sex or sexual

completed in November 2004, shows McDonald as 25 years old, black, 6'2", and weighing 204 pounds.

intercourse, which she denied. Defense counsel did not object to any specific question nor did she raise any further general objections to the evidence.

### (A) Discovery Violation

Section 1054 et seq. provides for reciprocal discovery between the prosecution and the defense in criminal trials. "The purpose of section 1054 et seq. is to promote ascertainment of truth by liberal discovery rules which allow parties to obtain information in order to prepare their cases and reduce the chance of surprise at trial." (*People v. Jackson* (1993) 15 Cal.App.4th 1197, 1201.) A prosecutor is required to disclose to the defense "[a]ll relevant real evidence seized or obtained as a part of the investigation of the offenses charged" that is in the prosecutor's possession. (§ 1054.1, subd. (c).) If the prosecutor fails to disclose evidence after an informal or court-ordered discovery request, "a court may make any order necessary to enforce the provisions of [the] chapter, including, but not limited to, immediate disclosure, contempt proceedings, delaying or prohibiting the testimony of a witness or the presentation of real evidence, continuance of the matter, or any other lawful order." (§ 1054.5, subd. (b).)

Here, the letters were written to McDonald and therefore he had knowledge and possession of them. This is not a situation where the defendant was previously unaware of the existence of the evidence. The letters did not involve evidence establishing McDonald's guilt, but went to a collateral issue of a witness's credibility. The court's decision not to excuse the witness following cross-examination and allow defense counsel time to review the letters was a reasonable response to defense counsel's objection.

## (B) Ineffective Assistance of Counsel

McDonald contends defense counsel was ineffective in failing to further object to the late discovery, and argues counsel should have objected to admission of the evidence under Evidence Code section 352 because the probative value of the evidence was outweighed by a danger of undue prejudice.[6]

" '[A] conviction will not be reversed based on a claim of ineffective assistance of counsel unless the defendant establishes both of the following: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, a determination more favorable to defendant would have resulted.' " (*People v. Padilla* (1995) 11 Cal.4th 891, 935-936, italics omitted, overruled on other grounds in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.) "A reviewing court will indulge in a presumption that counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy. Defendant thus bears the burden of establishing constitutionally inadequate assistance of counsel. [Citations.] If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there

---

6    McDonald also asserts the excerpts from the letters constituted inadmissible hearsay but he fails to make any further argument or citation of authority to support his argument and therefore we may deem this argument waived. (See *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979; *McComber v. Wells* (1999) 72 Cal.App.4th 512, 522-523.)

Code, §§ 210, 780, subd. (a).) "A trial court's exercise of discretion in admitting or rejecting evidence pursuant to Evidence Code section 352 'will not be disturbed on appeal unless there is a manifest abuse of that discretion resulting in a miscarriage of justice.' " (*People v. Cain* (1995) 10 Cal.4th 1, 33.)

Here, the evidence was relevant to establishing the extent of Burton's bias and motive to lie. Further, the evidence was relevant to impeach Burton's testimony that she was not contemplating continuing a relationship with him if he were acquitted. In contrast to her trial testimony, the letters, written only a few months earlier, indicated she wanted to be with him and would love him forever.

Moreover, even if we were to agree with McDonald that defense counsel should have objected, we would not reverse because there is no reasonable probability the verdict would have been different had the evidence been excluded.

Even without the letters, Burton's credibility was severely undermined. She had already admitted that she was in love with McDonald and thus that she had a bias in McDonald's favor and a motive to lie. The excerpts from the letters merely provided additional details about the extent of her bias. Burton's testimony intended to show McDonald was not living in her apartment and to provide McDonald with an alibi for the burglaries was undercut not merely by evidence of her potential bias but by other evidence showing she was lying, including the lack of McDonald's personal belongings at One Day At A Time as of October 17, records contradicting her claim she and McDonald picked up a food voucher at One Day At A Time on November 3, the observations of the

20

produce market clerk about seeing McDonald at the apartment, and by police surveillance of the apartment.

Moreover, there was overwhelming evidence establishing McDonald's guilt. Not only were there multiple eyewitness identifications but also property from the burglaries was found in his car and the Troy Street apartment.

There is no reasonable probability that had the jury not heard about Burton's sexual fantasies, the jury would have acquitted McDonald.

### III

*Staying Versus Striking Enhancement*

The court stayed a one-year section 667.5, subdivision (b) enhancement and instead imposed a five-year prior serious felony enhancement under section 667, subdivision (a).

In *People v. Jones* (1993) 5 Cal.4th 1142, 1152, the court held it is improper to impose both a section 667, subdivision (a) serious felony enhancement and a section 667.5, subdivision (b) enhancement based on the same serious felony. The *Jones* court ordered the section 667.5, subdivision (b) enhancement stricken. (See also *People v. Solis* (2001) 90 Cal.App.4th 1002, 1021; *People v. Gonzales* (1993) 20 Cal.App.4th 1607, 1610, but see *People v. Walker* (2006) 139 Cal.App.4th 782, 794, fn. 9.)

Accordingly, we order the section 667.5, subdivision (b) enhancement stricken.

## IV

### *Correction of the Abstract of Judgment*

As the Attorney General concedes and we agree, there are errors in the abstract of judgment.

First, the abstract erroneously indicates that the burglaries in counts 2 and 3 were imposed as "consecutive 1/3 violent." There is no evidence supporting a finding these burglaries were violent. Accordingly, the abstract of judgment should be corrected to reflect "consecutive 1/3 non-violent."

Second, while there is a check mark on the abstract of judgment indicating "Defendant was sentenced pursuant to PC 667 (b)-(i) or PC 1170.12 (two strikes)," the actual individual sentences do not reflect this sentencing, that is, do not reflect, as the court ordered in its oral pronouncement, that the sentences were to be doubled as provided by the three strikes law. When discrepancies exist, the oral pronouncement of judgment generally prevails. (*People v. Price* (2004) 120 Cal.App.4th 224, 242.)

