JOSEPH HILTON MCDONALD
#T01657 - A2-141U
CSP·LAC
44750 60 st West
In Pro Se

BY: M. LINDSEY
LEGAL ASSISTANT TO McDONALD

FILED

2008 MAY 19 PM 4: 22

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

UNITED STATES DIST. CRT.

SOUTHERN DISTRICT OF CALIFORNIA

JOSEPH HILTON MCDONALD,
                    PETITIONER,

V.

    HAAWS, WARDEN,
            RESPONDENT.

) CIVIL NO. 08·0652 (PCL)
) Re First Amended Petition,
) request for stay and Abeyance,
) or in the Alternative, request
) For Next of Friend should the
) court deny motion to stay and Abeyance.
) Pursuant to Declaration of Petitioner,
) Declaration of M. Lindsey.

comes now JOSEPH HILTON MCDONALD (PETITIONER or "MR. MCDONALD"), and moves this court for an order Granting A stay and Abeyance request of the first Amended Petitions issues #1 and 2 respectfully. with leave to amend (30) days [1] after exhaustion of unexhausted issues in the lower courts. or in the alternative, grant Petitioner a next of friend.

This First Amended Petition is in compliance with the courts order of ( 4-17-08    Ex. D    ).

Petitioner incorporates All EXIBITS of Prior "mixed Petition" Civil NO. 08-0652 L (PCL) as though Fully set Forth Herein.

_____
[1] Mayle V. Felix 125 supreme ct 2562

1  the appeal court erred in denying appellate
2  relief based on petitioners conviction using Identifi-
3  cation from a photographic lineup which violated
4  petitioners Federal and State due process
5  rights in that witnesses described the suspect
6  as a dark-skinned black man and Appellant
7  was sole dark-skinned male in photo lineup.

8  Appellant incorporates his opening Brief
9  and all points and authorities concerning above
10  argument re Identification, as though fully
11  set forth herein. And offers no further
12  argument, points or authorities. (Opening Brief
13  used on appeal case no: D048881/sce234930)
14  And further, for purposes of this Petition,
15  Petitioner adopts the said opening Briefs
16  statement of facts included theirin.
17
18

Argument.

II

The trial courts allowing the Prosecutor to impeach defense witness REGINA BURTON's credibility with excerpts from letters of a sexual and Personal nature she wrote to Petitioner while in the San Diego county Jail was not only in violation of reciprocal discovery rules but was improperly admitted as inflammatory and irrelevant in violation of EVIDENCE CODE section 352.

A. Petitioner incorporates Appellants supplemental Opening Brief (see Ex D) as though fully incorporated herein and in addition to Arguments, Points and Authorities in current Amended Petition. And further incorporates statement of facts concerning issue.

B. Appellants supplemental opening brief does not mention People v. Gonzalez (June 11, 2006) 38 cal. 4th 932. However, the Petitioner feels that Gonzalez is relevant. In Gonzalez, the defense sought to present mitigating evidence during the Penalty Phase of a death penalty case. During the hearing held before the beginning of this Phase, the Prosecutor was of the opinion that he did not have to inform defense counsel of what evidence he proposed to introduce to rebut the defense's mitigating evidence.

"citing [Penal code] section 190.3, the court denied defendant's request to order the Prosecution

to provide discovery of its intended rebuttal evidence."
(Id. at P. 954) counsel then decided not to present
the mitigating evidence. (Id. at P. 955.)

In order to rule on whether the prosecution was
obliged to provide discovery of rebuttal evidence
introduced at the penalty phase, the California
Supreme court found it necessary to review the
state of the law on the discovery of rebuttal
evidence at trial, as the Court had previously explained
it in Izazaga V. Superior Court (1991) 54 Cal. 3d 356.
In Gonzalez, the California Supreme Court noted
that in Izazaga,

   [W]e went on to explain "that the prosecution's
right to discover defendant's witnesses under section
1054.3 is triggered by the intent of the defense to
call that witness. Thus, the disclosure by the
defense of it's witnesses under
section 1054.3 signals to the prosecution that the
defense 'intends' to call those witnesses at trial.
It follows that the prosecution must necessarily
'intend' to call any of its witnesses who will
be used in refutation of the defense witnesses
if called. A prosecutor cannot 'sandbag' the
defense by compelling the disclosure of witnesses
the defense intends to call, and then in effect
redefining the meaning of 'intends' when it comes
time to disclose rebuttal witnesses. The same
definition applies both to prosecution and the defense
and thereby assures reciprocity.

thus triggers a defendant's right to discover rebuttal witnesses under section 1054.1, fulfilling the requirement of reciprocity under Wardius [v. Oregon]-supra, 412 U.S. 470." (Izazaga, supra, 54 Cal.3d at PP. 375-376, fn. omitted.) (People V. Gonzalez, supra, 38 Cal. 4th at PP. 956-957.)

In Petitioners case, petitioner sought discovery of rebuttal evidence in time to make use of it to Prepare his defense. (see EX "E" P. 2 of Petitioners motion) specifically, "All Prysical evidence obtained in the investigation of the case against the defendant. (Penal Code section 1054.1 (c) (e). At EX "E" P. 2 19-20.)

Gonzalez, supra, makes it clear that the trial court erred in not requiring that the prosecution turn over this material in a timely manner, or, at the very least grant appellant a continuance to review the discovery when it was belatedly presented.

On appeal, appellant argued that the Prosecutor's introduction of the letters "was a violation of discovery by ambush" and that trial counsel's reference that she did not know where the prosecution was going with his questioning, was sufficient to preserve the issue for appeal. (EX "D" P. 11) Here, the Petitioner would add that, Petitioners trial counsels assertions of ambush and that she did not know where Prosecution was going with his questioning, is Analogous with Petitioner being deprived of his right to 'effective' assistance of counsel and right to cross-examine witnesses.

In respondents reply brief respondent argued that appellant's argument that the prosecutor violated the statutory rules of discovery because the letters were not disclosed to appellant until just before Burton testified (SAOB 12-14) was without merit because Burton wrote those letters to appellant, so he was in possession of the letters. (Respondents Supplemental Brief P. 4)

However, Petitioner is not aware of any court rulings previous to his own, that makes reference to a defendants possession of letters sent to him/her, that has previously been copied (without his/her knowledge) by the prosecution; being sufficient to to circumvent the rules of discovery, when prosecution plans to use said letters against him/her. And does not inform him/her of its intentions...

In effect, the prosecutors tactics and the trial courts only allowing defense to view letters 'after' cross examination of the witness. was to deprive Petitioner of his right to effective counsel which the rules of Brady seeks to provide. which is effective counsel for both sides.

The California Supreme Court in Gonzalez held that, by withholding discovery of rebuttal evidence, the trial court forces defense counsel to make uniformed decisions. and this deprives a defendant of his right to effective assistance of counsel in presenting a defense.

The trial court can be said to have 'held' discovery from Petitioner as outlined in Gonzalez, because of the trial courts short-sighted decision to allow prosecutor to use the discovery letters to impeach

formulate a defense or possibly exclude the witness altogether.

the appeals court agreed with respondent, asserting that Petitioners possession of the letters satisfied Brady. (court of Appeal decision P.17) citing no authorities reflecting the assertion; but claiming the letters went to a collateral issue of a witness's credibility. (P.17) which Petitioner asserts is contrary to clearly established case Law concerning Brady, which entails exchanging discovery "between" counsels ... mentioning nothing about what a "defendant" has in his/her Personal possession. And the above assertions are further absurd when one considers the fact that an accused, who may be ignorant of Law, the rules of Evidence etc. may not know what the Prosecution is 'secretly' doing, let alone if he or she should be Giving "Personal" letters to counsel. counsels Function is to defend an accused. thus to deprive counsel of discovery, asserting that the "accused" they are representing is to 'blame' is new Law ...

the Gonzalez court continued.

"we have also repeatedly stated that a criminal defendant's right to discovery is based on the 'fundamental proposition that [an accused] is entitled to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information.' " (city of Santa Cruz v. Municipal Court (1989) 49 Cal.3d 74, 84 ... italics added _ quoting Pitchess v. Superior Court (1974) 11 Cal.3d 531, 535 ...; accord, People v. Luttenberger (1990) 50 Cal.3d 1, 17 ... )

Denial of [discovery] of Potential Rebuttal evidence thwarts

1   defense counsel's ability to present an intelligent
2   defense and to make an informed tactical decision
3   whether to present mitigating evidence. the denial
4   forced counsel to make an uniformed_unintelligent
5   decision. (Id. P. 960.)
6   Finally, the Supreme Court in the Gonzalez
7   case makes clear that the applicable standard
8   for determining whether a defendant was prejudiced
9   by the denial of timely discovery of rebuttal
10  witnesses and their statements is whether the
11  error is harmless beyond a reasonable doubt.
12  To the extent the denial of discovery implicated
13  defendant's Federal due process rights (see
14  Wardius V. Oregon_supra. 412 U.S. 470), the
15  applicable test is whether the error is harmless
16  beyond a reasonable doubt. (Chapman v. California
17  (1967) 386 U.S. 18...) (Id. at P. 961.)
18  Appellant contended at appeal, that the tactics
19  of the prosecution in withholding the readily
20  available letters violated his right to a fair trial.
21  which Petitioner adds, thwarted his right to present
22  competent defense and violated right to effective
23  assistance of counsel since counsel could not
24  protect him from the introduction of evidence that
25  was highly inflammatory and of little probative
26  value. Petitioners right to confront and cross-examine
27  rebutal witnesses_and his right to the effective
28  assistance of counsel in that respect_was

1  Similarly compromised. This argument is embodied in
2  petitioners Supplemental Opening Brief, based on the
3  holding of People v. Jackson (1995) 15 Cal. App. 4th
4  1197, 1201. The Purpose of the reciprocal discovery
5  Provisions set forth in sections 1054 et seq. is to
6  "Promote ascertainment of the truth by liberal discovery
7  rules which allow Parties to obtain information in
8  order to Prepare their cases and reduce the chance
9  of surprise at trial." citing Hobbs v. Municipal
10  court (1991) 233 Cal. App. 3d 670, 686.) "Reciprocal
11  discovery is intended to Protect the Public interest
12  in a full and truthful disclosure of critical facts,
13  to Promote the People's interest in Preventing a last
14  minute defense, and to reduce the risk of
15  Judgements based on incomplete testimony." (Ibid)
16  This most recent Pronouncement of the California
17  Supreme Court makes clear that this rule has
18  continued Viability and also makes plain
19  that the standard of Prejudice in this case
20  should be whether the error was harmless
21  beyond a reasonable doubt. By that standard,
22  certainly the error mandates reversal.
23
24
25
26
27  C. Trial counsel In the Alternative, rendered
23     Ineffective Assistance of counsel for failure

1  To object on the Proper P.C. 352 and
2  Constitutional Basis.
3                          On Petitioners direct Appeal
4  The respondent argued that Petitioners
5  trial counsel's Failure to object on P.C.
6  Section 352 Grounds waived Petitioners right
7  to appeal on this issue (Respondents Supplemental
8  Brief P. 7.) And Further, respondant claimed
9  Petitioners trial counsel was not ineffective
10 for her Failure to do so. (P. 7) citing amongst
11 other things, that there was no reasonable
12 possibility that the outcome of the Proceeding
13 would have been different.
14
15 The Appeals court Provided a similar argument
16 analysis concerning counsels Failure to object
17 herein  (P. 18-19).
18 As argued in Petitioners Supplemental Opening
19 Brief (Ex. "D" P. 15  ) "Trial counsel should have
20 at least objected to Preserve the issue For
21 appeal", Especially in light of the Fact that
22 trial counsel did not know what was inside
23 the letters in order to 'effectively' contemplate
24 what type of objections were neccessary, if
25 any. And 'Possibly' avoided respondents and Appeals
26 courts asumptions of what Petitioners trial
27 counsel Possibly 'assumed' For her Failure
28 to Properly object 'after' the Fact..

