1569

1          (Recess Taken.)

2          (Whereupon the following proceedings were had outside the

3   presence of the jury:)

4          THE COURT:  All right.  We're outside the presence of the

5   jury.  The defendant is present with counsel.  District attorney

6   is present.

7               Mr. Bowman.

8          MR. BOWMAN:  Yes, your Honor.  I wanted to bring up an

9   issue outside the presence of the jury before we begin again.

10  I -- can I make a motion at this point to offer into evidence and

11  play for the jury the approximately seven-minute redacted version

12  of the video?  I'm not asking to play the entire 49-minute video,

13  but just portions that show for example Mr. Washington rolling

14  the joint; Mr. McDonald's reaction to it and so forth given the

15  fact that there seems to be conflicting testimony here with

16  Mr. McDonald and actually with what Regina testified to as well,

17  Ms. Burton.  So at this point I'd offer -- I'd like a motion to

18  play the redacted portion of the video.

19         MS. LACHER:  Evidence.

20         THE COURT:  Ms. Lacher.

21  .      MS. LACHER:  Well, given Mr. Bowman's comments, if he's

22  correct, obviously the Court's ruling was if somebody denies

23  anything that's on the tape it comes in.

24               My concern is I'm not sure when it is that

25  Mr. McDonald or anybody has now said it contradicts anything

26  that's on that tape.

27         THE COURT:  Well, the -- the reason -- there's nothing

28  that's prej- -- when I first ruled as far as the tape goes I

1570

1 didn't find anything to be particularly prejudicial except for

2 the idea that maybe they were drinking and carrying on, that that

3 somehow might be misinterpreted; but there's been testimony about

4 that, so exactly showing the exact nature of what was going on

5 there I don't think is going to be prejudicial at all.

6         And as far as seven, this is a seven-minute excerpt

7 from the tape, so it's not going to be unduly time consuming.

8 There's not a 352 issue that I think is here.

9         I think it's relevant because there has been

10 some -- some testimony in -- in some detail as to what was going

11 on in the events on the videotape, and I think that -- just to

12 make it clear we're going to play the tape.

13     MS. LACHER:  My only concern is we had a discussion about

14 the 356 issue, now we're playing a portion of the tape not in

15 context.  I'm not necessarily saying that I --

16     THE REPORTER:  I can't hear because I keep hearing stuff

17 out of the witness stand.

18     MS. LACHER:  I haven't thought that through all the way,

19 like to come back and rewind what's on that long tape; but we're

20 taking it out of context again and that was my concern originally

21 that -- I understand the Court, I don't think it's that

22 prejudicial, and I thought that the only relevance that the Court

23 had said originally was if anybody denied or made contradictory

24 statements to what was on that tape, and there was none.

25     THE COURT:  Well, I don't know that that's the case.

26 That's the question.  I think there is some testimony that is --

27 is -- if I -- it may not be exactly contradictory, but I think it

28 has placed the exact context into issue, and we're going to play

Tracy J. Gallagher, CSR #11524, RPR

1571

1  the seven-minute excerpt.

2          You want to play the 49-minute version, you're

3  welcome to do it.  It doesn't come in under 356.  It comes in

4  because you want to do it; you want to play it because I -- there

5  are different -- on the 49-minute version there are different

6  sessions that are clearly -- clearly at different times, and the

7  356 only would include those things that were done

8  contemporaneously with the statement that is elicited in

9  connection with the tape.

10          MR. BOWMAN:  Right.  And, your Honor, just to be clear,

11  the enter 49-minute tape includes portions of Mr. McDonald and

12  Mr. Washington throwing out gang signs and things like that, and

13  those have been redacted from this particular -- what we have

14  redacted in this seven-minute, 40-second portion.  So, you

15  know --

16          THE COURT:  Okay.

17          MR. BOWMAN:  -- I don't know if the defense is -- I don't

18  know if the defense is requesting for the entire tape to be

19  played.  I don't think I heard that, yet.

20          MS. LACHER:  No, I'm not.  I'm just concerned because even

21  the seven-minute redacted takes stuff out of context, and what I

22  heard Mr. Bowman say was one of the reasons he thinks that he

23  needs to play this tape is because we want to put the rap song in

24  context.  We don't even know that the rap song occurred at the

25  same time as what else was in the apartment.

26          THE COURT: ( No.  I think it's not just the rap song

27  because the rap song has not been taken out of context. \ It's

28  what surrounds; the sound, what else is on the tape that has been

1572

1 testified about that isn't exactly the way at least Mr. Bowman is

2 remembering the tape, and I -- you know --

3          MS. LACHER:  I understand.

4          THE COURT:  -- it's relevant.  It's admissible.  As I

5 mentioned under 352, I don't find it to be unduly prejudicial at

6 all.  I find it to be probative and it's not -- it's no longer

7 cumulative.  That was the reason we were saving sometime before

8 if there wasn't going to be any dispute as to what exactly was

9 going on, but there is a dispute.

10          MR. BOWMAN:  Your Honor, I'd only ask the Court instruct

11 the jury that we're only going to see a portion of it, that it's

12 redacted.  They're not going to see the entire portion, at least

13 right now, and not to speculate as to why they're only seeing a

14 portion of the tape.

15               In other words, sometimes when we have statements

16 from defendants who were mirandized when they talk about parole

17 violations we redact it; and I know we've given similar

18 instructions in other courts where we tell the jury not to draw

19 any conclusions from the fact they're only seeing a portion of

20 it.

21          THE COURT:  Well, I mean, I can tell them this is the only

22 portion of the tape that we feel is relevant at this stage of the

23 proceedings and that's why they're seeing it.

24          MR. BOWMAN:  Okay.

25          MS. LACHER:  I don't have objection to that.

26          THE COURT:  Okay.

27          MR. BOWMAN:  That's fine.

28          THE COURT:  Let's bring in the jury.

1573

1    (Whereupon the following proceedings were had in the

2   presence of the Jury:)

3        THE COURT:  Our jurors and our alternates are present.

4   The Defendant is present with counsel.  The District Attorney is

5   present.

6            Mr. Bowman, we are in your cross-examination.

7        MR. BOWMAN:  Yes, your Honor.

8

9            CROSS-EXAMINATION (Resumed)

10  BY MR. BOWMAN:

11       Q     And, well, first of all let me ask, Mr. McDonald,

12  you've testified about the context of the tape.  What I'd like to

13  do now is play a portion of the tape and have you watch it

14  carefully because I'd like to ask you some questions about it;

15  okay.

16       A     Yes, sir.

17       Q     Can you see the T.V. screen all right from where

18  you're seated?

19       THE COURT:  Before we play; it's just a seven-and-a-half

20  minute portion of the tape.  It's just those portions we think

21  are relevant for this point in the trial.  It's not the whole

22  49-minute job.

23            Do we have a stipulation from counsel that the

24  reporter does not have to attempt to report the contents of the

25  tape?

26       MS. LACHER:  Yes, your Honor.

27       MR. BOWMAN:  So stipulated.

28       THE COURT:  We need it.  Get that tape.

Tracy J. Gallagher, CSR #11524, RPR

1574

1      MR. BOWMAN:  Yes.  I ask it be marked People's next in

2  order.  And it's now been marked as People's 38.

3          With the Court's permission, can I then play the

4  tape at this point?

5      THE COURT:  Yes, 38 is received.

6      MR. BOWMAN:  Thank you, your Honor.

7          (Whereupon People's Exhibit No. 38, a videotape,

8  was played for the jury.)

9      Q      BY MR. BOWMAN:  Mr. McDonald, can you see that

10  video from where you are sitting?

11      A      Yes, sir.

12      Q      I want to direct your attention to the beginning of

13  that video; do you recall what day that video was shot?

14      A      No, sir.

15      Q      Could it have been on November 3rd?

16      A      No, I don't know, sir.  I don't recall.

17      Q      Well, now, did you notice, Mr. McDonald, that in

18  the beginning of that video you're wearing a black oversized

19  denim jacket?

20      A      A black oversized denim jacket?

21      Q      Yes.

22      A      Yes, sir.

23      Q      Okay.  Is that your jacket?

24      A      Yes, sir.

25      Q      Okay.  And would you wear that quite often around

26  that time?

27      A      No, sir.

28      Q      You wouldn't?

1575

```
 1        A        The jacket?

 2        Q        Yes.

 3        A        Do I wear that quite often?

 4        Q        Did you around the beginning of November where that

 5  black --

 6        A        I don't recall how many times I wore that jacket,

 7  sir.

 8        Q        Okay.  But it wouldn't be unusual for you to wear

 9  it; correct?

10        A        Would it be -- no.

11        Q        In fact, you were wearing it inside the house;

12  correct?

13        A        Yes.

14        Q        Now, you saw the portion where Mr. Washington was

15  rolling a joint; correct?

16        A        Yes, sir.

17        Q        Were you upset about that at the time?

18        A        No, sir.

19        Q        And you didn't appear to be upset; did you?

20        A        No, sir.

21        Q        Do you recall what time that was of the day?

22        A        No.  Around afternoon or something like that.

23        Q        Okay.  And do you recall which day it was?

24        A        No, sir.

25        Q        And did you see near the end of that tape a -- a

26  scene which showed a girl in the scene with the striped shirt on?

27        A        Yes, sir.

28        Q        Do you know who that is?
```

Tracy J. Gallagher, CSR #11524, RPR

1576

1  A  That's Apple.

2  Q  Okay.  And Apple is the girl in the picture

3 depicted in People's 25, "C" and "D"; correct?

4  A  Yes, sir.

5  Q  And she's wearing that same shirt in the video that

6 she's wearing in these photographs on People's 25; is that

7 correct?

8  A  Yes, sir.

9  Q  And so are you aware that those pictures in

10 People's 25 were taken on November 6th?

11  A  November 6th, I'm not aware of that.

12  Q  How many times was Apple over at the Troy Street

13 residence while you were there videotaping people?

14  A  Apple was over there at least twice, and she had

15 been with the same clothes on.  She never changed her clothes.

16  Q  She always wore that same shirt?

17  A  On those days -- on that day, I've seen her with

18 that before.

19  Q  What day -- now, she was there obviously on

20 November 6th.  When did she arrive at the Troy Street residence,

21 if you know?

22  A  I think she arrived somewhere around November 5th

23 or 4th.

24  Q  Now, on that video there were portions where you

25 were doing the filming and you would do something where it looked

26 like you would take a picture; correct?

27  A  Yes, sir, that's correct.

28  Q  Can you tell us how that function worked on that

Tracy J. Gallagher, CSR #11524, RPR

1577

1  camera?

2          A       How does this work?

3          Q       Yeah.

4          A       You just -- basically like a regular camera.  It's

5  like a little button, and when you get ready to take the picture

6  you just snap the picture.

7          Q       Okay.  So you were pretty familiar with how to use

8  that camera; correct?

9          A       Yes, sir.

10         Q       Did you read the instruction manual?

11         A       No, sir.

12         Q       Well, the instruction manual was found in the glove

13 box of your car; correct?

14         A       Yes, sir.

15         Q       Did you -- did you put it there?

16         A       No, sir.

17         Q       Did you know it was there?

18         A       No, sir.

19         Q       Did you ever read the instruction manual at all?

20         A       No, sir.

21         Q       There also was a scene there where you were taking

22 pictures of Regina and was she in her pajamas at the time?

23         A       That was a tank top and some -- like some cotton

24 wool type pants.

25         Q       Okay.  Is that what she slept in?

26         A       I don't think so.  I don't know what she slept in.

27         Q       And you have never discussed your testimony with

28 Regina; is that correct?

Tracy J. Gallagher, CSR #11524, RPR

1. As noted above, the prosecutor wanted to show the videotape of
2. co-defendant TONY WASHINGTON, rolling a marijuana joint and appellant's reaction
3. to this. The prosecutor claimed appellant's testimony was conflicting concerning
4. this matter. The trial court now ruled it would allow the videotape to be shown.
5. The court based its ruling on the grounds that there were no longer any Evidence
6. Code Section 352 prejudice in showing the tape which was the "drinking and carrying
7. on." because that had now been testified to.(VII RT 1569-70)
8. The court was alluding to appellant's trial counsels failure to object to the
9. prejudicial questions asked of appellant's co-defendant TONY WASHINGTON and
10.(V RT 782, 783, 784, VI RT 823, 892, 893 and VII RT 1555, 1557, 1560)
11. Appellants counsel reiterated her earlier objection. Counsel specifically stating
12. her concern that the tape would be taken out of context and that counsel
13. understood the courts earlier ruling to be "if anyone denied or made contradictory
14. statements as to what was on the tape, then the court would allow the tape to
15. be played. And appellant's trial counsel further expressed that she did not
16. believe there were any denials or contradictory statements. (VII RT 1570.)
17. The court agreed that there may not have been any contradictory statements,
18. but the 'context' was now an issue and there remained no 352 issues (VII RT 1570)
19. Appellant's trial counsel expressed her concern about the videotape being taken
20. out of context and misinterpreted. And further noted that she thought one of
21. the reasons the prosecutor wanted to play the tape was to put the "RAP" into
22. context. Contending that no one even knew if the "rap" occurred at the same time
23. as everything else in the apartment. (VII RT 1571)
24. The court in disagreeing with appellant's counsel, claimed that it was not the
25. "rap" that was taken out of context, but the other things that were depicted
26. on the tape. And thus, it would allow the tape to be shown (VII RT 1571-72).
27.
28. C. THE COURTS DECISION TO ALLOW THE VIDEOTAPE TO BE SHOWN TO THE JURY DESPITE

53

1. COUNSELS SECOND ONGOING OBJECTION, WAS ERROR AND ABUSE OF DISCRETION.

2. Appellant asserts that trial counsels objection to the tape based on 356, and

3. appellant's assertion that the tape was not a true copy of original, preserved and

4. preserved the issue for appellate review.

5. Appellant contends that the trial courts ruling to allow the tape was error for

6. for the following:

7. 1) The prosecutors claim that he wanted to put into context appellant's alleged

8. contradictory statements concerning appellant's co-defendant rolling marijuana

9. and appellant's reaction, was irrelevant, prejudicial and improperly admitted

10. into appellant's trial proceedings. This activity added nothing to case and was

11. inflammatory. The court should not have allowed this prejudicial

12. character evidence, and should not have used the alcohol and marijuana testimony

13. an excuse by the prosecutor to put this inadmissible evidence into context.

14. 2) The alleged dispute also was misleading and again irrelevant. The only

15. relevant evidence  concerning the video tape was the words of appellant's "rap".

16. There was more than enough evidence to show that appellant had been in the TROY

17. st residence, and finally.

18. 3) The prejudicial impact of the tape which depicted appellant and co-defendant

19. drinking and smoking marijuana was higher than the probative value of the "rap".

20. in light of the fact that appellant had already provided testimony admitting

21. to saying the words "glock 40 and tre-80", thus, to allow the videotape to be

22. shown, was cumulative.

23. THE GOVERNMENT PROSECUTOR EXPLOITED THE VIDEOTAPE EVIDENCE IN HIS CLOSING

24. MAKING THE FOLLOWING COMMENT's:

25. COMMENT 1: "THESE TWO ACTED TOGETHER. THESE TWO, AS YOU SAW ON THE VIDEO, HANG

26. OUT TOGETHER. THEY SMOKE TOGETHER. THEY DRINK TOGETHER. THEY HANG OUT TOGETHER

27. AND THEY COMMIT RESIDENTIAL BURGLARIES TOGETHER. THAT IS WHAT THEY DO." (RT V

28. 9 P. 1703, 11-14).

1. COMMENT 2:

2. "He had the video camera that was seen taken from the HAVERN residence, we have

3. seen the videotape that he was taking of himself, rapping, TONY WASHINGTON smoking

4. and drinking and do ing all this kind of stuff. (RT V 9 P.1713, 14-18)

5. COMMENT 3: " what else is important? well we know in the video that was found

6. at the HAVERN property that he was wearing a Black Denim jacket, just like it

7. was described by the witnesses in the chula vista crime. see that, black jacket

8. again. Right next to Mr. MCDONALD, the same jacket presumably that he was wearing

9. when he did the burglary (RT V 9 p.1781)

10. People v. Maestas (1993) 20 cal. App. 4th 1482, 1494-1495 [25 Cal. Rptr. 2d

11. 644] at p. 1495 [t]he prosecution has no right to present cumulative evidence

12. which creates a substantial danger of undue prejudice to the defendant. (citation)

13. The courts have for a number of years repeatedly warned that " statements of

14. facts not in evidence by the prosecutor in his argument to the jury constitute

15. misconduct." (People v. Kirkes (1952) 39 Cal. 2d 719, 724, 249 P. 2d 1. see also

16. People v .Taylor (1961) 197 cal. App. 2d  372, 381-384, 17 cal.  Rptr. 233.

17. The courts " have long held that a prosecutor may not place the prestige of the

18. government behind a witness by making personal assurances about the witnesses

19. credibility nor indicate that facts not before the jury support the testimony.

20. (see e.g. UNITED STATES V. MARTIN 815 F. 2d  818, 821-22,

21. (1st  cir. 1987) cert. denied, 484 U.S. 825, 108 S. Ct. 89,98 L. Ed. 2d 51 (1987);

22. UNITED STATES V. ROSA, 705 F. 2d 1375, 1379-80 (1st Cir. 1983.)

23. EVIDENCE CODE SECTION 1110 (a) evidence of prior conduct generally inadmissible

24. to prove conduct on a specific occasion.

25. The appellant asserts the court error, allowed the prosecutor to use the videotape

26. to distort evidence to the jury as shown during the prosecutors closing arguments.

27. Specifically, there was no evidence via witnesses or otherwise that the black

28. jacket seen in the "RAP" videotape was the same jacket allegedly seen by witnesses.

1. nor was there testimony to that effect. The prosecutor appealed to the prejudice

2. of the jury when he argued that appellant and co-defendant drank and smoked

3. marijuana together and thus, committed the burglaries together. The appellant

4. counsel objection and argument that the tape would be taken out of context was

5. correct. The prosecutor used tactics to prejudice the appellant and committed

6. misconduct of the magnitude to deny appellant his constitutional right to a fair

7. trial guaranteed under the United States Constitution. And violated appellant's

8. 5th and 14th amendment rights. The videotape was also used by the prosecutor to

9. claim that the jacket appellant was seen wearing in the video was the same used

10. in the HAVERN burglary, as the prosecutor continuously commented concerning

11. appellants presence on the videotape stolen from the HAVERN residence, and coupled

12. this with the smoking and drinking to support his argument that appellant

13. burglarized their residence.

14. The duty of the prosecutor is to see justice is done, not simply to secure

15. convictions. (Berger v. UNITED STATES (1934) 295 U.S. 78,88; In re FERGUSON (1971)

16. 5 Cal. 3d 525, 531-532.) Hence, the familiar maxim: a prosecutor is more than

17. an advocate " and his duty extends no further than an impartial, fair and just

18. trial of [the] defendant" (POWELL V. SUPERIOR COURT (1957) 48 cal. 2d 704, 709,

19. internal citation omitted.)

20. Here the defense sought to exclude the videotape in fairness to appellant. The
21. the trial courts solution was not equitable in that it should have excluded the

22. tape because it had not been authenticated. or in the alternative, the court

23. should have limited any inquiry only to the relevant part, which was the "rap"

24. and barred any other request from the prosecutor concerning the irrelevant and

25. prejudicial evidence re 352.

26. C. IN THE ALTERNATIVE APPELLANTS TRIAL COUNSEL RENDERED I.A.C. BY NOT OBJECTING

27. TO THE EVIDENCE ON A PROPER BASIS.

28. Appellant maintains that trial counsels objection preserved the issue for appeal.

1. However, the appellants counsel did not object to the prosecutor's eliciting

2. of testimony concerning alcohol and marijuana, which was part of the trial courts

3. decision to allow the videotape to be shown. There was no remaining prejudice.

4. Appellant's trial counsel should have made a constitutional objection, as well

5. as an objection that the alcohol and marijuana use was inadmissible character

6. evidence.

7. Failure to object to errors which result in a waiver of review of such errors

8. may constitute Ineffective Assistance of Counsel (People v. Scott (1994) 9 Cal.

9. 4th 331, 356. fn. 18; People v. Cooper (1991) 53 Cal. 3d 771, 831; People v. Malone

10. (1988) 47 Cal. 3d 1, 33.)