Accordingly, the abstract of judgment should be corrected as follows:

Count 1:  a term of eight years rather than four years.

Count 2:  a term of two years and eight months rather than one year and four months.

Count 3:  a term of two years and eight months rather than one year and four months.

Count 4:  a term of one year and four months rather than eight months.

Count 5:  a term of one year and four months rather than eight months.

22

<u>Count 6</u>:  a term of one year and four months rather than eight months.

<u>Count 7</u>:  a term of one year and four months rather than eight months.

Third, the abstract of judgment fails to indicate the court stayed imposition of sentence on count 6, receiving stolen property.

## DISPOSITION

We order the abstract of judgment to be corrected to reflect:  the striking of the section 667.5, subdivision (b) one-year enhancement; count 1 has a term of eight years; counts 2 and 3 are nonviolent felonies and each have a term of two years, eight months; counts 4 to 7 each have a term of one year, four months; count 6 is stayed; 5 years for the prison prior allegation, and the total term is 22 years 4 months.  A copy of the amended abstract is to be forwarded to the Department of Corrections and Rehabilitation.  In all other respects, we affirm the judgment.

McCONNELL, P. J.


WE CONCUR:


O'ROURKE, J.


AARON, J.


23

EXIBIT "F"

Court of Appeal, Fourth Appellate District, Div. 1 - No. D046881
S150458

# IN THE SUPREME COURT OF CALIFORNIA

### En Banc

THE PEOPLE, Plaintiff and Respondent,

v.

JOSEPH HILTON MCDONALD, Defendant and Appellant.

The petition for review is DENIED.

SUPREME COURT
F I L E D

MAR 2 8 2007

Frederick K. Uhlrich Clerk

DEPUTY

**GEORGE**

Chief Justice

EXIBIT "G"

**State of California, Department of Corrections: Southern Region, Service Area = H , Institution = CSP-LSP**

Page 1 of 2

**MENTAL HEALTH TREATMENT PLAN:** Sequential Part One Identifier Number

☐ Original    ☒ Update    ☐ Rejustification    ☐ CCCMS Annual Case Review

**I. General Information:**

Arrival Date This Treatment Setting: ___/___/06

☐ CCCMS ☒ **EOP** ☐ MHCB/Infirmary

☐ PSU -- ☐ _____ week observation.

Anticipated Date of Transfer to GP: ___/___/

Custody Level: I / II / III / **IV** / AdS / SHU

By: X Team ☐ Individual Clinician

☐ MH 6 ☐ C File ☐ Health Record

☒ Unit Health Record ☐ MH 1

☐ MH 4 X Prior MH 2 ___/___/05

Prior MH2 Diagnosis:

Today Date **05/30/06**

Next Up Date **08/30/06**

| II. Print Treatment Team Members | Position | Telephone & Extension |
|---|---|---|
| Dr. Elstead | Psychiatrist | |
| Dr. Herrera | Psychologist | |
| | Custody | |
| Mr. Joseph McDonald | Patient | |

**III. Present Mental Status** Date: 05/30/06    By: Dr Herrera    Title: Psychologist    *JMD PW*

A) Appearance ☐WNL sligthly discheveled

B) Behavior ☒WNL        Speech ☒WNL

C) Mood ☐WNL    Sleep ☐WNL    Appetite ☐WNL    Affect ☐WNL flat

D) Cognition:

     1) Fund of Information ☒WNL DDP: YES / NO

     2) Intellectual Functions ☒WNL

     3) Organization of Thought ☒WNL

     4) Association of Thought ☒WNL

     5) Reality Contact ☒WNL

     6) Thought Quality ☒WNL

27 y/o Black male presents depressively toned with history of MDD in partial resolution and secondary chronic CDC institualization

E) Perception Disturbances (Hallucinations) ☒None    currently denies with history

F) Thought Content (Delusions) ☐ None    vague paranoid delusions

G) Sensorium (Orientation, Memory, Attention, Concentration)    reasonable sensorium

H) Insight & Judgment ☒WNL    good insight and judgment

I) Interview Attitude ☒WNL    compliant with interview

J) Current Suicidality ☒None noted or stated.    currently denies with history

K) Current Violence Risk ☒None noted or stated.    currently denies with history

---

| MENTAL HEALTH TREATMENT PLANS, UPDATES, REJUSTIFICATION MH 2 [3/29/96] Part One: General, Team, MSE Diagnosis, Problems, Inmate Strengths Part Two: Problem Pages -- Results Use Insert-a-Page of MH 1 Confidential Client/Patient Information See W & I Code, Section 5328 | LEVEL OF CARE CSP-LSP EOP | Last Name:    First Name:    MI: <br><br> McDonald, Joseph <br> CDC: T01657 <br> DOB: 03/14/79 <br><br> CDC # ___-___ ___ ___    DOB ___/___/___ |
|---|---|---|

**Mental Health Treatment Plan Part One:**  Page 2 of 2

**IV. DSM IV** Numerical ☐Last MSE __/__/__ ☐Last TP __/__/__ MH 1☐__/__/__ Last MH 4 __/__/__

| Axis I | 296.34 | Major Depressive Disorder, recurrent and severe with psychotic features |
| --- | --- | --- |
| Axis II | 301.7 | Antisocial Personality Disorder |
| Axis III | | HX: HEAD TRAUMA YES / <u>NO</u>      SEIZURES  YES / <u>NO</u> |
| Axis IV | | (current) PRISON |
| Axis V | | GAF = 55 |