1  D. Application to Petitioners Case - Prejudice.

2

3  Contrary to Respondants and Appeals courts
4  asertion of 'overwhelming' evidence establishing
5  Petitioners Guilt; Petitioner contends that Counts
6  #1 and #2 - did not Present 'overwhelming'
7  evidence. Count #1, the HAVERN Burglary,
8  involved evidence that could not be said was to
9  be substantial in Proving Petitioners guilt.
10  And count #2 - all but excluded Petitioner
11  as a Perpetrator of that crime. The Prosecut-
12  ions sole witness, JEFF HANNIGAN, Provided
13  acurate descriptions of (1) Petitioners co-
14  defendant TONY WASHINGTON's height-weight
15  and beads that were on WASHINGTONS hair and
16  (RT VII P. 91-101, II RT P. 92 ¾ Prelim Trans. P. 27 ), And
17  (2) described the second Person he
18  saw as being 'shorter' than the first.
19  thus. making Petitioners 'Physically' incapable
20  of being that second Person. (see WASHINGTONS testimony)
                                   (VRT 728-730, VIRT 839-840).
21  thus. the Prejudice is obvious concerning the
22  challenged Letters. the extent of the Prosecutors
23  Questions . which involved inflammatory details
24  i.e. Oral copulation - sexual Fantasies et seg.
25  could have Biased the Jury abainst
26  Petitioner and Petitioners right to due Process.
27  the aPpeals court erroneously claimed
28  the sordid details of the Letter were

1  Properly admitted to Further demonstrate Petitioners
2  trial witnesses Bias. (Ex. P. 20)
3  As argued in Petitioners supplemental opening
4  Brief there was not a need for The inflammatory
5  details. And the testimony of the witness,
6  Ms. Burton (                              ) demonstrated
7  she could be considered a bias witness.
8  In conclusion, Petitioner will show that
9  the Prosecutors tactics denied Petitioners
10  right to due Process in violation of the u.s.c
11  and standing alone may be harmless but
12  when considered with all of the other errors
13  Presently Pending in the California Supreme CrT,
14  will show that Petitioner suffered from a
15  grave miscarriage of Justice. For this
16  reason Petitioner respectfully request
17  this court to reverse.
18
19
20
21
22
23
24
25
26
27
28

1  JOSEPH H. MCDONALD
2  # T01657/A2-141U
3  CSP.LAC
4  44750 60 St. West
5  Lancaster, CA. 93536
6  In Pro Se

7
8          United States Dist. Crt.
9     Southern District of California
10

11
12  JOSEPH H. MCDONALD,          motion Requesting
13          Petitioner.          that the court hold stay
14  V. HAAWS, WARDEN,            and abeyance petitioner's
15          Respondent.          exhausted claims while
16                               petitioner exhaust unexhausted
17                               claims in Lower court. In
18                               addition, Grant Petitioner
19                               tolling of 1Yr. AEDPA.

20  This motion will be based on the
21  Memorandum of Points and Authorities herein,
22  And the Declaration of Petitioner - including
23  exbits.

24
25  JOSEPH MCDONALD
26  Pro Se.
27
23

The Petitioner ask the Court to hold in advance, the Petitioners exhausted claims while Petitioner exhausts his unexhausted claims in the state courts.

## A. PROCEEDINGS BELOW.

By order of the court of Appeal Fourth Appellate Dist. Division one, issued March 13, 2006, the court denied petitioners request to relieve appellate counsel Ava R. Stralla SBN# 140988; from duty for her failure to include in her briefs inrelevant part. 1) Ineffective Assistance of Counsel. 2) The trial courts error in abuse of discretion, by allowing irrelevant and undue prejudical character evidence. 3) The prosecutors acts of misconduct. 4) or In the alternative allow defendant to file Supplemental Brief pursuant to rule 29.1(d) or a Prose Brief; Declaration of Appellant.

By order of the Court of Appeal Fourth Appellate Dist. Divisional One, issued June 8, 2006. The court denied petitioners renewed motion to relieve counsel or order to file Supplemental Opening Brief to include atleast six omitted issues.

And lastly, by order of The California Supreme Court to relieve Ms. Stralla for her failure to raise all of the petitioners issues, or in the alternative, allow the petitioner to file a Supplemental Prose Brief to include these issues, was denied November 29, 2006.

(See Exibit "A ")→ of Prior "mixed" Petition

Thus, the petitioner tried to exhaust all possible issues on his first direct appeal.

B. The appellant respectfully request that the court hold his exhausted claims in advance pending the appellants exhausation of his unexhausted claims in the state courts.

A "mixed" petition, one containing both exhausted and unexhausted claims, cannot be adjudicated. Rose V. Lundy (1982) 455 U.S. 509, 521, 71 LED 2d 379, 389. 1025 Ct 1198; Rhines V. Weber (2005) 544 U.S. 269, 161 LED 2d 440. 125 s Ct 1528.

1

1. Petitioner understands this court can not litigate the unexhausted claims of

2. the previous petition, Thus this appellant ask that this court hold stay and

3. abeyance the  exhausted issues until appellant has exhausted the issues in the

4. lower courts. As previously shown, the appellant did not engage in intentional

5. litigation tactics.

6. As outlined in RHINES V. WEBER 544 U.S. 269 (2005).

7. In such circumstances, the district court should stay, rather than dismiss the

8. mixed petition.(see ROSE V. LUNDY, 455 U.S. 509, 522, 102 S. Ct. 1198, 71 L. Ed

9. 2d 379 (LUNDY) ("the total exhaustion requirement was not intended to unreasonably

10. impair the prisoner's right to relief." A petitioner in obtaining federal review

11. of his claims outweighs the competing interest in finality and speedy resolution

12. of the federal petitions. (RHINES, supra, 125 S. Ct. 1528, 1535.)

13. THE "THREE-STEP PROCEDURE TO STAY AND ABEYANCE:

14. Prior to RHINES, the Ninth Circuit held that district court's lacked the power

15. to stay mixed petitions. However, district courts within the circuit developed

16. a three-step procedure applicable to petitions that contain both exhausted and

17. unexhausted claims. (see Jackson v. ROE 425 F. 3d 654, 658 (9th Cir. 2006) citing

18. Calderon v. U.S. DIST. COURT (TAYLOR 134 F. 3d 981 (9th Cir. 2003)

19. The procedure included (1) allowing a petitioner to amend his petition to remove

20. the unexhausted claims, as LUNDY indicated (2) staying and holding in abeyance

21. the amended fully exhausted claims, and TO proceed  to the state court to exhaust

22. the deleted claims, and (3) permitting the petitioner after completing exhaustion

23. to amend his petition once more to reinstate the newly exhausted claims back

24. into the original petition. TAYLOR, supra, 134 F. 3d at 986.

25. The Ninth Circuit later approved the three step procedure, including the amendment

26. of the original petition to include newly exhausted claims, as within the court's

27. discretion.(see James v. Pliler, 269 F. 3d 1124, 1127 (9th Cir. 2001.)

28. The Ninth Circuit also provided guidance to the district court's considering

1. such an option, stating that a stay is " particularly appropriate when an outright

2. dismissal will render unlikely or impossible for the petitioner to return to

3. federal court in compliance with the statute of limitations of the ANTITERROISM

4. and EFFECTIVE DEATH PENALTY ACT of 1996 (AEDPA).

5. (Kelly v. Small 315 F. 3d 1063 (9th Cir. 2003) (KELLY).

6. However, Rhines did not comment on the validity of the three-step procedure

7. approved in TAYLOR and KELLY. Rhines, specifically applies to mixed petitions,

8. whereas the three-step procedure applies to stays of fully exhausted petitions

9. and requires additional steps. (see Jackson v. Roe, supra, at 661.)

10. It is appellant's position that if the district court judge concludes that the

11. "FAP" is a mixed petition, it is likely that appellant will be forever precluded

12. i.e., time barred, from obtaining federal Habeas Corpus review of his claims,

13. if the stay and abeyance procedure is not granted and employed in petitioner's

14. circumstance, and may respectfully amount to an abuse of discretion. Judicial

15. economy, efficiency, fundamental fairness and petitioner's federal constitutional

16. rights promotes applying the stay and abeyance procedure " if" petitioner can

17. demonstrate good cause, for his failure to exhaust.

18. "GOOD CAUSE" for failure to exhaust:

19. appellant's mental illness dates back prior to his incarceration . The relevant

20. times relating to appellant's mental illness dates back to 5/03/06 - 8/10/06 when

21. the CALIFORNIA DEPARTMENT OF CORRECTIONS ("CDC") mental health department stated

22. that appellant was suffering from low average I.Q. compromised by substance abuse and

23. (see Exhibit "  " attached herto.) chronic institutionalization. Date 5/18/06

24. In a document dated 6/14/06, appellant was documented as taking Geodon 20/40

25. Further, the document reflects that appellant possesses very poor understanding,

26. (see Exhibit) 6/07/06

27. Another document dated 6/14/06 , reflects that appellant continues to suffer

28. from low intellectual ability , and appellant is currently an active participant

1  the C.C.M.S Program here at Lancaster State
2  Prison (see EX "F") Petitioners Mental condition occurs
3  Primarily due to Petitioners Past ingestions of
4  P.C.P which has severly Damaged appellants cognitive
5  Factors as indicated in (Ex. "B") And Further, Petitioner
6  suffers From short term memory Loss (EX "B" 5-14-09
7  And Finally, a recent Academic test done here
8  at C.S.P LAC shows that Petitioner Academic
9  level is 1.3 (EX "C P.   )
10  In conclusion, the Direct Appeal of Petitioners
11  case concluded on March 28. 07. Petitioners 1yr
12  AEDPA ends June 2008, to deny Petitioners request
13  to stay and aberance of his exausted claims, while
14  Pursuing exhaustion of his unexhausted claims"
15  would be unfair. The (3) attempts at earlier
16  Litigation of unexhausted claims, and the resulting
17  (3) denials From Lower Courts, demonstrate Petitioners
18  sincere efforts to exhaust earlier, coupled with
19  Petitioners Disabilities should be sufficient cause
20  For the Honorable Court to Grant instant request.

21  In Addition, Petitioner request this court
22  to toll Petitioners 1yr AEDPA Per 28 USC section
23  2244 (d)(2). Petitioners HABEUS Petition addressing
24  unexhausted claims was Filed in the California
25  Supreme Court (41-08, NO. 5162214) and is currently Pending.
26  within the meaning of 28 USC section 2244 (d)(2).
27  Respectfully submitted,

                        JOSEPH McDONALD
                        Pro Se

1/  Patitioner incorporates issues 1-10 of Prior "mixed" Petition,
as the unexhausted issues Petitioner wants to amend into current
Patition after exhaustion in the Lower courts.