11. Appellant's counsels failure to do so amounted to Ineffective Assistance of

12. see People v. Jackson (1986) 187 Cal. App. 3d 499, trial counsel failed to move

13. for an order precluding the prosecutor from impeaching defendant with his prior

14. felony convictions. On appeal, the attorney general asserted that counsel's

15. omission did not constitute Ineffective Assistance of Counsel because the

16. impeachment issue had been settled informally by the court at the outset of trial

17. and a formal motion would have been futile. Finding that "[c]ompetent counsel...

18. would have at least taken steps to preserve the point for appeal pending

19. clarification of the law by appellate court's," the court found Ineffective

20. assistance of counsel and remanded the case to determine whether the court would

21. in fact have allowed impeachment (Id at 506).

22.

23.

24.------------------------------------------------------------------------

/1. People v. Fosselman (1983) 33 cal. 3d 572, 582-583, 189 cal. Rptr. 855, 659

25. p. 2d 1144 (defense counsel failed to object to prosecutorial misconduct,

26. misconduct, including inflammatory characterization of defendant, statements

27. of personal belief based on facts not in evidence, and use of inadmissible

28. character evidence.

1. The appellant submits that the courts ruling to allow the videotape to be shown

2. was an abuse of discretion/2 in that the prosecutor had already shown that

3. appellant and co-defendant TONY WASHINGTON, were "buddies" and hung out together

4. at the TROY st residence. Appellant, nor appellant's witnesses denied this fact.

5. Also, the " context" concerning appellant's reaction to WASHINGTON rolling

6. marijuana, was irrelevant and inadmissible character evidence. As well as

7. incompetent and prejudicial. And should not have been allowed into appellant's

8. trial proceedings. The prosecutors sole intention was to secure a conviction by

9. showing appellant smoking and drinking alcohol, which was highly inflammatory.

10. The knowledge of appellant indulging in such activity damaged appellant's right

11. fair and impartial trial in violation of Evidence Code Section 352 and U.S.C.

12. 14th amendment; west Ann : Const. Art. 1, section 13.

13. The evidence was cumulative. see People v. Maestas (1993) supra, 20 cal. App.

14. 4th 1482- 1495 [25 cal. Rptr. 2d 644] at p. 1495 [t]he prosecution has no right

15. to present cumulative evidence which creates a substantial danger of undue

16. prejudice to the defendant. (citation) see also, People v. Woodard (1979) 23

17. Cal. 3d 329, 341 [reversal ordered where the prosecutor "exploited" erroneously

18. admitted evidence during his closing argument].)

19. D. RELEVANCY AND INFLAMMATORY EVIDENCE

20. As argued supra, "[R]elevancy  is the first rule of admissibilty of evidence..."

21. TRAXLER V. THOMPSON (1970) 4 cal. App. 3d 278, 286.) section 351 provides that

22. all relevant evidence is admissible (cal. const. Art. 1, section 28 (d), the

23. truth-in-evidence provision of proposition 8.) The appellant includes his earlier

24. argument concerning "Relevancy and inflammatory evidence" contained in his

25. argument #4 re Gang evidence, as though fully set forth herein and in addition

26. ----------------------------------------------------------------------------
/2. Section 352 issues are reviewed for abuse of discretion. (People v. Cain
27. (1995) 10 cal. 4th 1, 33; People v. Cudjo (1993) 6 cal. 4th 585, 609, the trial

28. courts discretion will not be disturbed unless probative value clearly outweighs
by prejudicial effect.( People v. scheid (1997) 16 cal.  4th 1, 8.)

1. to any argument herein. Appellant applies the Relevancy and Inflammatory standard

2. to the challenged videotape in regards to the marijuana, alcohol and "black jacket"

3. evidence as well as the tapes use to allegedly put into context appellant's

4. reaction to co-defendants rolling of marijuana. And appellant includes the Evidence

5. Code Section 352 analysis contained in argument #4, as though fully set forth

6. herein and in addition to any other arguments points and authorities herein.

7. Unless the trial courts determination exceeds the bounds of reason, the admission

8. of the tape over objection will not be disturbed on appeal.

9. Since appellant had already testified to the fact that he had indeed said the words he was

10. accused of saying on the "rap videotape" (VII RT 1542-45), and did not deny saying

11. those words. In addition to testimony by Appellant, co-defendant TONY WASHINGTON

12. and witness REGINA BURTON, that appellant was at the TROY ST. residence and on

13. numerous ocassions and lastly, although the marijuana and alcohol testimony was

14. entered erroneously, the appellant did admit that he had used alcohol and was

15. in the presence of marijuana. Thus, the trial courts allowance of the prosecutor

16. to show the videotape of this activity served only to embarrass the appellant

17. and to portray appellant as a person who would do what the prosecutor accused

18. appellant of doing. And destroyed appellant's chance at a fair trial. The tape

19. was cumulative. Thus, the appellant asserts the courts ruling exceeded the bounds

20. of reason.  It is well accepted that under section 352, the trial court enjoys

21. the broad discretion in assessing whether the probative value of particular

22. evidence is outweighed by concerns of undue prejudice, confusion or consumption

23. of time (People v. Rodriguez (1994) 8 cal. 4th 1060,1124.) A trial court's

24. exercise of its discretion under section 352 "must not be disturbed on appeal

25. except on a showing that the court exercised its discretion in an arbitrary,

26. capricous or patently absurb manner that resulted in a manifest miscarriage of

27. justice.(Ibid ; see also People v. Poplar (1999) 70 CAL. App. 4th 1129; People

28. v. Fitch (1997) 55 Cal. App. 4th 172,183.) Evidence can be excluded under section

59

1. 352, if the probability that its admission will create a substantial danger of

2. undue prejudice substantially outweighed its probative value.

3. E. THE ADMISSION OF THE EVIDENCE IMPACTED APPELLANT'S RIGHT TO A FAIR TRIAL.

4. When counsel objected she did not object on a Constitutional basis. However,

5. Appellant argues that the court conducted a Evidence Code section 352 analysis

6. to the videotapes admissibility (RTV2 p.13) DURING TRIAL COUNSELS OBJECTION.

7. also see (RTV7 p.1570) thus, should the respondant argue that counsel failed to

8. make a Constitutional objection to the evidence and thus waives appellate review

9. to challenge the error on a constitutional basis, the appellant contends that

10. he has not waived his right to raise the issue on appeal because, although a

11. due process objection was not raised , appellant's trial counsel made it

12. abundantly clear that she objected to the admission of the videotape because

13. it would be taken out of context and that there was not a need to show the tape

14. because there was no violation of the courts earlier ruling. And further the,

15. court conducted an 352 analysis and determined the videotape would come in. Any

16. further objection would have been futile. there was no realistic possibility

17. that a due process argument would have been more persuasive. (People v. Hill

18. (1998) 17 CAL. 4th 800, 820, 72 cal. Rptr. 2d 656, 952 P.2d 673; People v. Simon

19. (1927) 80 Cal. App. 675, 252 P.758.)

20. When the court decide that it would allow the videotape as far as the alleged

21. "rap" and its later ruling to allow the entire videotape to be shown to jury

22. because "there was no longer any prejudicial" issues using the 352 analysis,

23. the due process objection would virtually have duplicated the section 352 analysis

24. It has been noted "[a] careful weighing of prejudice against probative value

25. [evidence code section 352] is essential to protect a defendant's due process

26. right to a fundamentally fair trial." People v. Jennings (2000) 81 cal. App.

27. 4th 1301, 1314, 97 cal. Rptr. 2d 727; People v. Hoover (2000) 77 cal. App. 4th

28. 1020, 1029, 92 Cal. Rptr. 2d 208; People v. Brown (2000) 77 Cal. App. 4th 1324,

1. 1334, 92 cal. Rptr. 2d 433.) The california Supreme court recognized section 352

2. as providing a realistic safeguard from due process violations. (People v. Falsetta

3. (1999) 21 Cal. 4th 903, 919-920, 89 Cal. Rptr. 2d 847, 986, P. 2d 182; People

4. v. Fitch (1997) 55 cal. App. 4th 172, 183, 63 cal. Rptr. 2d 753.)

5. Appellant asserts that the circumstances of his case and the evaluation required

6. by section 352 and by due process is virtually coextensive .(see e.g. People v.

7. Marchand (2002) 98 Cal. App. 4th 1056, 1060, 120 cal. Rptr. 2d 687.)

8. Appellant also asserts appellate review is appropriate because an appellate court

9. may consider on appeal a claim raising a pure question of law on undisputed facts."

10. (People v. Yeoman (2003) 31 cal. 4th 93, 118, 2 cal. Rptr. 3d 186, 72 p. 3d 1166;

11. citing people v. Hines (1997) 15 cal. 4th 997, 1061, 64 cal. Rptr. 2d 594, 938

12. p. 2d 388; Hale v. Morgan (1978) 22 cal. 388, 394, 149 Cal. Rptr. 375, 584 p.

13. 2d 512, Ward v. Taggard (1959) 51 Cal. 2d 736, 742, 336 P. 2d 534.)

14. Lastly, this court can elect to exercise its discretion to consider the due

15. process issue. (People v. Williams (1998) 17 Cal. 4th 148, 161-162, fn. 6, 69

16. Cal. Rptr. 2d 917, 948 p. 2d 429)

17. Moreover, the UNITED STATES SUPREME COURT has consistently held that domestic

18. rules of evidence may not be invoked to preclude a criminal defendant from

19. establishing that he has been denied a fair trial. (see Rock v. Arkansa (1987)

20. 483 U.S. 44, 55-56, supra; DAVIS V. ALASKA (1974) 415 U.S. 308, 315-321 [94 S.

21. ct. 1105, 39 L. Ed. 2d 347] supra; CHAMBERS V. MISSISSIPPI ; (1973) 410 U.S.

22. 284, 294-303 [93 S. Ct. 1038, 35 L.Ed. [87 S. Ct. 1920, 18 L.Ed 2d 1019].) supra.

23. F. APPLICATION TO THIS CASE; PREJUDICE.

24. Applying these rules, the court's allowing the admission of the tape to put into

25. "context" the appellant's reaction to co-defendant TONY WASHINGTON rolling

26. marijuana and other inadmissible irrelevant matters, was an abuse of discretion

27. The appellant asserts that the prejudice significantly outweighed the probative

28. value . And appellant was denied a fair trial by the prosecutors unfair tactics

1. Although the trial court allowed the prosecutor to play the videotape to put into

2. "context" appellant's alleged contradictory statements concerning appellants

3. reaction to rolling of marijuana, what is clear is that the government prosecutor

4. sought to secure a conviction by displaying appellant as a person that would

5. do the crimes. The prosecutor made this apparent when he made his earlier request

6. to show the jury the videotape "to show what these guys do when the hang out to

7. show the extent of their friendship, that they sit around smoking and drinking

8. drinking at the TROY street address."(RT¥ 798) at which time the court denied

9. the request stating" THAT IS NOT IN DISPUTE. He admitted everything that was on

10. the tape and, you know, so what would the entire tape be showing other than what

11. something that confirms what he has already testified to ?"(VRT 798-799)

!@. Despite the courts reasoning the prosecutor pressed the court stating PROSECUTOR:

13. "well , I didn't want to show the 49-minute version tape. I wanted to show the

14. redacted version, just of them hanging out and just to give the jury an actual

15. view of what these guys do when they hang out together. They are buddies. They

16. videotaped them drinking and smoking and hanging out at the TROY street residence

17. And if he is claiming he didn't live there, I think it paints a better picture

18. for the jurors to actually see the activity than to be told about it, so.

19. THE COURT: you are not going to be able to do that. It is cumulative.(VRT 799),

20. Thus, the reality is, the prosecutor sought to gain a tactical advantage knowing

21. to show the tape to the jurors would create a bias against appellant . And further

22. the prosecutor sought to use the tape to advance theories unsupported by the

24. evidence and entirely based on his own beliefs. As demonstrated by the "black

24. denim jacket" theory the prosecutor advanced using the tape/3. Accordingly, the

25. courts decision to allow the prosecutor to show the videotape to the jury, and

26. the prosecutors exploitation/4.of the tape highly prejudiced appellant and

27. denied appellant a fair trial. appellant respectfully request that conviction

28. for count's #1 and 2, be reversed.

/3. the courts have long held that the prosecutor may not place the prestige of the government behind a witness by making personal assurances about the witnesses credibility nor indicate that facts not before the jury support the testimony. U.S. V. MARTIN, supra. U.S. V. ROSA, supra.
/4. PEOPLE V. MAESTAS, supra.

62

1. appellant includes herein the evidence and events pertaining to the HAVERN

2. contained in appellant's argument #1, as though fully set forth herein and in

3. addition to the above arguments points and authorities. The appellant seeks to

4. show that the erroneous admission of the tape, or in the alternative, the

5. prosecutors exploitation of the videotape to convict, was not only a abuse of

6. discretion, but it was a violation of constitutional magnitude. That denied

7. appellant his due process rights to a fair trial. U.S. Const., 5, and 14th amends.)

8.

9.

10.

11.

12.

13.

14.

15.

16.

17.

18.

19.

20.

21

22.

23.

24. The appellant respectfully request the conviction for count #1, and 2. be reversed

25.

26.

27.

28.

ARGUMENT 6.

2. JUDICIAL ERROR AND PROSECUTORIAL MISCONDUCT.

3.

4. Appellant contends that his right to DUE PROCESS and a fair trial was denied

5. when the government prosecutor ellicited testimony of appellant's

6. incarceration status during trial...

7. A PROCEEDINGS BELOW:

8.

9. During cross examination of defense witness REGINA BURTON the prosecutor

10. question Ms. BURTON as follows:

11. Mr. BOWMAN: HOW MANY TIMES HAVE YOU VISITED THE DEFENDANT IN JAIL SINCE HIS

12. HAS BEEN INCARCERATED SINCE NOVEMBER 6, 2003?

13. Ms. LACHER : YOUR HONOR- CAN WE GO SIDE BAR?

14. THE COURT: NO.

15. THE WITNESS: I DON'T KNOW.

16. Mr.BOWMAN: CAN YOU--- IS IT A COUPLE OF TIMES A WEEK? (VRT p.959)

17. The prosecutor then proceeded to ellicit testimony concerning appellant's

18. incarceration throughout his cross examination of Ms. BURTON (VI P.959,961

19. 962 and 964) After which the prosecutor then proceeded to question

20. appellant about his incarceration, (VII RT P. 1554, 1578-1580.)

21. And lastly, the prosecutor referenced appellant's incarceration during his

22. closing argument's (RT P. 1772.)

23. There was not an objection from appellant's trial counsel.

24.

25.

26.

27.

28.

64

1   Appellant submits that the prosecutors question concerning
2   appellants incarceration was prejudicial and inflammatory and
3   should not have been entered into appellants trial proceedings.

4
5   B. The courts refusal to allow appellants trial counsel request
6   to go side bar was abuse of discretion and prejudicial.

7   1. Counsels request:
8   As noted, the prosecutor asked defense witness Regina Burton
9   the following :
10  <u>Mr. Bowman</u> :" How many times have you visited the defendant in
11  jail since he has been incarcerated since november 6 of 2003?"

12
13  Appellants trial counsel immediately sought side bar :
14  Ms. Lacher: Your honor can we go side bar ?
15  The Court : No .
16  It is apparent that counsel was seeking to deter prosecution
17  from eliciting testimony concerning appellants incarceration,
18  but the courts denial of counsels request precluded counsel
19  from doing so and it is foreseeable that an objection would
20  have been futile.
21  And the prosecutors subsequent questioning of Ms. Burton
22  concerning appellants incarceration and her visits of appellant
23  during his incarceration was a direct result of the courts
24  refusal to allow the requested side bar. this evidence went
25  beyond mere bias, it served to deny appellant his right to all
26  advantages to clear his innocence. The court should have
27  engaged in an edvidence code section 352 analysis weighing
28  probative value against the inflammatory and prejudicial nature

2

## 2. Violation

The criminal process presumes that the defendant is innocent until proven guilty. ( Coffin V. United States 156 U.S. 432 -453 (1895) ( Presumption of innocence " lies at the foundation of the administration of our criminal law.")

C. In alternative counsel rendered ineffective assistance of counsel by not objecting to the evidence when the court denied her request for side bar.

It is appellants position that the trial court abused it's discretion by refusing to allow a requested side bar from appellants trial counsel and the issue should be preserved . And objection after the courts refusal to allow side bar would have been futile. However, in the alternative, if this court believe the issue has not been preserved sufficiently for appellant review appellant submits the trial counsel render ineffective assistance of counsel by failing to make a objection after the courts denial of her request to go side bar. Failure to object to errors which resulted in a waiver of review of such errors may also constitute ineffective assistance of counsel. ( People V. Scott, supra; People V. Cooper, Supra- People V. Malone, Supra.)

D. Relevancy and inflammatory evidence.

1    appellant includes his prior argument points and authorities

2    concerning " relevancy and inflammatory evidence." Continued

3    in argument #.4 as though fully set forth herin and in addition

4    to the below argument points and authorities.

5

6    The Elliciting of appellants incarceration during trial was

7    prejudicial and irrelevant. The prosecutor did not need to

8    question defense witness Regina Burton concerning appellants

9    incarcerarion and her visits to appellant during his

10   incarceration. Because of other evidence available to establish

11   the fact that Ms. Burton and appellant knew eachother and had

12   a bond together.

13   The knowledge of appellants incarceration infered that there

14   was a need to seperate appellant from the community which under-

125  minded related fairness of trial guaranteed by the 6 th and

16   14 th amendments of the United States constitution.

17   This situation of appellant, is analogous to People v. Lopez

18   ( 2005 ) 129 Cal. App 4th 1508. in which the prosecution used

19   evidence of prior arrest to impeach defense witnesses in an

20   attempt to show that they were hostile to police and therefore

21   fabricating evidence. The court of appeal noted that evidence

22   of mere arrest is inadmissible because it is more prejudicial

23   than probative and " a witnes[s] credibility in the eyes of

24   the jury would be seriously impairerl by the evidence of a prior

25   criminal arrest- because of the "bad character" inevitably

26   suggested thereby." 9 Id at P. 1523, quoting People v. Anderson

27   ( 1978 ) 20 Cal. 3rd 647. 651.)

28   Here the knowledge of appellants witness Regina Burton visits

4

67

1  with appellant during his incarceration not only was cumulative,

2  because as stated; it was no secret that appellant and Ms. Burton

3  knew eachother because Ms. Burton was the wife of appellants

4  uncle Clarence Burton ( see testimony                    ).

5  But this evidence was prejudicial in that it destroyed appellants

6  credibility and his presumed innocence ...

7

8  D. The admission of testimony concerning appellants incarceration

9  during trial Impacted appellants constitutional right to a fair

10  trial. Counsel did not object after the courts deniel of her

11  request for side bar. Appellants counsel should have objected

12  on a constitutional basis to the evidence. Should the respondent

13  argue that counsel failed to make a constitutional objection

14  to the evidence and has thus waived any right to challenge the

15  error on constitutional basis appellant would argue that he

16  has not waived the issue on appeal. ( and includes herein

17  appellant previous arguments points and authorities contained

18  in argument # 4 concerning reasons why appellants review is

19  still in order when a defendant is trying to establish that

20  he was denied a fair trial. As through fully set forth herein

21  and in addition to any below argument ) ...

22

23  The issue raises fundamental principals of policy and constitu-

24  tional guarantees for which the refusal of appellant review

25  frusterate rather than serves the interest of justice.

26  People v. Welch ( 1993 ) 5 Cal. 4th 228, 237 - Arabian. J.

27  concurring ) People v. Mills ( 1978 ) 81 Cal. App 3d 171, 176)

28  Secondly to avoid a subsequent Habeas Proceeding raising the

1  same point courts have discretion to consider issues on direct

2  appeal in that the collateral proceeding would unduly prolong

3  the appellant process ( People v. Blanco ( 1992 ) 10 Cal. App

4  4 th 1167, 1172, 1173.  People v. allen ( 1974 41 Cal. App 3

5  196, 201, fn, 1. Peoplé v. Norwood ( 1972 ) 26 Cal. App 3d 148,

6  153. [ A matter not reviewable upon direct appeal, but...

7  vulnerable to habeas corpus proceeding based upon constitutional

8  grounds may be considered upon direct appeal ...]

9

10  Moreover the United States Supreme court has consistently held

11  that domestic rules of evidence may not be invoked to preclude

12  a criminal defendant from establishing that he has been denied

13  a fair trial. ( see Rock v. Arkansas, Supra; Davis v. Alaska

14  Supra, Chambers v. Mississippi, Supra. and Washington v. Texas,

15  Supre. )

16      Appellant respectfully request reversal for counts 1 and

17      2 ...