**V.  Problem / Symptom List**

#1   Treatment insight

#2

#3

**VI.  Inmate's Strength and Weakness, Goals**      Inmate's Treatment Goals, ☐ MH 6 Input

(+)  Physical Health

(-)  ASPD      Treatment Read: ☐ Amenable ☐ Motivated ☐ Resistant

**VII. Discharge Plan :** ☐GP ☐CCCMS ☑EOP      ☐MHCB ☐DMH

Maintain EOP LOC in order to

stabilize the patient's clinical condition

Signature(s)

---

State of California,  Department of Corrections:  Southern Region,  Service Area = **H**, Institution = **CSP-LSP**

TREATMENT PLAN PART TWO:  PROBLEM ➡ #   1   pg.   3   Today Date: 05/30/06

| MENTAL HEALTH TREATMENT PLANS, UPDATES, REJUSTIFICATION MH 2 [3/29/96] Part One: General, Team, MSE Diagnosis, Problems, Inmate Strengths Part Two: Problem Pages – Results Use Insert-a-Page of MH 1 Confidential Client/Patient Information See W & I Code, Section 5328 | LEVEL OF CARE CSP-LSP EOP | Last Name:      First Name:      MI: McDonald, Joseph CDC: T01657 DOB: 03/14/79 CDC # __-__-__ __-__      DOB __/__/__ |
| --- | --- | --- |

| | | | X Re-justify, 12 weeks |
|---|---|---|---|
| **Initial Treatment Plan** | | **Update because**    Possible Completion | **Date: 08/30/06** |
| **Prob. #1** | **Describe Problem: Treatment Insight** | Next Review | **Date: 08/30/06** |
| | | | |
| | **Target Behavior(s): INMATE WILL RATE: Increase Treatment Insight**  <br><br> NOW SCORES \_\_\_\_\_/10 (MAX INTENSITY) | | |
| | | | |
| | **Target Objective(s): DECREASE: Poor Treat Insight: Will be assessed**  <br><br> with 1 – 10 (max) Treatment Insight scale and treated in weekly CM contact | | |

| Date | Intervention (s) & Staff Assigned. | Frequency and Duration. | Results. |
|---|---|---|---|
| 05/30/06 | Psychiatric management of medication | Monthly | |
| | | | |
| 05/30/06 | Case manager treatment focus on treatment  <br><br> insight in weekly CM contact and placement  <br><br> in 10 hours of EOP group treatment | Weekly | |
| | | | |
| 05/30/06 | Psychiatric technician focus on treatment  <br><br> and medication compliance | Daily | |
| | | | |
| | | | |

| | | | | |
|---|---|---|---|---|
| **MENTAL HEALTH TREATMENT PLANS, UPDATES, REJUSTIFICATION**  <br> **MH 2 [3/29/96]**  <br> Part One: General, Team, MSE Diagnosis, Problems, Inmate Strengths  <br> Part Two: Problem Pages -- Results  <br> Use Insert-a-Page of MH 1  <br> Confidential Client/Patient Information See W & I Code, Section 5328 | **LEVEL OF CARE**  <br><br> **CSP-LSP EOP** | Last Name:      First Name:      MI:  <br><br> McDonald, Joseph  <br> CDC: T01657  <br> DOB: 03/14/79  <br><br> CDC # \_\_\_-\_\_ \_\_ \_\_ \_\_ \_\_    DOB \_\_/\_\_/\_\_ | | |

08/10/06　　McDonald, J., (T01657)

S – Black male inmate seen in the context of .25 EOP/CM.

"I'm working on the weekends and I hope to get a job during the week".

O – Mr. McDonald presents a depressively toned though improved clinical picture. Much of the session revolved around a review of his significant early poly substance abuse and subsequent short-term memory deficits. The patient is compliant with his psychotropic medication and EOP group treatment regimes and reports reasonably stability in significant mood symptoms. Intellectual abilities are low average with the suggestion of mild cognitive deficits, which may be substance induced. Frank symptoms are reportedly resolved with his current regime. Suicidal and/or homicidal ideation is denied and judgement remains impaired.

A – Major Depressive Disorder, recurrent and severe with psychotic features.

P – Maintain EOP LOC in order to further stabilize the presenting clinical picture

E – Focus on the neurobiological basis of major psychiatric illness

Dr. John Herrera

| MENTAL HEALTH PROGRESS NOTES | MH3 | Last Name: First Name: MI: |
|---|---|---|
| MH3 Progress notes | | McDonald  T01657 |
| Confidential Client/Patient Information See W & I Code, Section 5328 | ____ Inpatient  If inpatient, copy for outpatient MH record. | CDC # ___-___ ___ ___ ___ ___ DOB ___/___/___ |

07/27/06        McDonald, J., (T01657)

S – Black male inmate seen in the context of .25 EOP/CM.

"I'm doing better".

O – Mr. McDonald presents stable slightly improved clinical picture. The patient is compliant with his psychotropic medication and EOP group treatment regimes and significant mood symptoms, including neuro vegetative signs are denied. Intellectual abilities are low average and frank symptoms are reportedly improved. Suicidal and/or homicidal ideation is denied and insight and judgement remains impaired

A – Major Depressive Disorder, severe and recurrent with psychotic features

P – Maintain EOP LOC in order to further stabilize the presenting clinical picture.

E- Encourage treatment compliance.

Dr. John Herrera

| MENTAL HEALTH PROGRESS NOTES | MH3 | Last Name: | First Name: | MI: |
|---|---|---|---|---|
| MH3 Progress notes | ____ Inpatient | McDonald  T01657 | | |
| Confidential Client/Patient Information See W & I Code, Section 5328 | If inpatient, copy for outpatient MH record. | CDC # __-__ __ __ __ __    DOB __/__/__ | | |

07/13/06    McDonald, J. (T01657)

S – Black male inmate seen in the context of .25 EOP/CM

"I'm depressed...thinking about how my family turned against me".