EXIBIT "D"

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

**PEOPLE OF THE STATE OF CALIFORNIA,**  )
   Plaintiff and Respondent,  )
                                      )
       v.  )
**JOSEPH HILTON MCDONALD,**  )  **D046881**
   Defendant and Appellant.  )  SCE234930
_____)

Appeal from the Superior Court of San Diego County
Honorable Louis R. Hanoian, Jr.,  Judge

---

## APPLICATION FOR LEAVE TO FILE  A
## SUPPLEMENTAL OPENING BRIEF

---

Ava R. Stralla
Attorney for Appellant
PO Box 28880
San Diego, CA 92198
State Bar Number 140988
(858) 618-1947

By appointment of the Court of Appeal
under the Appellate Defenders, Inc.
Independent case-system.



IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

**PEOPLE OF THE STATE OF CALIFORNIA,**   )
   Plaintiff and Respondent,           )
                                    )
             v.                     )
**JOSEPH HILTON MCDONALD,**      )  **D046881**
   Defendant and Appellant.        )  SCE234930
                                      )

Appeal from the Superior Court of San Diego County
Honorable Louis R. Hanoian, Jr.,  Judge

---

## APPLICATION FOR LEAVE TO FILE A
## SUPPLEMENTAL OPENING BRIEF

---

TO THE HONORABLE PRESIDING JUSTICE AND/OR ACTING

PRESIDING JUSTICE:

Appellant Joseph H. McDonald, through his appointed counsel,

applies pursuant to California Rules of Court, rule 13(a)(4), for leave to file a

supplement to appellant's opening brief, which was filed with this Court on

February 14, 2006.  Respondent's brief is due on July 26, 2006.  Since the

respondent's brief has not yet been filed and since appellant has been

sentenced to over 22 years in state prison, the acceptance of the Supplement

to Appellant's Opening Brief and any response to it should not cause any

1

undue delay nor prejudice appellant. Appellant's application is based upon the attached declaration of appellate counsel, Ava R. Stralla. The original and four copies of appellant's "Supplement to Appellant's Opening Brief" are submitted along with this application.

# DECLARATION OF APPELLATE COUNSEL

I, Ava R. Stralla declare:

I recently became aware that two arguably meritorious issues on appeal had not been raised in appellant's opening brief. The first issue being raised involves prejudice to appellant because the court allowed the prosecution to show bias of a crucial defense witness by questioning her at length and in detail about inflammatory excerpts from personal letters that were produced by the prosecutor in late discovery. The second issue addresses the court's error in staying rather than striking a one-year prison prior.

These claims are now being presented at my first opportunity for this Court's consideration so that appellant is provided with adequate assistance of counsel on appeal. My reconsideration of the merits of the first issue has necessitated the preparation of this supplemental opening brief. Today, I left a voice message on the assigned deputy attorney general's voice mail letting her know that I was filing a request for leave of court to file a supplemental opening brief with the supplemental opening brief.

Granting of this request will prevent a collateral attack on the judgment, not unduly burden respondent, and protect appellant's interests on his direct appeal. I regret any inconvenience to this Court or to the deputy attorney general.

Accordingly, appellant requests that this application for leave to file the

3

attached "Supplement to Appellant's Opening Brief" be granted, and that this Court issue an order that the brief be filed and the attorney general and appellant be given a reasonable period of time to respond and to reply.

I declare, under penalty of perjury under the laws of the State of California, that the foregoing is true and correct. This declaration was executed on July 25, 2006, at San Diego, California.


Respectfully submitted,


Ava R. Stralla, SB # 140988
Attorney for Appellant,
Joseph H. McDonald

4

Ava R. Stralla
Attorney at Law
PO Box 28880
San Diego, CA 92198

D046881

## DECLARATION OF SERVICE

I, <u>Ava R. Stralla</u> declare that: I am, and was at the time of service hereinafter mentioned, at least 18 years of age and not a party to the above entitled action. My business address is <u>PO Box 28880, San Diego, CA. 92198;</u> I am employed in <u>San Diego County,</u> California. I served the foregoing <u>Application for Leave to File a Supplemental Appellant's Opening Brief</u> on <u>July 25, 2006,</u> by depositing copies thereof in the United States mail in <u>San Diego,</u> California, enclosed in sealed envelopes, with postage fully prepaid, addressed to:

Department of Justice
Office of the Attorney General
110 West A Street, Ste 1100
PO Box 85266
San Diego, CA 92186-5266

Appellate Defenders, Inc.
555 West Beech Street
    Suite 300
San Diego, CA 92101

Hon. Louis R. Hanoian
c/o Clerk, Superior Court
250 East Main Street
El Cajon, CA 92020

Blaine Bowman, Deputy
Office of the District Attorney
250 East Main Street
El Cajon, CA 92020

Joseph McDonald
# T01657
44750 60th Street West
FAC D7 Bed 107L
Lancaster, CA 93536

Pamela G. Lacher
Attorney at Law
12005 World Trade Drive
Suite #3
San Diego, CA 92128

I declare under penalty of perjury that the foregoing is true and correct. Executed at San Diego, California, this <u>25th</u> day of <u>July   2006.</u>

_____
Ava R. Stralla

**TABLE OF CONTENTS**

ARGUMENT

I.    THE COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS HIS IDENTIFICATION FROM THE PHOTO LINEUP IN VIOLATION OF APPELLANT'S FEDERAL AND STATE DUE PROCESS RIGHTS IN THAT WITNESSES DESCRIBED THE SUSPECT AS A DARK-SKINNED BLACK MAN AND APPELLANT PREJUDICIALLY STOOD OUT BECAUSE HE WAS THE DARKEST COMPLEXIONED MALE IN THE PHOTO LINEUP
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   THE ABSTRACT OF JUDGMENT SHOULD BE CORRECTED
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  THE COURT'S ALLOWING THE PROSECUTOR TO QUESTION REGINA BURTON BY DELVING INTO THE SEXUAL CONTENTS OF HER LETTERS TO APPELLANT WAS INEQUITABLE BECAUSE THE DEFENSE WAS ONLY INFORMED OF THE PROSECUTOR'S INTENTION TO USE THE LETTERS SHORTLY BEFORE HE CROSS-EXAMINED HER; MOREOVER, THE PROSECUTOR'S DELVING INTO THE SEXUAL CONTENT WAS IRRELEVANT AND INFLAMMATORY, AND SHOULD HAVE BEEN EXCLUDED PER EVIDENCE CODE SECTION 352; APPELLANT'S CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL WERE IMPLICATED
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   THE TRIAL COURT ERRED BY STAYING THE ONE-YEAR PRISON PRIOR RATHER THAN STRIKING IT
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

CERTIFICATION OF WORD COUNT (Rule 33(b))
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

i

# TABLE OF AUTHORITIES

**CASES**                                                                  **PAGE/S**

Chambers v. Mississippi (1973) 410 U.S. 284 . . . . . . . . . . . . . . . . 6

Davis v. Alaska (1974) 415 U.S. 308 . . . . . . . . . . . . . . . . . . . . . . 6

People v. Allen (1974) 41 Cal.App.3d 196 . . . . . . . . . . . . . . . . . . 6

People v. Blanco (1992) 10 Cal.App.4th 1167 . . . . . . . . . . . . . . 6

People v. Clark (1992) 3 Cal.4th 41 . . . . . . . . . . . . . . . . . . . . . . . 4

People v. Mills (1978) 81 Cal.App.3d 171 . . . . . . . . . . . . . . . . . . 5

People v. Norwood (1972) 26 Cal.App.3d 148 . . . . . . . . . . . . . . 6

People v. Welch (1993) 5 Cal.4th 228 . . . . . . . . . . . . . . . . . . . . . 5

Rock v. Arkansas (1987) 483 U.S. 44 . . . . . . . . . . . . . . . . . . . . . 6

Washington v. Texas (1967) 388 U.S. 14 . . . . . . . . . . . . . . . . . . 6

**STATUTES**

**Evidence Code**

section 352 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

**Penal Code**

section 667.5, subd. (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

**PEOPLE OF THE STATE OF CALIFORNIA,**  )
Plaintiff and Respondent,  )
)
v.  )
**JOSEPH HILTON MCDONALD,**  )  **D046881**
Defendant and Appellant.  )  SCE234930
_____)

Appeal from the Superior Court of San Diego County
Honorable Louis R. Hanoian, Jr., Judge

_____

**APPELLANT'S SUPPLEMENTAL OPENING BRIEF**

_____

Ava R. Stralla
Attorney for Appellant
PO Box 28880
San Diego, CA 92198
State Bar Number 140988
(858) 618-1947

By appointment of the Court of
Appeal under the Appellate
Defenders, Inc. Independent
case-system.



**TABLE OF CONTENTS**

ARGUMENT

I.     THE COURT'S ALLOWING THE PROSECUTOR TO IMPEACH
       REGINA BURTON'S CREDIBILITY WITH EXCERPTS FROM
       LETTERS OF A SEXUAL AND PERSONAL NATURE SHE
       WROTE TO APPELLANT IN JAIL WAS NOT ONLY IN
       VIOLATION OF RECIPROCAL DISCOVERY RULES   BUT
       WAS IMPROPERLY ADMITTED AS INFLAMMATORY AND
       IRRELEVANT IN VIOLATION OF EVIDENCE CODE SECTION
       352

       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

       A.  Proceedings Below. . . . . . . . . . . . . . . . . . . . . . . . . . . 1

       B.  The Court's Solution To The Defense Objection To The
           Prosecutor's Discovery Violation Was Problematical And
           Prejudicial.
           . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

           1.  Counsel's Objection. . . . . . . . . . . . . . . . . . . . . 10

           2.  Discovery Violation. . . . . . . . . . . . . . . . . . . . . . 12

       C.  In The Alternative, Counsel Rendered Ineffective Assistance
           Of Counsel By Not Objecting On A Proper Basis.
           . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

       D.  Relevancy And Inflammatory Evidence.
           . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

       E.   The Admission Of The Evidence Impacted Appellant's
           Constitutional Right To A Fair Trial.
           . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

       F.  Application Of Law To This Case; Prejudice. . . . . . . . . 20

i

II.    THE COURT ERRED BY STAYING THE ONE-YEAR
PRISON PRIOR RATHER THAN STRIKING IT
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

A. Proceedings Below. . . . . . . . . . . . . . . . . . . . . . . . . . . 22

B. A Trial Court May Not Stay An Enhancement; It Must Strike
An Enhancement.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ... . . . . . 24

CERTIFICATION OF WORD COUNT (Rule 33(b)) . . . . . . . . . . 25

## TABLE OF AUTHORITIES

**CASES**                                                   **PAGE/S**

Berger v. United States (1934) 295 U.S. 78 . . . . . . . . . . . . . . .   12

Chambers v. Mississippi (1973) 410 U.S. 284 . . . . . . . . . . . . . .   20

Davis v. Alaska (1974) 415 U.S. 308 . . . . . . . . . . . . . . . . . . . .   19

Hobbs v. Municipal Court  (1991) 233 Cal.App.3d 670 . . . . . . .   13

In re Ferguson (1971) 5 Cal.3d 525 . . . . . . . . . . . . . . . . . . . . .   12