18

19

20

21

22

23

24

25

26

27

28

6 9

ARGUMENT 7

The government prosecutor comitted misconduct when he exploited erroneously entered evidence during his closing argument, improperly impeached appellant with his evidence he had failed to abide by the conditions of his parole, introduced evidence ofappellants trouble with a police officer, illicited inadmissible prior bad acts or conduct of appellants witness, put the prestige of the government behind a witness and argued facts not in evidence in violation of appellants 5th, 6th, 8th and 14th amendment rights under the United States Constitution.

A. Proceedings Below.

Appellant incorporates herein his prior argument, points and authorities contained in appellants prior argument  , re "Judicial error when trial court allowed in a rap tape and the resulting prosecutorial misconduct when the prosecutor "exploited" the erroneously enterd evidence." As well arguments of points and authorities concerning saad prosecutorial misconduct as though fully set forth herein and in addition to , below arguments and points and authorities thereof..

(1) THE PROSECUTOR ILLICITED TESTIMONY FROM DEFENSE WITNESS TONY WASHINGTON,(RTV7 p.15-55, 1557-60 ) concerning: (1) alcohol and marijuana use? (2) Appellants conditions of parole and possible violation thereof. Said testimony was not objected to on any grounds by appellants trial counsel.

(2) during the closing arguments, the prosecutor "exploited" complained of evidence in the form of comments and opinions.

COMMENT 1:

" These two acted together. These two as you saw on the video, hang out together. They smoke together. They drink together they hang out together and they commit residential burglaries together" (RT p.1703, 11-14)

COMMENT 2:

"He had the video camera that was taken from the Havern residence, which we have seen the videotape that he was taking of himself, rapping Tony washington smoking and drinking and doing all this kind of stuff." (RT p.1713, 14-18)

VIOLATION

Use of prior bad acts : ( use of evidence of uncharged misconduct or" other bad acts")

racter," whether by opinion or reputation evidence or evidence of specific instances
of conduct to prove his or her conduct on a specified occasion...

1101 (b) permits the admission of evidence that " a person committed a crime, civil
wrong, or other act when relevant to prove some fact.... Other than some his or her
disposition to commit such an act."

Evidence of other crimes or bad acts  is admissible to prove such facts as, "motive
oppurtunity, intent, preparation, plan, knowledge, identity, absence of mistake or ac-
 cident," OR LACK OF A GOOD FAITH BELIEF  that the victim consented to a sexual act
Evidence code 1101 (b).

Evidence of other crimes is admissible :  under 1101 (b) only to prove a material fact.
such as motive, intent, identity, or common design or plan if that is in dispute. (Pe-
ople v. Thompson (1980) 27 c3d 703, 313, 165 CR 289. : But see people v. williams
(1988) 44 c3d 883, 907 n7, 245 CR 336 (not guilty plea places every element of offense
in dispute).

The admission of other crimes evidence cannot be justified by the mere assertion of
an admissible purpose - the particular evidence must be relevant to the ultimate fact
in dispute. Peoplev. Poon (1981) 125 CA3d 55, 71, 178 CR 375, dissaproved on other
grounds in People v. Lopez (1998) 19 C4th 282, 292, 79 CR2d 195.

Eventhough other crimes evidence is relevant under 1101  (b) Evid. Code section 352
may require its exclusion. People v. Balcom (1994) 7 C4th 414, 425, 27 CR2d 666.

When reviewing the admission of facts and circumstances of other offenses, a court  .
must consider (1) The materiality of the fact to be proved or disproved, (2) the pro-
bative value of the other crimes evidence to prove or disproved facts, and (3) the ex-
istence of any rule or policy requiring exclusion even if the evidence is relevant.
A court should determine whether the jury will consider the evidence for an improper
purpose. see People v. Ewoldt (1994) 7 C4th 380, 403, 27 CR2d 646. and People v. Bal-
com, supra.

Because this evidence is inherantly prejudicial,  uncharged offenses are admissible
only if they have substantial probative value. People v. Ewoldt, supra.

When a defendant claims he or she did not commit an act chareged as an unchareged bad
act or disputed  the manner in which the act was committed, the trial court must hold

a hearing on that, Evidence code section 403.

the jury must be instructed to weigh the same preliminary facts again before consid-

ering the similar act. People v. Simon (1986) 184 CA3d 125, 228 CR 855.

As noted above, the use of a prior bad act or crime is by 1101 (a) to prove  conduct

on a specified occassion...

1101 (b) permits the use    :  when relevant to prove some fact other than his or her

disposition to commit such an act. i.e., motive, intent, identity, or common design

or plan if that fact is in dispute.

Thus, the appellant maintains that the prosecutors questioning of co- defendant TONY

WASHINGTON, and appellant concerning alcohol  and marijuana, and the subsequent use

of such  evidence during his closing arguments was improper and should have been barr-

ed from entering into appellants trial proceedings. The complained of evidence  did

not meet the requirements mandated in Evid. Code section 1101 (b), and was entered in-

to appellants trial proceeding to *Portray* appellants disposition to commit such acts that app-

ellant stood trial for. The appellant maintains  not only was this a violation of Ev-

idence Code section 1101 (a) and (b) , but also  that the challenged evidence waS  irr-

elevant and that its use likely relieved the jury of its duty to focus on relevant ev-

idence  to reach the verdict  and the possibilty that the jury used this evidence to

believe that the appellant had the propensity to commit such acts, made the verdicts

reached unreliable and therby violated    appellants 5th, 8th and 14th amendments rig-

hts of the United States Constitution.. See People v. Valentine (1988) 207 CA3d 697,

 .  254 CR822 (intravenous drug use not admissible in marijuana prosecution, and also

see also (People v. Avitia (2005) 127 CA4th 185, 193, 24 CR3d 887(evidence of gang gr-

affiti in  defendants bedroom irrelevant and prejudicial when there was no other evi-

dence of Gang activity) and see also, (the highly prejudicial implications arising fr-

om the improper questions asked of the appellant on cross-examination impaired his credibilit}

ility  and presented him as a person of criminal tendecies(People v. Wagner (1975) 13

Cal. 3d 612, 119, cal. Rptr 457, 532 p.2d 105).

Appellant asserts the trial court should not have allowed the prosecutor to introduce

this evidence. Appellant points out  a specific instance when appellants trial counsel

was questioning appellants parole officer JIM BURGERT, appellants counsel was attemp-

7 2

ting to show that the parole officer was a bias witness who based his opinion and re-

ports on what other people had told him. However, before appellants counsel could es-

tablishthis through questioning of the parole officer, the trial court interjected

as follows:

THE COURT:  " Hold on . I am not sure you are going to ask that question."

Ms. LACHER: " I will withdraw that, your honor." (RT p. 757).

Therefor, the trial court should have interjected here and informed the prosecutor that

he would not allow  him to illicit complained of evidence. In fairness this would have

allowed the appellant to receive a fair impartial trial. As defined in P.C. section

352/the court should have weighed the prejudicial and probative value. Clearly the ch-

allenged evidence was prejudicial and was not relevant in a burglary charge, and was

onlyused to tip the scale in favor of the prosecution. Nevertheless,

B.  In the alternative appellant asserts ts that his counsel rendered Ineffective Ass-

istance of Counsel by not objecting to this misconduct on any basis, and specifically

on a Due process basis.

If this court believes the issue is waived for failure to make the proper objections,

appellant submits that  trial counsel rendered Ineffective Assitance of Counsel for

failing to make the objections.

Failure to object to error which results in a waiver of review of such erros may also

constitute Ineffective Assistance of Counsel. ( People  v. Scott (1994 ) 9 cal 4th 331

356 , fn. 18; people v. cooper ( 1991) 53 Cal.3d 771, 831, people v. Malone (1988) 47

Cal. 3d 1, 33.)

---

/1 section 352 issues are reviewed for abuse of discretion (people v. Cain (1995) 10

Cal. 4th 1, 53  People v. cudjo (1993) 6 Cal. 4th 585, 609. The trial courts discretion

will not be   disturbed unless probative value cleraly outweighed by prejudicial effect.

(People v. Scheid (1997) 16 Cal. 4th 1, 18.)

and use of complained of evidence
Appellant submits that the prosecutors questioning and use of complained of evidence

was improper . His delving into such issues was prejudicial and inflammatory and not

relevant. Which violated Evidence Code section 352.

C.   RELEVANCY AND INFLAMMATORY EVIDENCE

As argued above, . Relevancy is the first rule of the  admissibility of evidencer...

(Traxler v. Thompson (1970). 14 Cal. App. 3d 278, 286.) Section 351 provides that all

relevant evidence is admissible (see also Cal. Constitution Art. 1, section 28 (d), the

truth- in- evidence provision of proposition 8.) Section 210 defines relevant evidence

as " Evidence ... having any tendecy in reason to prove or disprove  any disputed fact

that is of consequence to the determination of the action. In the context of criminal

cases, the general test of relevancy is whether the evidence tends logically, natural-

ly -, and by reasonable inference to establish any material fact sought to be proved

( peoplev. Kelly (1967) 66 Cal. 2d 232, 239, People v. Jones (1954) 42 Cal. 2d 219, 222)

The greater the probative value of the evidence, the greater must be the undue preju-

dice in order to justify exclusion. (section 352).

The 'prejudice' referred to in Evidence Code section 352 applies to evidence which uni-

quely tends to evoke an emotional bias against the defendant as an individual and which

has very little effect on the issues, in applying section 352, 'Prejudicial' is not

synonymous with 'Damaging',(Peoplev. Karis (1988)       Cal. App. 3d 358, 377, inner

Quotes omitted.)

D.   THE  USE OF THE EVIDENCE  violated APPELLANTS  5th, 8th, and 14th Amendments of the U.S.C.

Counsel did not object to the prosecutors illicitng of alcohol and marijuana testimony

or the prosecutors use of this evidence during  his closing. Should the government argue

that the issue is waived for the lack of an objection from the trial counsel on a Con-

stitutional basis, the appellant argues the issue is not waived and includes the arg-

ument contained in his argument  ≠ Y  re judicial   error when the trial court  allo-

wed gang testimony as far as his argument  concerning I.A.C. , and the reasons why app-

ellant review is not waived, re ROCK V. ARKANSA, supra, DAVIS V. ALASKA, SUPRA, CHAM-

BERSV. MISSISSIPPI , supra, and WASHINGTON V . TEXAS, supra.) as though fully set forth

herein.

The appellant further asserts that the goernment prosecutor commited misconduct when it improperly vouched for the government witnesses and alluded to the number of witnesses for each side to determine which side to believe...

A. Proceedings Below

During the prosecutors closing he made the following arguments:

COMMENT 1: " What else might be true? That the detective lied    about the statement that he took from Mr. Washington. Mr. Washington admitted his involvement in those burglaries and said that it was Mr. Mcdonald    who was with him, and Hartman must be lying about that, this detective who obviously values his reputation and has been a detective for many years. would he come in and lie about that? **(RT P.1762)**

COMMENT 2.: " And i talked about the number of people that would have had to have lied and the number of people the three people that you must believe in order if he is    truly innocent" (RT p.1762)

COMMENT 3: "Who do you believe? Who do you believe? do you believe all these uninterested parties, such as the Noa's who are just minding there own buisness. Terina Noa is just talking to her mother and she gets dragged down here to testify. She has no interest in this case" ( RT p. 1770)

B. The appellant asserts **that**    this was improper vouching for the governments witnesses, and using there numbers to sway the jury towards con viction.

VIOLATION:

IMPROPER VOUCHING see UNITED STATES V. ROSA MARTIN 815 F. 2d 818, 821-22 (1st cir. 1987), UNITED STATES V. ROSA 705 F. 2d 1375, 1379-80 (1st cir. 1983) see also, UNITED STATES V. WEATHERSPOON (9th cir. 2005) 410 F. 3d 1143-1146.

AND this was a violation of appellants Due Process under the U.S.C..

C. If the court believes the issue is waived for trial counsel's failure to make a Due process objection APPELLANT SUBMITS HE WAS RENDERED Ineffective Assitance of Counsel for her failure to do so. And the appellant includes herein appellants previous argument contained in argument number 4, concerning I.A.C on the issue of Appellate review being appropriate despite a lack of a Due Process objection, as though fully included herein an in

in addition to the above arguments.

The appellant further asserts that the government prosecutor committed misconduct when he presented himself as a Guarantor of truth and injected his personal opinion during his closing arguments and reffered to facts outside the record regarding the truthfulness of government witnesses.

A. Proceedings below.

During the prosecutors closing arguments the prosecutor continuosly asserted what the truth was concerning the issues in appellant's trial

0. The following comments are the alleged misconduct;

1. COMMENT ONE; "Do you hang with this guy on the corner of southeast?

12. Tony Washington, he is posted down there, and I go out and hang out

13. with him. That is absolutely unbelievable. The truth is he does not

14. exist. He is trying to cover for the defendant." (RT P. 1777).

15. COMMENT TWO; " But once again , they are getting their story crossed

16. up. One person says one thing . The defendant says another thing.

17. They cant get their story straight because its all a big lie. It's

18. not the truth." (RT p.1778.)

19. COMMENT THREE: "You can't believe him. And he convinced Washington

20. to change his story when they were back in the holding cell. Why

21. would he do that if he is truly innocent? The truth is he is not

22. truly innocent." (RT p. 1782)

23. COMMENT FOUR: " You know what I am asking you to do is disregard

24. the content of his testimony because it is not true. But don't

25. disregard the fact that he lied to you. Don't disregard his testi-

26. mony. He lied to you for a reason. Because if he told the truth

27. he would come in here and have to admit to doing all of these

28. Burglaries doing all these crimes. (RT p. 1782)

1. There was no objection from appellant's trial counsel.

2. B. VIOLATION:

3. The above comments were improper because the government prosecutor was

4. providing his personal opinions and also asserting what the jury

5. should take as the truth.(UNITED STATES V. ROBERTS 618 F. 2d 530 (9th

5. Cir. 1980).

7. The Courts have long held that a prosecutor may not place the prestige

3. of the government behind a witness by making personal assurances about

3. the witnesses credibility nor facts not before the jury support the

0. testimony.(UNITED STATES V. MARTIN 815, F. 2d 821-822 (1st Cir.1987)

1. cert denied, 484 U.S.825, 108 S. Ct. 89,98 L.Ed. 2d 51 (1987) UNITED

2. V. ROSA, 705 F.2d 1375, 1379-80 (1st Cir. 1983).

3.

4. As shown above the Government prosecutor's comments were improper as

5. he injected his personal opinion's  as to what was true . It is not

6. the the function of the prosecutor to decide what the truth is, but

7. only to present the facts. The above assertions of what the truth

8. wqs violated appellants sixth amendment rights to confront witn-

9. esses against him , which the spillover effect was to deny appellants

0. 14th amendment rights to a fair trial.

1. Indeed the prosecutors duty is to see justice done, not simply to

2. secure convictions ( BERGER V. UNITED STATES (1934) 295 U.S. 78, 88:

3. In re FERGUSON (1971) 5 Cal. 3d 525 , 531-532.) Hence, the familiar

4. maxim; The prosecutor is more than an advocate" AND HIS DUTY EXTENDS

5. NO FURTHER THAN AN IMPARTIAL, FAIR AND JUST TRIAL OF [the] DEFENDANT

5. ."(POWELL V. SUPERIOR COURT (1957) 48 Cal. 2d 704, 709, internal

7. citation omitted.)

8. The appellants right to a fair trial was denied as a result of the

1. prosecutors tactics. And the appellant respectfully request this court
2. to assign misconduct and grant reversal of challenged counts #1 and 2.

3. In the alternative, if this court believes that appellate review has
4. been waived for lack of objection from appellants trial counsel,
5. Appellant argues that review is still oppropriate, and argues that
6. Appellants trial counsel rendered I.A.C. for her failure to make the
7. objections. and again includes his argument contained in argument 4,
8. as far as they pertian to I.A.C. for appellants trial counsels failure
9. to make the required objections, when an appellant seeks to establish
10. that appellant was denied a fair trial as though fully included here
11. in and in addition to any further argument below.
12. Appellants counsel was supposed to have made the objection  (see
13. People v. Fosselman (1983) supra, counsel failed to object to
14. prosecutorial misconduct, including inflammatory characterization
15. of defendant, statements of personal belief based on facts not in
16. evidence. And use of inadmissible character evidence.) (see also
17. People v. Scott supra, People v Cooper, supra, People v. Malone, supra
18. failure to object to error which result in a waiver of such errors
19. may constitute I.A.C.) In appellants case, trial counsel failed to
20. object on basis  of improper closing arguments of personal opinion
21. and improper vouching. the misconduct clearly impacted appellants
22. constitutional rights.
23. Should the respondant argue that the lack of a due process objection
24. waives Appelate review , the appelant maintains he has not waived his
25. right to raise the issue on appeal.
26. Appellants issues raises fundamental principals of policy and con-
27. stitutional guarantees , for which the refusal of appellate review

1. frusterates rather than serves the interest of justice.( People v.

2. Welch (1993) 5 Cal. 4th 228, 237, Arabian J. concurring;( people v.

3. Mills (1978) 81 Cal. App. 3d 171, 176.) secondly, to avoid a suseq-

4. uent Habeous proceeding raising the same point, courts have discretion

5. to consider issues on direct appeal in that the collateral proceedings

6. would unduly prolong the appellate process.(People v. Blanco (1992) 10

7. Cal. App. 4th 1167, , 1172- 1173, People v. Allen (1974) 41 Cal. App.

8. 3d 196, 201, fn. 1, People v .Norwood (1972) 26 Cal. App. 3d 148, 153(

9. "A matter normally not reviewable upon direct appeal , but... Vulner-

10. to habeas corpus proceeding based upon constitutional grounds may be

11. considered upon direct review...)

12. Moreover the UNITED STATES SUPREME COURT has consistently held that

13. domestic rules of evidence may not be invoked to preclude a criminal

14. defendant from establishing that he has been denied a fair trial trial.

15. (see ROCK V. ARKANSAS, supra, DAVIS V. ALASKA, supra, CHAMBERS V.

16. MISSISSIPPI, supra, WASHINGTON V. TEXAS , supra.)

17.

18.

19.

20.

21.

22.

23.

24.

25.

26.

27.

28.

1. THE APPELLANT ASSERTS THE GOVERNMENT PROSECUTOR COMMITTED MISCONDUCT WHEN IT

2. PROCEEDED DURING CLOSING ARGUMENTS ON A THEORY OF STOLEN PROPERTY AS RELATED TO

3. THE BAG OF JEWELRY ALLEGEDLY SHOWN TO DAMIAN. FURTHER, THE TRIAL COURT ERRED BY

4. ALLOWING THIS TO OCCUR. IN VIOLATION OF APPELLANT'S SIXTH, EIGHT AMENDS. OF THE

5. UNITED STATES CONSTITUTION TO ADEQUATE NOTICE OF CHARGES AGAINST HIM.

6. The jury returned a verdict of guilty as to count #6 and in doing so did not

7. specify upon which act they agreed upon to convict. The complained of error was

8. prejudicial.

9. VIOLATION.

10. The appellant asserts that this error was as denial of appellant's right to a fair

11. trial in that appellant had a right to know charges against him, and right to

12. have the prosecution prove its case beyond a reasonable doubt, not by speculation.

13. 2) At no time was there evidence presented that the alleged bag of jewelry was

14. belonged to any victim, or that the event of appellant trying to sale jewelry

15. occurred on the same date as the receiving stolen property charge (RT P.

16. 3) The erroneous entry of the evidence created a risk that appellant would be

17. convicted on pure speculation, which is not admissible; and would result in a

18. conviction arrived at arbitrarily and capricously; 4) Lastly, the allegation

19. that the bag of jewelry was stolen impacted not only the stolen property charge,

20. but also the burglary charge. Specifically the HAVERN burglary count #1.

21. Concerning that burglary, witness JOLENE HAVERN testified that jewelry stolen

22. from her room was cheap jewelry, but was not "costume jewelry" (RT p.557).

22. During the prosecutors closing, he alluded to said bag of jewelry being that

23. stolen from JOLENE HAVERN, when the prosecutor commented:

24. PROSECUTOR: "And I asked her, I said, Ms. DAMIAN, was it nice jewelry ? was it

25. costume jewelry?"(RT P. 1762).