O – Mr. McDonald presents a depressively toned clinical picture, reporting recent bad dreams, crying

spells and fatigue, though other significant mood symptoms are denied. These symptoms appear to be

related to recent problems with his family. The patient is compliant with his psychotropic medication

and EOP group treatment regimes. Intelligence is average and frank symptoms are reportedly resolved

with his current regime. Suicidal and/or homicidal ideation is denied and insight and judgment appear

slightly improved.

A – Major Depressive Disorder, recurrent and severe with psychotic features

P – Maintain EOP LOC in order to further stabilize the presenting clinical condition

E – Encourage psychotropic and EOP group treatment compliance

Dr. John Herrera

07/20/06    S – McDonald (T01657)

O – Presents a depressived toned though slightly
improved Clinical picture. Reports recent
crying spells associated in group the discussion. –S/I, U/I
Average IQ ō no frank symptoms,

A – MDD
P – maintain EOP/LOC        Dr Herrer

| MENTAL HEALTH PROGRESS NOTES | MH3 | Last Name: McDonald | First Name: | MI: |
|---|---|---|---|---|
| MH3 Progress notes | ___ Inpatient | T01657 | | |
| Confidential Client/Patient Information See W & I Code, Section 5328 | If inpatient, copy for outpatient MH record. | CDC # __-_____  DOB __/__/__ | | |

State of California, Department of Corrections -- Institution: <u>CSP-LAC</u>    Prior Page Number : ____

CHRONOLOGICAL INTERDISCIPLINARY PROGRESS NOTES:    All Staff, Clinicians, Treatment Teams.

| Date/Time: | Use Name & Title Stamp.<br>**David Sirkin, MD**<br>psychiatrist |
|---|---|
| 7/7/0?<br>1?35 | Staff referral – for ... increase<br>x 2 wk in frank Sxs (AH) |
| | S: "It's a little better now –<br>maybe I need time to<br>get used to it [med ∆'s]"<br>sleeping ok |
| | O: mood "all right - up & down - not<br>two bad" Affect fairly bright,<br>some blunting. ⊕AH ⊖PI ⊖SI/HI<br>labs pending |
| | A: MDD c̄ psychotic feats, improving |
| | P: cont Geodon 20 + 40<br>cont Prolext 30 gms<br>cont Remeron 15 g pm |
| | E: encourage exercise<br>f/u 60 d |

Page #

| MENTAL HEALTH<br>INTERDISCIPLINARY PROGRESS NOTES<br><br>MH 3 [3/21/96]<br><br>Confidential Client/Patient Information<br>See W & I Code, Section 5328 | LEVEL OF<br>CARE<br><br>EOP<br><br>Inpatient<br><br>(Outpatient) | Last Name:<br>McDonald,<br><br>CDC # I-01607 | First Name:<br>Joseph<br><br>DOB 3/14/79 | MI: |

California Department of Corrections...
VERSUS
CHRONOLOGICAL PROGRESS NOTES

07/06/06     McDonald, J., (T01657)

S – Black male inmate seen in the context of .25 EOP/CM

"I'm sort of depressed".

O – Mr. McDonald presents mild depressively toned clinical picture, which he attributes to recent

preoccupation with his family.  The patient is compliant with his psychotropic medication and EOP group

treatment regimes and denies other significant mood symptoms.  Intelligence is average and frank

symptoms are reportedly resolved with his current regime. Suicidal and/or homicidal ideation is denied

and insight and judgment remains limited.

A – Major Depressive Disorder, severe and recurrent with psychotic features

(In partial resolution)

P – Maintain EOP LOC in order to further stabilize the presenting clinical condition

E – Encourage psychotropic and EOP group treatment compliance

Dr. John Herrera

| MENTAL HEALTH PROGRESS NOTES | MH3 | Last Name: | First Name: | MI: |
|---|---|---|---|---|
| MH3 Progress notes | ___ Inpatient | McDonald | T01657 | |
| Confidential Client/Patient Information See W & I Code, Section 5328 | If inpatient, copy for outpatient MH record. | CDC # __:_ _ _ _ _ | DOB __/__/__ | |

Page Number : ___

State of California, Department of Corrections -- Institution: C.S.P.-L.A.C.

CHRONOLOGICAL INTERDISCIPLINARY PROGRESS NOTES:   All Staff, Clinicians, Treatment Teams.

Store & File Reverse Chronological Order.

Date/Time: Problem & #. [✓]. Signature, Title & Print (or stamp).

**7/15** Mr. McDonald seen for individual
**10:35** session.
   He says he is 27, this is his 2nd time
in jail + he only had two weeks in between.
He was involved in moving stolen
goods. He is C phase closed A but
thinks he gets off closed A next month.
His ~~own~~ goal is to get along with others.
Says he likes all groups & goes to all.
   He reports his medications "helps to stay
balanced" + "voices before were bothering
me" but "now everyone in a while"
On outside taking medication — laughs
as he says he can't get it in here.
   His demeanor was always laughing
+ upbeat. — Commented that of
made him laugh — usually he
doesn't.
                                    Sharon Whidden

Page # ___

---

| MENTAL HEALTH INTERDISCIPLINARY PROGRESS NOTES | LEVEL OF CARE | Last Name: | First Name: | MI: |
|---|---|---|---|---|
| CDC Form MH 3 {11/9/95} | EOP  Inpatient  (Outpatient) | McDonald, | Joseph | |

Confidential Client/Patient Information
See W & I Code, Section 5328

CDC # T-01657   DOB _/_/_

06/14/06     McDonald, J., (T01657)

S – Black male inmate seen in the context of .25 EOP/CM

"I didn't know if I wanted to live, last night…all my time and stuff just got to me…"

O – Mr. McDonald presents emotionally liable, mildly depressed clinical picture with vague suicidal ideation. He reports periods of rapid cycle depression with sad affect, sleeplessness, loss of appetite, and a sense of worthlessness and doom. The patient is compliant with his psychotropic medication and EOP group treatment regimes. Intellectual abilities are low average and include short-term memory and retention cognitive deficits, which are associated with significant early poly substance abuse (inhalants and PCP). Frank symptoms are reportedly resolved with his current medication regime. Suicidal and/or homicidal ideation is denied an insight and judgement remains limited.