People v. Allen (1974) 41 Cal.App.3d 196 . . . . . . . . . . . . . . . .   19

People v. Blanco (1992) 10 Cal.App.4th 1167  . . . . . . . . . . . . .   19

People v. Cain (1995) 10 Cal.4th 1 . . . . . . . . . . . . . . . . . . . . . .   16

People v. Campbell (1972) 27 Cal.App.3d 849 . . . . . . . . . . . .   12

People v. Clark (1992) 3 Cal. 4th 41 . . . . . . . . . . . . . . . . . . . .   14

People v. Cooper (1991) 53 Cal.3d 771  . . . . . . . . . . . . . . . . .   15

People v. Cruz (1964) 61 Cal.2d 861  . . . . . . . . . . . . . . . . . . .   21

People v. Cudjo (1993) 6 Cal.4th 585 . . . . . . . . . . . . . . . . . .   16

People v. Eberhardt (1986) 186 Cal.App.3d 1112 . . . . . . . . . . .   23

People v. Fitch (1997) 55 Cal.App.4th 172 . . . . . . . . . . . . . . .   18

People v. Harvey (1991) 233 Cal.App.3d 1206 . . . . . . . . . . . .   22

People v. Haykel (2002) 96 Cal.App.4th 146 . . . . . . . . . . . . . .   22

People v. Jackson (1986) 187 Cal.App.3d 499 . . . . . . . . . .   15, 16

People v. Jackson (1993) 15 Cal.App.4th 1197 . . . . . . . . .   13, 14

People v. Jenkins (2000) 22 Cal.4th 900. . . . . . . . . . . . . . . . . . . 13

People v. Jones (1954) 42 Cal.2d 219 . . . . . . . . . . . . . . . . . . . 17

People v. Jones (1992) 8 Cal.App.4th 756 . . . . . . . . . . . . . . . . 23

People v. Karis (1988) 46 Cal.3d 612 . . . . . . . . . . . . . . . . . . . 17

People v. Kelly (1967) 66 Cal.2d 232 . . . . . . . . . . . . . . . . . . . 17

People v. Langston (2004) 33 Cal.4th 1237 . . . . . . . . . . . . . . 23

People v. Lucas (1995) 12 Cal. 4th 415 . . . . . . . . . . . . . . . . . . 18

People v. Malone (1988) 47 Cal.3d 1 . . . . . . . . . . . . . . . . . . . 15

People v. Medrano (2000) 23 Cal.4th 225 . . . . . . . . . . . . . . . . 13

People v. Mills (1978) 81 Cal.App.3d 171 . . . . . . . . . . . . . . . . 19

People v. Norwood (1972) 26 Cal.App.3d 148 . . . . . . . . . . . . . 19

People v. Poplar (1999) 70 Cal.App.4th 1129 . . . . . . . . . . . . . 18

People v. Rodrigues (1994) 8 Cal. 4th 1060 . . . . . . . . . . . . . . 17

People v. Scheid (1997) 16 Cal.4th 1 . . . . . . . . . . . . . . . . . . . 16

People v. Scott (1994) 9 Cal.4th 331, 356 . . . . . . . . . . . . . . . . 15

People v. Welch (1993) 5 Cal.4th 228 . . . . . . . . . . . . . . . . . . . 19

People v. Williams (1997) 16 Cal. 4th 153 . . . . . . . . . . . . . . . 18

People v. Wimberly (1992) 5 Cal.App.4th 773 . . . . . . . . . . . . . 13

People v. Woodard (1979) 23 Cal.3d 329 . . . . . . . . . . . . . . . . 21

People v. Yu (1983) 143 Cal.App.3d 358 . . . . . . . . . . . . . . . . 17

Powell v. Superior Court (1957) 48 Cal.2d 704 . . . . . . . . . . . 12-13

Rock v. Arkansas (1987) 483 U.S. 44 . . . . . . . . . . . . . . . . . . . . . . 19

Taylor v. Illinois, (1988)  484 U.S. 400 . . . . . . . . . . . . . . . . . . . . 14

Traxler v. Thompson (1970) 4 Cal.App.3d 278 . . . . . . . . . . . . . 16

Washington v. Texas (1967) 388 U.S. 14. . . . . . . . . . . . . . . . . . . 20

## CONSTITUTIONS

### Constitution of the United States

Fifth & Fourteenth Amendments. . . . . . . . . . . . . . . . . . . . . . . . . . . .21

### California Constitution

Art I, Section 28(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## STATUTES

### Evidence Code

section 351. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

section 352 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11, 16-18, 20

### Penal Code

section 667, subd. (a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

section 667.5  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

section 668 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

section 1054.1, subd. (c)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

section 1054.5  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

section 1054.7  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

section 1385, subd. (a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## CALIFORNIA RULES OF COURT

Rule 4.405(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Rule 4.406(b)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Rule 4.406(b)(10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Rule 4.423 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Rule 4.435(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## OTHER AUTHORITIES

Brennan, William J., *The Criminal Prosecution: sporting Event or Quest for the Truth?* 68 Wash. U.L.Q. 1 (1990) . . . . . . . . . . . . 13

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| **PEOPLE OF THE STATE OF CALIFORNIA,**<br>Plaintiff and Respondent,<br><br>v.<br>**JOSEPH HILTON MCDONALD,**<br>Defendant and Appellant. | )<br>)<br>)<br>)<br>)  **D046881**<br>)  SCE234930<br>) |

Appeal from the Superior Court of San Diego County
Honorable Louis R. Hanoian, Jr.,  Judge

_____

**APPELLANT'S SUPPLEMENTAL OPENING BRIEF**

_____

**ARGUMENT**

**I.**

**THE COURT'S ALLOWING THE PROSECUTOR TO IMPEACH REGINA BURTON'S CREDIBILITY WITH EXCERPTS FROM LETTERS OF A SEXUAL AND PERSONAL NATURE SHE WROTE TO APPELLANT IN JAIL WAS NOT ONLY IN VIOLATION OF RECIPROCAL DISCOVERY RULES    BUT WAS IMPROPERLY ADMITTED AS INFLAMMATORY AND IRRELEVANT IN VIOLATION OF EVIDENCE CODE SECTION 352**

**A. Proceedings Below.**

Regina Burton provided alibis for appellant during the times

three of the crimes were committed. She testified that she spent a lot of time with appellant from August 2003 until he was arrested on November 6, 2003. (6RT 901-902.)    She cared deeply for him. (6RT 984.) Their close relationship grew into love. (6RT 984; 7RT 1532.) She acknowledged she was paying for his defense and put money into his jail account. (6RT 960, 963.) She often borrowed his car because her car was not working and she would keep it for a few days at a time. (6RT 904-906, 912.) Burton particularly remembered what occurred on October 23, 2003, the date of the Meza/Morgan offenses, because it is her son's birthday. (6RT 920; 7RT 1522.) She picked appellant up at his residence and he watched Burton participate in her 11:00 a.m. kickboxing class at San Diego City College (6RT 920-921.) They ate lunch in Chula Vista, Burton returned appellant to his residence, and she kept his car. (6RT 920-921.) That was also the day that Clarence Burton asked her if Washington could stay with them and she agreed. (6RT 922.) Washington subsequently moved in with some duffel bags. (6RT 922.)

Daily from October 23, 2003, to November 6, 2003, Burton would pick up appellant at his sober living facility in the morning or afternoon and she would return him in either the afternoon or the evening prior to his midnight curfew. They would not do much during

the daytime hours because that was when the horrific San Diego County fires occurred and the air quality was terrible. (6RT 918, 921-922, 924-932, 934-935.) Sometime during that time period, appellant's car broke down so Burton, Washington and appellant pushed it to a repair shop. (6RT 937.)

As for November 3, 2003, the date of the E & L Therapy crime, Burton specifically remembered that she was with appellant when he picked up his food voucher at his residence facility at about noon or 1:00 p.m. They then went to Albertsons to shop for groceries. She dropped appellant and Washington off at her Troy Street apartment and went to meet Clarence Burton to exchange property. (6RT 942-944.) She, appellant, and Washington went to Chula Vista that evening.[1] (6RT 989.)

On cross-examination, the prosecutor asked Burton if she was a biased witness. She answered, "The truth is the truth." (6RT 955.) She testified that she visited appellant twice a week in jail and that they had "a close relationship concerning the circumstances." (6RT 959.)

---

[1]Appellant testified he went to Chula Vista with Burton and Washington to appellant's ex-girlfriend Mayisha's house a few times between November 3rd and the 5th, 2003. (6RT 881-883, 953; 7RT 1535, 1551.) He denied ever being in the building in Chula Vista where the E & L Therapy offices are located. (7RT 1552.)

3

She spent a lot of time with appellant from November 1st to the 6th, and at the time they were no more than friends. (6RT 959.) She reiterated they had grown closer since he was incarcerated in jail, she put money in his jail account, she paid for his lawyer, and she loved him. (9RT 960, 962-963.) She testified that she told appellant their relationship would not continue when he was released. (6RT 961.) She also testified she would not lie for him. (6RT 963.)

Burton testified that she did not have a sexual relationship with appellant. (6RT 960, 978.) The prosecutor asked, "Is your relationship today -- Do you think of it as sexual in nature at all?" (6RT 978.) Burton answered, "How can it be sexual when he is incarcerated?" (6RT 978.) The prosecutor questioned, "Well, have you written to him about some sexual fantasies you have had about him?" (6RT 978.) Defense counsel objected and asked to go to side bar. (6RT 979.)

The following colloquy ensued:

| | |
|---|---|
| Ms. Lacher: | My objection is not necessarily towards the questioning, and I don't know where it is going, but I just received these before I started my direct examination of Ms. Burton. And I haven't had a chance to look at them, so I don't know where it's going, so it scares me counsel is looking at some documents that counsel is going to be asking about, and I don't know what is in here. |
| The Court: | Are they not letters to your client? |

4

Ms. Lacher:        I assume so. They may be even letters that when he was pro per, and then there is questions about attorney/client privilege where she is working for him.

The Court:        There is no attorney-client privilege for her.

Ms. Lacher:        Well, they may be if they have to do with defense or strategies.

Mr. Bowman:        Actually, to clarify, there was a mail trap placed on it, but Mr. Romo did not want to look at the -- Mr. Romo, for the record, was the prosecutor that was assigned to the case before it was assigned to me. Mr. Romo was uneasy about looking at the mail because [he] wasn't sure it included legal correspondence.

So what we did, we had the detective get all the correspondence that was received after Ms. Lacher came on the case, which includes letters where she is telling him how much she loves him and goes to these sexual fantasies that she is having about him, which clearly goes to bias, interest or other motive for them to assess the credibility of this witness.

The Court:        Yes, it does.

Ms. Lacher:        Well, I would just like to have an opportunity to see what else is in here. I mean, I think it's at the last minute.

The Court:        I won't be excusing her after he is done with his cross-examination, and you can take the evening to look through all those letters. And if you want to try to rehabilitate her based upon the correspondence that you now have copies of, then you are free to do that.

. . . . . . . . . . . . . . . . . . . . . . . . (6RT 779-790.)