26. Appellant asserts that a more favorable verdict could have been reached absent

27. the error. It is conceivable that had appellant possessed any jewelry at the

28. time of trying to sale jewelry to Ms. DAMIAN, the jewelry could have been legally

1. obtained: And further, the London fog suitcase belonging to the HAVERNS that was

2. found in the trunk of appellant's vehicle was not damaging considering appellant's

3. testimony that appellant had obtained the suitcase from co-defendant TONY

4. WASHINGTON in preparation to move into the TROY s reet residence (RT P. 1530-1548.)

5. WASHINGTON testified that he committed the crime with someone else named "CK"

6. (RT p. 728-730) and that he may have left stolen property from the HAVERNS inside

7. appellant's car (RT P.715, 736).

8. The manner in which appellant provided a statement to detective JERRY HARTMAN

9. was not an admission to guilt in relation to the HAVERN burglary. Appellant was

10. asked who's suitcase was in the trunk of appellants car, appellant replied that

11. it was his, his cloths were in it (RT p. 1530-1548). At no time was appellant

12. asked where he had acquired the suitcase , or even that it was stole, in which n

13. appellant would have been compelled to explain possession.

14. The courts have long held that a prosecutor may not place the prestige of the

15. government behind a witness by making personal assurances about the witnesses

16. credibility nor indicate that facts not before the jury support the testimony."

17. UNITED STATES V. MARTIN 815 F. 2d 818, 821-22 (1st cir. 1987); UNITED STATES

18. V. ROSA 705 F.2d 1375, 1379-80 (1st cir. 1983) see also; U.S. V. WEATHERSPOON

19. (9th cir. 2005) 410 F. 3d 1143-1146.

20. There was not any evidence presented that the jewelry shown to DAMIAN was stolen

21. or property from the HAVERN burglary, or the same day as the same day as the

22. stolen property charge.

23. appellant argue that if the prosecution wanted to proceed on a stolen property

24. theory, the court was supposed to determine the legal admissibility of this

25. crime.

26. Determining the legal admissibility of other crimes evidence is solely a question

27. of law. People v. Simon  (1986) 184 CA3d 125, 129, 228 CR 855. When a defendant

28. claims he or she did not commit the uncharged bad act, however, a question of

1. fact as presented that the jury must resolve before any legal inference may be

2. drawn. When a defendant disputes the manner in which the act was committed, that

3. is a preliminary fact that must be resolved before the trial court can evaluate

4. its relevancy and admissibilty. 184 CA3d at 130.

5. Here, the prosecutor did not inform appellant's trial counsel that it planned

6. to proceed on a theory of stolen property concerning the "bag of jewelry" shown

7. to DAMIAN until after the case rested and only after the trial court informed

8. him of the mishap at which time the damage was done because the prosecutor had

9. already informed the jury that the jewelry shown to DAMIAN was stolen from

10. the burglaries. The late notice was prejudicial because the appellant was not

11. able to move to exclude this allegation as prejudicial and violation of Evidence

12. Code Section 352, 8th amendment to the Constitution, and 14th amendment rights

13. to Due Process.

14. While it is true that appellant's trial counsel did not object to this violation,

15. appellant asserts that the trial court should have conducted a Evidence Code

16. Section 352 analysis, and or barred the prosecution from proceeding on the grounds

17. of stolen property in which the prosecution had not proven during the trial. thus

18. not allowing the prosecutor to circumvent the rules of evidence. Appellant's

19. trial counsel surely made known that the claim that the bag of jewelry was stolen

20. was not the theory of the prosecutors case. And counsel only agreed to allow

21. the Caljic 17.01, because there was a charge of receiving /possessing stolen

22. property; so the Caljic was not improper on that basis.

23. For the prosecutor to allege that the jewelry shown DAMIAN as being stolen was

24. improper and clearly facts not in evidence; the prosecutor committed further

25. misconduct when he commented during closing:

26. <u>PROSECUTOR:</u> WHAT MOTIVE DOES MORENA DAMIAN HAVE TO COME IN HERE AND LIE ABOUT

27. THAT? ZERO."(RT P. 1762) which was improper vouching/1. for the witness.

28. --------------------------------------------------------------------------------

/1. UNITED STATES V. SIMS, 719 F.2d 375, 377 (11th cir. 1983), cert. denied 465 U.S.
1034, 104 S. ct. 1304, 79 L.Ed 2d &)# (1984) citations omitted.) see also, UNITED
STATES V. ROBERTS, 618 F.2d 530 (9th cir. 1980).

1. THE APPELLANT FURTHER ALLEGES THAT THE GOVERNMENT PROSECUTOR COMMITTED MISCONDUCT

2. WHEN HE ARGUED IN HIS CLOSING THAT A JACKET SEEN IN A "RAP VIDEOTAPE" SEIZED AS

3. A RESULT OF A WARRANT NOV. 6,2003, WAS SAME JACKET SEEN BY THE WITNESSES AND

4. VICTIMS (RT P. 1781)/3

5. Appellant includes his argument #5 re JUDICIAL ERROR re ALLOWING IN "RAP VIDEOTAPE"

6. points and authorities contained therein to be included herein and in addition to

7. any below arguments, points and authorities.

8. During closing arguments the prosecutor commented that a black jacket seen in

9. the "rap videotape" was same seen by witnesses. However, there was not any

10. testimony during appellants trial to establish the prosecutors assertion. The

11. prosecutor had in essence became his own witness. And the appellant had no means

12. of defense against the "witness".

13. TRIAL COUNSEL AGAIN FAILED TO OBJECT.

14. VIOLATION.

15. The prosecutors duty is to see justice done not simply to secure convictions

16. (BERGER V. UNITED STATES (1934) 295 U.S. 78, 88; In re Ferguson (1971

17. 5 cal. 3d 525,531-532.) Hence, the familiar maxim: The prosecutor is more than

18. an advocate "and his duty extends no further than an impartial, fair and just

19. trial of [the] defendant."(Powell v. Superior Court (1957) 48 cal. 2d 704, 709,

20. internal citation omitted.)

21.-----------------------------------------------------------------------------
/3 (People v. Cruz (1964) 61 Cal. 2d 861, 868; see also People v. Woodard (1979)

22. 23 cal. 3d 329, 341 [reversal required where the prosecutor" exploited erroneously

23. admitted evidence during his closing argument].)

24.

25.

26.
27.

28.

1. Appellant asserts that the prosecutors comments during his closing was improper

2. because the prosecutor was attempting to smuggle  in by inference claims that

3. were not argued openly and legally. In essence the prosecutor invited the jury

4. to speculate about and possibly base a verdict upon "evidence" never presented

5. As appellant has shown, there was never any competent evidence that the jewelry

6. allegedly shown to DAMIAN was stolen or that the black jacket seen in the "rap

7. videotape was same seen by victims or witnesses. Thus, the prosecutor comments

8. were unsworn  improper testimony.

9. Closing arguments present a legitimate opportunity to "argue all reasonable

10. inferences from the evidence in the record."( ABA STANDARDS, The prosecution

11. function (1971) STD. 58 (a) hereafter cited as prosecution function).)

12. The courts have for a number of years warned prosecutors  " that statements of

13. of fact not in evidence by the prosecuting attorney in his argument to the jury

14. constitute misconduct." (People v. Kirkes (1952) 39 cal. 2d 719, 724, 249 p.

15. 2d 1, see also people v. Taylor (1961) 197 cal. App. 2d 372, 381-384, 17 Cal.

16. Rptr. 233.)

17. Prosecution function standard 5.9 specifically states:" It is unprofessional

18. conduct for the prosecutor intentionally to refer to or argue on the basis of

19. facts outside the record."/4

20. -----------------------------------------------------------------------
   /4. This prohibition against using closing arguments to introduce  new evidence

21. is echoed in several other standards for trial conduct. (see, e.g.,Nat District

22. Attys. Assn., National  prosecution Standards (1977), commentary to std. 17-17

23. (hereafter cited as National prosecution standards) ["The courts are, in general

24. adament concerning any suggestion from the prosecution that there is other

25. convincing evidence of the defendant's guilt which is not before the jury."]

26. Nat. Advisory Com. on crim. Justice standards and goals, courts (1973) std 4.15

27. ["...Summations of closing statements by counsel should be limited to the issues

28. raised by evidence submitted during trial..."]; ABA Code of Prof. Responsibility,

1. In the appellant case the prosecution implied that there was additional evidence

2. about the jacket seen in the "rap video tape", and the "baggie of jewelry", shown

3. to DAMIAN, known to the prosecutor but unavailable to the jury. The prosecutor

4. became his own witness by offering unworn testimony not subject to cross-

5. examination..

6. The courts have recognized that such testimony, "although worthless as a matter

7. of law, can be "dynamite to the jury because of the special regard the jury has

8. for the prosecutor, therby effectively circumventing the rules of evidence." (

9. Vess, walking a tightrope: A survey of limitations on the prosecutors closing

10. argument (1973) 64 J. CRIM. L., and Criminology 22, 28, see Crump, The function

11. and limits of pro secution jury argument (1974) 28 SW. L. J. 505, 517-518.)

12. The appellant asserts that the pro secutors closing arguments of the complained

13. of misconduct re COMMENTS, and the Judicial error in allowing the prosecutor

14. to argue the jewelry shown DAMIAN, $\overset{stolen}{\text{was}}$ a denial of appellants sixth, and eight

15. Amendment rights to know charges against him and to receive a reliable verdict;

16. and to confront witnesses against him.

17. It has been suggested that prosecutorial argument "which goes beyond the evidence

18. admitted may be violative of the sixth amendment which pro vides that every accused

19. has the right to be confronted with witnesses against him " (National prosecution

20. Standards supra. Commentary to std. 17.17)

22. Before the government prosecutor argued the jewelry as stolen and the black jacket

23. in "rap videotape" was same seen by witnesses in PETTY THEFT CRIME and BURGLARIES;

24. ----------------------------------------------------------------------------------
/4(continued) ethical considerations, EC 7-25 (hereafter cited as ABA Code) [A

25. lawyer should not by subterfuge put before a jury matters which it cannot properly

26. consider."]; ABA Code, disciplinary rules, DR -1-106 (c) ["[A] lawyer shall not

27. (1) state or allude to any matter that he has no reaso nable basis to believe

28. is relevant to the case or that will not be suppo rted by admissible evidence]

rule 7-105, rules of prof. conduct of the state bar of cal. ["[A] member of the

state bar shall: (1) ...not seek to mislead the judge, judicial officer or jury

by an artifice or false statement of fact or law."

1. The trial court was supposed to find legal sufficient evidence in the record to

2. support the finding or inference. The trial court failed to do this.

3. The court must initially decide the question of the legal sufficiency of the

4. to support an instruction. Its failure to make such a preliminary finding is error"

5. (People v. Hannon (1977) 19 C3d 588, 597, 138 CR 885.

6. The jewelry shown to DAMIAN cited as stolen property, and the instuction stating

7. so, was error. As noted, it was another alternative theory for stolen property,(RT

8. p.1763-1765).; therefore it was error for the trial court to allow this evidence

9. and instruction in on pure speculation, and with ut a finding of legal sufficiency.

10. The trial court clearly noted that the jewelry could not be said to be the stolen

11. property or even the same date as the receiving charge. (RT P. 1763-1765).

12. Therefore the trial court should not have allowed an instruction to be used to

15. reflect that allegation. And further, the trial court should not have allowed

16. the "rap videotape" re black jacket theory same seen by witnesses and victims in.

17. If a jury is instructed on alternative theories of guilt one which is factually

18. inadequate, the judgement will be affirmed unless review of the entire record

19. affirmatively, demonstrated a reasonable probability that the jury in fact found

20. the defendant guilty solely on the inadequate theory. However, if the jury is

21. instructed on alternative theories, one of which is legally inadequate the
22. judgement must be reversed if the court cannot determine on which theory the

23. defendant was convicted. People v. Marks (2003) 31 C4th 197, 233, 2 CR3d 252;

24. People v. Guiton (1993) 4 C4th 1116,1126.

25. . BAD FAITH.

26. Numerous decisions by the courts suggest that bad faith must be shown to establish

27. the existence of misconduct..."(People v. Romo (1975) 47 cal. App. 3d 976, 987,121

28. Cal. Rptr. 684, 691; see also, People v. Rhinehart (1973) 9 Cal. 3d 139, 154,

87,59 cal. Rptr. 206.)

For the purpose of deciding whether to reverse a decision or grant a mistrial, this emphasis on intentionality is misplaced.

"[I]njury to appellant is nonetheless an injury because it was committed inadvertently rather than intentionally."(Note, the Nature and consequences of forensic misconduct in the prosecution of a criminal case (1954) 54 colum. L. REV 946, 975; see also UNITED STATES V. NETTI (3d cir. 1941) 121 F.2d 927,930.) Therefore to imply misconduct must be intentional does not apply....

IN THE ALTERNATIVE, IF THE RESPONDENT ARGUES THAT HIS ISSUE IS WAIVED FOR FAILURE TO MAKE AN OBJECTION OR DUE PROCESS OBJECTION, THE APPELLANT ASSERTS HE WAS RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO DO SO.

Trial counsel was required to make the proper objections to the comments and acts of misconduct, and subsequently move to reopen the taking of evidence so as to present a defense against it.(People v. Murtishaw (1981) 29 cal. 3d 733, 751, fn. 11 [175 CAL. Rptr. 738, 731 P. 2d 446].)

Appellant includes his prior argument of Ineffective Assistance of Counsel re "rap videotape and Gang testimony, Arguments #4 and 5, as far as they address I.A.C. for lack of an objection from trial counsel in order to preserve appellate review, as though fully set forth herein and in addition to the following argument points, and authorities.

The appellant had a right to a fair and reliable verdict under the UNITED STATES CONSTITUTIONAL provisions sixth, eight and fourteenth amendments.

As a result of appellant's trial counsel's failure to meet the basic duty to object, appellant was denied a fair trial as well as effective assistance of counsel... The sixth amendment in part provides, "In all criminal prosecutions the accused shall have the right ... to have the assistance of counsel for his

1. defense. The sixth amendment right to defense counsel in felony prosecutions

2. is a fundamental right, binding on the states through the fourteenth Amendment.

3. Gideon v. Wainwright, 375 U.S. 335, 83 S. ct. 792, 9 L. Ed. 2d 799 (1963).

4. The constitutional mandates more than a pro forma appearance and mere physical

5. presence of counsel in the court room (Powell V. Alabama (1932) 287 U.S. 45, 57-58

6. 53 S. Ct. 55, 77 L.Ed 158; People v. Locklar (1978) 84 cal. App. p3d 224, 229,148

7. cal. Rptr. 322; see e.g., People v. Ledesma (1987) 43 Cal. 3d 171, 176 23 Cal.

8. Rptr. 402, 729 p.2d 839.

9. It also guarantees that such assistance be effective (People v. Pope (1979) 23

10. Cal. 3d 412, 421, 152 cal. Rptr. 732, 590 P. 2d 859.

11. When a claim of Ineffective assistance of counsel is based on acts or omissions

12. not amounting to withdrawal of a defense, a defendant may prove ineffective

13. assistance of counsel if he or she establishes that his or her counsel failed

14. to perform with reasonable competence and that he or she was prejudiced as a

15. a result of the attorney's inadequate performance to the degree that is reasonably

16. probable that a determination more favorable to the defendant would have resulted

17. absent counsels failings. (People v. Fosselman (1983) 333 cal. 3d 572, 583-584,

18. 189 Cal. Rptr. 855, 659 P. 2d 444; see also In re MARQUEZ (1992) 1 cal. 4th 584,

19. 602-603, 3 cal. Rptr. 2d 727, 822 P.2d 435. see also People v. Garrison (1988)

20. 47 Cal. 3d 746, 786, 254 Cal. Rptr. 257, 765 P.2d 419.

21. To show "prejudice" for a sixth Amendment claim, the defendant must also show

22. that as a result of counsels deficient performance the proceeding was rendered

23. fundamentally unfair or unreliable, (Lockhart v. Fretwell (1983) 506 U.S. 364,

24. 113 S Ct. 838, 122 L.Ed 2d 180, 191.)

25. Appellant's trial counsel failed to object to the errors and allowed the

26. prosecutor to argue unsworn testimony not subject to cross examination, re

27. "Baggie of jewelry" shown to DAMIAN as stolen, and re "black jacket seen in rap

28. videotape" as same jacket seen by witnesses and at burglaries.

1. thus allowing the jury to speculate and possibly base a verdict upon the use

2. of this evidence. Which appellant has shown was a violation of several

3. constitutional provisions. As argued supra, trial counsel should have at least

4. taken steps to secure appellate review. People v. Jackson (1986) 187 Cal. App. 3d

5. 499, supra. And also "Failure to object to such errors which result in waiver

6. of review of such errors may also constitute Ineffective assistance of counsel.

7. People v. Scott (1994) 9 Cal. 4th 331, 356 fn. 18; People v. Cooper (1991) 53

8. Cal.3d 771, 831; People v. Malone (1988) 47 Cal. 3d 1, 33.)

9. The failure of counsel to object to the prosecutors use of this "speculation"

10. and erroneous evidence that was not properly before the jury, was Ineffective

11. Assistance of Counsel. People v . Fosselman, supra.

12.  Appellant includes herein his argument contained in argument #4,6)concerning

13. appellate review still appropriate despite an objection from trial counsel, and

14. points and authorities thereof, as though fully set forth herein and in addition

15. to appellant's current arguments points and  authorities.

16. There was not an evidence code section  352 analysis, Instead appellant asserts

17. appellate review is still appropriate for the following:

18. "A reviewing court may consider on appeal a claim raising  a pure question of

19. law on undisputed facts."(People v. Yeoman (2003) 31 Cal. 4th 93, 118, 2 Cal.

20. Rptr. 3d 186, 72 P. 3d 1166; citing People v. Hines (1997) 15 CAL. 4TH 997./061.,

21. 64 Cal. Rptr. 2d 594, 938 p. 2d 388; Hale v. Morgan (1978) 22 cal. 3d 388, 394,

22. 149 Cal. Rptr. 375, 584 P.2d 512; Ward v. Taggart (1959) 51 Cal. 2d 736, 742,

23. 336 P. 2d 534.)

24. Therefore, if this court agrees that there was error in allowing this evidence

25. into appellant's trial proceedings, and that appellant's counsel was Ineffective

26. for her failure to object, then this court can review whether appellant's Due

27. Process and appellants other constitutional claims  were violated and thus denied

28. appellant a fair trial. Or in the alternative, this court can elect to exercise

1. its discretion to consider appellant's due process issues" (People v. Williams

2. (1998) 17 Cal. 4th 148, 161-162 Fn. 6, 69 Cal. Rptr. 2d 917, 948 p. 2d 429.) Also,

3. the United States Supreme Court has held that domestic rules of evidence may not

4. be invoked to preclude  a criminal defendant from establishing that he has been

5. denied a fair trial.[see Rock v. Arkansas 483 U.S. 44, 55-56 supra.] and Davis

6. v. Alaska 415 U.S. 308, 315-321 [94 S. Ct. 1105, 39 L. Ed. 2d 347. supra.]

7.

8.

9.

10.

11.

12.

13.

14.

15.

16.

17.

18.

19.

20.

21.

22.

23.

24.

25.

26.

27.

28.

2. THE GOVERNMENT PROSECUTOR COMMITTED MISCONDUCT WHEN IT CALLED AN OFFICER TO TESTIFY

3. THAT APPELLANT AND CO- DEFENDANT TONY WASHINGTON ENCOUNTER WITH THE OFFICER. IN

4. VIOLATION OF EVIDENCE CODE SECTION 352, EVIDENCE CODE SECTION 1101 (a) AND 1101

5. 1101 (b).

6. A. PROCEEDINGS BELOW.

7. The government prosecutor called witness OFFICER JOHN CARROL who provided the

8. following testimony :

9. CARROL was a San Diego police officer patrol, mid city division (RTV3 p. 377)

10. On October 16, 2003, officer Carrol made contact with appellant and Co-defendant

11. TONY WASHINGTON (RTV3 p.377-8) Appellant told officer Carrol he was on parole

12. (RTV3 p. 379) officer Carrol knew appellant was supposed to be truthful to officer

13. Carrol because appellant was on parole.(RTV3 p.379). When officer Carrol contacted

14. appellant, appellant was in the company of TONY WASHINGTON (RTV3 p. 380).