A – Major Depressive Disorder, recurrent and severe with psychotic features

P- Maintain EOP LOC in order to further stabilize the presenting clinical picture

E – Focus on the neuro biological basis of his major psychiatric disorder

Dr. John Herrera

| MENTAL HEALTH PROGRESS NOTES | MH3 | Last Name: | First Name: | MI: |
|---|---|---|---|---|
| MH3 Progress notes | ___ Inpatient | McDonald | T01657 | |
| Confidential Client/Patient Information See: W & I Code, Section 5328 | If inpatient, copy for outpatient MH record. | CDC # ___:___ ___ ___ ___ ___ | DOB ___/___/___ | |

State of California, Department of Corrections – Institution: CSP-LAC    Prior Page Number : _____

CHRONOLOGICAL INTERDISCIPLINARY PROGRESS NOTES:    All Staff, Clinicians, Treatment Teams.

Use Name & Title Stamp.

| Date/Time: | |
|---|---|
| | 30 ♂ F/u |
| 6/14/06 | 26 y/o A.A.     **ROBERT J. ELSTAD M.D.** |
| 1325 | **PSYCHIATRIST** |
| | One month ago inmate was begun on Geodon |
| | 20/40 because of reappearance of AH⁰ after their |
| | absence of several months. AH⁰ are now gone. No |
| | side-effect or EPS. Sleep=good. No SI, HI. |
| | Med Compliant |
| | P- OF/u 60 days |
| | ① Continue Geodon, Remeron + Zoloft |
| |       Robert J. Elstad, MD |

| MENTAL HEALTH INTERDISCIPLINARY PROGRESS NOTES | LEVEL OF CARE | Last Name: McDonald,   First Name: Joseph   MI: |
|---|---|---|
| MH 3 [3/21/96] | | |
| Confidential Client/Patient Information See W & I Code, Section 5328 | Inpatient | CDC # J01657    DOB __/__/__ |
| | Outpatient | |

California Department of Corrections & Rehabilitation    Prior Page Number

Institution: CSP - LSP    MHSDS    MH3

CHRONOLOGICAL PROGRESS NOTES

06/07/06      McDonald, J., (T0165)

S – Black male inmate seen in the context of .25 EOP/CM

"I just don't feel good…I haven't' eaten in three days…I'm just not hungry…I'm sad and not interested in anything…and I'm just not doing anything".

O – Mr. McDonald presents a depressively toned clinical picture, reporting moderate mood symptoms, including sad affect, fatigue, and loss of interest in daily activities.  The patient is compliant with his psychotropic medication and EOP group treatment regimes.  Intellectual abilities are low average and compromised by a history of poly substance abuse and chronic CDC instiualization.  Frank symptoms are reportedly improving with his recent medication adjustment and suicide and/or homicidal ideation is denied.  Insight and judgement remains impaired.

A – Major Depressive Disorder, recurrent and severe with psychotic features

P – Maintain EOP LOC in order to further stabilize the presenting clinical picture and refer for a SSRI trial.

E – Focus on EOP group treatment compliance.

Dr. Herrera

| MENTAL HEALTH PROGRESS NOTES  MH3 Progress notes  Confidential Client/Patient Information See W & I Code, Section 5328 | MH3  ___ Inpatient  If inpatient, copy for outpatient MH record. | Last Name:      First Name:      MI:  McDonald  T0165?  CDC # __ _ _ _ _ _ _    DOB __/__/__ |

05/25/06    McDonald, J., (T01657)

**S** – Black male inmate seen in the context of .25 EOP/CM.

**O** – Mr. McDonald presents a depressively toned but slightly improved clinical picture. He is compliant with his psychotropic and EOP group treatment regimes and denies significant mood symptoms. Intellectual abilities are average and limited by chronic CDC institualization. Frank symptoms are reportly improved with his current regime. Suicidal and/or homicidal ideation is denied. Insight and judgment remains impaired.

**A** – Major Depressive Disorder, recurrent and severe with psychotic features

**P-** Admit to EOP LOC in order to further stabilize the presenting clinical presentation and refer to psychiatry to review the patients' request for PM dosing

**E** – Encourage treatment compliance through patient education.

Dr. John Herrera  PM

5/8/06   S- B♂ I/m seen in .25 EOP/cm at coll (CDC inst search)

O- Presents slightly improved clinical picture, ū mild depressive symptoms
Reports active participation in EOP tht ū low average IQ & partial
Resolution of frank symptoms (AH), – S/I – H/I ū
limited insight —

A – MDD recurrent & severe

P – maintain EOP LOC

Dr Herrer  PhD

| MENTAL HEALTH PROGRESS NOTES | MH3 | Last Name: | First Name: | MI: |
|---|---|---|---|---|
| MH3 Progress notes | ___ Inpatient | McDonald | T01657 | |
| Confidential Client/Patient Information See W & I Code, Section 5328 | If inpatient, copy for outpatient MH record. | CDC # __:__ __ __ __ | DOB __/__/__ | |

California Department of Corrections & Rehabilitation                    Prior Page Number _____
Institution CSP - LSP                    MHSDS                    MH1
                    CHRONOLOGOCAL PROGRESS NOTES

05/18/06      McDonald, J., (T01657)

S – Black male inmate seen in the context of .25 EOP/CM.

"I went to the doctor…because the voices are coming back... they be real frequent now…once or twice a day…I'm still sad".