The court then allowed the prosecutor to resume his cross-

5

examination of Regina Burton. (6RT 981.) The following colloquy

ensued:

| | |
|---|---|
| Mr. Bowman: | Ms. Burton, have you ever written to Mr. McDonald letters regarding sexual fantasies that you have had about him? |
| Ms. Burton: | Yes, I have. |
| Mr. Bowman: | And you have written those letters as recently as a month ago; is that correct? |
| Ms. Burton: | Yes. |
| Mr. Bowman: | And in your letters, you have described fantasies you have about him performing oral sex upon you, correct? |
| Ms. Burton: | I don't remember that. |
| Mr. Bowman: | Would taking a look at the letter refresh your recollection? |
| Ms. Burton: | Sure. |
| Mr. Bowman: | I would ask you to read the portion underlined in red. |
| Ms. Burton: | Okay. I remember. |
| Mr. Bowman: | Have you had a chance to read all of that? |
| Ms. Burton: | Yes. |
| Mr. Bowman: | In this letter, you described to Mr. McDonald how it's hard for you to concentrate in your computer class because you have fantasies about him performing oral sex upon you; is that correct? |
| Ms. Burton: | What does this have to do with the crimes? |

6

Mr. Bowman:    Do you understand my question?

Ms. Burton:    What does this have to do with the crimes?

Mr. Bowman:    Well, I just want to make something clear. When you are on the witness stand, I am the one who asks the questions and then you answer them.

Ms. Burton:    Why am I being asked about my sexual fantasies in regards to these crimes that he is --

Mr. Bowman:    I get to ask the questions.

The Court:    Hold on, hold on. Ms. Burton, answer the question.

Mr. Bowman:    In this letter did you write to Mr. McDonald in here that you had found it hard to concentrate during your computer class because you had fantasies about him performing oral sex upon you, yes or no?

Ms. Burton:    Yes, I did.

Mr. Bowman:    And did you sign the letter 'Forever your girl'?

Ms. Burton:    Uh-huh.

Mr. Bowman:    Is that a 'yes'?

Ms. Burton:    Yes.

Mr. Bowman:    Did you also write a letter to the defendant in August, on August 21st of 2004, where you made reference to the fact that you would never give up some pictures that you have? Do you remember writing something like that?

Ms. Burton:    Yes.

Mr. Bowman:    And what pictures are you referring to?

Ms. Burton:    Pictures I have of him.

7

Mr. Bowman:     Okay.  And what do those pictures of him -- What kinds of pictures are those?

Ms. Burton:     They are just pictures of him.

Mr. Bowman:     Is he doing what?  Is he doing anything?

Ms. Burton:     No.

Mr. Bowman:     Just standing there?

Ms. Burton:     Just standing there.

Mr. Bowman:     Is he clothed?

Ms. Burton:     Yeah, he is clothed.

Mr. Bowman:     And you write in here you want to show him how deep you feel for him, correct?

Ms. Burton:     Yes.

Mr. Bowman:     You have also written to him saying you never want to venture into your destiny without him, correct?

Ms. Burton:     Yes.

Mr. Bowman:     And you have also written to him that you will love him forever; is that correct?

Ms. Burton:     Yes.

Mr. Bowman:     And you have also written to him stating, quote, 'Joseph, you are the treasure I never expected to happen.  You are the most beautiful part of my destiny.  Promise me, Daddy, you will never lose faith in me when we be apart.  Keep support of me as I forge ahead building the foundation of our future.'

                Does that sound like something you wrote?

8

Ms. Burton:        Yes.

Mr. Bowman:        And you signed it 'Forever your butterfly'?

Ms. Burton:        Yes.

Mr. Bowman:        Ms. Burton, isn't it fair to say that your relationship with Mr. McDonald goes far beyond what you have stated earlier in court today?

Ms. Burton:        You asked me if it was sexual in nature.

Mr. Bowman:        Okay.

Ms. Burton:        Well, I am thinking you are talking about are we having sexual relations.  How can we have sexual relations if he is incarcerated?

Mr. Bowman:        Have you ever in your life had sexual relations with Mr. McDonald?

Ms. Burton:        No.

Mr. Bowman:        And just to be clear, sexual relations, I mean sexual intercourse. Have you ever had sexual intercourse?

Ms. Burton:        We never got that far.

Mr. Bowman:        Have you ever had oral sex with him?

Ms. Burton:        No.

Mr. Bowman:        Now, isn't it true that your relationship with Mr. McDonald goes far beyond that of only being friends?

Ms. Burton:        Yes.

Mr. Bowman:        And you care deeply about him?

Ms. Burton:        Yes.

Mr. Bowman:     Even to this day, you do?

Ms. Burton:     Yes.

Mr. Bowman:     And you would like to spend your life with him, correct?

Ms. Burton:     No.

Mr. Bowman:     Did he ever spend the night at your house on Troy Street, yes or no?

Ms. Burton:     No.

Mr. Bowman:     Never once.

Ms. Burton:     No.  (6RT 991-995.)

The prosecutor then segued to another subject not relevant to his issue.  (9RT 985.)

### B. The Court's Solution To The Defense Objection To The Prosecutor's Discovery Violation Was Problematical And Prejudicial.

#### 1. Counsel's Objection.

As noted, the prosecutor explained to the court that he wanted to question Burton about the nature of her relationship with appellant to present her bias as a witness so that the jury could assess her credibility.  Defense counsel objected on the basis that she had not had a chance to look at the letters in that the prosecutor only provided them to her right before she started her direct examination of this witness.  Counsel also objected on the basis that she did not know where the

10

prosecutor was going with the letters. The court agreed with the prosecutor that the letters were relevant to show bias of the witness. The court's solution was to allow the prosecutor to cross-examine Burton about the content of the letters, to suggest to defense counsel she could review the letters that evening, and, after reviewing the letters, if counsel wanted to rehabilitate Burton later on, she could.

The court's ruling to allow the late discovery was short-sighted and prejudicial. The prosecutor's subsequent questioning of Burton in specific detail about the nature of her sexual fantasies was inflammatory and demeaning not only to Burton but to appellant himself. This questioning went way beyond showing mere bias of this witness. The court should have engaged in an Evidence Code section 352 analysis weighing probative value against the inflammatory and demeaning nature of the excerpts from the letters and should have ruled how specific it would allow the prosecutor to get in his attempt to show Burton's bias.

Defense counsel's objection to the prosecutor's introduction of the letters as a violation of discovery by ambush and by her reference that she did not know where the prosecutor was going with his questioning is sufficient to preserve the issue on appeal. Because the court made its ruling that the evidence would come in, any further

11

objection by defense counsel would have been futile.

## 2. Discovery Violation.

The reciprocal discovery provisions of Proposition 115 recognize and protect the right to discovery this same evidence. (§ 1054.1, subd. (e).) Section 1054.7 requires the disclosure be made at least 30 days before trial. Since the adoption of Proposition 115, the accused's right to be apprised of the contents of the discovery is no longer contingent upon an antecedent request for the material.

The prosecutor indicated on the record that the previous prosecutor had obtained the letters. (See page 5, *supra*.) The prosecution's deliberate failure to disclose this vital information in advance of trial "'partakes of the nature of a game, rather than judicial process.'" (*People v. Campbell* (1972) 27 Cal.App.3d 849, 858, internal citation omitted.)

This balancing of prosecutorial discretion and the requirements of due process is consistent with the prosecutor's unique role. The duty of a prosecutor is to see justice is done, not simply to secure convictions. (*Berger v. United States* (1934) 295 U.S. 78, 88; *In re Ferguson* (1971) 5 Cal.3d 525, 531-532.) Hence, the familiar maxim: a prosecutor is more than an advocate "and his duty extends no further than an impartial, fair and just trial of [the] defendant." (*Powell v.*

12

*Superior Court* (1957) 48 Cal.2d 704, 709, internal citation omitted.)

The purpose of the reciprocal discovery provisions set forth in sections 1054 et seq. is to "promote ascertainment of truth by liberal discovery rules which allow parties to obtain information in order to prepare their cases and reduce the chance of surprise at trial." ( *People v. Jackson* (1993) 15 Cal.App.4th 1197, 1201, citing *Hobbs v. Municipal Court* (1991) 233 Cal.App.3d 670, 686.) "Reciprocal discovery is intended to protect the public interest in a full and truthful disclosure of critical facts, to promote the People's interest in preventing a last minute defense, and to reduce the risk of judgments based on incomplete testimony." (*Ibid.*)

> The essential purpose of permitting a criminal defendant to engage in pretrial discovery of the prosecution's case is to enhance the truth-finding process so as to minimize the danger that an innocent defendant will be convicted. (Brennan, William, Jr., *The Criminal Prosecution: Sporting Event or Quest for the Truth?* 68 Wash. U.L.Q. 1 (1990).)

A variety of sanctions are available for a prosecutor's failure to abide by the rules of discovery, including exclusion of evidence, dismissal, or the giving of special jury instructions. (*People v. Medrano* (2000) 23 Cal.4th 225, 299; *People v. Jenkins* (2000) 22 Cal.4th 900, p. 951; *People v. Wimberly* (1992) 5 Cal.App.4th 773, 792; § 1054.5.) Where an omission is willful in hope of obtaining a tactical advantage,

13

the court may even exclude the witness's testimony. (*Taylor v. Illinois,*

(1988) 484 U.S. 400, 413, 108 S.Ct. 646, 98 L.Ed.2d 798; *People v.*

*Jackson* (1993) 15 Cal.App.4th 1197, 1203.) Here the defense sought

only fairness. The court's solution was not equitable in that it should

have limited the prosecutor to his asking Burton about the letters and

her feelings for appellant, without relying on embarrassing and sordid

details from the letters that added nothing to show the witness's bias.

Thus, despite the legitimacy of the impeachment evidence, the

trial court's solution was a clear abuse of discretion and denied

appellant his constitutional right to due process and a fair trial. The

error was prejudicial in that the inclusion of the sordid details reflected

very poorly on appellant's primary alibi witness for three of the crimes.

(*People v. Clark* (1992) 3 Cal. 4th 41, 134.)

### C. In The Alternative, Counsel Rendered Ineffective Assistance Of Counsel By Not Objecting On A Proper Basis.

It is appellant's primary position that counsel preserved the issue

for appeal by objecting to the inclusion of the evidence as a discovery

violation, and since the court made its ruling in favor of admitting the

evidence, any further objection would be futile. However, in the

alternative, if this Court believes the issue has not been preserved

14

sufficiently for appellate review, appellant submits trial counsel rendered ineffective assistance of counsel by failing to make the proper objection. Failure to object to errors which result in a waiver of review of such errors may also constitute ineffective assistance of counsel. (*People v. Scott* (1994) 9 Cal.4th 331, 356, fn. 18; *People v. Cooper* (1991) 53 Cal.3d 771, 831; *People v. Malone* (1988) 47 Cal.3d 1, 33.)

Counsel also could have objected to the admission of the excerpts from the letters as inadmissible hearsay to preserve appellant's rights in later proceedings. Even if counsel believed an objection would be overruled, it was her responsibility to preserve it for review on appeal.

For example, in *People v. Jackson* (1986) 187 Cal.App.3d 499, trial counsel failed to move for an order precluding the prosecutor from impeaching defendant with his prior felony convictions. On appeal, the Attorney General asserted that counsel's omission did not constitute ineffective assistance of counsel because the impeachment issue had been settled informally by the court at the outset of trial and a formal motion would have been futile. Finding that "[c]ompetent counsel...would have at least taken steps to preserve the point for appeal pending clarification of the law by the appellate courts," the court found ineffective assistance of counsel and remanded the case

15

to determine whether the court would in fact have allowed impeachment. (*Id.* at 506.)