15. Appellant informed officer Carrol he lived at 4120 Polk street (RTV3 p. 381)

16. Officer Carrol contacted Appellant and TONY WASHINGTON at 5100 college at the

17. 7/11. (RTV3 p. 381).

18. DURING CROSS EXAMINATION BY APPELLANT'S TRIAL COUNSEL PAMELA LACHER OFFICER CARROL

19. provided the following testimony :

20. Appellant had braided hair. (RTV3 p. 382), Co-defendant WASHINGTON was arrested

21. (RTV3 p. 383) WASHINGTON had on a white shirt, black pants.(RTV3 p. 384)

22. REDIRECT EXAMINATION :

23. Officer Carrol corrected earlier statement, and clarified that it was appellant

24. that had on the white shirt black pants and that Co-defendant WASHINGTON had

25. a black jacket and grey pants. (RTV3 p. 384). Co-defendant WASHINGTON took a

26. cell phone from a female and would not tell her where he put it. (RTV3 p.384)

27. There was a hot pursuit so officer Carrol left the scene and his partner DAN

28. CARROPRESO took over the incident while officer CARROL joined in the pursuit

1. (RTV3 p. 385-8.) The government prosecutor then suggested this reason officer

2. CARROL was not familiar with all the details of the arrest. At which time officer

3. CARROL agreed .(RTV3 p. 387.) The prosecutor then suggested that officer CARROL

4. was not familiar with all the details of the arrest because for the most part

5. his partner  was involved . Officer CARROL agreed.(RTV3 p. 387).

6. B. APPELLANT'S TRIAL COUNSEL PAMELA LACHER DID NOT OBJECT.

7. VIOLATION:

8. APPELLANT INCLUDES HIS PREVIOUS ARGUMENT POINTS AND AUTHORITIES CONCERNING EVIDENCE

9. SECTION 1101 (a) and 1101 (b), CONTAINED IN ARGUMENT #  ,AS THOUGH FULLY SET FORTH
HEREIN AND IN ADDITION TO THE FOLLOWING ARGUMENT'S, POINT AND AUTHORITIES..
10. As noted in EVIDENCE CODE SECTION 1101 (a) "evidence of a persons character"

11. whether by opinion or reputation evidence, or evidence of specific instances

12. of conduct to prove his or her conduct on a specified occassion... is prohibited

13. Evidence Code section 1101 (b) allows for admission of other crimes or bad acts

14. to prove " motive, opportunity, intent, preparation, plan, knowledge, identity,

15. absence of mistake or accident."

16. The court must consider 1) materiality of the fact to be proved or disputed,

17. 2) The probative value of the other crimes evidence to prove or disprove facts;

18. and 3) the existence of any rule or policy requiring exclusion even if the

19. evidence is relevant.

20. And the court should determine whether the jury will consider the evidence for

21. an improper purpose. (PEOPLE V. EWOLDT, supra.)  "Evidence of mere arrest is

22. inadmissible because it is more prejudicial than probative." and " a witness[s]

23. credibilty in the eyes of the jury would be seriously impaired by the evidence

24. of prior criminal arrest , because of the bad character inevitably suggested

25. therby.                              (PEOPLE V. ANDERSON (1978) 20 cal. 3d 647, 651)

26.THE TESTIMONY PROVIDED BY OFFICER CARROL WAS IRRELEVANT AND HIGHLY PREJUDICIAL.

27. 1) the prejudicial impact was substantial because of the problem of proof.

28. Appellant's co-defendant TONY  WASHINGTON allegedly stole a women's celluar phone

1. and was thereby arrested; the government prosecutors suggestion that there was

2. more to the story, alluding to the possibility that something was "missing", from

3. the incident when the prosecutor suggested that officer CARROL " was not familiar

4. with all the details" of the incident and the resulting arrest..(IIIRT P.387)

5. 2) The contact of appellant and co-defendant TONY WASHINGTON, by officer CARROL

6. was not caused by appellant nor was appellant involved in the crime committed.

7. Therefore, the prosecutors suggestion that there was "more" to the incident that

8. officer CARROL somehow didn't know about because of his brief departure, allowed

9. room for the jury to speculate and assume that appellant was also involved in

10. that crime. And thus appellant's character was highly damaged.

11. THE INTRODUCTION OF EVIDENCE re OFFICER CARROL'S TESTIMONY WAS A DIRECT VIOLATION

12. OF EVIDENCE CODE SECTION 1101 (a) AND (b):

13. 1) It did not prove motive, intent, plan, opportunity, knowledge, identity,

14. absence of mistake or accident.  2)

15. Officer CARROL testimony was only entered to show conduct on a specific occassion

16. to infer appellant's bad character and disposition to commit charged acts or

17. crimes.

18. CROTTS V. SMITH (9th Cir. 1996) 73 F. 3d 861 (evidence was prejudicial to

19. defendant because case turned on credibility of witnesses, and evidence of

20. defendant's boast made it more likely that jury would believe other witnesses

21. rather than defendant and would believe that defendant was kind of person who

22. would assault police oficer): see Evidence code section 1101 (a) (evidence of

23. prior conduct generally inadmissible to prove conduct on a specific occasion)

24. As explained , appellant was not proven to have been a participant in the

25. commission of that crime. The testimony thereof  was inadmissible because it

26. was more prejudicial than probative , and implied that the appellant was involved

27. in that crime. And therefore possibly involved in the commission of the other

28. crimes that appellant stood trial for. The evidence of the incident with officer

93

1. CARROL damaged appellant's character. Thus, the court committed error

2. when it did not conduct a EVIDENCE CODE SECTION 352 hearing and excluded the

3. officers testimony as more prejudicial than probative. And the prosecutor committed miscondu

4. when he manipulated erroneously admitted evidence/1. by inferring that the incident

5. was "missing details". implying that appellant was possibly involved.

6. C. IN THE ALTERNATIVE, THE APPELLANT SUBMITS THAT IF THIS COURT BELIEVES THE ISSUE

7. IS WAIVED FOR LACK OF AN OBJECTION FROM APPELLANT'S TRIAL COUNSEL , APPELLANT

8. ASSERTS THAT HIS TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL FOR

9. FAILURE TO OBJECT...

10. Failure to object to error which results in waiver of review of such errors

11. may constitute Ineffective Assistance of Counsel. (People v. Scott (1994) 9.

12. Cal. 4th 331, 356,fn. 18; People v. Cooper (1991) 53 cal. 3d 771, 831; People

13. v. Malone (1988) 47 cal. 3d 1, 33.)

14. People v. Stratton (1988) 205 Cal. APP. 3d, 87, 94-95, 254 Cal. Rptr. 157 (When

15. circumstances of defendants arrest are irrelevant to the case, it may constitute

16. Inadequate Assistance of Counsel requiring reversal if defendant's counsel fails

17. to object to introduction of those circumstances, especially if identity is in

18. issue.) Here, it is apparent that the government prosecutor was attempting to

19. suggest appellant's identity as the second suspect with co-defendant TONY

20. WASHINGTON , using the contact with officer CARROL, in which appellant and

21. WASHINGTON were together. This prejudicial, and irrelevant evidence was used

22. to bolster the prosecutor's theory that appellant and co-defendant WASHINGTON

23. committed all of the charged crimes together, and was prejudicial because the

24. jury may have used this misleading evidence when deciding appellant's guilt or

25. innocence.

26.------------------------------------------------------------------------
    /1. People v. Maestas (1993), supra.,People v. Woodard (1979), supra., People

27. Fosselman (1983), supra.,

28.

1. Appellant also asserts that if the respondent should argue that the issue is waived

2. for the lack of an objection or due process objection, appellant asserts appellate

3. review is still appropriate and is not waived, and includes his argument, points

4. and authorities contained in his argument #4, as though fully set forth herein

5. and in addition to the above arguments, points and authorities, as far as they

6. address "appellate review still appropriate despite the lack of an objection or

7. due process objection by trial counsel.

8. Appellant's Due process was impacted and the character of appellant was damaged

9. as well as any remaining credibility appellant may have had before this erroneous

10. evidence was entered against appellant. The fact remains, appellant was entitled

11. to a fair trial and this right was constantly compromised by prosecutor's tactics.

12. There was not any proof of appellant's involvement in that crime and thus, no

13. credible reason to call officer  CARROL in to testify about that incident. For

14. the government prosecutor to insinuate that appellant was "somehow" involved

15. in that crime was prejudicial and inflammatory. In violation of appellant's

16. U.S.C 5,and 14th amendments. And due process. Accordingly, appellant respectfully

17. request that his conviction for count's 1 and 2, be reversed.

1          Argument  # 8

2    Appellants trial counsel rendered ineffective assistance of

3    counsel when she allowed appellants California Youth Authority

4    PAROLE Officer to testify to statements made by appellant to

5    the Parole Officer during an investigation of appellant. And

6    also rendered ineffective assistance of counsel when she did

7    not protect appellants due process by requesting that the Parole

8    Officers identify be with held and an admonishment be given

9    to the Parole Officer from the trial court that he not talk

10   about any past criminal acts, violations, or conduct not relevant

11   to appellants case.

12

13   **A.**   Proceedings Below

14   During an in-limine hearing the following colloquy took place

15   between the prosecutor, court and appellants counsel:

16   Mr. Bowan: But I plan on offering that statement as well as

17   the statement to the Parole Officer which we discussed briefly

18   on November 5 th, 2003. The day before the arrest- He had told

19   his Parole Officer- james Burgert ( B-U-R-G-E-R-T.) That he

20   lived at that troy street address. In fact -came in and talked

21   to his Parole Officer with Regina Burton, who was with him at

22   time. Given the fact that it's going to come out that he has

23   these prior convictions and, I believe, it is part of the defense

24   case as well that he was on parole and was living in a half

25   way house for parolees it's our motion also just to allow his

26   parole status to come into evidence Via the parole officer given

27   the fact that a statement given to a parole officer would be held

     a different context than a statement given to somebody on the street.

28   ing        We understand his obligation to be truthful to

96

1    the parole officer and so forth who is supervising him

2    should also come in. I think I skipped ahead one motion, but

3    it is all inner related.

4    The Court : I don't have the other one then,

5    Mr. Bowman : When we Discussed it in chambers Ms. Lacher

6    indicated there was no objection because that is part of their

7    defense as well.

8    The Court : Right , they have parole officer list.

9    Mr. Bowman: Correct.

10    The Court ; Ms. Lacher- anything ?

11    Ms. Lacher : No your honor. I don't have any objection since

12    Mr. Bowman is correct we do have both Mr. McDonalds parole

13    officer on our lists. And I don't think that the defense could

14    go forward without utilizing their testimony so, it's got to

15    come out anyway.

16

17    Appellants parole officer provided testimony that was prejudicail

18    and inflammatory as well as inadmissible. The following testimony

19    was provided by appellant Parole officer in which appellant bases his argument of ineffective

20    assistance of counsel.

21    Mr. Burgert :: He had been my parole on a few other occasions

22    prior to that date.

23    Ms. Lacher : How many times had he been your parole ?

24    Mr. Burgert : Welll he had been on parole at least two times.

25    And he had also had some minor incidents that ----- where he

26    was in custody. You have to define whether he was active on

27    parole. Try to be more specific.

28    The Court : The question really is when did you supervise him.

97

1   not what he was there for.

2   Ms. Lacher: Thank you, your honor (II RT, p. 109, 2-12). The

3   question then segued into other matters not relevant to

4   appellant's complaint. The next relevant testimony is (II RT,

5   p. 121, 2-7)

6   Ms. Lacher: Well did you impose any sanctions upon him?

7   Mr. Burgert: Yeah, we restructured him, he is a juvenile ward.

8   We restructered him. We talk. to them. We try. to encourage

9   them to change their behavior. I mean there is other incidents

10  that  there was violation of behavior but you didn't ask me

11  about those. (Continued on (II RT, p. 124, 24-27)

12  Ms. Lacher: Do you remember a discussion between you and

13  Mr. McDonald  concerning him having to ask his adult  parole

14  officer after asking you to live there?

15  Mr. Burgert: I believe during our conversation on November 4th

16  that  I instructed him to contact his  C.D.C. parole  agent.

17  (Continued  during redirect examination of Mr. Burgert by the

18  prosecutor on (II RT, p. 126, 26-28)

19  Mr. Bowman: Sir, you mentioned at one point ... or actually you

20  were questioned by Ms. Lacher regarding a C.D.C. parole agent.

21  Do you recall?  (Continued on II RT, p. 127, 1-12)

22  Mr. Burgert: Yes.

23  Mr. Bowman: Are you his C.D.C. parole agent?

24  Mr. Burgert: No, I am California Youth Authority.

25  Mr. Bowman: Okay, so when we talk about C.D.C. parole agent we

26  are talking about a different parole agent?

27

28

1    Mr. Burgert : California Department of Corrections .

2    Ms. Bowman: Okay  so he had a C.D.C parole agent and you correct.

3    Mr. Burgert : Correct.

4    Mr. Bowman : Both of you were supervising him simultaneously?

5    Mr. Burgert Correct .

6

7    the Prosecutor  then questioned  Mr. Burgert about other things

8    unrelated to appellants complaint. The next line of testimony

9    relevant to appellant complaints is ( II Rt P. 132 - 10 -22)

10   Mr. Bowman : and you could have arrested Mr. McDonald right

11   then and there on the 4 th correct ?

12   Mr. Burgert : Yes.

13   Mr. Bowman: And did you do that ?

14   Mr Burgert : No.

15   Mr. Bowman : Why not ?

16   Mr. Burgert : It seemed like there was  ---- because they are

17   youthful offenders - they committed the crime prior to the age

18   of 18 we treat them somewhat differently than if they were an

19   adult age. We have the necessary skills to recognize that they

20   have to maintain consistent and regular communication.

21   And the last relevant testimony is continued on ( II Rt P. 134,

22   27- 8 and P. 135, 1-8 )

23   Ms. Lacher : And you indicated when I was doing my cross-

24   examination that Mr. Mcdonald had many violations in ( continued

25   on P. 135, 1-8 ) your mind correct ?

26   Mr. Burgert : Yes.

27   Ms. Lacher : Can you tell us what those were ?

28

1   <u>Mr. Burgert</u>: He last had violations for --- they have been
2   anywhere from minimum to serious. They have been infractions
3   they have been **misdemeanors** they have been felonies- they have
4   been drug related. They have been so serious that he got sent
5   to prison as a adult.

6

7   Appellant told his trial counsel to file for mistrial (III Rt
8   P. 264-273) as a result of the above testimony provided by Mr.
9   Burgert.       the prosecutor made the following statement:
10  <u>Mr. Bowman</u> : I am not certain your honor and my understanding
11  is and this is all second hand that he Mr. Burgert was the C.Y.A.
12  parole agent and I actually instructed him not to mention the
13  fact that he was on parole for a robbery that occurred previously
14  and I was very specific in my questioning that he is a parole
15  agent and did not get into his other conviction that he had
16  which is when he was 14 years old. And I told him not to mention
17  any gang affiliation and all that. the case was closed when -
18  <u>Ms. Lacher</u> : When he turned 25. ( II Rt P. 143 )
19  The appellant addressed the court:
20  <u>The Defendant</u> : I have something brief. I have something just
21  very brief. The D.A. said he had instructed him not to say
22  anything about my past record due to the fact that he did say
23  I was locked up on several prior occasions- drugs - gangs- he
24  mentioned all that. I feel that prejudice me right in front
25  of the jury and that should be grounds right there alone for
26  a mistrial. (IIRT P. 147)
27  <u>The court</u> : If you want to talk to your attorney before that
28  motion is made and it's going ---if it's going to be made it

1   is going to be made by her, but it was in response to her

2   question that he gave that particular answer. So, anyway talk

3   to her. we will talk about this thing tomorrow we will

4   meet back up here at 8:45. actually, no. It will be 9:00 clock.

5   and if there is going to be a motion we will take it up at the

6   break in the morning.

7

8   The actual request for a mistrial was on ( III RT P. 264- 273)

9

10   As noted during the mistrial hearing some of the testimony

11   provided by Mr. Burgert was

12   such as the misdemeanors and drug violations ( III Rt P. 269 ). But also the appellant

13   would add that 1) none of what the CYA parole officer testified

14   to was verified; 2) The parole officer did testify about appellants conviction when he was a juvenile ( ~~II Rt P. 121~~

15   ~~II Rt P. 132 );~~ 3) The appellant was not proven to be in the

16   sober living home becuase of a drug problem. The appellant was housed there because of the fact appellant had no home to parole

17   to when appellant was paroled from CYA.

18   As shown on the record there was never any "proof" of the

19   allegations made by the parole officer concerning him violating appellant for misdemeanors and drug issues. And this alleged

20   county jail time violation, as well as prison violation.

21   Specifically dealing with " Mr. Burgert " not anyone else. Thus,

22   the assumption of the trial court that there was " drug " issues is pure speculation and the further opinion ( III RT P. 272,

23   2- 28 ). Which the appellant agrees with, is the fact that yes,

24   there was numerous " things " waiting to come out that would " prujudice ." and paint the picture of appellants character"

25   that would further slam appellant chance at a fair trial as

26   appellant has shown elsewhere in This appeal. However, appellant does

27   not argue that the court should have granted the mistrial, But only that again counsel has rendered appellant ineffective

28   assistance of counsel.

1    B. Appellants counsel rendered Ineffective assistance of counsel

2    when she did not object to the prosecutor request to bring out

3    appellant parole status, and request to identify appellants

4    residence as a drug program; and did not file a suppression

5    motion concerning statements made by appellant to his parole

6    officer and any past convictions, conduct, or incidents concerning

7    appellants juvenile delinquency.

8    VIOLATION :

9    Defense counsel has the basic duty to carefully investigate

10   all available defenses of fact and law. In re Jones ( 1996 )

11   13 Cal. 4 th 552, 54 Cal rptr. 2d 52 917 P. 28 1175.

12   In Re Cordero ( 19 88 ) 46 Cal. 3d 161, 187, 249 Cal Rptr. 342,

13   756 P. 2d 1370.

14

15   Appellant contends that his trial counsel should have

16   investigated available defense of fact and law and brought forth

17   a motion to surpress appellants statements. In Minnesota v.

18   Murphy 465 U.S. 420, 436 ( 1984 ) The supreme court explained

19   if a state attaches [t]he threat of punishment for reliance

20   on the priviledge " against self- incrimination by asserting

21   Either " expressly or by implication ...                    The

22   Probationers answers would be deemed compelled and inadmissible

23   in a criminal prosecution" Id at 435 ( emphasis added ).

24

25   As a general rule the [ Fifth ] Amendment speaks of  compulsion

26   .. If [ an individual ] desires the protection of the priviledge

27   he must claim it or he will not be considered to have been

28   Compelled " within the meaning of the amendment ". ( Quoting

1   Untied States v. Monia, 317 U.S. 424, 427 (1943) ( First

2   alteration in the original) ( internal quotation marks omitted.)

3   There are however, exceptions to this rule. The court has held

4   that if an individual subjected to a practice that " defines

5   [ him]... a free choice to admit, to deny, or to refuse to answer;

6   " then any statement he makes is considered involuntary and

7   cannot be used in a criminal proceeding - Garner v. United States

8   424 U.S. 648, 657 ( 1976 ) ( quoting Lisenba v. California,

9   314 U.S. 219, 214 ( 1914 ). In these cases the fifth amendment

10  is considered " self executing ; and an individual does not

11  need to invoke it in order to have his admissions surppressed

12  in an ensuing criminal prosecution. Murphy- 465 U.S. at 435.