O – Mr. McDonald presents a mildly depressively toned clinical picture with diffuse anxiousness and reports a recent increase in frank symptoms, necessitating a psychiatric medication referral.  The patient reports moderate sad affect and often waking up in the night in an anxious clinical state.  Mr. McDonald is compliant with his psychotropic medication and EOP group treatment regimes.  Intelligence is low average and compromised by a history of poly substance abuse and chronic institualization.  A recent increase in frank symptoms epitomized by persecutory auditory hallucinations is reported.  Suicidal and/or homicidal ideation is denied and insight and judgment remains impaired.

A – Major Depressive Disorder, recurrent and severe with psychotic features

P- Maintain EOP LOC in order to further stabilize the presenting clinical condition.

E – The session included a discussion of the biological basis of the patients' psychiatric condition and was presented in the context of encouraging patient compliance through education

Dr. John Herrera      _Jump_ phD

5/30/06 – Psychiatry – IDTT
        Meds reviewed, no problems c meds
                                        Robert K. Estrada MD


| MENTAL HEALTH PROGRESS NOTES | MH3 | Last Name:      First Name:      MI: |
|---|---|---|
| MH3 Progress notes | | McDonald  T01657 |
| Confidential Client/Patient Information See W & I Code, Section 5328 | ____ Inpatient  If inpatient, copy for outpatient MH record. | CDC # ___-___ ___ ___ ___   DOB __/__/__ |

State of California, Department of Corrections -- Institution: CSP-LAC    Prior Page Number : _____

CHRONOLOGICAL INTERDISCIPLINARY PROGRESS NOTES:    All Staff, Clinicians, Treatment Teams.

Use Name & Title Stamp.

| Date/Time: | |
|---|---|
| 5-17-06<br>1550 | (Staff referral from Dr Herrera) ROBERT J. ELSTAD, M.D.<br>PSYCHIATRIST<br><br>26 y/o AA who reports a recent reappearance of AH's after their absence for several months. No reason why. He is on Remeron + Zoloft. No SI, HI. He is calm + rational<br>A- Mood D/O c̄ AH's<br>P- ① Start Geodon 20/40<br>② F/u 2-3 wks<br><br>Robert J. Elstad, MD |

Page #

| MENTAL HEALTH<br>INTERDISCIPLINARY PROGRESS NOTES<br><br>MH 3 [3/21/96]<br><br>Confidential Client/Patient Information<br>See W & I Code, Section 5328 | LEVEL OF<br>CARE<br><br>Inpatient<br><br>Outpatient | Last Name:          First Name:          MI:<br>McDONALD, Joseph<br><br>CDC # T01657    DOB __/__/__ |

State of California, Department of Corrections — Institution: **CSP-LAC**    Prior Page Number: ___ ___

CHRONOLOGICAL INTERDISCIPLINARY PROGRESS NOTES:    All Staff, Clinicians, Treatment Teams.

Use Name & Title Stamp.

| Date/Time: | |
|---|---|
| 5/3/06 | S- B3 I/m seen in .25 EOP/cm |
| | O- Presents slightly improved clinical picture |
| | Denies significant mood symptoms, is |
| | reasonable the compliant in EOP. Average |
| | I Q w/ a hx poly substance abuse, denies AH |
| | w/ current regime. No S/I, V/I w/ improved |
| | insight |
| | A- MDD recurrent & severe |
| | P- Maintain EOP Loc |
| | Prep for DC at |
| | next IDTT (1/03) |
| | E- focus on tx compliance |
| | Dr Hower [signature] D.O. |
| | |
| 5/10/06 | S- BP I/m seen in .25 EOP |
| | "I'm starting to hear voices, a little bit" |
| | O- Presents anxious clinical picture w/ reported |
| | increase in frank symptoms. Denies significant |
| | mood symptoms & is compliant in EOP group. Has |
| | low average I Q w/ a significant hx of poly sub abuse. |
| | increase in Auditory Hallucination w/ command properties |
| | Denies S/I, V/I w/ limited insight |
| | A- MDD recurrent & severe |
| | P- maintain EOP LOC & schedule ? med consult |
| | E- focus on txp compliance |
| | Dr Hower [signature] D.O.    Page # |

| MENTAL HEALTH INTERDISCIPLINARY PROGRESS NOTES MH 3 [3/21/96] Confidential Client/Patient Information See W & I Code, Section 5328 | LEVEL OF CARE | Last Name:    First Name:    MI: |
|---|---|---|
| | Inpatient | McDonald   T01657 |
| | Outpatient | CDC # ___-___ ___ ___    DOB ___/___/___ |

State of California                                            Department of Corrections

# Memorandum   For Fed's



Date :     September 17, 2004

To   :     Regional Administrators-Institutions Division
                 Wardens
                 Litigation Coordinators
                 Education and Inmate Programs Unit

Subject :   **PHOTOCOPYING AND MAILING SERVICE FOR LEGAL DOCUMENTS FROM INDIGENT INMATES**

This memorandum will discuss and clarify to what extent the California Department of Corrections (CDC) must provide indigent inmates free photocopying and mailing service to circulate their legal documents.

Numerous questions and concerns have arisen at institutions regarding the various California Code of Regulations (CCR) sections that pertain to the subject of photocopying and mailing of indigent inmates' legal documents. Those sections include: Section 3134, Indigent Inmates; Section 3160, Inmate access to Courts; Section 3162, Legal Forms and Duplicating Services; and Section 3165, Mailing Legal Documents.

Specifically, Section 3162, Legal Forms and Duplicating Services Mandates, states, in part that, "The printed forms required by state and federal courts which are supplied to the Department by the courts shall be provided to inmates without charge. Inmates shall be required to pay for the duplication of printed forms and other written or typed materials and for any special paper and envelopes required for mailing to the courts. An inmate who is without funds for 30 days or more after such materials and services are provided shall not be required to pay for the cost of those materials and services."