Appellant submits the court's ruling was an abuse of discretion/[2] in that the prosecutor had already shown the bias of the witness through his questioning. His further delving into the intimate details of the letter was inflammatory and not relevant in violation of Evidence Code section 352.

### D. Relevancy And Inflammatory Evidence.

"'[R]elevancy' is the first rule of the admissibility of evidence. . . ." (*Traxler v. Thompson* (1970) 4 Cal.App.3d 278, 286.) Section 351 provides that all relevant evidence is admissible. (See also Cal. Const., Art. 1, § 28 (d), the Truth-in-Evidence provision of Proposition 8.) Section 210 defines relevant evidence as "evidence . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." In the context of criminal cases, the general test of relevancy is whether the evidence tends logically, naturally, and by reasonable inference to establish any

---

/[2]Section 352 issues are reviewed for abuse of discretion. (*People v. Cain* (1995) 10 Cal.4th 1, 33; *People v. Cudjo* (1993) 6 Cal.4th 585, 609. The trial court's discretion will not be disturbed unless probative value clearly is outweighed by prejudicial effect. (*People v. Scheid* (1997) 16 Cal.4th 1, 18. )

material fact sought to be proved. (*People v. Kelly* (1967) 66 Cal.2d 232, 239; *People v. Jones* (1954) 42 Cal.2d 219, 222.)

The greater the probative value of the evidence, the greater must be the undue prejudice in order to justify exclusion. (§ 352.)

> The `prejudice' referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying section 352, `prejudicial' is not synonymous with `damaging.' (*People v. Karis* (1988) 46 Cal.3d 612, 638, citing *People v. Yu* (1983) 143 Cal.App.3d 358, 377, inner quotes omitted.)

Unless the trial court's determination exceeds the bounds of reason, the admission of the excerpts from the letters over objection will not be disturbed on appeal.  Since Burton testified about her feelings for appellant and how their relationship had gone from friendship to love, the court's allowing the prosecutor to quote inflammatory excerpts from the letters served only to embarrass the witness beyond any relevancy. The court's ruling exceeded the bounds of reason .

It is well accepted that under section 352, the trial court enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time. (*People v. Rodrigues* (1994) 8 Cal. 4th 1060, 1124.) A trial court's exercise of its discretion under section 352 "must

17

not be disturbed on appeal except on a showing that the court

exercised its discretion in an arbitrary, capricious or patently absurd

manner that resulted in a manifest miscarriage of justice." (*Ibid*; see

also *People v. Poplar* (1999) 70 Cal.App.4th 1129; *People v. Fitch*

(1997) 55 Cal.App.4th 172, 183.)    Evidence can be excluded under

section 352 if the probability that its admission will create substantial

danger of undue prejudice substantially outweighed its probative value.

The California Supreme Court has reaffirmed:

> [W]hen ruling on a section 352 motion, a trial court need
> not expressly weigh prejudice against probative value, or
> even expressly state that it has done so. All that is
> required is that the record demonstrate the trial court
> understood and fulfilled its responsibilities under . . .
> section 352. ( *People v. Williams* (1997) 16 Cal. 4th 153,
> 213; citing  *People v. Lucas* (1995) 12 Cal. 4th 415, 448-
> 449.)

### E.    The Admission Of The Evidence Impacted Appellant's Constitutional Right To A Fair Trial.

When counsel objected to the inclusion of the statements from

the letters as evidence, she did not object on the basis of a

constitutional violation. Should respondent argue that counsel failed to

make a constitutional objection to the evidence, and has thus waived

any right to challenge the error on a constitutional basis, appellant

would argue that he has not waived his right to raise the issue on

appeal, for two reasons. First, the issue raises fundamental principles

18

of policy and constitutional guarantees, for which the refusal of appellate review frustrates rather than serves the interests of justice. (*People v. Welch* (1993) 5 Cal.4th 228, 237, Arabian, J., concurring; (*People v. Mills* (1978) 81 Cal.App.3d 171, 176.) Secondly, to avoid a subsequent habeas proceeding raising the same point, courts have discretion to consider issues on direct appeal in that the collateral proceedings would unduly prolong the appellate process ( *People v. Blanco* (1992) 10 Cal.App.4th 1167, 1172-1173; *People v. Allen* (1974) 41 Cal.App.3d 196, 201, fn. 1; *People v. Norwood* (1972) 26 Cal.App.3d 148, 153 ["A matter normally not reviewable upon direct appeal, but . . . vulnerable to habeas corpus proceedings based upon constitutional grounds may be considered upon direct appeal . . ."].)

Moreover, the United States Supreme Court has consistently held that domestic rules of evidence may not be invoked to preclude a criminal defendant from establishing that he has been denied a fair trial. (See *Rock v. Arkansas* (1987) 483 U.S. 44, 55-56 [state prohibition of post-hypnosis testimony violates right of defendant to testify]; *Davis v. Alaska* (1974) 415 U.S. 308, 315-321 [94 S.Ct. 1105, 39 L.Ed.2d 347]; [refusal to allow defendant to cross-examine key prosecution witness to show his probation status following an adjudication of juvenile delinquency denied defendant his constitutional right to confront

19

witnesses, notwithstanding state policy protecting anonymity of juvenile offenders]; *Chambers v. Mississippi* (1973) 410 U.S. 284, 294-303 [93 S.Ct. 1038, 35 L.Ed.2d 297,] [refusal to permit defendant to cross-examine witness on highly exculpatory matters on the basis of a Mississippi common-law rule that a party may not impeach his own witness combined with hearsay rule; state evidentiary rules "may not be applied mechanistically to defeat the ends of justice"]; *Washington v. Texas* (1967) 388 U.S. 14 [87 S.Ct. 1920, 18 L.Ed.2d 1019].) [evidentiary statute preventing principals, accomplices, or accessories in same crime to be introduced as witnesses for each other denied defendant's right to have compulsory process for obtaining witnesses in his favor].)

**F. Application Of Law To This Case; Prejudice.**

Applying these rules, the trial court's allowing the admission of excerpts of the letters to show witness bias was an abuse of its discretion. The reality remains the prejudice was significantly more than the probative value. Appellant was highly damaged by the prosecution's references which could have done nothing less than inflame the jury against his primary alibi witness and him. As the Supreme Court has observed: "There is no reason why we should treat this evidence as any less 'crucial' than the prosecutor - and so

20

presumably the jury - treated it." (*People v. Cruz* (1964) 61 Cal.2d 861, 868; see also *People v. Woodard* (1979) 23 Cal.3d 329, 341 [reversal ordered where the prosecutor "exploited" erroneously admitted evidence during his closing argument].).)

Accordingly, the court's decision to allow the prosecutor to use references in the letters to embarrass this defense witness highly prejudiced appellant's case. It was not only an abuse of the court's discretion to admit the evidence, but it was a violation of constitutional magnitude that denied appellant his due process right to a fair trial. (U.S. Const., Fifth & Fourteenth Amends.)

II.

## THE COURT ERRED BY STAYING THE ONE-YEAR PRISON PRIOR RATHER THAN STRIKING IT

### A. Proceedings Below.

At the sentencing hearing, the court stayed the section 667.5, subdivision (b) one-year prison prior and imposed five years for the serious felony prior. (§ 667, subd. (a).) (12 RT 2009.)

### B. A Trial Court May Not Stay An Enhancement; It Must Strike An Enhancement.

Unless otherwise provided by statute, an enhancement may only be imposed or stricken; it may not be stayed. To do so is an illegal sentence. ( *People v. Haykel* (2002) 96 Cal.App.4th 146, 151; *People v. Harvey* (1991) 233 Cal.App.3d 1206, 1231.) Moreover, reference in the sentencing rules to a court's discretionary stay of an enhancement were eliminated by amendments to the rules in 2003. In California Rules of Court, rule 4.405(e), the phrase "declining to impose" enhancement was changed to "striking" the enhancement. In rule 4.406(b)(7), the phrase "striking or staying" the enhancement was changed to "striking" the enhancement. Rule 4.406(b)(10) refers to ""Striking an enhancement or prior conviction allegation under [Penal Code] section 1385(a)." In rule 4.435(b)(1), the phrase "deciding whether to strike or specifically not to order" the enhancement was

22

changed to "deciding whether to strike" the enhancement. The Advisory Committee Comment to rule 4.423, the phrase "striking or specifically not ordering" the enhancement was changed to "striking" the enhancement.

The issue whether a trial court has discretionary authority to stay an enhancement was resolved by the California Supreme Court in *People v. Langston* (2004) 33 Cal.4th 1237. The defendant was convicted of first degree burglary and receiving stolen property, and was found to have served three prior prison terms within the meaning of Penal Code section 667.5, subdivision (b). The court then stayed one of the three prison prior enhancements. The Court held this was error. "Once the prior prison term is found true within the meaning of section 667.5(b), the trial court may not stay the one-year enhancement, which is mandatory unless stricken." (*Id.* at p.1241, citing *People v. Jones* (1992) 8 Cal.App.4th 756, 758; *People v. Eberhardt* (1986) 186 Cal.App.3d 1112, 1122-1123.)

Accordingly, the abstract of judgment must be modified to delete reference to the section 667.5, subdivision (b) and section 668 prior. (2CT 416.)

# CONCLUSION

For the reasons set forth in Argument I, appellant's conviction must be reversed. In the alternative, as set forth in Argument II, the abstract of judgment must be modified to delete reference to the section 667.5, subdivision (b) prior.

Dated: July 25, 2006

Respectfully submitted,

Ava R. Stralla
Attorney for Defendant and
Appellant, Joseph H. McDonald

D046881

## CERTIFICATION OF WORD COUNT (Rule 33(b))

I, Ava R. Stralla, hereby certify, pursuant to rule 33(b) of the California Rules of Court, that I prepared the foregoing appellant's supplemental opening brief on behalf of my client, and that the word count for this brief is <u>4,786</u> which does not include the cover, declaration of service, or the tables. This brief therefore complies with the rule, which limits a brief to 25,500. I certify that I prepared this document in WordPerfect 12, and that this is the word count WordPerfect generated for this document.