13

14  Here, the appellant was under investigation by detective Hartman,

15  in which detective Hartman contacted appellants parole officer

16  Jim Burgert November 4, 2003 ( V Rt P. 512 ) and as a result,

17  Mr. Burgert contacted detective Hartman later on that day and

18  provided statements by appellant to his parole officer

19  Mr. Burgert concerning the troy st. residence ( V Rt P. 514-

20  515. .) In which Mr. Burgert Questioned appellant about ( II

21  Rt P. 106- 108 ) Mr.Burgert was actively participating in the

22  investigation of appel lant ( II Rt. P. 130 )

23

24  The fact that stolen property was recovered from the residence

25  on troy street, warranted appellants counsel duty to investigate

26  and possibly file a motion to suppress any and all statements

27  made by appellant to parole officer concerning the residence,

28  The statement being compelled because they were in response

1   to questions asked of appellant from his parole officer ( II

2   Rt P. 106- 108 ) which appellant was not free to invoke his

3   fifth amendment right to silence, and based on the fact that

4   the parole officer then provided appellant statements to

5   detective Hatman which detective Hartman sought to use against

67  appellant in a criminal proceeding ( V Rt P. 514- 515·)

7

8   **Secondly,** appellants trial counsel should have objected to

9   appellants parole status being made known because of the highly

10  prejudicial impact it would have on appellants character- the

11  fact that appellant was on parole implied that appellant already

12  stood guilty of committing some prior bad act and thus appellants

13  right to stand innocent until proven guilty would seriously

14  be impaired as a result of the knowledge of appellants Parole status. Trial

15  counsel should have requested testimony only that appellant

16  and Mr. Burgert had a professional relationship, which would

17  have protected appellant from the prejudicial impact ,  the

18  knowledge of appellants parole status  would cause; and also

19  allowed for any testimony relevant to the matter of appellants

20  residence without the irrelevant prejudicial evidence. It was

21  counsels duty to object to evidence that might prejudice

22  appellant and advocate the best interest of her client, the

23  appellant . The complained of testimony re appellants parole

24  status ; juvenile deliquency - housing in a " drug program;

25  misdemeanors, county jail time, C.Y.A. incarceration and other

26  alleged minor to serious incidents testified to by Mr. Burgert,

27  damaged appellants character and right to a fair trial. ( U.S.C.A

28  . 5 th and 14 th amends ) defense counsel should be aware of

1   the picture that the defendant presents to the jury and quickly

2   bring to the courts attention anything that would tend to

3   prejudice the defendant in the jury's eyes. People v. Taylor

45  ( 1982 ) 31 C3d 488, 495, 183 CR 64.

5

6   Also see People v. Wheeler ( 1992 ) 4 cal 4th 1084 1091, 1092.

7   Wheeler cautioned that in particular, when the courts are

8   confronted with evidence of past misconduct other than a felony

9   conviction they " should consider with particular care whether

10  the admission of such evidence might involve undue time,

11  confusion or prejudice which out weighs it's probative value."

12  ( Id at 296 - 297 . Fr. omitted.) " [I]mpeachment evidence other

13  than felony convictions entails problems of proof- unfair

14  surprise and moral turpitude evaluation which felony convictions

15  do not present. ( Id. at 296 )

16

17  As argued, the misdemeanors, drugs and past minor to serious

18  ( III Rt P. 134- 135 ) violations were never proven and were

19  not felonies. Also, appellants counsel lack of request to exclude

20  such testimony, or objection to said testimony, did not allow

21  for trial courts interruption and possible curative instruction

22  or ruling to bar such testimony. Therefore, the challenged

23  statements were directly a result of appellant's trial counsels

24  incompetence, as is noted by the trial court ( III Rt P. 266

25  ). In which the court alluded to the fact that counsel had asked

26  the question that got the response ...

27

28  The statements made by appellant parole officer Jim Burgert

1   were prejudicial because there were not any curative jury

2   instructions concerning the challenged statements which allowed

3   for jury to use the challenged statements as evidence of

4   appellants bad character and thus tending to prove appellant

5   was a person capable and prone to commit such crimes...

6       The lack of such curative instructions to the jury con-

7   cerning the parole officer's statements deprived appellant of

8   his due process rights of the U.S.C. 5th and 14th Amendments

9   and should have been objected to by appellant's trial counsel

10  Pamela Lacher. (See People v. Fosselman (1983) 33 Cal.3d 572,

11  582, 189 Cal.Rptr. 855, 659 P.2nd 1144 (defense counsel failed

12  to object to prosecutorial misconduct, including inflammatory

13  characterization of defendant and statements of personal belief

14  based on facts not in evidence); (see also Crotts v. Smith (9th

15  Cir. 1996) 73 F.3d 861 (evidence was prejudicial to defendants

16  because case turned on credibility of witnesses, and evidence

17  of defendant's boast made it more likely that the jury would

18  believe other witnesses rather than defendant and would believe

19  that defendant was kind of person who would assault police

20  officers).) See evidence code section 1101(a) (evidence of

21  prior conduct generally inadmissible to prove conduct on

22  specific occasion).

23      An objection by appellant's trial counsel would have at

24  least preserved the issue for appeal. Failure to object to

25  error which resulted in waiver of review may constitute

26  ineffective assistance of counsel. (People v. Scott (1994) 9

27  Cal.4th 331, 356 fn. 18; People v. Cooper (1991) 53 Cal.3d 771,

28  831; People v. Malone (1988) 47 Cal.3d 1, 33.)

1. Appellant also contends that should the respondant argue that appellate review is waived

2. because trial counsel failed to make a due process objection, Appellant asserts review is

3. not waived and includes his argument in  4, and 6, as though fully set forth herein and in

4. addition to above arguments points and authorities, as far as they address appelate review

5. sppropriate despite an objection from appellant's trial counsel.

6. For all of the above reasons points and authorities the appellant respectfully request that

7. this court reverse his conviction for challenged count(s)  1and 2.

8.

9.

10.

11.

12.

13.

14.

15.

16.

17.

18.

19.

20.

21.

22.

23.

24.

25.

1. ARGUMENT # 9 ...... (Cumulative)

2. THE CUMULATIVE EFFECT OF ALL THE CHALLENGED EVIDENCE AND MISCONDUCT DENIED

3. APPELLANT HIS RIGHT TO A FAIR TRIAL GUARANTEED UNDER THE UNITED STATES CONSTITUTION 5th & 14th

4. Applying the above arguments, points and authorities, it is evident that appellant

5. was denied several constitutional provisions. Appellant concedes that, any one

6. of the government prosecutors acts of misconduct although error, might indeed

7. have been accidental or unintentional, albeit harmless. But when all of them are

8. combined, however, the effect was to deny appellant his right to a fair trial

9. guaranteed to him by the due process clauses of the UNITED STATES and CALIFORNIA

10. CONSTITUTION. (see People v. Rodgers (1979) 90 Cal. App. 3d 368, 372 153 cal.

11. Rptr. 382, and citations contained therein.)

12. The question of appellants guilt depended greatly on the jury's determination

13. of the relative credibilty of witnesses. The evidence in count's 1 and 2, was

14. minimum at most. Appellant testified he was not present during the commission of

15. the crimes and was not a participant. Further, evidence re co-defendant's finger

16. prints were found at the HAVERN residence i.e.,count #1. Which was undisputible

17. evidence that connected Mr. WASHINGTON to that crimes commission. Absent the

18. numerous acts of misconduct by the prosecutor, appellant could have prevailed

19. on the challenged counts. In contrast, on count #2, the co-defendant's statement

20. was not corroborated, in that the prosecutor's own witness added reasonable doubt

21. as to appellant's involvement in that crime. The witness JEFF HANNIGAN, provided

22. an accurate account of pertinent facts, such as the license plate of the vehicle

23. HANNIGAN saw leaving the scene, the exact height of appellant's co-defendant

24. TONY WASHINGTON (IIRT P.97-9) as well as the beads he saw in WASHINGTON'S hair,

25. and HANNIGAN testified that the second individual that he had seen was "shorter"

26. than the first individual (IIRT P.92)

27. The defendant was known as the taller of the two (RT 181-200), (216 and 291) at 6'2, 204 pounds,

28. which would make it physically impossible for appellant to be that second "shorter

108

1. person that MANNICAP had seen at the scene of the BORREGO burglary. Indeed,

2. co-defendant TONY WASHINGTON testified on appellant's behalf and testified

3. appellant was not present with him at the BORREGO burglary. (VRT. 771-2)

4. The prosecutors tactics throughout appellants trial proceedings, damaged appellant's

5. character and could have done no more than to inflame the jury against appellant

6. and circumvent the rules of evidence, in effect deny appellant a fair trial.

7. The SUPREME COURT has observed :" There is no reason why we should treat this

8. evidence as any less 'crucial' than the prosecutor, and so presumably the jury-

9. treated it" (People v. Cruz (1964) 61 Cal. 2d 861, 868; see also, People v. Woodard

10. (1979) 23 Cal. 3d 329, 341 [Reversal ordered where the prosecutor "exploited"

11. erroneously admitted evidence during his closing argument].)

12. The challenged questions pertaining to alcohol and marijuana, were argumentive.

13. As the court observed in (people v. Duvernay 43 Cal. App. 2d 823; 11 p.2d 659;

14. 1941 Cal. App. LEXIS 750) "The conduct of the deputy district attorney as just

15. narrated called for a more stern rebuke from the court , and it is doubtful,

16. whether any admonition to the jury would have  removed the effect of such conduct.

17. It would be an impeachment of the legal learning of the counsel for the people

18. to intimate that he did not know the aforesaid questions and argument to be

19. improper, wholly unjustifiable, and peculiarly calculated to prejudice the

20. substantial rights of the defendant."

21. "The admission of past misconduct involving moral turpitude to impeach a witness

22. in a criminal trial is subject to the trial court's discretion under Evidence

23. Code Section 352." People v. Feaster (2002) 102 cal. App. 4th 1084, 1091-1092.

24. citing People v. Wheeler (1992) 4 Cal. 4th 284, 296, superseded by statute on

25. an unrelated point, see People v. Duran (2002) 97 Cal. App. 4th 1448, 1459-1460.)

26. Wheeler cautions that, in particular, when the courts are confronted with evidence

27. of past misconduct other than a felony conviction they "should consider with

28. particular care whether the admission of such evidence. Might involve undue time,

1. confusion or prejudice which outweighs its probative value."(Id. at 296-297.fn.

2. omitted.) "[I]mpeachment evidence other than felony convictions entails problems

3. of proof, unfair surprise, and moral turpitude evaluation which felony convictions

4. do not present."(Id. at 296; see also, People v. Lepolo (1997) 54 cal. App. 4th

5. 85,89.) Thus the supreme court in wheeler "recognized the danger of burdening

6. trials with collateral issues of witness misconduct."(People v. Cloyd (1997) 54

7. Cal. App. 4th 1402, 1408.)

8. In this case, appellant's fair trial collasped under the burden of this collateral

9. evidence. Appellant's situation is analogous to that addressed in People v. Lopez

10. (2005) 129 Cal. App. 4th 1508, in which the prosecution used evidence of prior

11. arrest to impeach defense witnesses in an attempt to show that they were hostile

12. to police and therefore fabricating  evidence. The court of appeal noted that

13. evidence of mere arrest is inadmissible because it is more  prejudicial than

14. probative; and "a witnesse[s] credibility in the eyes of the jury would be

15. seriously impaired by the evidence of prior criminal arrest, because of the bad

16. character" inevitably suggested therby."(Id at p. 1523, quoting People v. Anderson

17. (1978) 20 Cal. 3d 647, 651.) The court went on to point out that "it is a weak

18. thread of inference from past arrest by the police, to hostility against police

19. in general, to a willingness to distort testimony." (Ibid, qouting Grudt v. city

20. of Los Angeles (1970) 2 cal. 3d. 575,592.)

21. Thus, appellant's contact with officer CARROL should ^not have been admitted into

22. appellant's trial proceedings. The officers testimony was employed simply to

23. show that appellant had a untrustworthy criminal character.

24. The testimony entered against appellant re juvenile incarceration, violations, and

25. appellant's parole status, coupled with the knowledge of appellant's current

26. incarceration during trial, as well as knowledge of appellant's adult parole

27. status, gang testimony, marijuana and alcohol testimony and the prosecutors

28. constant assertions of what the "truth" was during his closing argument, denied

1. appellant's right to a fair trial. The prosecutor compounded the issue when he

2. referenced facts that were not in evidence re VIDEOTAPE OF APPELLANT'S RAP THAT

3. ALLEGEDLY SHOWN THE BLACK DENIM JACKET SEEN BY WITNESSES. And lastly,

4. the closing argument that the jewelry allegedly shown to a store worker was the

5. the jewelry taken from burglaries. All of the acts of misconduct and errors served

6. to take the jurors focus off of the minimum evidence against appellant and to

7. secure a conviction by painting appellant as a person of bad character.

8. The cumulative effect of the complained of evidence and misconduct was equivalent

9. to the arrest's used in LOPEZ. They served to show the jury that appellant was

10. a criminal character. In addition the trial court is charged in applying section

11. 352, to incidents of prior misconduct, to consider the same factors considered

12. in the admission of prior convictions.

13. IN APPELLANT'S CASE THE COMPLAINED OF EVIDENCE AND ACTS OF PROSECUTORIAL

14. MISCONDUCT DENIED APPELLANT'S DUE PROCESS AND A FAIR TRIAL. THE CALIFORNIA COURTS

15. HAVE ALWAYS NOTED THAT "[P]rejudice is a matter of degree. An incident in the

16. light of one record might not necessarily be prejudicial and reversable error,

17. but a similar incident in light of another record might be highly prejudicial

18. (People v. Flores (1936) 15 cal. App. 2d 385, 406.)

19. The supreme court, referring to repeated errors and misconduct on the part of

20. the prosecution, held that [c]onsidered together,...[these errors] created a

21. negative synergistic effect, rendering the degree of overall unfairness to the

22. defendant more than that flowing from the sum of the individual errors...[t]he

23.     defendant was deprived of that which the state was constitutionally required

24. to provide and he was entitled to a fair trial. Defendant is thus entitled to

25. reversal of the judgement and a retrial free of these defects."(People v. Hill

26. (1998) 17 cal. App. 4th 800, 847.)

27. Appellant respectfully request that his conviction for the challenged counts

28. #1 and 2, be reversed...

111.

2. Appellant's Due Process Rights under the United States Constitution were

3. violated when the trial court failed to give Sua Sponte instruction

4. on corroboration of an accomplice statement.

5. A Proceedings below.

6. Appellant was charged in an information with three counts of first

7. degree Burglary (Pen. Code Section 459) The jury found appellant guilty

8. of all counts (C.T. 0389) The jury's finding, as far as the challenged

9. count's 1 and 2, were erroneous and in violation of appellants fourth-

10. eenth amendment rights because the trial court did not instruct with

11 Caljic   corroboration of an accomplice statement.    B. VIOLATION:

12. Instruction on the need for corroboration of accomplice testimony

13. must be given when there is evidence a witness is a accomplice (see

14. Pen Code Section 1111 . See also, Calcrim 334-335; People v. Felton

15. (2004) 122 CA4th 260, 267, 18 CR3d 626 ( Coperpatrator is accomplice).

16. The defense witness TONY WASHINGTON , provided testimony that appellant

17. was not involved in the crimes (VRT 715, 737, 741 and VRT 807)

18. The government prosecutor impeached Mr. WASHINGTON with statements

19. allegedly made by WASHINGTON during interogation by detective Jerry

20. Hartman

21. In which WASHINGTON allegedly stated that appellant was his accom-

22. plice in the crimes.    C. PREJUDICE .

23. The failure of the trial court to provide the Sua Sponte instruction

24. wasprejudicial in light of the fact that there was not any substantial

25. evidence that directly tied appellant to the commission of the chall-

26. enged counts 1 and 2. And in particular, the BORREGO burglary count 2.

27. The government witness who saw the perpatrators of that crime provided

28. a description of the perpatrators and also testified , in which Mr.

1. JEFF HANNIGAN testified that the first individual he saw was 5'8 or

2. 5'9 in height and that the second individual was shorter than the first.

3. (R.T.p. 91-101.) The description provided by Mr. HANNINGAN matched

4. defense witness TONY WASHINGTON'S description. Mr. HANNIGAN entire

5. description of the first male was as follows; 5'8 or 5'9, approximately

6. 150 plds. dark skin with corn rowswith beads at the end of the corn rows

7. ( RT p. 92).

8. Defense witness and co-defendant, TONY WASHINGTON accurately matched

9. this description and also testified to the exact same description

10. ( VRT 728,-730, VIRT 838-839, 840)

11. It was a well known fact that appellant was the taller of the two,

12. at 6'2, 204 plds.(IIIRT p. 181, 200, 216, 291.) Therefore appellant

13. could not possibly match the description of the first or second male

14. person Mr. HANNIGAN had described.

15. The fact that trial counsel did not object or request the instruction

16. does not preclude appellate court from review of this issue. The

17. lack of the necessary instruction affected appellant's substantial

18. rights and is therefore reviewable whether or not an objectionwas raised in

19. the lower court. (see e.g., Pen Code Section1259; also People v.

20. Wickersham(1982) 32 Cal. 3d, 307, 331 and fn. 10, disapproved on other

21. point in People v. Barton (1995) 12 Cal. 4th 186, 201; People v.

22. Hannon (1977) 19 Cal. 3d 588, 597-598; Peoplev. Satchell (1971) 6 Cal.

23. 3d 28, 33, fn. 10; People v. Roehler (1985) 167 Cal. App. 3d 353, 394-

24. 395.)

25. In failing to instruct with the Caljic   the jury was allowed to

26. convict appellant using the impeachment of testimony provided by

27. TONY WASHINGTON. Eventhough appellant may have provided otherwise

28. reasonable explanation as to his whereabouts, lack of knowlege of the

1. crime and the car was allowed to the defendant TONY WASHINGTON
2. to operate appellant's car without appellants presence. As a result,
3. violating appellant's rights to due process, a fair trial, a jury trial
4. and fundamental fairness under the 5th, 6th, 8th and 14th amendments
5. rights of the United States Constitution, article 1, section 15 and 16.
6. AS a matter of law " the DUE PROCESS  CLAUSE protects the accused
7. against conviction except upon proof beyond a reasonable doubt of every
8. fact necessary to constitute the crime with which he is charged."( In
9. re Winship (1970)397 U.S. 358, 364, at p. 364 ( 90 CT. at p. 1073)
10  Thus,the failure to instruct Sua Sponte with the instruction,in effect
11.took away appellant's right to have an accomplices statement corrobo-
12.rated. And appelants right to have the prosecutor meet the burden of
13.conviction "beyond a reasonable doubt" .
14.
15. In the case that respondant shall argue the issue is waived appellant
16. includes herein and in addition to  above arguments, appellant's prior
17. arguments contained in argument 4, as far as that argument address I.A.C
18. for failure to make objection,standard or constitutional, and appellate
19. review still appropriate.
20.
21.
22.
23.  Appellant respectfully request that this court reverse challenged
24. conviction of count's 1 and 2....

The trial court violated appellants state and federal constitutional rights when it instructed the jury with Caljic No. 2.15 regarding possession of recently stolen property/[1].

The trial court instructed the jury with Caljic 2.15 which tells the inter alia, that the fact that the defendant is in possession of recently stolen property is not by itself sufficient to permit an inference of guilt, and that corroborating evidence need only be slight, and need not by itself be sufficient to warrant an inference of guilt." (C.T. 0354: R.T. p. 1674-1675)/[2]

/[1]  The fact that trial counsel did not object to the challenged instruction does not preclude appellant from review of this issue. The challenged instruction affected appellants substantial rights and is therefore reviavable regardless of whether an objection was raised in the lower court. (see e.g., pen. code, section 1259: People v. Wickersham (1982) 32 Cal. 3d 307, 331 and fn. 10, dissapproved on another point in People v. Barton (1995) 12 cal. 3d 588, 597-598; People v. Hannon (1977) 19 cal. 3d 28, 33, fn. 10; People v. Roehler (1985) 167 cal. APP. 3d 353, 394-395.)

/[2]  In instructing with Caljic 2. 15 the trial court stated " If you find that a defendant was in consciuos possession of recently stolen property the fact of that possession is not by itself sufficient to permit an inference that the defendant is guilty of the crime of

1. this instruction reduces the prosecutions burden of proof below that of

2. " Beyond a reasonable doubt." Also, the instruction allows conviction

3. even if the defendant has satisfactorily explained his possession of the

4. recently stolen property. As a result, the instruction violated appell-

5. ants rights to due process, a fair trial , a jury trial and fundamental

6. fairness under the Fifth, Sixth, Eight and Fourteenth Amendments to the

7. United States Constitution, Article 1, section 15 and 16.

8. As a matter of law,"... The Due Process Clause protects the accused

9. against conviction except upon proof beyond a reasonable doubt of every

10. fact necessary to constitute the crime with which he is chareged."

11. (In re Winship, (1970) 397 U.S. 358, 364. at P. 364 (90 S.ct. at P.