Section 3134, Indigent Inmates states, in part, "An indigent inmate shall have free and unlimited postage for the mailing of claims to the Board of Control and for the filing of legal documents to any court as described in Section 3165."

Section 3165 (d), states, that "The cost of postage for mailing documents to the courts will be charged against an inmate's trust account unless the inmate is without funds at the time the material is submitted for mailing and remains without funds for 30 days after the documents are mailed."

c

Regional Administrators-Institutions Division
Wardens
Litigation Coordinators
Education and Inmate Programs Unit
Page 2

These departmental regulations have not been implemented uniformly among the prisons. Some institutions have been strictly interpreting these CCR sections and only provided free photocopying services and postage for indigent inmates to mail required forms, materials, and documents to the courts and the Board of Control (now named the California Victim Compensation and Government Claim Board). However, other institutions have been providing unlimited photocopying and postage for indigent inmates to mail forms and documents to all parties or entities requested by the inmate. The CDC has accordingly assessed to what extent that free postage and mailing services must be offered to indigent inmates who need them.

Two federal cases are on point. The first one, Bounds v. Smith (1977) 430 U.S. 817, establishes that indigent inmates must be given sufficient resources to circulate their documents for a court action. The second case, Gluth v. Kansas (9th Cir. 1991) 951 F.2d 1504, held that a prison must provide free photocopying and mailing to indigent inmates for "the number of copies of a document required by the court, plus one copy for the opposing party and one copy for the inmate's records."

Based on Bounds and Gluth, the CDC requests that institutions initially restrict the indigent inmate's free copying and mailing of legal documents to one copy for the intended court, one copy for the lead opposing party and a copy for their records. A copy for their records may be interpreted to mean that their copy is established by maintaining the original version of their documents.

It should be noted, the Office of the Attorney General (AG) provides legal representation to the CDC for inmate litigation. If the lead opposing party to an indigent inmate's court action is the CDC or its employees working in their official capacity, the inmate should mail a copy of his or her legal documents to the AG. Accordingly, if the leading opposing party is a Conflict Counsel, County District Attorney, City Attorney, etc., the one copy for lead opposing party should be directed to that entity rather than the AG Office.

Lastly, postage must initially be provided, at a minimum, so as to insure that the indigent inmate can mail one copy of the legal documents to the court and one copy to the AG's office. If the case is accepted by the court, the need for future copies of legal documents and necessary postage would be evaluated on a case-by-case basis.

Regional Administrators-Institutions Division
Wardens
Litigation Coordinators
Education and Inmate Programs Unit
Page 3

In summary, therefore, institutions should initially restrict free copying and mailing of legal documents for an indigent inmate to one copy for the intended court, one copy for the lead opposing party, and one copy for the records of the inmate. The CDC must cover the costs, including postage, for these mailings. The AG constitutes the lead opposing party if the subject of the inmate court action is the CDC or its employees.

If you have questions or require additional information, please contact Frank Lopez, Chief (A), Institution Services Unit, at (916) 323-4242.

CHERYL K. PLILER
Deputy Director
Institutions Division

Attachments

cc: J. S. Woodford
Suzan L. Hubbard
Wendy Still
Reynando Accooe
W. J. Des Voignes

John Dovey
Renee Kanan, M. D.
Frank E. Renwick
Jackie Cervantes
Ombudmen's Office

Ernest C. Van Sant
Kathleen Keeshen
Jim L'Etolle
Kathleen Dickinson
Frank Lopez



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**
312 North Spring Street, Room G-8  Los
Angeles, CA  90012
Tel: (213) 894-7984

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4570

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

**SHERRI R. CARTER**
District Court Executive
and Clerk of Court

Tuesday, April 01, 2008

**MR. JOSEPH MCDONALD**
**T-01657**
**P.O. BOX 8457**
**LANCASTER, CA 93539**

Dear Sir/Madam:

A  [X]  Petition for Writ of Habeas Corpus was filed today on your behalf and assigned civil case number
       CV08- 2150 CJC (MLG)

A  [ ]  Motion pursuant to Title 28, United States Code, Section 2255, was filed today in criminal case
       number                    and also assigned the civil case number

Please refer to these case numbers in all future communications.

Please Address all correspondence to the attention of the Courtroom Deputy for:
   [ ]  District Court Judge _____

   [X]  Magistrate Judge _____**Marc Goldman**_____

at the following address:
   [ ]  U.S. District Court          [X]  Ronald Reagan Federal        [ ]  U.S. District Court
       312 N. Spring Street              Building and U.S. Courthouse       3470 Twelfth Street
       Civil Section, Room G-8          411 West Fourth St., Suite 1053    Room 134
       Los Angeles, CA  90012           Santa Ana, CA  92701-4516          Riverside, CA 92501
                                        (714) 338-4750

The Court must be notified within fifteen (15) days of any address change.  If mail directed to your
address of record is returned undelivered by the Post Office, and if the Court and opposing counsel
are not notified in writing within fifteen (15) days thereafter of your current address, the Court may
dismiss the case with or without prejudice for want of prosecution.

                                        Very truly yours,

                                        Clerk, U.S. District Court

                                                JSZABO
                                        By: _____
                                            Deputy Clerk

CV-17  (01/01)          **LETTER re FILING H/C PETITION or 28/2255 MOTION**

FILED

2008 APR -1 AM II: 08

CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

BY _____

| | | |
|---|---|---|
| **JOSEPH HILTON MCDONALD** | | CASE NUMBER |
| | PLAINTIFF(S) | **CV08- 2150 CJC (MLG)** |
| V. | | **NOTICE OF REFERENCE TO A** |
| **HAAWS** | | **UNITED STATES MAGISTRATE JUDGE** |
| | DEFENDANT(S) | **(Petition for Writ of Habeas Corpus)** |

Pursuant to General Order 07-02, the within action has been assigned to the calendar of the Honorable Cormac J. Carney , U.S. District Judge.  Pursuant to General Order 05-07, the within action is referred to U.S. Magistrate Judge Marc Goldman, who is authorized to consider preliminary matters and conduct all further hearings as may be appropriate or necessary.  Thereafter, unless the Magistrate Judge determines that an evidentiary hearing is required, the Magistrate Judge shall prepare a report and recommendation and file it with the Clerk of the Court which may include proposed findings of fact and conclusions of law where necessary or appropriate, and may include a proposed written order or judgment, which shall be mailed to the parties for objections.