Dated: July 25, 2006

Ava R. Stralla

Ava R. Stralla
Attorney at Law
PO Box 28880
San Diego, CA 92198

D046881

## DECLARATION OF SERVICE

I, <u>Ava R. Stralla</u>  declare that:  I am, and was at the time of service hereinafter mentioned, at least 18 years of age and not a party to the above entitled action. My business address is <u>PO Box 28880, San Diego, CA. 92198;</u> I am employed in <u>San Diego County,</u> California. I served the foregoing <u>Supplemental Appellant's Opening Brief</u> on <u>July 25, 2006,</u>  by depositing  copies thereof in the United States mail in <u>San Diego</u>, California, enclosed in sealed envelopes, with postage fully prepaid, addressed to:

Department of Justice
Office of the Attorney General
110 West A Street, Ste 1100
PO Box 85266
San Diego, CA 92186-5266

Appellate Defenders, Inc.
555 West Beech Street
Suite 300
San Diego, CA 92101

Hon. Louis R. Hanoian
c/o Clerk, Superior Court
250 East Main Street
El Cajon, CA 92020

Blaine Bowman, Deputy
Office of the District Attorney
250 East Main Street
El Cajon, CA 92020

Joseph McDonald
# T01657
44750 60th Street West
FAC  D7  Bed 107L
Lancaster, CA 93536

Pamela G. Lacher
Attorney at Law
12005 World Trade Drive
Suite #3
San Diego, CA 92128

I declare under penalty of perjury that the foregoing is true and correct. Executed at San Diego, California, this <u>25th</u> day of <u>July</u>  <u>2006.</u>

_____
Ava R. Stralla

EXIBIT "E"



CENTRAL OFFICE
233 "A" Street, Suite 500
San Diego, CA 92101-4009
(619) 338-4700
FAX (619) 338-4811

NORTH COUNTY BRANCH
400 S. Melrose Drive, Suite 200
Vista, CA 92083-6627
(760) 945-4000
FAX (760) 726-1308

SOUTH BAY BRANCH
765 Third Avenue, Suite 100
Chula Vista, CA 91910-5842
(619) 498-2001
FAX (619) 498-2039

EAST COUNTY BRANCH
250 E. Main Street, Sixth Fl.
El Cajon, CA 92020
(619) 579-3316
FAX (720) 441-4744

JUVENILE DELINQUENCY
8525 Gibbs Drive, Suite 105
San Diego, CA 92123-2709
(858) 974-5700
FAX (858) 974-5858

JUVENILE DEPENDENCY
8525 Gibbs Drive, Suite 300
San Diego, CA 92123-2709
(858) 974-5757
FAX (858) 974-5711

# County of San Diego

## DEPARTMENT OF THE PUBLIC DEFENDER

STEVEN J. CARROLL
PUBLIC DEFENDER



March 30, 2004

TO:     James Romo
        Deputy District Attorney
        Bonnie M. Dumanis
        District Attorney

From:   Michael F. Ruiz
        Deputy Public Defender
        Steven J. Carroll
        Public Defender

RE: DISCOVERY IN PEOPLE v. JOSEPH MCDONALD  D.A. NO.: MAI595

This office represents the above-mentioned defendant, who is charged in the above-mentioned complaint. I would appreciate being provided with copies of, or access to all discoverable matters, including but not limited to:

* All criminal charges pending against, convictions and probationary/parol status of the alleged victim(s).
* The names and addresses of each witness who may be called to testify at the trial that have not already been provided.
* All criminal charges pending against, any conviction of, or the probationary or parole status of each prosecution witness.
* Any information no matter how, or if recorded, or prior acts adversely reflecting on honesty, whether or not they resulted in arrest or convictions for felonies or misdemeanors, of any witness, including police officers, to be called to testify against the defendant. (Cal.Const. art. I §28(d); People v. Wheeler (1992) 4 Cal.4th 284 [14 Cal.Rptr.2d 418]; People v. Lang (1989) 49 Cal.3d 991 [264 Cal.Rptr. 386]; People v. Harris (1989) 47 Cal.3rd 1047 [225 Cal.Rptr. 362].)
* Disclosure of any promise of leniency to any witness to be called by the prosecution.
* Any exculpatory evidence in the possession of any police department, the district attorney, or any other person or agency and available to the prosecution. (Penal Code section 1054.)

In addition, the defendant requests the following information and materials favorable to the accused and materials either to guilt or to punishment, (Brady v. Maryland (1963) 373 U.S. 83 [83 S.Ct. 1194; 10 L.Ed.2nd 215]; People v. Nation (1980) 26 Cal.3d 169 [161 Cal.Rptr. 299]; People v. Ruthford (1975) 14 Cal.3d 399 [121 Cal.Rptr. 261]; In Re Ferguson (1971) 5 Cal.3d 525 [96 Cal.Rptr. 594] (prosecutor) must disclose all substantial material evidence); People v. Boyd (1990) 222 Cal.App.3d 541 [271 Cal.Rptr. 738]), or mandated by the United States Constitution. (Penal Code section 1054(e)):

* Statements against the defendant made by witnesses to the crimes charged.
* All statements or utterances made by the defendant.
* A list of all physical evidence.
* All laboratory reports as well as reports of any examinations on the physical evidence.
* All photos, films, audio tapes, and videotapes pertaining to this case, including 911 tapes from each crime report.

**STEVEN J. CARROLL**
**PUBLIC DEFENDER**

March 30, 2004
TO:     James Romo
          Deputy District Attorney
          Bonnie M. Dumanis
          District Attorney

From:   Michael F. Ruiz
          Deputy Public Defender
          Steven J. Carroll
          Public Defender

## RE: DISCOVERY IN PEOPLE v. JOSEPH MCDONALD   D.A. NO.: MAI595

This office represents the above-mentioned defendant, who is charged in the above-mentioned complaint. I would appreciate being provided with copies of, or access to all discoverable matters, including but not limited to:

* All criminal charges pending against, convictions and probationary/parol status of the alleged victim(s).
* The names and addresses of each witness who may be called to testify at the trial that have not already been provided.
* All criminal charges pending against, any conviction of, or the probationary or parole status of each prosecution witness.
* Any information no matter how, or if recorded, or prior acts adversely reflecting on honesty, whether or not they resulted in arrest or convictions for felonies or misdemeanors, of any witness, including police officers, to be called to testify against the defendant. (Cal.Const. art. I §28(d); People v. Wheeler (1992) 4 Cal.4th 284 [14 Cal.Rptr.2d 418]; People v. Lang (1989) 49 Cal.3d 991 [264 Cal.Rptr. 386]; People v. Harris (1989) 47 Cal.3rd 1047 [225 Cal.Rptr. 362].)
* Disclosure of any promise of leniency to any witness to be called by the prosecution.
* Any exculpatory evidence in the possession of any police department, the district attorney, or any other person or agency and available to the prosecution. (Penal Code section 1054.)

In addition, the defendant requests the following information and materials favorable to the accused and materials either to guilt or to punishment. (Brady v. Maryland (1963) 373 U.S. 83 [83 S.Ct. 1194; 10 L.Ed.2nd 215]; People v. Nation (1980) 26 Cal.3d 169 [161 Cal.Rptr. 299]; People v. Ruthford (1975) 14 Cal.3d 399 [121 Cal.Rptr. 261]; In Re Ferguson (1971) 5 Cal.3d 525 [96 Cal.Rptr. 594] (prosecutor) must disclose all substantial material evidence); People v. Boyd (1990) 222 Cal.App.3d 541 [271 Cal.Rptr. 738]), or mandated by the United States Constitution. (Penal Code section 1054(e)):

* Statements against the defendant made by witnesses to the crimes charged.
* All statements or utterances made by the defendant.
* A list of all physical evidence.
* All laboratory reports as well as reports of any examinations on the physical evidence.
* All photos, films, audio tapes, and videotapes pertaining to this case, including **911 tapes** from each crime report.



- *All reports and **handwritten notes** made by police officers or investigators at or near the time of arrest and during the investigation of this matter, including any notes or reports made by arresting officer(s) when Mr. McDonald was arrested at Bancroft Drive and Tyler Street..
- *All photos shown to each witness not already provided and subsequent raw notes taken by officers who interviewed said witnesses.
- *The local and state criminal records, summaries, or rap sheets for my client not already provided.
- *Any additional and ongoing police officer reports or investigative reports regarding this case
- *The name(s) and CV of ANY expert to be called at trial.

Thank you for your assistance. Your prompt attention to this matter will be greatly appreciated.
In addition:

Please note that the defense intends to call:

Regina Burton
8614½ Troy Street
Spring Valley, CA

Clarence Burton
Correct address unknown

Thomas R. MacSpeiden, PH.D.
3914 Third Avenue
San Diego, CA 92103

Please note that other witnesses may be called as they are discovered.

Further information regarding Mr. Burton will be made available as soon as it is received by this office. Please find Dr. MacSpeiden's CV enclosed herewith.


Very truly yours,



Michael F. Ruiz
Deputy Public Defender

San Diego County Sheriff's Department

Case Progress Report

Case Number _____

| Date | Time | |
|------|------|--|
| 1/4 | | 030073617·L |
| | | BMA - BEADS    150, AVERAGE HEIGHT |
| | | |
| | | 030073376·L |
| | | |
| | #1 | 6'2", 205, MUSCULAR, BRAIDED HAIR |
| | #2 | 5'9" |
| | | |
| | | TERINA'S CELL ▇▇▇▇▇ |
| | | |
| | | 3375    MEZA |
| | | 3365    NAO |
| | | |
| | | |
| | | |
| | | 3386    BORREGO |
| | | 3344 - HANNIGAN |
| | | |
| | | |
| | | 2 NEXTELS |

DOBBS

D.T. OVER
ELEANOR MARTINEZ

INFORMAL DEFENSE REQUEST

JOSEPH McDONALD

BOOKING #3145882

1173 FRONT ST. SAN DIEGO, CA 92101

PROPRIA PERSONA.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR SAN DIEGO COUNTY

PEOPLE OF THE STATE OF, ) CASE NO. SCE 234930

CALIFORNIA, ) DA. NO. MAI595

PLAINTIFF ) DEPT #9

V ) DATE 6/14/04

JOSEPH McDONALD, ) INFORMAL REQUEST FOR DISCOVERY

DEFENDANT. ) (PEN C 1054.5(b))

TO BONNIE DUMANIS, DISTRICT ATTORNEY OF SAN DIEGO COUNTY
NOTICE IS HEREBY GIVEN THAT I, DEFENDANT, ACT PRO PERSONA,
WHO IS CHARGED WITH BURGLARY (4)COUNTS, (1)COUNT OF PETTY
THEFT W/PRIOR AND RECEIVING STOLEN PROPERTY. IN CASE NO.
SCE 234930. DEFENDANT IS NEXT TO APPEAR IN COURT 6/14/04,
DEPT 9 AT 8.30AM. PURSUANT TO PENAL CODE 1054.5(b),
I HEREBY REQUEST THAT ON OR BEFORE THE DATE OF APPEARANCE
YOU PROVIDE ME WITH COPIES OF THE FOLLOWING INFORMATION,
OR PROVIDE ME WITH THE OPPORTUNITY TO REVIEW ALL OF
THE FOLLOWING INFORMATION: THE NAMES, CURRENT ADDRESS
AND TELEPHONE NUMBERS OF ALL WITNESSES TO BE CALLED
TO TESTIFY AGAINST DEFENDANT AT TRIAL AND OF ALL
PERTINENT WITNESSES AND POTENTIAL WITNESSES,
WHETHER OR NOT THE

CALIFORNIA CRIMINAL LAW FORMS MANUAL

1   prosecution intends to call the witness to testify against the defen-
2   dant at trial. (See Penal Code sections 1054.1(a), 1054(e); *Brady v*
3   *Maryland* (1963) 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215. See also *In*
4   *re Littlefield* (1993) 5 C4th 122, 19 CR2d 248.)

5        All statements or utterances by the defendant _ _[*or a codefen-*
6   *dant,*]_ _ oral or written, however recorded or preserved, whether or
7   not signed or acknowledged by the defendant _ _[*or codefendant*]_ _.
8   (Penal Code section 1054.1(b), (e); *Brady v Maryland, supra.*)

9        The content of any statements made in the defendant's presence
10  while being interrogated by law enforcement that were intended or
11  might reasonably be expected to have the effect of encouraging the de-
12  fendant to give a statement about the offense to the police. (*People v*
13  *Haydel* (1974) 12 C3d 190, 115 CR 394; *Napue v Illinois* (1959) 360 US
14  264, 3 L Ed 2d 1217, 79 S Ct 1173.)