12. 1073).) In United States V. Gray ( 5th Cir. 1980) 626 F. 2d 494, the

13. trial court instructed that, once a conspiracy was proved,"(T)he

14. Government need only introduce slight evidence of a defendant's

15. participation..." The court of appeals held the "slight evidence"

16. instruction to be "reversable error" because it "... can only be seen

17. as suffocating the 'reasonable doubt'... standard." (Id., at P.500)

18. _____

/1 (continued )

19. burglary or theft,Before guilt may be inferred, there must be corrobo-

20. rating evidence tending to prove defendant's guilt. However, this

21. corroborating evidence need only be slight, and need by itself be

22. sufficient to warrant an inference of guilt..

23. As corroboration, you may consider the attributes of possession---

    time, manner that the defendant had an opportunity to commit the

        charged, the defendant's co nduct, his false or or contradi-

            nt's if any, and or other statements he may have made

                he property, a false account of how he acquired

                    property any other evid. which tends to con

                        charged." (R.T. p. 1674-1675)

1. In UNITED STATES V. HALI( 5th Cir. 1976) 525 F. 2d 1254, the court of

2. appeals reversed the defendants  conspiracy conviction where the trial

3. court gave a "slight evidence", instruction similar to that in Gray,

4. supra, The court  stated; "(T)he (slight evidence) language should not

5. be used in the charge to the jury... Despite the lack of provable

6. prejudice to defendant's case because of other instruction's giving the

7. reasonable doubt standard, however, the proof necessary for the

8. government to carry it's burden by possibly confusing the jury about

9. the proper standard or even convincing jury members that a defendant's

10. participation in the conspiracy need not be proved beyond a reasonable

11. doubt." (I.d. at., pp. 1255-1256, see also, United States V. Durrive

12. (7th Cir. 1990) 902 F. 2d 1221, 1229, fn.6.)

13. Applying the federal law of due process discussed above, the appell-

14. ant asserts the " slight evidence" instruction violated his right to

15. due process, a faIR TRIAL, JURY TRIAL, AND FUNDAMENTAL FAIRNESS UNDER

16. The Fifth, Sixth, Eight and Fourteenth Amendments and the similar

17. provisions of the California Constitution by enabling the jury to

18. convict on a showing less than beyond a reasonable doubt.

19. Although People v. Anderson (1989) 210 Cal. APP.3d 414, approved caljic

20. No. 2.15, it did not consider the issue whether the defendants

21. possession must be unexplained; thus it is inopposite. (Santa Clara

22. Co. Local Trans. Auth. V. Guardino (1995) 11 Cal. 4th 220, 243.) Also,

23. Anderson fails to recognize ( guilty Knowledge) may be constitutiona-

24. lly infirm if it enables the jury to employ an evidentiary shortcut

25. to conviction which does not require the prosecution to prove beyond

26. a reasonable doubt those facts (i.e. unsatisfactorily explained

27. possession) necessary to rationally connect the inferece to the

28. defendant's guilt And Anderson states that " Guilty Knowledge" isthe

117

1. iference with which Caljic No. 2.15 is concerned.(i.e., at p.431),

2. whereas the instruction involves guilt itself as the inference. ANDERSON

3. thus betrays a misunderstanding of the serious constitutional defi-

4. ciences of Caljic No. 2.15.

5. The presumption creayed by Caljic No. 2.15 is unconstitutional since

6. it fails to tell the jury guilt cannot be based  on the presumption

7. (or inference) alone unless it has been proved beyond a reasonable

8. doubt that the defendant's expalanation for possession of the recently

9. stolen property is unsatisfactory.

10. Appellant asserts that this court is bound by the holding of United

11. States  Supreme Court in In re Winship, supra. 397 U.S. at. p. 364

12. 364 (90 S ct. at p. 1073) , that the due process requires proof beyond

13. a reasonable doubt of every fact necessary to constitute the crime

14. with which the defendant is charged. (Peoplev. Bradford (1997) 16 Cal.

15. 4th 826, 844.)

16. Since under the federal constitution, the " slight evidence" instru-

17. ction is unconstitutional, it is also unconstitutional under the

18. California constitution, and thus this court is not bound by the state

19. court opinions to the contrary. (see People v. Mcfarland (1962) 58 cal.

20. 2d 748, 752.) Further, although the decisions of the lower courts are

21. not binding on this court, their decisions " provide persuasive...

22. authority." (People v. Bradford, supra. 15 cal. 4th  at p. 1292.)

23. Clearly, pursuant to the above noted federal decisions, it was error

24. of con stitutional magnitude for the trial court in appellants case

25. to give the "slight evidence " instruction because it greatly reduced

26. the prosecutions "beyond a reasonable doubt" STANDARD OF PROOF.

27. Reversal of the challenged convictions is therefore required per se,

28. without a showing of prejudice. ( Sullivan v. Louisiana (1993) 508 U.S.

1. 275, 280-282, 113 S.Ct. 2078, 2082-2083)

2.

3. Ifarguendo, prejudice must be shown , appellant can readily do so.

4. Appellant gave a reasonable, believable account of why he possessed

5. the Ambico suitcase which belonged to the HAVERNS, in count 1. During

6. appellants interview by detective Jerry Hartman(Nov.6,2003.) Detective

7. Jerry Hartman fleetingly asked appellant about a suitcase that was found

8. in appellants vehicle trunk (SEE follow up investigation report ex.  )

9. Appellant informed detective HARTMAN that the suitcase belonged to him

10. that appellants cloths were inside of it.(R.T.p. 1613,1640)

11. During said interview, appellant was not asked "where" or "how" he

12. aquired the suitcase. Nor was appellant informed that the suitcase was

13. stolen. During appellants testimony, (R.T.p.1530, 1548.) appellant

14. explained that he had aquired said suitcase from co- defendant TONY

15. WASHINGTON , who let appellant borrow the suitcase so that appellant

16. could pack up his cloths in preparation to move into the troy st.

17. residence (R.T. p. 1530, 1548) . Appellant had received permission

18. from his parole officer  JIM BURGERT  only (2) days prior (Nov. 4 ,2003

19. before appellants arrest Nov. 6, 2003. (R.T. p. 108,122)  and the

20. detective Jerry Hartman testified that he did not find any of appellant

21. property inside the Troy St. residence (R.T. p. 529,530.) which reason-

22. ably could explain the presence of appellants clothing inside of the

23. suitcase...

24. Although appellant admitted to possessing the suitcase, appellant did

25. not admit to, nor questioned about how or where he had aquired the

26. suitcase. By employing the presumption created by Caljic No. 2.15

27. the jury could have found appellant guilty even though it did not

28. believe beyond a reasonable doubt that appellants explanation was

1. unsatisfactory. In this way, appellant was severely prejudiced. Reversal is

2. therefore required. (People v. Clair (1992) 2 Cal. 4th 629, 663.)

3. Appellant includes herein and in addition to the above argument appellant's prior

4. arguments, points and authorities contained in argument #4, concerning appellate

5. review still being appropriate despite an objection from trial counsel and also

6. the I.A.C. arguments points and authorities dealing with a trial counsels possible

7. Ineffectiveness for failure to make the required objection, as though fully set

8. forth herein  and in addition to above arguments.

9. For all of the above reasons points and authorities the appellant respectfully

10. request that his conviction for the challenged counts #1 and 2, be reversed.

11.

12.

13.

14.

15.

16.

17.

18.

19.

20.

21.

22.

23.

24.

25.

26.

27.

28.

2. THE TRIAL COURT ERRED WHEN IT DID NOT CONDUCT A MARSDEN HEARING WHEN IT RELIEVED

3. APPELLANTS RETAINED TRIAL COUNSEL PAMELA LACHER AND RE-APPOINTED HER AS APPELLANTS

4. PUBLIC DEFENDER. AND FURTHER, THE TRIAL COURT ABUSED IT'S DESCRETION WHEN IT

5. DID NOT RE- APPOINT APPELLANT'S PRIOR PUBLIC DEFENDER STACY GULLEY.

6.

7. A. FACTUAL AND PROCEDURAL BACKGROUND.

8. Appellant was represented by public defender STACY GULLEY, beginning 11/ /03 until

9. Mr. GULLEY was relieved as appellant's trial counsel on or about 1/ /04 Upon learning

10. of Mr. GULLEY's discharge from representation of appellant, appellant was

11. new counsel, MICHAEL RUIZ. Appellant ultimately requested a MARSDEN hearing

12. and expressed his desire to relieve Mr. RUIZ because appellant did not feel that

13. Mr. RUIZ was ready to proceed with prior counsels STACY GULLEY's, motion to

14. TRAVERSE the search warrant (Nov.6, 2003)/1. and also the first time appellant

15. had seen or communicated with Mr. RUIZ, and learned of Mr. GULLEY's dismissal.

16. The appellant initially sought to represent in pro per but was told that he would

17. not be given a continuance to prepare to represent himself at the hearing to

18. TRAVERSE the search warrant. The motion was heard and ultimately denied. The

19. appellant then sought to relieve counsel number 2, Mr. RUIZ, because of Mr.

20. RUIZ's request that appellant sign document's which appeared to be a contract

21. waiving any further action claimed by appellant was "going to trial against Mr.

22. Mr. RUIZ's and co-workers wishes." (see ex." C " of the MARSDEN hearing 1/07/04)

23. Appellant was ultimately granted pro per. Appellant relinquished his pro per

24. ---------------------------------------------------------------------------
/1.Appellant requested the El Cajon court to provide Transcripts of the initial

25. from appellant to proceed pro per because of the loss of Mr. GULLEY and other

26. reasons. To date appellant has not received the transcripts. ( see motion to

27. court Ex. "B")

28./2. The appellant wanted a marsden hearing to assert a conflict of interest between
appellant and counsel because counsel PAMELA LACHER did not disclose any pending
or prior or criminal or civil charges against her. Appellant had asked Ms. LACHER
for this information before requesting her services. Appellant acuired document's
which reflected that Ms. LACHER was being sued by the same county that she was
attempting to represent appellant. (see Ex "D")

2. PEOPLE V. MARSDEN (1970) 2 C3d 118, 123, 84 CR 156, 159) Marsden does not apply

3. to retained counsel. Retained counsel may be discharged at any time, with or
4. without cause, even on the eve    trial, as long as the move is not intended to

5. delay. People v. Lara (2001) 86 CA 4th 139, 103 CR 2d 201.

6. In appellant's case, retained counsel was not subject to MARSDEN, and as explained

7. above, appellant had a right to discharge counsel with, or without cause as long

8. as the move was not intended to delay. As appellant explained at the hearing ( Ex "D" P. 13)
9. the attempt to relieve Ms. LACHER was not for delay, but for the lack of counsel's

10. failure to do the job appellant hired her to do. At no time during the hearing

11. did the trial court express that it felt appellant was trying to delay the
12. proceedings. Although the court and prosecutor noted the several continuance's

13. throughout appellant's litigation. However, the fact remains that the chain of

14. events re continuances, were a direct result of appellant's attorney #1, STACY

15. GULLEY, being withdrawn from representation of appellant by no fault of appellant

16. and against appellant's wishes. And absent any explanation from the trial court

17. or Mr. GULLEY. ( Ex "C" P. 0.7 - 0. 11)

18. and the appellant's situation with counsel #2, Mr. RUIZ, whom sought to have

19. appellant sign a waiver before Mr. RUIZ would agree to go to trial. These fact's

20. show that appellant clearly did not seek to delay proceedings, when it is
21.         : reasonable for appellant to want to go pro per when the trial court

22. denies appellant's MARSDEN motion, and appellant's counsel Mr. RUIZ wanting

23. appellant to sign a waiver before trial, as well as Mr. RUIZ's attempt to

24. persuade appellant to plead guilty despite appellant's claim of innocence.( Ex. "C")

25. In People v. Cruz (1978) 83 Cal. App. 3d 308, 147 Cal. Rptr. 740, the court held

26." where MARSDEN error taints the disposition of a request for substitution, the

27. the defendant's subsequent pro per request does not effectively waive his right

28. to counsel even where the court's admonitions otherwise satisfy FARETTA."

1. The knowing and intelligent waiver of counsel envisions the selection between viable

2. alternatives. Defendant's decision to proceed in pro per was predicated upon his

3. belief, mistaken or not that he could not expect effective representation from

4. the public defenders office. This belief was effectively reinforced by the court's

5. failure to fully explore defendant's charges. Under the circumstances, defendant

6. cannot be said to have been fully apprised of his right to counsel and therefore

7. did not effectively waive that right [citations, fn. omitted]" ( Id. at p. 318,

8. 83 Cal. Rptr. 308.)

9. The court did not address appellant's charge that counsel MICHAEL RUIZ  was asking

10. appellant to sign papers which stated appellant was going against counsel's and

11.  co- workers wishes, and appellant should take should  take the deal. (P. 7)

12. The courts failure to acknowledge this fact and address it directly, was in fact,

13. an inadequate inquiry into appellant's MARSDEN MOTION, which should have been

14. grounds to grant appellant's request  to relieve counsel. The request by counsel

15. RUIZ, showed that appellant could not count on counsel diligently performing effectively

16. at trial had appellant signed the waiver relieving Mr. RUIZ  of responsibility

17. in case of appellant's conviction. (see Ex. "$_C$" of p.0.7)

18. C. THE TRIAL COURTS RELIEF OF RETAINED COUNSEL PAMELA LACHER, AND REAPPOINTMENT

19.AS  A PUBLIC DEFENDER , NECESSITATED THE REQUIREMENT OF A MARSDEN HEARING.

20.

21. The trial court relieved  appellant's trial counsel  PAMELA LACHER as appellant's

22. retained counsel and re – appointed as public defender  (see Ex. "$_D$" ) /3

23. A defendant represented by appointed  counsel or the public defender may request

24. that the court discharge the attorney and substitute new counsel if the

25. defendant's right to counsel would be substantially impaired by continuing with

26.the original attorney P.V. MARSDEN, supra.(1970).

27. ------------------------------------------------------------------

/3 the hearing of September 21, 2004 V. 1, p. 1-17, was incomplete and is silent

28. after counsel, PAMELA LACHER  requested a hearing outside the presence of the
    prosecutor.


21.

123

1. The appellant did in fact state unofficially. Some of the reasons for appellant's

2. discontent with trial counsel (see Ex. "D")

3. However, the lack of a MARSDEN hearing because Ms. LACHER original position as

4. retained counsel, the appellant was denied the opportunity to address the court

5. thoroughly on all charges to compel the court to relieve Ms. LACHER as appellant's

6. attorney. The appellant asserts,that the instant that the trial court relieved

7. Ms. LACHER as retained counsel and re-appointed as public defender, the court

8. should have allowed Ms. LACHER's requested MARSDEN MOTION (see EXD p. )

9. At that time MARSDEN was controlling and procedural. Typically, the defendant

10. makes an oral motion before the trial judge (see People v. MARSDEN,supra.)

11. Although a formal motion is not required, the defendant must make some clear

12. indication that he or she wants a substitute attorney. People v. Mendoza (2000)

13. 24 C4th 130, 157, 99 CR2d 485.

14. As noted previously, the appellant's trial counsel did make an oral motion

15. to conduct a hearing outside the presence of the district attorney (see RT P.

16. 16, 15-28)

17. However, the trial court erroneously claimed that the MARSDEN hearing could not

18. be conducted on retained counsel, which the court seemingly overlooked the fact

19. that it had just reinstated Ms. LACHER as a public defender, in which the MARSDEN

20. authority was now appropriate and controlling. The trial judge must conduct a

21. hearing on a MARSDEN request and allow the defendant to state specific reasons

22. for the requested dismissal. People v. Cole (2004) 33 C4th 1158, 1190, 17 CR

23. 532; People V. Fierro (1991) 1 C4th 173, 204, 3 CR2d 1426.

24. Failure to inquire adequately into a defendants complaint results in a silent

25. record making intelligent appellate review of defendants charges impossible
26. People v. Cruz, supra, 83 Cal. App. 3d 308, 318 147 Cal. Rptr.740.)

27. The court can conduct a MARSDEN hearing even after proceedings have been suspended

28. under PenaL Code section 1368 (People v. Stankewitz (1990) 51 C3d 72, 86, 270

1. CR  817; People v. Solorzano  (2005) 126 CA4th  1063, 1069, 2 4 CR3d 735.

2. On appeal, inadequate inquiry into a MARSDEN motion is treated  as prejudicial

3. per se error because the very nature of the error precludes meaningful appellate

4. review of it's prejudicial impact People v. Solorzano (2005) 126 CA4th 1063, 24

5. CR3d 735 ( erroneous refusal to hear MARSDEN motion on whether appointed  counsel

6. was rendering effective assistance at defendants competency hearing required

7. reversal of conviction entered after defendant was found competent .)

8. Instead of reversal of the judgement , the appellate court can remand the case

9. to the trial court for a MARSDEN  hearing, and if the trial court determines that

10. the MARSDEN motion should be granted, there is no basis for a reversal on appeal.

11. People v. Maese (1985) 168 CA3d  803, 214 CR  365; People v. Minor (1980) 104

12. CA3d  194, 200, 163 CR 501.

13. D. THE COURT COMPOUNDED THE MARSDEN  ERROR WHEN IT ABUSED ITS DISCRETION BY NOT

14. RE-APPOINTING COUNSEL #1, STACY GULLEY.

15. Appellant contends that despite the MARSDEN  error, the trial court could have

16. re- appointed counsel #1, STACY  GULLEY. Contrary to the court and prosecutor's

17. contention that to appoint new counsel would take undue time ( EX" D'), APPELLANT

18. asserts, 1) THE TRIAL COURT COULD HAVE RE- APPOINTED COUNSEL #1, STACY GULLEY

19. WHO WAS APPELLANT's  ORIGINAL COUNSEL AND KNEW THE CASE, 2) AND COULD HAVE

20. CONTINUED WITH THE SET TRIAL DATE AND, 3) AVOIDED ANY POSSIBLE PREJUDICE TO

21. APPELLANT IN KEEPING MS. LACHER AS APPELLANT's  TRIAL COUNSEL.

22. This prospect was reasonable in light of the fact that the trial court reinstated

23. counsel #1, STACY  GULLEY after appellants trial (Marsh "Hrl")and, the appellant  expressed

24. his satisfaction with GULLEYS representation and appellants willingness to proceed

25. with Mr. GULLEY  (RTV 1 p. 10-11)

26. Thus, the appellant asserts the trial court clearly could have solved the problem

27. by conducting a MARSDEN  hearing or in the alternative, re- appointing GULLEY.

28. The lack of either options violated appellant's right to counsel of choice,

1. In violation of the U.S.C.A.  6th  and was an abuse of discretion.

2. E. PREJUDICE: THE ABOVE MENTIONED ERRORS WERE NOT HARMLESS.

3. Finally the appellant maintains that the initial decision to remove counsel #1,

4. STACY GULLEY, FROM REPRESENTATION OF APPELLANT AND HIS REPLACEMENT WITH COUNSEL

5. #2, MICHAEL RUIZ  WITHOUT NOTICE TO APPELLANT, AND APPELLANTS SUBSEQUENT DECISION

6. TO GO PRO PER, was due to events out of appellants control and the failure of

7. trial court to conduct the MARSDEN HEARING, was violation and requires reversal.

8. The errors violated appellants Due process and right to effective counsel under

9. the U.S.C. 6th, 14th, amendments. Appellant respectfully request that his conviction

10. be reversed. counts 1 and 2.

11.

12.

13.

14.

15.

16.

17.

18.

19.

20.

21.

22.

23.

24.

25.

26.

27.

28.