Pleadings and all other matters to be called to the Magistrate Judge's attention shall be formally submitted through the Clerk of the Court.

The Court must be notified within fifteen (15) days of any address change.  If mail directed by the clerk to your address of record is returned undelivered by the Post Office, and if the Court and opposing counsel are not notified in writing within fifteen (15) days thereafter of your current address, the Court may dismiss the petition with or without prejudice for want of prosecution.

Clerk, U.S. District Court

April 1, 2008
Date

By ___ JSZABO ___
Deputy Clerk

JS-6

FILED · SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

APR - 3 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| JOSEPH HILTON MCDONALD,<br><br>        Petitioner,<br><br>        v.<br><br>HAAWS,<br><br>        Respondent. | Case No. CV 08-2150-CJC (MLG)<br><br>ORDER TRANSFERRING PETITION FOR<br>WRIT OF HABEAS CORPUS |

Petitioner filed the instant petition for writ of habeas corpus by a person in state custody on April 1, 2008. Petitioner was convicted and sentenced in San Diego County in the Southern District of California and is incarcerated at the California State Prison in Lancaster, California, which is in the Central District of California. (petition, pp. 2, ¶ 1.)

28 U.S.C. § 2241(d) states:

[w]here an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal

1    judicial districts, the application may be filed in the

2    district court for the district wherein such person is in

3    custody or in the district court for the district within

4    which the State court was held which convicted and

5    sentenced him. . . .

6    It is the practice of the district courts in California to

7 transfer habeas actions challenging state convictions to the district

8 court of the district where the petitioner was convicted and

9 sentenced.

10    It is therefore ORDERED that this action be transferred to the

11 United States District Court for the Southern District of California,

12 and the Clerk of this Court shall effect such transfer forthwith.

13    IT IS FURTHER ORDERED that the Clerk shall serve a copy of this

14 Order upon petitioner and upon the California Attorney General.

15 Dated: April 3, 2008

16

17

18                                        Marc L. Goldman
                                          United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28

2

# NOTICE PARTY SERVICE LIST

**Case No.**  CV08-02150-CJC (MLG)     **Case Title**  Joseph Hilton McDonald v. Haaws

**Title of Document**  Order Transferring Petition for Writ of Habeas Corpus

| | |
|---|---|
| | Atty Sttlmnt Officer Panel Coordinator |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

| | |
|---|---|
| | US Attorneys Office - Civil Division -L.A. |
| | US Attorneys Office - Civil Division - S.A. |
| | US Attorneys Office - Criminal Division -L.A. |
| | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service - Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

| ✔ | ADD NEW NOTICE PARTY (if sending by fax, mailing address must also be provided) |
|---|---|

Name: **Office of the Attorney General**

Firm:  CA State Dept of Justice

Address (include suite or floor):  300 S. Spring Street

Suite 500, Los Angeles CA  90013

*E-mail:

*Fax No.:

\* For CIVIL cases only

| JUDGE / MAGISTRATE JUDGE (list below): |
|---|
| |
| |
| |
| |

**Initials of Deputy Clerk** ts



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**
312 North Spring Street, Room G-8
Los Angeles, CA 90012
Tel: (213) 894-3535

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4750

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

**SHERRI R. CARTER**
District Court Executive and
Clerk of Court

April 9, 2008

SOUTHERN DISTRICT OF CALIFORNIA
4290 Edward J. Schwartz Federal Bldg
880 Front Street
San Diego, CA 92101

Re:   Transfer of our Civil Case No.  CV 08-2150 CJC(MLG)

     Case Title:  Joseph Hilton McDonald v. Haaws

Dear Sir/Madam:

     An order having been made transferring the above-numbered case to your district, we are transmitting herewith our entire original file in the action, together with certified copies of the order and the docket. Please acknowledge receipt of same and indicate below the case number you have assigned to this matter on the enclosed copy of this letter and return it to our office. Thank you for your cooperation.

                    Very truly yours,

                    Clerk, U.S. District Court

                    By  R. LA CHAPELLE
                       Deputy Clerk

cc:   All counsel of record

===========================================================================================

**TO BE COMPLETED BY RECEIVING DISTRICT**

Receipt is acknowledged of the documents described herein and we have assigned this matter case number CV: _____.

                    Clerk, U.S. District Court

                    By _____
                       Deputy Clerk

JS44

(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS**

Joseph Hilton McDonald

Haaws

FILED
APR - 9 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY

FILING FEE PAID  1983
Yes      No ✓
IFP MOTION FILED
Yes      No ✓
COPIES SENT TO
Court

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Joseph Hilton McDonald
PO Box 4430
Lancaster, CA 93539
T-01657

**ATTORNEYS (IF KNOWN)**

'08 CV 0652 L PCL

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT (For Diversity Cases Only)**

|  | PT | DEF |  | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)**

## 28 U.S.C. 2254

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 RR & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 861 HIA (13958) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☒ 530 General | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ Security Act | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☒ 1 Original Proceeding  ☐ 2 Removal from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23  DEMAND $  Check YES only if demanded in complaint: JURY DEMAND: ☐ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):**  JUDGE  Docket Number

DATE    4/9/2008

SIGNATURE OF ATTORNEY OF RECORD