15       All notes of observations of the defendant's physical appearance,
16  emotional state, or sobriety by law enforcement personnel or their
17  agents at or near the time of defendant's arrest. (See *People v Hay-*
18  *del, supra.*)

19       All physical evidence obtained in the investigation of the case
20  against the defendant. (Penal Code section 1054.1(c), (e).)

21       All photographs, transparencies, slides, diagrams, motion pictures
22  and videotapes of the scene of the alleged offense. (Penal Code sec-
23  tion 1054.1(c), (e).)

24       All photographs, motion pictures, or videotapes of the defendant
25  made at or near the time of defendant's arrest in this case. (Penal
26  Code section 1054.1(c), (e).)

27       All photographs, videotapes, motion pictures, composites, or like-
28  nesses shown to witnesses and prospective witnesses in this case for

DISCOVERY

1    the purpose of establishing the identity of suspects in the crime

2    charged against the defendant, and all reports concerning the display

3    of such. (Penal Code section 1054.1(c), (e).)

4        The names and addresses of each witness shown or attending a line-

5    up involving the above-entitled case and the results of any such line-

6    up. (Penal Code section 1054.1(e); *Brady v Maryland, supra*.)

7        A copy of any police radio communication tape concerning the case.

8    (See *People v Madden* (1970) 2 C3d 1017, 88 CR 171.)

9        Any record of criminal arrests or convictions of the defendant.

10   (Penal Code section 1054.1(d)-(e).)

11       Any exculpatory evidence, information, documents, and other mate-

12   rials in the possession of, or that have come to the attention of, the

13   District Attorney or of any police department involved in the inves-

14   tigation of the case against the defendant. (Penal Code sections

15   1054.1(e), 1054(e). See *Giglio v U.S.* (1972) 405 US 150, 92 S Ct 763,

16   31 L Ed 2d 104; *Brady v Maryland, supra*.)

17       Any record of criminal arrests or convictions (whether for felonies

18   or misdemeanors) of any witness to be called to testify against the de-

19   fendant. (Penal Code sections 1054.1(e), 1054(e); *People v Lang* (1989)

20   49 C3d 991, 264 CR 386; *People v Harris* (1989) 47 C3d 1047, 255 CR 352.

21   See *People v Pinholster* (1992) 1 C4th 865, 938, 939, 4 CR2d 765;

22   *People v Pensinger* (1991) 52 C3d 1210, 1271, 278 CR 640.)

23       Any promises and/or inducements of any kind made by the prosecu-

24   tion to induce or encourage a witness to assist the prosecution in its

25   investigation of the above-entitled case, or to induce a witness to

26   testify for the prosecution in the above-entitled case. (See Penal

27   Code section 1054.1(e); *Brady v Maryland, supra*.)

28       Any information relevant to impeachment of any witness that the

-3-

CALIFORNIA CRIMINAL LAW FORMS MANUAL

1    prosecution intends to call at the trial, including any threats,

2    promises, inducements, offers of reward or immunity, affirmative rep-

3    resentations made or implied, and any record of convictions, or of

4    pending charges, probation, or parole. (Penal Code sections

5    1054.1(e), 1054(e). See *People v Pinholster, supra; Davis v Alaska*

6    (1974) 415 US 308, 39 L Ed 2d 347, 94 S Ct 1105.)

7        All records concerning the arrest of the alleged victim, com-

8    plaints filed against the victim, or information concerning incidents

9    of specific acts of aggression by the alleged victim, as well as the

10   names, addresses, and phone numbers of witnesses to such acts. (Penal

11   Code section 1054.1(e); *Engstrom v Superior Court* (1974) 7 C4th 978,

12   30 CR2d 651.)

13       The identity and whereabouts of any material informants. (Penal

14   Code sections 1054.1(e), 1054(e). See *People v Hobbs* (1994) 7 C4th

15   948, 30 CR2d 651.)

16       The names and addresses of all persons detained or arrested as

17   suspects in the above-titled case, and any statement(s) made by such

18   persons. (See Penal Code section 1054.1(e); *Brady v Maryland, supra.*)

19       All written or recorded statements of witnesses who will testify

20   at trial. (Penal Code section 1054.1(e)-(f).)

21       All written or recorded statements of percipient witnesses, wheth-

22   er or not they will be called to testify. (Penal Code sections

23   1054.1(e), 1054(e).)

24       Latent fingerprints lifted in the investigation of this case and

25   photographs of such latent fingerprints, if any. (Penal Code section

26   1054.1(e); *Brady v Maryland, supra.*)

27       The known exemplars of fingerprints, if any, used for comparison

28   with latent fingerprints lifted during the investigation of the

-4-

DISCOVERY

1    alleged offense. (Penal Code section 1054.1(e); *Brady v Maryland, su-*

2    *pra.*) All photographs, videotapes, audiotapes, and movies concerning

3    this case. (See Penal Code section 1054.1(e).)

4        All laboratory, technician, and other reports concerning the test-

5    ing and examination of evidence concerning this case. (Penal Code

6    section 1054.1(e)-(f).)

7        All reports of experts made in conjunction with this case, involv-

8    ing the results of physical or mental examinations, scientific tests,

9    experiments, or comparisons that the prosecutor intends to offer in

10   evidence at the preliminary hearing or at trial, and all reports of

11   experts who reviewed the work of a prosecution expert who will testify

12   at the preliminary hearing or at trial. (Penal Code section

13   1054.1(e)-(f).)

14       All notes and reports of police officers and investigators con-

15   cerning the offense charged. This includes reports concerning all as-

16   pects of the case, *e.g.*, the crime, the defendant's arrest, law en-

17   forcement activities and observations, and conversations with

18   witnesses and potential witnesses. (Penal Code section

19   1054.1(e)-(f).)

20       All reports and notes of any law enforcement officer or investiga-

21   tor concerning the defendant and/or the above-entitled case that are

22   maintained separately from the official file, *e.g.*, as "current in-

23   vestigation files," "field identification notes," or "street files."

24       If Officer _ _[name]_ _ *JERRY HARTMAN* has not worked for the _ _[name of arrest- *LEMON GROVE*

25   ing agency for which officer works]_ _ *SHERIFF AGENCY* for at least five years, and

26   worked for another law enforcement agency within five years of the

27   date of the arrest in the instant case, the name and mailing address *JERRY HARTMANS*

28   of Officer _ _[name]_ _'s previous employer. (Penal Code section

-5-

DISCOVERY

[Begin the following on a new page.
No caption is needed if attached to
papers with caption; see §24.3.]

1            DECLARATION IN SUPPORT OF MOTION FOR DISCOVERY

2     I, _ _[declarant's name; *JOSEPH MCDONALD* most such declarations, including this

3 one, are made by defense counsel]_ _, *PROPRIA PERSONA* declare under penalty of perju-

4 ry that:

5     1. I _ _[state if you are in public office, e.g., *JOSEPH MCDONALD* an a deputy pub- *ACTING PRO PERSONA*

6 lic defender, and]_ _ represent the defendant in the above-entitled

7 action.

8     2. On information and belief, the records, documents and informa-

9 tion sought by this motion are in the actual and/or constructive pos-

10 session of the District Attorney of _SAN DIEGO_ _ County.

11     3. The records, documents, and information sought by this motion

12 _ _[except those previously provided,]_ _ are not available to the

13 defendant or _ _[his/her]_ _ counsel in the exercise of due dili-

14 gence. _ _[Describe why they are unavailable to the defense if that

15 may be an issue.]_ _ *BECAUSE I DO NOT HAVE EVERTHING DESCRIBED IN THIS MOTION.*

16     4. The records and documents sought by this motion are necessary

17 to help prepare the defense in this action. The requested discovery

18 will be helpful to the defense case in the following ways: _ _[Specify

19 how this information will be helpful, e.g., locating witnesses and

20 physical evidence; preparing for the cross-examination and impeach-

21 ment of witnesses to be called by the prosecution; assessing the cred-

22 ibility of witnesses to be called by the prosecution; assessing the

23 credibility of defense witnesses; corroborating the testimony of de-

24 fense witnesses; identifying the need for defense expert wit-

25 nesses]_ _.

26     I declare under penalty of perjury under the laws of the State of

27 California that the foregoing is true and correct.

28

CALIFORNIA CRIMINAL LAW FORMS MANUAL

1    Date: 6/5/04                    ___[signature of declarant]___
                                     _ _[Typed name]_ _
2                                    _ _[Title of declarant if in public
                                     office]_ _
3
4                                         JOSEPH MCDONALD
5                                    PROPRIA PERSONA
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXIRIT "F"

# CALIFORNIA DEPARTMENT OF CORRECTIONS

NAME: **MCDONALD**                    CDC #: **T01657**                    BED: **A2-245U**

| *COMMITTEE ACTION SUMMARY* |
| --- |
| INPUT INTEGRATED HOUSING CODE        **INMATE COPY** |

### COMMITTEE'S COMMENTS

Inmate MCDONALD appeared before California State Prison, L.A. County's (LAC's) Facility A Unit Classification Committee (UCC) today for his Program Review. MCDONALD stated that his health was good and was willing to proceed. MCDONALD received his 72-hour notice for the purpose of this review. Prior to committee reviewing and discussing this case, MCDONALD was introduced to the committee members. Based upon a review of MCDONALD'S Central File, case factors, and through discussion with him, committee elects to: INPUT INTEGRATED HOUSING CODE REVIEW FOR IHP,    CLOB CUSTODY , A1A EFFECTIVE 12/14/05   , DOUBLE CELL APPROVED, PSYCH: CCCMS \"S\" MADE A PERSONAL APPEARANCE FOR THE PURPOSE OF IHP CODEING AND \"S\" AGREED TO   RP CODEING AS DOCUMENTED ON 1882 DATED4-18-08.

Inmate was reviewed in accordance with Dorm/Double Cell Housing Criteria. He does meet double cell housing criteria, in that his Central File has been reviewed, and it is verified that he does not, and has not demonstrated significant in-cell physical or sexual violence against a cell partner, and is not known to be the victim of such violence. There are no factors evident which would indicate failure to single cell may increase the likelihood of staff or inmate injury, or that which would potentially jeopardize the safety or security of the institution.

At the conclusion of this review, MCDONALD was informed of his Appeal Rights with regards to this committee's actions. MCDONALD acknowledged his understanding and agreement with committee's actions.

**STAFF ASSISTANT**

Not Assigned: (Participant in MHSDS but able to comprehend issues)

### INMATE CASE FACTORS

| CUSTODY | CS/LEVEL | WG/PG & EFF. DATE | RELEASE DATE | GPL | RECLASS | ETHNIC | PSYCH | DATE 128C | NEXT BPT & DATE |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| CLOB | 61/IV | A1A - 12/14/2005 | MEPD 5/18/2021 | | 7/2008 | BLA | CCCMS | | |

### COMMITTEE MEMBERS

*MEMBERS*

INPUT INTEGRATED HOUING CODE.

CHAIRPERSON
C. Nungaray, FC (A)

RECORDER
R. Peeler, CCI

Committee Date: 4/22/2008          **PROGRAM REVIEW**          Committee: A042908RLP5

Typed By:    - Distribution: C-File & Inmate      CALIFORNIA STATE PRISON, L.A. COUNTY      Classification Chrono CDC 128G (Rev: 5/01)