JOSEPH McDONALD Q-01689
CSP-LOS ANGELES COUNTY
PO BOX 4670 (D1-232)
LANCASTER CA 93539-4670

EX "A"

IN PRO PER

IN THE COURT OF APPEAL OF CALIFORNIA

IN AND FOR THE FOURTH DISTRICT

DIVISION ONE

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA,<br><br>        PLAINTIFF/RESPONDENT,<br><br>v.<br><br><br><br>JOSEPH HILTON McDONALD,<br>        DEFENDANT/APPELLANT.<br><br>_____ | ) CASE No. D046881<br>)<br>) (LOWER Ct. No. SCE-234930)<br>)<br>) APPELLANT'S MOTION PURSUANT TO<br>) MARSDEN FOR ORDER RELIEVING<br>) COUNSEL STRALLA OF DUTY AND<br>) APPOINT NEW OR SUBSTITUTE<br>) COUNSEL IN PLACE OF COUNSEL<br>) STRALLA FOR HER INEXCUSABLE<br>) FAILURE OF RAISING CRITICAL<br>) ASSIGNMENTS OF ERROR THAT<br>) ARGUABLY WOULD RESULT IN<br>) REVERSAL OF CONVICTION;<br>) ALTERNATIVELY, REQUEST FOR<br>) LEAVE OF COURT TO PREPARE AND<br>) FILE SUPPLEMENTAL BRIEF<br>  PURSUANT TO RULE 29.1(d), OR A<br>  PRO SE BRIEF; DECLARATION OF<br>  APPELLANT; DECLARATION BY M.T.<br>  SHANNON |

COMES NOW JOSEPH HILTON McDONALD ("APPELLANT" or "MR. Mc DONALD"), AND MOVES THIS COURT FOR AN ORDER GRANTING A MARSDEN[1]

_____

1    PEOPLE v. MARSDEN (1970) 2 C[3] 118

-1-

1   MOTION REQUEST TO RELIEVE COUNSEL STRALLA OF DUTY (MARSDEN,

2   SUPRA, at 124) AND APPOINT NEW APPELLATE COUNSEL.

3       ALTERNATIVELY, APPELLANT HEREBY REQUESTS PERMISSION TO

4   FILE, WITHIN 60 DAYS OF SERVICE OF ORDER BY THE COURT, A

5   SUPPLEMENTAL BRIEF PURSUANT TO RULE 29.1(d) OF THE CALIFORNIA

6   RULES OF COURT, OR FOR PERMISSION TO FILE A PRO SE BRIEF.

7       THE ISSUES TO BE AMENDED IN A SUPPLEMENT BRIEF INCLUDE,

8   INTER ALIA, THE FOLLOWING:

9       1.    INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL: FAILURE TO

10  REQUEST A PRETRIAL LIVE LINEUP DENIED A CONSTITUTIONAL RIGHT.

11  (EVANS v. SUPERIOR COURT, 11 C[3] 617 [1974].);

12      2.    THE PROSECUTION'S CASE FAILS FOR INSUFFICIENT EVIDENCE

13  AS TO WHETHER THE JURY'S FINDING REGARDING PRIOR CONVICTIONS

14  CONSTITUTED SERIOUS OR VIOLENT FELONIES WITHIN THE MEANING OF

15  SECTION 1192.7(c)(8);

16      3.    THE TRIAL COURT ERRED AND COMMITTED MANIFEST AND

17  UNMISTAKABLE ABUSE OF DISCRETION BY ALLOWING IRRELEVANT AND

18  UNDUE PREJUDICIAL CHARACTER EVIDENCE:

19          (A)    EVIDENCE OF GANG AFFILIATION CREATED

20          RISK OF INFERRING APPELLANT'S CRIMINAL DISPOSITION

21          FROM THE UNRELIABLE EVIDENCE AND THUS JURY DECIDED

22          GUILT OF OFFENSES CHARGED BASED ON THAT INFERENCE;

23

24          (B)    VIDEO-TAPED EVIDENCE OF APPELLANT SMOKING,

25          DRINKING AND SINGING RAP SONGS WAS IRRELEVANT AND

26          UNDULY PREJUDICIAL BECAUSE IT WAS NOT MORAL

27          TURPITUDE CONDUCT UNDER LAW;

28                          -2-

4.    THE TRIAL PROSECUTOR ENGAGED IN NUMEROUS ACT OF DELIBERATE MISCONDUCT WHICH DENIED APPELLANT CONSTITUTIONAL RIGHT OF DUE PROCESS AND A FAIR TRIAL:

(A)    DELIBERATE FAILURE TO DISCLOSE DISCOVERABLE EVIDENCE REQUIRED BY THE PROVISIONS OF BRADY[2];

5.    JUDICIAL ERROR: REFUSAL BY TRIAL COURT TO PERMIT DEFENSE COUNSEL TO VIEW LATE DISCOVERY OBTAINED BY THE PROSECUTION TO IMPEACH TESTIMONY OF DEFENSE WITNESS, REGINA BURTON;

6.    INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL. (EVITTS v. LUCEY, 469 US 387 [1985]; ANDER v. CALIFORNIA, 386 US 738; PEOPLE v. LeDESMA, 43 C[3] 171.)

THIS MOTION IS BASED ON ALL OF THE RECORDS AND FILES IN THE CASE AS WELL AS THE DECLARATIONS ATTACHED HERETO AND INCORPORATED BY REFERENCE.

DATED: 3/2/06

RESPECTFULLY SUBMITTED,

_____
JOSEPH HILTON McDONALD
APPELLANT

_____

2    BRADY v. MARYLAND, 373 US 83 (1963)

## DECLARATION OF APPELLANT

I, JOSEPH HILTON McDONALD, HEREBY DECLARE THE FOLLOWING:

1.    I AM THE APPELLANT IN THIS MATTER, ASSIGNED AS CASE No. D046881.

2.    I AM A PRISONER OF THE STATE OF CALIFORNIA, SERVING SENTENCE IN THE MENTAL HEALTH PROGRAM AT CSP-LAC.

3.    I AM UNDER THE CARE OF A PSYCHIATRIST.

4.    I SUBMIT THIS DECLARATION TO REQUEST THAT COUNSEL STRALLA BE RELIEVED OF DUTY, IN THAT SHE REFUSES (PER MY NUMEROUS REQUESTS) TO PURSUE ARGUABLE ISSUES ON MY ONE AND ONLY DIRECT CRIMINAL APPEAL MERITORIOUS OF A REVERSAL OR MODIFICATION OF THE UNDERLYING JUDGMENT OF CONVICTION.

5.    THE TERM "ARGUABLE ISSUES ON APPEAL" CONSISTS OF (a) MERITORIOUS ISSUES THAT (b) HAVE A REASONABLE POTENTIAL FOR SUCCESS.

6.    IN THE CASE AT BAR, COUNSEL STRALLA HAS BEEN OBJECTIVELY UNREASONABLE IN FAILING TO ARGUE ISSUES ON APPEAL DEMONSTRATING CRITICAL ASSIGNMENTS OF ERROR AND PREJUDICE THAT OCCURRED IN THE UNDERLYING PROSECUTION.  (IN RE SMITH, 3 C[3] 192, 203.)  THIS UNREASONABLENESS HAS RESULTED IN A BREAKDOWN OF THE ATTORNEY-CLIENT RELATIONSHIP.  THEREFORE I REQUEST THAT COUNSEL STRALLA BE RELIEVED OF DUTY AND THAT NEW COUNSEL BE APPOINTED, BECAUSE MY RIGHT TO EFFECTIVE REPRESENTATION IS JEOPARDIZED BY THE EXISTING REPRESENTATION.

///

///

-4-

6.    ALTERNATIVELY, I REQUEST PERMISSION TO FILE A SUPPLEMENTAL BRIEF TO FOLD IN ISSUES OMITTED, OR PERMISSION TO FILE A PRO SE BRIEF.

7.    I BELIEVE MY FAILURE TO PURSUE CRITICAL ASSIGNMENTS OF ERROR THAT ARGUABLY WOULD RESULT IN REVERSAL OR MODIFICATION OF MY SENTENCE ON APPEAL WILL UNDULY EXPOSE ME TO A STATE PROCEDURAL BAR, UNDER THE DIXON[3] RULE, FOR FAILURE TO RAISE THE ISSUES ON APPEAL.

8.    FOR THE FOREGOING REASONS, I REQUEST THAT COUNSEL STRALLA BE REMOVED AS COUNSEL AND THAT NEW COUNSEL BE APPOINTED.

9.    I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.  EXECUTED THIS 2nd DAY OF MARCH 2006, AT LANCASTER, CALIFORNIA.

---

3    IN RE DIXON, 41 C[2] 756 (1953)

JOSEPH HILTON McDONALD
DECLARANT

## DECLARATION BY M.T. SHANNON

I, M.T. SHANNON, H-27892, HEREBY DECLARE THE
FOLLOWING:

1.    I AM A PRISONER OF THE STATE OF CALIFORNIA, SERVING
SENTENCE AT CSP-LAC AS A MEMBER OF THE MENTAL HEALTH PROGRAM
KNOWN AS THE ENHANCED OUTPATIENT PROGRAM (or EOP).

2.    I SUBMIT THIS DECLARATION IN SUPPORT OF
MR. McDONALD'S ALTERNATIVE REQUEST TO FILE A SUPPLEMENTAL
BRIEF OR PRO SE BRIEF.  IF THIS PORTION OF HIS MOTION IS
GRANTED, I HAVE AGREED TO ASSIST MR. McDONALD IN THE PREPARATION
AND FILING OF THE BRIEFS.

3.    I PERSONALLY KNOW HOW MR. McDONALD CONDUCTS HIMSELF
WITHIN THE EOP COMMUNITY, AND I PERSONALLY KNOW THAT BECAUSE
OF HIS MENTAL DISABILITIES, COUPLED WITH HIS UNFAMILIARITY
OF THE CRIMINAL APPEAL PROCESS, HE WILL BE UNABLE TO FILE
ANY BRIEFS WITHOUT ASSISTANCE.

4.    I AM A SCHOOL-TRAINED LEGAL PARALEGAL, WHEREAS I
ONCE STUDIED FOR A JURIS DOCTORATE OF LAW DEGREE FROM AN
ABA ACCREDITATION LAW SCHOOL.

5.    I AM FAMILIAR WITH A GREAT DEAL OF THE FACTS
CONCERNING MR. McDONALD'S CASE, ALTHOUGH I AM CURRENTLY SPENDING
TIME REVIEWING RELEVANT CASE MATERIALS TO FURTHER ASCERTAIN
PERTINENT FACTS.

///

///

///

-6-

6.    I HAVE EXPLAINED TO MR. McDONALD THAT A CRIMINAL

APPELLANT HAS NO ABSOLUTE RIGHT TO SELF-REPRESENTATION ON APPEAL

AS DOES A CRIMINAL DEFENDANT AT TRIAL.  I EXPLAINED THAT HE

WOULD HAVE TO MAKE SUCH A REQUEST AS IS BEING HEREIN PRESENTED

AND AWAIT THER COURT'S RULING AND, IF THIS COURT PERMITS

HIM TO FILE EITHER A SUPPLEMENTAL BRIEF OR PRO SE BRIEF, I

WOULD UNDERTAKE THE TASK OF ASSISTING HIM AND ASSURED HIM I

WOULD ALSO UNDERTAKE HIS BEST INTEREST, UNLIKE COUNSEL STRALLA.

7.    I DECLARE UNDER PENALTY OF PERJURY THAT THE

FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND

BELIEF, UNDER PENALTY OF PERJURY, EXECUTED THIS 2nd DAY OF

MARCH 2006, AT LANCASTER, CALIFORNIA.



M.T. SHANNON, LEGAL ASSISTANT
DECLARANT

///

///

///

///

///

///

///

///

///

///

///

-7-

# DECLARATION OF SERVICE

I, the undersigned, hereby state:  I have served a true and correct copy of the foregoing:

REQUEST TO RELIEVE COUNSEL STRALLA OF DUTY

upon the respondent / attorney of record, by placing same in a sealed, postage paid envelope, properly addressed to:

OFFICE OF ATTORNEY GENERAL            ATTORNEY AVA R. STRALLA
110 W. "A" ST #1100                   PO BOX 28880
PO BOX 85266                          SAN DIEGO CA 92198
SAN DIEGO CA 92186-5266


APPELLATE DEFENDERS, INC.
555 W. BEECH ST #300
SAN DIEGO CA 92101

I declare under penalty of perjury that the foregoing is true and correct.

SWORN AND EXECUTED BY ME ON THIS THE _____ DAY OF  MARCH          ,  2006 ,

AT    LANCASTER                          , CALIFORNIA.

/_____
M.T. SHANNON, H-27892

COURT OF APPEAL - STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

F I L E D
Stephen M. Kelly, Clerk

MAR 1 3 2006

Court of Appeal Fourth District

THE PEOPLE,
    Plaintiff and Respondent,

v.

JOSEPH HILTON McDONALD,
    Defendant and Appellant.

**D046881**
San Diego County No. SCE234930

THE COURT:

    Appellant's request to relieve and substitute counsel is DENIED. The request to file a supplemental or pro se brief is also DENIED. (See *Martinez v. Court of Appeal of California, Fourth Appellate District* (2000) 528 U.S. 152, 164 [appellant has no right to represent himself on appeal].)

Presiding Justice

cc: All Parties

COPY of Oria

COURT OF APPEAL - STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

FILED

JUN 3 2006

Court of Appeal Fourth District

THE PEOPLE,
    Plaintiff and Respondent,
v.
JOSEPH HILTON McDONALD,
    Defendant and Appellant.
**D046881**
San Diego County No. SCE234930


THE COURT:

    Appellant's "Renewed Motion to Relieve Counsel Stralla of Duty" filed on June 6, 2006, is DENIED.


_____
Presiding Justice


cc: All Parties

Copy of Original

S143012

# IN THE SUPREME COURT OF CALIFORNIA

## En Banc

In re JOSEPH HILTON MCDONALD on Habeas Corpus

Petition for writ of habeas corpus is DENIED.

SUPREME COURT
**FILED**

NOV 2 9 2006

Frederick K. Ohlrich Clerk

DEPUTY

GEORGE

Chief Justice

In Propria Persona

EX "B"

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF EL CAJON

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, ) | CASE No.: |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| ) | MOTION FOR TRANSCRIPTS AND/OR |
| ) | COURT RECORDS OF PROCEEDINGS |
| Defendant. ) | FOR HABEAS CORPUS PETITION |

Defendant, _____, hereby moves this court for an order directing the Clerk to transcribe and transmit the record in the above entitled cause.

This motion is supported by the requirement of habeas corpus petitions raising arguments to be supported by sufficient facts reflected in the court record. (See Woods v. Superior Court (2nd Dist., 1990) 219 C.A.3d 708[ "An indigent criminal defendant who claims the right to a free transcript does not bear the burden of proving inadequate alternatives. "]; Cf. Gardner v. California (1969) 393 U.S. 367.)

Defendant requests the Court provide the following matters recorded in the above entitled cause:

1. Court Reporter transcripts taken 3-12-04, at 9:30 in Department 011, by CARLUCCI, ROBERT 5552. Transcript concern Marsden motion...

2. COURT Reporter's Transcript taken September 21,2 By Dana Peabody, #6332. Specifically the transcripts of hearing conducted at 2:30pm

3.

4.

5.

Defendant has raised issues in a petition for writ of habeas corpus alleging:

a. Abuse of Discretion Re LaCHER,

b. Conviction

c.

In **March v. Municipal Court** (1972)
the California Supreme Court held:

> "[I]f affidavits presents a prima facie showing of indigency, motion for complete transcripts at public expence must be granted unless court has good reason to doubt truthfulness of allegations."

Defendant was appointed a public defendant to represent him at trial due to his indigency, and his financial status has not changed since that date. Defendant is still without funds to afford an attorney nor the cost for preparation, or production of court transcrips. (See **Smith v. Bennett** (1961) 365 U.S. 708 ["To interpose any financial consideration between indigent prisoners of state and his exercise of **state rights** to see for his liberty is to deny that prisoner equal protection of laws."].)

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Excuted this 13 day of MARCH , 2007 at Lancaster, California.

Defendant/Movant

/s/ ~~Jeff~~

JOSEPH MCDONALD
In Pro Per

FEB 2 0 2007

By: Y. BRENNAN. Deputy

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF SAN DIEGO, EAST COUNTY DIVISION

IN THE MATTER OF THE APPLICATION OF:                    )
                                                         )          SCE 234930
                                                         )
JOSEPH HILTON MCDONALD,                                  )
                                                         )          ORDER DENYING
                              Defendant.                 )          REQUEST FOR
                                                         )          TRANSCRIPTS
                                                         )

THIS COURT, HAVING READ AND CONSIDERED THE REQUEST OF JOSEPH MCDONALD AND THE FILE IN THE ABOVE-CAPTIONED MATTER, FINDS AS FOLLOWS:

Defendant seeks transcripts regarding the above-referenced case, but has not provided any factual basis for that request. The Defendant is not entitled to free transcripts for the purpose of searching the record to find possible grounds on which to assert a claim for collateral relief. He must show a "reasonably compelling need for the specific documentary evidence." (*Chavez v. Sigler* (8th Cir. 1971) 438 F.2d 890. See also *Bentley v. United States* (6th Cir. 1970) 431 F.2d 250; *Walker v. United States* (5th Cir. 1970) 424 F.2d 278; *Muller v. Municipal Court* (1968) 259 Cal.App.2d 177.)

Factual specificity and particularity are required when seeking a reporter's transcript or any other material from the file at the taxpayers' expense. Defendant is not entitled to such material merely to comb the record for error. *United States v. MacCollom* (1976) 426 U.S. 317; *Miller v. Hamm* (1970) 9 Cal.App.3d 860.

1

1    Accordingly, before the court is required to order transcripts at public expense, the

2    indigent defendant must file a motion demonstrating a colorable need for the transcripts to

3    support the substantive allegations of the particular petition.  The court in *Miller v. Hamm*

4    (1970) 9 Cal.App.3d 860, 871, held that "the federal Courts of Appeal appear to uniformly

5    hold that where a petitioner has failed to avail himself of an appeal and further fails to specify

6    in what respect a reporter's transcript is in fact necessary to rectify an invasion of a

7    fundamental right, his entitlement to a free reporter's transcript, has not been made out.  One

8    is not entitled to a free reporter's transcript, they hold, merely to 'comb the record in hope of

9    discovering some flaw' to raise on collateral review.  (*McGarry v. Fogliani* (9th Cir. 1966) 370

10   F.2d 42, 44; accord: *United States v. Shoaf*, supra, 341 F.2d 832; *Harless v. United States*

11   (5th Cir. 1964) 329 F.2d 397, 398-399; *Culbert v. United States* (8th Cir. 1964) 325 F.2d 920,

12   921-922.)"

13   In this case, Defendant requests a copy of the transcript from the September 21, 2004

14   hearing, as he intends to file a petition for review.  However, Defendant has not provided any

15   factual basis for the request for the transcript and why it is necessary to file a petition for

16   review.  Without a showing a specific need for the transcripts, a Defendant is not entitled to

17   receive them at the public's expense.  The Defendant is not entitled to a free copy of the

18   transcripts in order to "comb the record for error."

19   With all of this being said, right of access of the Defendant is not being denied.

20   However, right of access is not the same as a right to have the County of San Diego pay to

21   make copies of transcripts and/or documents from the file.  Defendant has the right, as does

22   any member of the public, to review this file and to request that copies be made of whatever

23   documents are contained therein.  The requesting party bears the cost of making copies or

24   producing transcripts and there is no legal authority requiring the taxpayer to subsidize this

25   expense when a substantial need for the documents has not been shown.

26   In addition, Defendant through his appellate counsel received copies of the court

27   transcripts in connection with his appeal.  The hearing requested by the Defendant has been

28   transcribed.  The Defendant can contact his appellate counsel to request that specific

2

1 | transcript. The Defendant is not entitled to receive more than one free copy of the transcripts

2 | at taxpayer's expense.

3 |     Based on the foregoing, the Defendant's request for a free copy of the transcript for

4 | the September 21, 2004, hearing is hereby DENIED.

5 | **IT IS SO ORDERED.**

6 |

7 | DATED: _2/14/07_

8 |                                                LOUIS R. HANOIAN

9 |                                   JUDGE OF THE SUPERIOR COURT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN DIEGO

DEPARTMENT 11   BEFORE THE HON. HERBERT J. EXARHOS, JUDGE

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, )<br><br>PLAINTIFF, )<br><br>VS. )<br><br>JOSEPH HILTON MC DONALD, )<br><br>DEFENDANT. ) | NO. SCE234930 |

MAY 4, 2004

MARSDEN MOTION PROCEEDINGS

PAGES 1 THROUGH 29/49

APPEARANCES:

        FOR THE PLAINTIFF:                      BONNIE DUMANIS
                                                DISTRICT ATTORNEY
                                                BY:  G. BENNETT/J. ROMO
                                                DEPUTY DISTRICT ATTORNEY
                                                250 EAST MAIN STREET
                                                EL CAJON, CALIFORNIA 92020

        FOR THE DEFENDANT:                 OFFICE OF THE PUBLIC DEFENDER
                                                    BY:  MICHAEL RUIZ
                                                  DEPUTY PUBLIC DEFENDER
                                                250 EAST MAIN STREET
                                                EL CAJON, CALIFORNIA 92020

                                                TAMMY L. NIELSEN
                                                CSR #9143
                                                OFFICIAL REPORTER
                                                EL CAJON, CALIFORNIA 92020